United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW TAN, et al., | Case No.  15-cv-05128-JSC |
| Plaintiffs, | |
| v. | **ORDER GRANTING IN PART MOTION TO DISMISS FIRST AMENDED COMPLAINT** |
| GRUBHUB, INC., et al., | |
| Defendants. | Re: Dkt. No. 15 |

In this putative class action, Plaintiffs Andrew Tan ("Tan") and Raef Lawson ("Lawson," and together, "Plaintiffs") sue Grub Hub Holdings Inc. and GrubHub Inc. ("GrubHub" or "Defendants"), a service that provides food delivery to customers via an on demand dispatch system.  The gravamen of Plaintiffs' First Amended Complaint ("FAC") is that the delivery driver plaintiffs were misclassified as independent contractors and denied the benefits of California wage-and-hour laws.  (Dkt. No. 15.)[1]  Now pending before the Court is Defendants' motion to dismiss.  Defendants seek to dismiss the entire FAC for failure to state a claim, and ask the Court to dismiss or, alternatively, stay the PAGA claims under the *Colorado River* abstention doctrine.  (Dkt. No. 21.)  Having considered the parties' submissions, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and GRANTS IN PART the motion to dismiss and declines to stay the PAGA claim for the reasons explained as set forth below.

**BACKGROUND**

The following background is based on the FAC allegations and judicially noticeable

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

documents.[2]  Defendants removed the case to federal court from the San Francisco Superior Court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (Dkt. No. 1 ¶ 3.)  Plaintiffs subsequently filed the FAC, which alleges that Defendants mischaracterize delivery drivers as independent contractors instead of employees in violation of California law and, as a result of the misclassification, have violated a number of California Labor Code provisions.  (Dkt. No. 15 ¶ 2.)  Lawson alone brings the first five counts under the Labor Code, while both Lawson and Tan bring the PAGA claim alleged in the sixth count.

Drivers receive a flat fee for each completed delivery plus gratuities, although Defendants do not provide an itemized wage statement showing as much.  (*Id.* ¶ 12.)  Defendants require drivers to sign up for shifts of blocks of hours in advance and require that drivers remain within a designated area and be available to accept delivery assignments during those shifts.  (*Id.* ¶ 13.)  Defendants also direct drivers' work in detail, instructing them where to report for shifts, how to dress, where to go to pick up or await deliveries, and to follow requirements regarding food handling and delivery timing or risk termination.  (*Id.*)  As Defendants' business is providing food delivery services, the drivers' services are integrated into Defendants' business, which would not exist without them.  (*Id.* ¶ 14.)

As for the specific Labor Code violations, Lawson first alleges that Defendants have

---

[2] When adjudicating a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court generally cannot consider matters outside of the complaint without converting the motion into a motion for summary judgment.  However, courts may consider documents alleged in a complaint and essential to a plaintiff's claims.  *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  A court may also "take judicial notice of documents on which allegations in the complaint necessarily rely, even if not expressly referenced in the complaint, provided that the authenticity of those documents is not in dispute[,]" *Tercica, Inc. v. Insmed Inc.*, No. C 05-5027 SBA, 2006 WL 1626930, at *8 (N.D. Cal. June 9, 2006) (emphasis and citation omitted), and may take judicial notice of matters of public record, *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010), including court filings, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442F.3d 741, 746 n.6 (9th Cir. 2006), and legislative history, *see, e.g.*, *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012).  Here, Defendants request that the Court take judicial notice of three documents.  (Dkt. No. 22.)  Exhibits A and B are both documents filed on the public docket in Los Angeles Superior Court in a PAGA action that a GrubHub driver brought against Defendants.  Exhibit C is a California Senate Rules Committee Analysis of the bill that eventually became PAGA.  Plaintiffs object to the Court's consideration of these documents on the grounds that consideration of extra-pleading materials necessarily converts the motion into one for summary judgment.  (Dkt. No. 36 at 21 n.5.)  Not so.  As Plaintiffs neither contest that the documents are publicly available nor challenge their authenticity, the Court GRANTS Defendants' request for judicial notice of Exhibits A, B, and C.

1    violated Section 2802 by failing to reimburse drivers for expenses they paid that Defendants

2    should have borne, including expenses for their vehicles, gas, parking, phone data, and other

3    expenses." (*Id.* ¶ 15.)

4         Next, Lawson alleges that Defendants have violated Section 226(a) by failing to provide

5    proper itemized wage statements.  (*Id.* ¶ 12 & Count II.)

6         Lawson also alleges violations of Sections 1197 and 1194 for failing to pay the drivers the

7    California minimum wage.  Because drivers are paid by delivery and have been required to bear

8    the expenses of their employment, "their weekly pay rates have fallen below California's

9    minimum wage in many weeks." (*Id.* ¶ 16.)  In particular, Tan's wages fell below minimum wage

10   "during several weeks since he began working for GrubHub in June 2015, as a result of his fuel

11   and vehicle maintenance costs." (*Id.*)  Lawson's weekly wages have likewise fallen below

12   minimum wage in "numerous weeks because of the expenses that he has been required to bear,

13   such as fuel and vehicle maintenance costs." (*Id.*)

14        Fourth, Lawson alleges that Defendants failed to compensate drivers for overtime hours

15   worked in violation of Labor Code Sections 1194, 1198, 510, and 554.  Lawson and other drivers

16   "have regularly worked more than eight (8) and even twelve (12) hours per day and forty (40)

17   hours per week" without receiving overtime pay.  (*Id.* ¶ 17.)  Tan has "regularly worked in excess

18   of sixty hours per week" and "routinely worked more than twelve (12) hours in a day" without

19   receiving time-and-a-half pay for the hours beyond 40 or twice his hourly rate, respectively.  (*Id.*)

20   Lawson worked 45 hours the week of November 30, 2015 and was not paid at time-and-a-half for

21   the hours beyond 40.  (*Id.*)

22        In Count V, Lawson alleges that Defendants' Labor Code violations also constitute

23   unlawful business practices in violation of California's Unfair Competition Law, Cal. Bus. & Prof.

24   Code § 17200.  Lawson and other drivers have lost money and property including business

25   expenses and unpaid wages.  Lastly, in the sixth count Plaintiffs seek penalties under PAGA for

26   all of the Labor Code violations.  Defendants move to dismiss all six counts.

27                                  **DISCUSSION**

28        Defendants do not dispute that Plaintiffs have adequately pleaded misclassification—that

is, that the FAC includes sufficient allegations to plausibly establish that GrubHub classified its drivers as independent contractors when they were actually employees. Instead, Defendants contend that all six FAC counts fail because Plaintiffs have not included enough facts to state a claim for any of the alleged violations. Separately, Defendants urge the Court to abstain from adjudicating Plaintiffs' PAGA claims due to the existence of an earlier-filed action by another GrubHub driver asserting the same—and more—PAGA claims against Defendants.

As a threshold matter, Plaintiffs did not substantively respond to Defendants' argument regarding Count II, the Section 226 claim; instead, Plaintiffs state only that "Lawson will not press his claim for violation of [Section] 226(a)." (Dkt. No. 36 at 10 n.3.) The Court will therefore dismiss Plaintiffs' Section 226 claim with prejudice.

## I.   Whether Plaintiffs' Claims are Sufficiently Pled

### A.   *Count I: Labor Code Section 2802*

California Labor Code Section 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Merely alleging failure to reimburse unspecified work-related expenses is not enough to state a Section 2802 claim. *See, e.g.*, *Lenk v. Monolithic Power Sys., Inc.*, No. 15-cv-01148-NC, 2015 WL 7429498, at *9 (N.D. Cal. Nov. 23, 2015); *Hennighan v. Insphere Ins. Solutions, Inc.*, No. 13-cv-00638-JST, 2013 WL 1758934, at *5 (N.D. Cal. Apr. 24, 2013) (same). Instead, Section 2802 claims are sufficiently pled where the complaint identifies the particular expenses that were not reimbursed and affirmatively alleges that the expenses were part of the plaintiff's job duties. *See, e.g.*, *Taylor v. W. Mar. Prods., Inc.*, No. C 13-04916 WHA, 2014 WL 1779279, at *5-6 (N.D. Cal. May 3, 2014) (concluding the § 2802 claim was sufficiently pled where the plaintiffs alleged that their employer forced them to make trips to banks more than one mile from the job site requiring use of plaintiffs' personal automobiles or a trip on the bus without reimbursing the plaintiffs for mileage or bus fare); *Garcia v. Bryant*, No. CV-F-11-1566-LJO, 2011 WL 5241177, at *9 (E.D. Cal. Oct. 31, 2011) (concluding the § 2802 claim was sufficiently pled where the plaintiffs alleged that their employer did not reimburse them for travel expenses associated with mandatory travel to

United States District Court
Northern District of California

stores located in certain cities, or mandatory correspondence with supervisors using their personal telephones, both of which were required as part of their job duties); *Ordonez v. Radio Shack*, No. CV 10-7060 CAS (MANx), 2011 WL 499279, at *4-6 (C.D. Cal. Feb. 7, 2011) (concluding the § 2802 claim was sufficiently pled where defendants required the plaintiff to purchase a uniform consisting of a shirt and slacks but failed to reimburse plaintiff for the uniform).

Here, Plaintiffs allege that they were required to bear expenses related to "their vehicles, gas, parking, phone data, and other expenses." (Dkt. No. 15 ¶ 15 & Count I.) Drawing all reasonable inferences in Plaintiffs' favor, these allegations are sufficient to state a plausible claim for relief because Plaintiffs have identified the type of expenses that GrubHub failed to reimburse. *See Garcia*, 2011 WL 5241177, at *9; *Ordonez*, 2011 WL 499279, at *4-6; *see also O'Connor v. Uber Techs., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at *6-7 (N.D. Cal. Dec. 5, 2013) (declining to dismiss the plaintiffs' § 2802 reimbursement claim that had a level of detail similar to the FAC here, but focusing on whether the complaint adequately alleged that plaintiffs and the other members of the putative class were employees rather than independent contractors).

Defendants' insistence that Plaintiffs' claim fails because they have not alleged that the expenses were necessary to the discharge of their duties ignores that the FAC allegations support such an inference: an app-based delivery service requires a vehicle and a phone and thus expenses related to each. While Plaintiffs could have provided further detail about these expenses, the allegations survive Rule 8. *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal.4th 554, 567-69 (2007), does not help Defendants. In *Gattuso* the issue was whether an employer could satisfy its Section 2802 statutory business expense reimbursement obligation by paying employees enhanced compensation; it does not address what must be pled.

Defendants' argument that Plaintiffs failed to allege that Defendants knew or had reason to know of the expenditures fares no better. (*See* Dkt. No. 21 at 14-15.) Assuming that a Section 2802 plaintiff must plead such knowledge, the FAC allegations plausibly support an inference of GrubHub's knowledge. It is plausible to infer that Defendants were aware that class members incurred these expenses from the nature of their business—an app-based food delivery service that requires drivers to use their cars and cell phones. *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d

901, 904 (N.D. Cal. 2009), does not suggest otherwise.

Finally, Defendants maintain that *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (2014), *as amended* (Jan. 26, 2015), requires plaintiffs to specify a particular work week in which they incurred reimbursement-related losses.  In *Landers*, the Ninth Circuit for the first time addressed pleading requirements for minimum wage and overtime claims under the Federal Labor Standards Act ("FLSA"), 29 U.S.C. § 207, in the wake of *Twombly* and *Iqbal*.  771 F.3d at 639, 641-42.  The court held that the plaintiffs' allegations for failure to pay overtime wages were so vague that a reasonable inference could not be drawn that there was any week in which they worked more than 40 hours and were not paid overtime.  *Id.* at 646.  Although *Landers* discussed FLSA claims, its reasoning applies to California Labor Code claims as well.  *See, e.g.*, *Byrd v. Masonite Corp.*, No. EDCV 16-35 JGB (KKx), 2016 WL 756523, at *3 (C.D. Cal. Feb. 25, 2016).  Plaintiffs give the Court no reason to depart from the well-reasoned logic of these other courts in extending *Landers* to various Labor Code claims.

But even doing so, nothing in *Landers* suggests that to state a plausible claim for failure to reimburse business expenses a plaintiff must identify a particular calendar week; here, the allegation is that because GrubHub did not treat Plaintiffs as employees, they *never* reimbursed the identified expenses.  As Plaintiffs have identified the expenses that Defendants failed to reimburse, the claim can proceed.

C.     *Counts III & IV: California Minimum Wage & Overtime Laws*

The FAC alleges that because Plaintiffs are paid per delivery and have to bear their own expenses, Plaintiffs' and other drivers' weekly pay rates have fallen below state minimum wage requirements in many weeks.  (*Id.* ¶ 16.)  Further, Tan's weekly wages "fell below minimum wage during several weeks since he began working for GrubHub in 2015, as a result of his fuel and vehicle maintenance costs" and Lawson's wages likewise have fallen below minimum wage "in numerous weeks because of the expenses that he has been required to bear, such as fuel and vehicle maintenance costs."  (*Id.*)  With respect to the overtime claim, the FAC alleges that Plaintiffs and other drivers have regularly worked more than 8 or even 12 hours in a day and 40 hours per week without receiving overtime pay.  (*Id.* ¶ 17.)  Tan "regularly worked in excess of

United States District Court
Northern District of California

[60] hours per week" without receiving time-and-a-half pay for the hours that exceeded 40 in a week, and "routinely worked more than [12] hours in a day" without receiving "twice his regularly hourly rate." (*Id.*)  Plaintiffs allege that Lawson "worked approximately [45] hours and was not paid at time-and-a-half for the hours in excess of forty" during the week of November 30, 2015. (*Id.*)

As explained above, in *Landers*, the Ninth Circuit addressed pleading requirements for minimum and overtime wage claims and held the plaintiff's claims were insufficient because the plaintiff did not include "any detail regarding a given workweek when [he] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages."[3]  *Landers*, 771 F.3d at 646.  "[C]onclusory allegations that merely recite the statutory language are [not] adequate"; to survive a motion to dismiss the complaint must assert facts about specific periods of time where the employer withheld overtime or regular pay.  *Id.* at 646.  While *Landers* recognized that "detailed factual allegations" are not required, the court noted that the plaintiff needs to allege some facts aside from mere conclusory allegations.  *Id.* at 644.  As an illustration, the court held that "at a minimum the plaintiff must allege at least one workweek when he worked in excess of forty hours and was not paid [overtime or regular wages]."  *Id.* at 646.  The court also emphasized that plausibility is a fact-specific analysis, and "with the pleading of more specific facts, the closer the complaint moves toward plausibility."  *Id.* at 645.

"In *Landers*' wake, courts have offered varying and possibly inconsistent standards for

---

[3] As discussed above, although *Landers* discussed overtime claims asserted under the FLSA, its reasoning applies to overtime claims asserted under the California Labor Code, as well.  This is especially true for overtime and wage claims because the language of the FLSA and Labor Code provisions is strikingly similar.  Indeed, other courts have reached the same conclusion, applying *Landers* to state overtime claims.  *See, e.g.*, *Boon v. Canon Bus. Solutions, Inc.*, 592 F. App'x 631, 632 (9th Cir. 2015); *Byrd*, 2016 WL 756523, at *3 n.5; *Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015); *Raphael v. Tesoro Refining & Mktg. Co.*, No. 2:15-CV-02862-ODW (Ex), 2015 WL 4127905, at *2-3 (C.D. Cal. July 8, 2015); *Freeman v. Zillow, Inc.*, No. SACV 14-01843-JLS (RNBx), 2015 WL 5179511, at *3 (C.D. Cal. Mar. 19, 2015); *see also Miranda v. Coach, Inc.*, No. 14-cv-02031-JD, 2015 WL 636373, at *2 (N.D. Cal. Feb. 13, 2015) (not relying on *Landers*, but adopting similar reasoning, dismissing the plaintiffs' claims on the grounds that the allegations "merely parrot the statute without stating facts sufficient to make out a plausible claim" and do not "specify which, if any, named plaintiff actually failed to receive full regular wages").  Thus, the question is whether Plaintiffs' minimum wage and overtime claims pass muster under *Landers*.

stating wage-and-hour claims under California law." *Sanchez v. Ritz Carlton*, No. No. CV 15-3484 PSG (PJWx), 2015 WL 5009659, at *2 (C.D. Cal. Aug. 17, 2015) (citations omitted); *compare Raphael Tesoro*, 2015 WL 4127905, at *2-3 (concluding that the claims failed because the plaintiff "includes no relevant facts or dates during which these alleged violations occurred"), *with Varsam v. Lab. Corp. of Am.*, 120 F. Supp. 3d 1173, 1178 (S.D. Cal. 2015) (noting that the plaintiff need not plead a particular date on which the violation occurred) (citation omitted).  On the one hand, *Landers* clarifies that mere conclusory allegations that class members "regularly" or "regularly and consistently" worked more than 40 hours per week—without any further detail—fall short of *Twombly/Iqbal*. *See Landers*, 771 F.3d at 646; *see, e.g.*, *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184, 1191 (N.D. Cal. 2014) (noting that there are "no details pled as to any specific named plaintiff—not where he/she worked, not what his/her job duties were, not what the circumstances were under which any plaintiff was allegedly not paid minimum wage 'and/or' in a particular week").  Instead, there must be something beyond conclusory allegations that "ties the alleged labor-code violation to Plaintiffs" such as "allegations about either Plaintiff's schedules to substantiate that they worked double/overtime shifts that would trigger overtime pay[.]" *Sanchez*, 2015 WL 5009659, at *3 (citations omitted).

On the other hand, *Landers* does not require the plaintiff to identify an exact calendar week or particular instance of denied overtime; instead, the allegations need only give rise to a plausible inference that there was such an instance. *See Boon*, 592 F. App'x at 632 (reversing the district court's dismissal and finding sufficient to comply with *Landers* allegations that "identified tasks for which [the plaintiff] was not paid and alleged that [the plaintiff] regularly worked more than eight hours in a day and forty hours in a week"); *see, e.g.*, *Varsam*, 120 F. Supp. 3d at 1178 (noting that a plaintiff need not identify a particular work week by calendar date where the plaintiff can establish a plausible claim by estimating the length of her average workweek and the average rate of pay) (citation omitted); *Davenport v. Wendy's Co.*, No. 2: 14-cv-00931 JAM DAD, 2014 WL 3735611, at *6 (E.D. Cal. July 28, 2014) (same).  In *Boon*, the Ninth Circuit also rejected the district court's interpretation of *Landers* as requiring that a complaint "contain an estimate of how much uncompensated time was worked, how often, and at what rate to survive a

motion to dismiss." 592 F. App'x at 632 (internal quotation marks and alteration omitted). Instead, a plaintiff must identify facts that give rise to a plausible inference that he was not paid minimum wage or overtime during at least one work week. *See id.*; *Byrd*, 2016 WL 756423, at *3.

Plaintiffs have not done so. There are no allegations about what period of time or type of conduct Plaintiffs are counting as hours worked. Without these basic factual allegations, the Court cannot conclude that Plaintiffs' minimum wage or overtime claims are plausible. In their opposition, Plaintiffs allege that the drivers' entire shifts were compensable. (*See* Dkt. No. 36 at 19 ("[T]he time that they are on shift is work time[.]") (citation omitted).) This allegation does not appear in the FAC, and the Court does not consider new facts alleged in a plaintiff's opposition to a motion to dismiss. *See Broam v. Bogan*, 320 F.3d 1023, 1026 (9th Cir. 2003) (citation omitted).

Moreover, even if the FAC had alleged that the entire shift is compensable, such a conclusory allegation is not enough to state a claim. California law requires employees to be paid for "all hours" worked "at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005). Thus, "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked." *Cardenas v. McLane Foodservs., Inc.*, 796 F. Supp. 2d 1246, 1252 (C.D. Cal. 2011); *see also Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 49 (2013) (noting that employees compensated on a piece-rate basis must be paid minimum wage for all hours worked).

"It is well established that an employee's on call or standby time may require compensation." *Mendiola v. CPS Sec. Solutions, Inc.*, 60 Cal.4th 833, 840 (2015); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 137 (1944) ("Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged."); *see, e.g.*, *Madera Police Officers Ass'n v. City of Madera*, 36 Cal.3d 403, 406 (1984) (concluding that officers' on-call mealtime was compensable hours worked).

"California courts considering whether on-call time constitutes hours worked have primarily focused on the extent of the employer's control." *Mendiola*, 60 Cal.4th at 840 (citations

omitted).  "[T]he level of the employer's control over its employees . . . is determinative[.]"  *Id.*  "When an employer directs, commands, or restrains an employee from leaving the work place . . . and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control.  According to [the definition of hours worked], that employee must be paid."  *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 583 (2000).  California courts consider a number of factors when determining whether an employer had control during on-call time, including:

> (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; (7) whether the employee had actually engaged in personal activities during call-in time.

*Mendiola*, 60 Cal.4th at 841 (quotation marks and citation omitted).  Courts also consider whether the "[o]n-call waiting time . . . is spent primarily for the benefit of the employer and its business."  *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 523-24 (2009).

Here, the FAC alleges that drivers sign up for work shifts in blocks of hours, and during the shifts they "must be within an area assigned by GrubHub and must be available to accept delivery assignments."  (Dkt. No. 15 ¶ 13.)  The FAC also alleges that GrubHub instructs drivers where to wait for deliveries and imposes timeliness requirements that drivers must follow or risk termination.  (*Id.*)  Plaintiffs urge that these allegations "establish the fact that if [drivers] are engaging in . . . non-work related activities . . . during their shifts, they will be fired."  (Dkt. No. 36 at 19.)  Not so.  There are no allegations about how large the assigned waiting area is, how many assignments Plaintiffs or drivers typically receive during each shift, or what, if anything, Plaintiffs and drivers generally engage in during their shifts when they are not responding to a delivery assignment.  Absent allegations that give context to the waiting time, while it is *possible* that drivers' waiting time is compensable and, thus, that the entire shift counts as hours worked for the purposes of their minimum wage and overtime claims, it is not yet plausible.

Indeed, a court in this District recently reached a similar conclusion in *Yucesoy v. Uber*

*Techs., Inc.*, No. 15-cv-00262-EMC, 2016 WL 493189, at *5-6 (N.D. Cal. Feb. 9, 2016).  There, the plaintiffs alleged that they and other drivers—who, as here, worked in shifts and responded to assignments during those shifts—were misclassified as independent contractors and as a result, among other things, the defendant violated state minimum wage and overtime requirements.  *Id.* at *1, 6.  The claims were premised on the plaintiffs' allegation that drivers "are working whenever a driver is on-line, even if that driver is not driving a passenger."  *Id.* at *5.  Although the plaintiffs brought their claims under Massachusetts law, the court assessed whether the waiting time was compensable for the purposes of the minimum wage and overtime claims using FLSA standards, which are similar to the test under California law.  *See Berry v. Cnty. of Sonoma*, 30 F.3d 1174, 1180 (9th Cir. 1994) (noting that whether waiting time is compensable is a fact-specific inquiry that looks to the degree to which an employee is free to engage in personal activities); *Owens v. Local No. 169*, 971 F.2d 347, 351 (listing factors to consider in analyzing whether waiting time is compensable, including the frequency of calls and time limit for responses).  The *Yucesoy* court concluded that the plaintiffs had failed to adequately allege their minimum wage and overtime claims because they had not pleaded specific facts to support their contention that their waiting time was compensable.  *Id.* at *6.  Specifically, the court concluded that the plaintiffs' allegations that they were required to accept "most" driving requests to avoid being removed as a driver, their failure to explain "how often these requests came in, how many of the requests they must accept, and the magnitude of the risk of deactivation if requests are not accepted" left "unclear what ability drivers have to conduct personal business while logged into the app."  *Id.*  So too here.

Plaintiffs' attempts to distinguish *Yucesoy* are unavailing.  They note that unlike the drivers there, who could log on or off the app at any time and did not have to accept all assignments offered to them, Plaintiffs here allege that drivers have to sign up for shifts in advance and must be available to accept assignments.  (Dkt. No. 15 ¶ 13.)  But Plaintiffs have failed to draw any distinction between the problem in *Yucesoy* and the one here: that there are no allegations about how many assignments the drivers received or what happens if a driver declines an assignment during a shift.  The termination allegation in the FAC is only related to drivers' timeliness in responding to delivery assignments and handling of food, not declining to take on an

assignment altogether.  And absent allegations about the number and timing of assignments, geographical restrictions, and what happens when a driver does not accept an assignment, there is no factual basis to support a plausible inference that drivers could not engage in personal activities during their shifts and thus that their entire shifts were compensable.  As this is the foundation on which Plaintiffs' minimum wage and overtime claims presumably rest, the Court will dismiss these claims with leave to amend.

        D.     *Count V: Unlawful Business Practices*

The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent.  *Id.* § 17200.  Each prong is independently actionable.  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007); *Cel-Tech Comm'cns, Inc. v. Los Angeles Cellular*, 20 Cal.4th 163, 185 (1999).  Here, Plaintiffs plead only a violation of the unlawful prong.  (*See* Dkt. No. 15 Count V; Dkt. No. 36 at 14.)

"An unlawful business practice or act within the meaning of the UCL is an act or practice, committed pursuant to business activity, that is at the same time forbidden by law."  *Pinel v. Aurora Loan Servs., LLC*, 814 F. Supp. 2d 930, 937 (N.D. Cal. 2011) (internal quotation marks and citation omitted).  The UCL's "unlawful" prong covers a wide range of conduct; among them, it makes violations of other laws independently actionable.  *See CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (internal quotation marks and citations omitted).  Here, Plaintiff's "unlawful" UCL claim is predicated on the Labor Code violations alleged in the FAC's first four counts.  Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts.  *See Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1182 (9th Cir. 2003); *see, e.g.*, *Lomely v. JP Morgan Chase Bank, N.A.*, No. 12-CV-1194, 2012 WL 4123403, at *5 (N.D. Cal. Sept. 17, 2012).  Here, Plaintiffs' UCL claim is premised on the alleged violations of Labor Code Sections 226, 1194, 1197, and 2802 as alleged in Counts I through IV.  Because Counts II, III, and IV fail to state a claim, so too does the UCL claim premised on those counts.  There Court will therefore dismiss the UCL claim with leave to amend to the extent it is predicated on the violations alleged in

1    Counts III and IV, and with prejudice as for the underlying Section 226 claim alleged in Count II

2    that Plaintiffs have withdrawn.

3         E.    *Count VI: PAGA Claims*

4         Plaintiffs bring a representative PAGA claim seeking civil penalties for the same Labor

5    Code violations alleged in Counts I through V.[4]  Defendants advance two challenges to the PAGA

6    claims: (1) that the Court should dismiss them because they are not adequately alleged; and, in any

7    event, (2) that the Court should abstain from adjudicating the claims.

8         1.    Plaintiffs' PAGA Claims Fail to State a Claim

9         Because these claims are derivative of Plaintiffs' first five causes of action, some of which

10   fail to state a claim, so too do the PAGA claims fail to the extent they are premised on insufficient

11   predicate Labor Code violations.  *See Varsam*, 120 F. Supp. 3d at 1180 (citation omitted).  The

12   Court will therefore dismiss Count VI to the extent it is predicated on the violations alleged in

13   Counts II, III, and IV.

14        But Plaintiffs' PAGA claims fall short for another reason as well: failure to plead

15   administrative exhaustion.  To state a claim under PAGA, an aggrieved employee must first "give

16   written notice by certified mail to the [Labor and Workforce Development Agency ['LWDA'] and

17   the employer of the specific provisions of [the Labor Code] alleged to have been violated,

18   including the facts and theories to support the alleged violation," and then wait 30 days for the

19   LWDA to declare whether it will investigate the alleged violations or, if the LWDA fails to give

20   notice, wait 33 days from the notice date before filing suit.  Cal. Labor Code § 2699.3(a)(1)-(2).

21   After "exhausting these administrative remedies, a party bringing a civil action must plead

22   compliance with the pre-filing notice and exhaustion requirements."  *Thomas v. Home Depot USA*

23   *Inc.*, 527 F. Supp. 2d 1003, 1007 (N.D. Cal. 2007) (emphasis added).  Plaintiffs concede that they

24   have failed to allege administrative exhaustion of their PAGA claims and seek leave to amend to

25   plead their compliance.  (*See* Dkt. No. 36 at 21.)  The Court agrees that the PAGA claims

26   therefore fail on this ground, as well.

27   _____

28   [4] As Plaintiffs have dropped their Section 226 claim alleged in Count II, they have likewise abandoned their claim for PAGA penalties for violations of that statute.

United States District Court
Northern District of California

1    Defendants also contend that Plaintiffs are barred from pursuing their PAGA claims

2    because another GrubHub driver is already pursuing the same PAGA claims on behalf of the same

3    group of allegedly aggrieved employees.  (*See* Dkt. No. 21 at 18-19.)  In other words, Defendants

4    invoke a first-to-file rule.  On June 12, 2015, Hakima Mitchell, a GrubHub driver since December

5    2014, filed an action in Los Angeles County Superior Court on her own behalf and all drivers who

6    used the GrubHub software application in California from June 12, 2014 to the present.  *Hakima*

7    *Mitchell v. GrubHub, Inc.*, No. BC584042.  (Dkt. No. 22 at 5.)  Mitchell asserts a single cause of

8    action for PAGA penalties based on the following violations: (1) willful misclassification of

9    drivers as independent contractors in violation of Labor Code Section 226.8; (2) failure to pay

10   minimum and overtime wages in violation of Labor Code Sections 510, 1194, 1197, and 1198; (3)

11   taking drivers' gratuities in violation of Labor Code Section 351; (4) failure to provide meal and

12   rest breaks in violation of Labor Code Sections 226.7 and 512; (5) failure to provide accurate,

13   itemized wage statements in violation of Labor Code Section 226; (6) failure to pay timely wages

14   in violation of Labor Code Sections 201-204; and (7) failure to reimburse drivers for business

15   expenses in violation of Section 2802.  (*Id.*)  Trial in Mitchell's PAGA action is scheduled for

16   January 17, 2017.  (Dkt. No. 22 at 26.)  Plaintiffs filed this action three months after Mitchell filed

17   her complaint.  Defendants urge that "the express terms of the PAGA statute and the legislative

18   history underpinning its drafting" bar Plaintiffs' claims due to the pendency of an earlier-filed suit.

19   (Dkt. No. 21 at 21.)

20          Not so.  PAGA provides in relevant part:

21               No action may be brought under this section by an aggrieved
               employee if **the agency or any of its departments, divisions,**
22               **commissions, boards, agencies, or employees,** on the same facts
               and theories, cites a person within the timeframes set forth in
23               Section 2699.3 for a violation of the same section or sections of the
               Labor Code under which the aggrieved employee is attempting to
24               recover a civil penalty on behalf of himself or herself or others or
               initiates a proceeding pursuant to Section 98.3.
25

26   Cal. Labor Code § 2699(h) (emphasis added).  The plain language of the statute bars an employee

27   from bringing a PAGA action when the LWDA has cited an employer.  But the statute is silent

28   with respect to whether an employee may bring a PAGA action when another private plaintiff

United States District Court
Northern District of California

United States District Court
Northern District of California

1    brings suit against the employer in a representative capacity.  Defendants have not cited a single

2    case that has held as much.

3            And in fact, a court in this District recently rejected this very argument.  *See* Order re:

4    First-Filed Rule and Uber's Request for Stay/Dismissal Pursuant to *Colorado River* Abstention

5    Doctrine, *O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC et al. (N.D. Cal. Feb. 4, 2016),

6    Dkt. No. 474 (hereinafter "*O'Connor* Order").  There, the defendant relied on the same cases

7    Defendants cite here—cases where courts suggested otherwise in dicta.  *See Stafford v. Dollar*

8    *Tree Stores, Inc.*, No. 13-cv-1187 KJM CKD, 2014 WL 6633396, at *3 (E.D. Cal. Nov. 21, 2014)

9    (citing § 2699(h) for the proposition that an aggrieved employee cannot pursue a PAGA claim if

10   the agency or another party is pursuing the same PAGA claims against the same employer);

11   *Brown v. Ralph's Grocery Co.*, 197 Cal. App. 4th 489, 501 (2011) (citing § 2699(h) for the

12   proposition that PAGA "prohibits an employee action when the agency or someone else is directly

13   pursuing enforcement against the employer 'on the same facts and theories' under the same

14   'section(s) of the Labor Code").  But as the *O'Connor* court aptly noted:

15               [T]he issue at bar was not presented in those cases, and the
                 statements therein are merely descriptive of section 2699(h); they
16               were not holdings.   Importantly, other than a one sentence
                 description, none of those cases explain why section 2699(h) should
17               be read to include deferring to a suit brought by private plaintiffs (as
                 opposed to the LWDA) when the statutory language makes no such
18               provision.

19   *O'Connor* Order at 2.  The court therefore declined to stay or dismiss the plaintiff's PAGA claim

20   due to earlier-filed, duplicative PAGA claims brought in other actions.  *Id.* at 3.  Defendants

21   concede that the *O'Connor* decision is on point; instead of distinguishing the case, they simply

22   urge the Court to disagree with it.  But the Court finds no reason to depart from the *O'Connor*

23   court's well-reasoned analysis.

24           The other cases on which Defendants rely do not change the Court's conclusion.  True, a

25   court in this District explained that "the real party in interest in a representative PAGA action is

26   the government, which the plaintiff is deputized to represent."  *Hernandez v. DMSI Staffing, LLC*,

27   79 F. Supp. 3d 1054, 1064 (N.D. Cal. 2015) (footnote omitted).  Citing the California Supreme

28   Court, the *Hernandez* court continued to note that because the LWDA "exercises initial control

                                                    15

over the action (having the right to bring the suit after notice), receives the lion share of the statutory recovery, and is bound by any judgment obtained . . . a PAGA claim is therefore not a dispute between an employer and an employee . . . ; it is a dispute between an employer and the state." *Id.* (internal quotation marks and alterations omitted) (quoting *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348, 387-88 (2014)).  But *Hernandez* and *Iskanian* addressed the enforceability of PAGA waivers and did not address the question of potentially duplicative PAGA claims brought by representative plaintiffs, either.

Nor does the legislative history change the Court's conclusion.  Defendants cite statutory analysis from PAGA's authors in which they explain that due to the representative nature of PAGA actions, "[a]n action on behalf of other aggrieved employees would be final as to those plaintiffs, and an employer would not have to be concerned with future suits on the same issue by someone else."  (Dkt. No. 22 at 32.)  But this reasoning does not compel a bar to filing a PAGA claim because of the mere pendency of another PAGA suit on the same issue by someone else.  As the *O'Connor* court noted, it might have engaged in a different analysis had the earlier-filed PAGA claim already been decided, since any judgment would be binding on government agencies and any aggrieved employee not a party to the proceeding, potentially including the plaintiff in the case.  *Id.* at 3 n.1 (citing *Arias v. Super. Ct.*, 46 Cal.4th 969, 985 (2009)).  There is no judgment in Mitchell's PAGA action, however; the mere pendency of that action does not bar Plaintiffs' PAGA claims.

At bottom, Defendants do not cite a single case in which the court held that two PAGA representatives cannot pursue the same PAGA claims at the same time.  The Court declines to be the first to so hold.

### 2.    *Colorado River* Abstention

Defendants also contend that the Court should dismiss or stay the PAGA claims due to the pendency of Mitchell's earlier-filed state court action under the abstention doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  The *Colorado River* doctrine represents a "narrow exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Smith v. Ctr. Ariz. Water Conservation Dist.*, 418

United States District Court
Northern District of California

F.3d 1028, 1033 (9th Cir. 2005) (internal quotation marks and citation omitted).  Abstention in

favor of a parallel state action may be proper due to considerations of "[w]ise judicial

administration giving regard to conservation of judicial resources and comprehensive disposition

of litigation."  *Nakash v. Marciano*, 882 F.2d 1411, 1415 (9th Cir. 1989) (citation omitted).  Such

cases are "rare," "limited," and "exceptional," with "only the clearest of justifications" supporting

abstention.  *R.R. St. & Co. v. Transp. Ins. Co.*, 656 F.3d 966, 977-78 (9th Cir. 2011) (internal

quotation marks and citation omitted).  The Ninth Circuit "generally require[s] a stay rather than a

dismissal."  *Id.* at 979 n.8.  *Colorado River* abstention does not require "exact parallelism"

between the actions; instead, the actions need only be "substantially similar[.]"  *Nakash*, 882 F.2d

at 1416.

In determining whether to stay a case pursuant to *Colorado River*, courts in the Ninth

Circuit consider eight factors:

> (1) which court first assumed jurisdiction over any property at stake;
> (2) the inconvenience of the federal forum; (3) the desire to avoid
> piecemeal litigation; (4) the order in which the forums obtained
> jurisdiction; (5) whether federal law or state law provides the rule of
> decision on the merits; (6) whether the state court proceedings can
> adequately protect the rights of the federal litigants; (7) the desire to
> avoid forum shopping; and (8) whether the state court proceedings
> will resolve all issues before the federal court.

*R.R. St. & Co.*, 656 F.3d at 978-79.  "No one factor is necessarily determinative; a carefully

considered judgment taking into account both the obligation to exercise jurisdiction and the

combination of factors counseling against that exercise is required."  *Colorado River*, 424 U.S. at

818-19.  Put another way, the decision does not "rest on a mechanical checklist, but on a careful

balancing of the important factors as they apply in a given case, with the balance heavily weighted

in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,

460 U.S. 1, 16 (1983).  Thus, courts have denied a *Colorado River* stay even where a majority of

the factors favors abstention.  *See, e.g.*, *Ramirez v. Avalonbay Cmtys., Inc.*, No. C 14-04211 WHA,

2015 WL 4396380, at *2 (N.D. Cal. July 17, 2015).

However, some of the eight factors are "dispositive."  *Intel Corp. v. Advanced Micro

Devices, Inc.*, 12 F.3d 908, 913 (9th Cir. 1993).  Specifically, "substantial doubt as to whether the

United States District Court
Northern District of California

1    state proceedings will resolve the federal action precludes the granting of a stay." *Id.*; *see also*

2    *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002) ("Because there is substantial doubt that a

3    final determination in the custody proceeding will resolve all of the issues in Jeremiah's federal

4    Hague Convention petition, we conclude that the district court abused its discretion in staying

5    proceedings.").  Any such doubt as to resolution of the federal action compels the court to deny a

6    *Colorado River* stay without consideration of the other factors.  *Intel*, 12 F.3d at 913 n.7.  The

7    Ninth Circuit has cautioned that the existence of a substantial doubt as to whether the state

8    proceedings will resolve the federal action generally precludes the granting of a *Colorado River*

9    stay.  *Id.* at 913.  Put another way, "[a] district court may enter a *Colorado River* stay order only if

10   it has 'full confidence' that the parallel state proceeding will end the litigation."  *Id.* (citation

11   omitted).

12          The balance of the *Colorado River* factors weighs against a stay.  The first factor is

13   irrelevant, as there is no property at stake in this case.  *See, e.g.*, *Sandoval v. M1 Auto Collision*

14   *Ctrs.*, 309 F.R.D. 549, 557 (N.D. Cal. 2015) (finding the first element irrelevant in a wage-and-

15   hour class action).  The second factor is neutral, as both forums are convenient to the parties when

16   it comes to resolution of the PAGA claims.

17          As to the third factor, "[p]iecemeal litigation occurs when different tribunals consider the

18   same issue, thereby duplicating efforts and possibly reaching different results."  *R.R. St. & Co.*,

19   656 F.3d at 979 (internal quotation marks and citation omitted).  Notably, "[t]he mere possibility

20   of piecemeal litigation does not constitute an exceptional circumstance . . . .  Instead, the case must

21   raise a special concern about piecemeal litigation, which can be remedied by staying or dismissing

22   the federal proceeding."  *Id.* (internal quotation marks and citations omitted).  Here, the two cases

23   involve the same issues: whether GrubHub drivers are aggrieved by certain wage-and-hour

24   violations and therefore are entitled to PAGA penalties.  But there is one critical difference

25   between the present action and Mitchell's state court action:  the state case alleges only PAGA

26   claims, without the underlying Labor Code violations, though it alleges several more PAGA

27   claims than the instant complaint, while the present action brings separate claims for the

28   underlying Labor Code violations.  (*Compare* Dkt. No. 22 at 5, *with* Dkt. No. 15.)  Defendants

United States District Court
Northern District of California

1    seek to stay only the PAGA claims that have been brought in both courts.

2          "The Ninth Circuit has not yet addressed the propriety of issuing a partial *Colorado River*

3    stay."  *ScripsAmerica, Inc. v. Ironridge Global LLC*, 56 F. Supp. 3d 1121, 1146 (C.D. Cal. 2014).

4    Several district courts have imposed partial stays, permitting particular causes of action to proceed

5    where only some, but not all, of a federal plaintiff's claims are pending in a parallel state action.

6    *See Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 815 (N.D. Cal. 2015) (citations omitted); *see,*

7    *e.g.*, *ScripsAmerica*, 56 F. Supp. 3d at 1147 (staying state law claims while permitting federal

8    securities law claims to proceed); *Krieger v. Atheros Commc'ns, Inc.*, 776 F. Supp. 2d 1053, 1058

9    (N.D. Cal. 2011) (same); *Daugherty v. Oppenheimer & Co.*, No. 06-7725-PJH, 2007 WL

10   1994187, at *5 (N.D. Cal. July 5, 2007) (staying several causes of action as "substantially similar"

11   to state claims where dispute concerned the same core factual issues about proper classification of

12   employees and whether they were denied overtime pay and meal and rest breaks); *In re*

13   *Countrywide Fin. Corp. Deriv. Litig.*, 542 F. Supp. 2d 1160, 1172 (C.D. Cal. 2008) (citing

14   *Daugherty* with approval and staying only "state law merger-related class action claims that are

15   proceeding in nearly identical form in Delaware, under the same laws" and not derivative

16   claims").

17         However, at least one district court has concluded that "the third factor, desire to avoid

18   piecemeal litigation, is not well-served . . . by a partial stay."  *Sciortino*, 108 F. Supp. 3d at 815-

19   16.  Such is the case here, where a partial stay of only the PAGA claims will have little effect on

20   litigation of this action.  The concerns associated with piecemeal litigation, including inconsistent

21   adjudication, will exist regardless of a stay: for example, both courts will need to assess whether

22   drivers were misclassified as independent contractors.  Thus, while resolution of the PAGA claims

23   in the state action in GrubHub's favor would definitively resolve Plaintiffs' PAGA claims and

24   bind the rest of the aggrieved-employee drivers to the judgment, *see Achal v. Gate Gourmet, Inc.*,

25   114 F. Sup. 3d 781, 808 n.11 (N.D. Cal. 2015) (citation omitted), that result is of little import

26   where, as here, the federal court still must resolve the underlying Labor Code violations.  While

27   Defendants urge that resolution of the PAGA claims here will not fully resolve the aggrieved

28   employees' PAGA claims because Mitchell brings more PAGA claims than do Plaintiffs here,

focusing solely on the PAGA claims ignores the full scope of this federal action, which will proceed regardless of the state case. *See Intel*, 12 F.3d at 913. In other words, there would be no wasted effort here if the PAGA claims were to remain part of the case, since they are premised on the same facts as the underlying Labor Code violations, which cannot be stayed. The third factor therefore does not support a stay.

As to the fourth factor, the state court obtained jurisdiction first, which ordinarily weighs in favor of a stay. Some courts have found that this factor weighs little where there are differences between the two actions. *See, e.g.*, *Sandoval*, 309 F.R.D. at 558. The fifth factor supports a stay because the claims at issue arise under state law. But because only this federal court case and not the state court action stands to separately address the underlying Labor Code violations, this factor is ultimately a wash.

Sixth, there is no reason to suggest that the state court proceedings cannot adequately protect the rights of the federal litigants when it comes to the PAGA claims, which supports a stay. As for the seventh factor, Plaintiffs initially filed this action in San Francisco County Superior Court, and Defendants removed to District court. This case is therefore unlike the instances of forum shopping in the cases Defendants cite, which involved cases in which the same plaintiffs abandoned state court cases after lengthy litigation in favor of filing in federal court. Lastly, the eighth factor weighs against a stay: while the state court proceedings stand to resolve the PAGA claims at issue here in their entirety, it will not resolve all issues before the federal court because the underlying Labor Code violations will remain here to be litigated.

Considering all of these factors, this is not an "exceptional" case justifying *Colorado River* abstention. Ultimately, because the separate, predicate Labor Code violations are not in the state action and they will have to be addressed here anyway, there is little reason to dismiss or stay the PAGA claims in this action that are predicated on the same Labor Code violations. While the calculus may change if and when the state court enters judgment on Mitchell's PAGA claims, under the circumstances presented now the Court declines to abstain on the basis of the *Colorado River* doctrine.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

## CONCLUSION

For the reasons discussed above, the Court GRANTS IN PART the motion to dismiss. Count II (the Section 226 claim) is dismissed with prejudice.  Counts III, IV, and VI (the minimum wage, overtime, and PAGA claims) are dismissed with leave to amend.  Count V (the UCL claim) is dismissed with leave to amend to the extent it is predicated on the insufficiently pled Labor Code violations alleged in Counts II, III, and IV.  The Court declines to dismiss or stay the PAGA claims pursuant to *Colorado River* at this time.  Plaintiffs must file any amended complaint within 21 days of this Order.

This Order disposes of Docket No. 21.

**IT IS SO ORDERED.**

Dated: March 22, 2016

_Jacqueline Scott Corley_
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

21