GIBSON, DUNN & CRUTCHER LLP
THEODORE J. BOUTROUS JR., SBN 132099
    tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
    tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
    dmanthripragada@gibsondunn.com
JUSTIN T. GOODWIN, SBN 278721
    jgoodwin@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

Attorneys for Defendants
GRUBHUB HOLDINGS INC. and
GRUBHUB INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW TAN and RAEF LAWSON in their capacities as Private Attorney General Representatives, and RAEF LAWSON, individually and on behalf of all other similarly situated individuals,<br><br>            Plaintiffs,<br><br>      v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>            Defendants. | CASE NO. 3:15-cv-05128-JSC<br><br>**DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION**<br><br><u>Hearing:</u><br>Date:         July 13, 2016<br>Time:        9:00 a.m.<br>Place:       Courtroom F<br>Judge:      Hon. Jacqueline Scott Corley<br><br>ACTION FILED: September 23, 2015 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on July 13, 2016, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom F of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 15th floor, San Francisco, California 94102, Defendants Grubhub Holdings Inc. and Grubhub Inc. (collectively, "Grubhub") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 23, for an order denying class certification on the ground that Plaintiff Raef Lawson fails to meet Rule 23's requirements for class certification.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

Dated:  June 2, 2016                                 Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

By:     */s/ Theane Evangelis*_____
         Theane Evangelis

1

**TABLE OF CONTENTS**

2

Page

3

INTRODUCTION ........................................................................................................... 1

4

STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)] ..................................... 2

5

FACTUAL BACKGROUND ........................................................................................... 2

6

PROCEDURAL HISTORY .............................................................................................. 4

7

LEGAL STANDARD ...................................................................................................... 5

8

ARGUMENT ................................................................................................................... 6

9

10

A.    All But Two Putative Class Members Are Bound by Valid Arbitration Provisions and Class Action Waivers Covering the Claims Asserted Here. ............... 6

11

B.    Lawson Cannot Satisfy Any—Let Alone All—of the Requirements of Rule 23. ........ 9

12

13

1.    Lawson Cannot Satisfy Rule 23(a)'s Numerosity Requirement. ..................... 9

2.    The Arbitration Provisions Destroy Typicality And Render Lawson an Inadequate Representative. ............................................................................. 11

14

15

3.    Lawson Cannot Satisfy the Commonality Requirement of Rule 23(a) or the Predominance or Superiority Requirements of Rule 23(b). ...................... 13

16

CONCLUSION .............................................................................................................. 15

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION – CASE NO. 3:15-cv-05128-JSC

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

*Am. Express Co. v. Italian Colors Rest.,*
   133 S. Ct. 2304 (2013) ...................................................................................................1, 5

5

6

*Amchem Products, Inc. v. Windsor,*
   521 U.S. 591 (1997) ...........................................................................................................14

7

*AT&T Mobility, LLC v. Concepcion,*
   131 S. Ct. 1740 (2011) ..........................................................................................1, 7, 8, 15

8

9

*Avilez v. Pinkerton Gov. Servs., Inc.,*
   596 Fed. Appx. 579 (9th Cir. 2015) .........................................................1, 6, 12, 13, 14

10

11

*Balasanyan v. Nordstrom, Inc.,*
   No. 3:11-CV-2609-JM WMC, 2013 WL 4517821 (S.D. Cal. Aug. 12, 2013)...........10

12

*Baum v. Am.'s Servicing Co.,*
   No. 12-CV-00310-H BLM, 2012 WL 1154479 (S.D. Cal. Apr. 5, 2012) .....................13

13

14

*Champ v. Siegel Trading Co.,*
   No. 89 C 7148, 1990 WL 19984 (N.D. Ill. Feb. 27, 1990) ......................................6, 11

15

16

*Citizens Bank v. Alafabco, Inc.,*
   539 U.S. 52 (2003) ...............................................................................................................8

17

*Cobarruviaz v. Maplebear, Inc.,*
   No. 15-CV-00697-EMC, 2015 WL 6694112 (N.D. Cal. Nov. 3, 2015) .........................9

18

19

*Comcast Corp. v. Behrend,*
   133 S. Ct. 1426 (2013) ..............................................................................................5, 6, 9, 14

20

21

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez,*
   431 U.S. 395 (1977) ...........................................................................................................12

22

*Ellis v. Costco Wholesale Corp.,*
   657 F.3d 970 (9th Cir. 2011) .............................................................................................12

23

24

*Foster v. City of Oakland,*
   No. C 05-03110 MHP, 2007 WL 219796 (N.D. Cal. Jan. 29, 2007)...........................10

25

26

*Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n,*
   446 U.S. 318 (1980) .............................................................................................................9

27

*Gen. Tel. Co. of the Sw. v. Falcon,*
   457 U.S. 147 (1982) .............................................................................................................9

28

1

**TABLE OF AUTHORITIES**
(continued)

2

Page(s)

3

*Gilmer v. Interstate/Johnson Lane Corp.,*
    500 U.S. 20 (1991) ............................................................................................................7

4

5

*Hanlon v. Chrysler,*
    150 F.3d 1011 (9th Cir. 1998) .................................................................................11, 12

6

*Harik v. California Teachers Ass'n,*
    326 F.3d 1042 (9th Cir. 2003) ..........................................................................................9

7

8

*Iskanian v. CLS Transportation, LLC,*
    59 Cal. 4th 348 (2014) ......................................................................................................8

9

*Johnmohammadi v. Bloomingdales, Inc.,*
    755 F.3d 1072 (9th Cir. 2014) ..........................................................................................8

10

11

*King v. Capital One Bank (USA), N.A.,*
    No. 3:11-cv-00068 2012 WL 5570624 (W.D. Va. Nov. 15, 2012) ...................10, 11, 13

12

13

*Kirkpatrick v. J.C. Bradford & Co.,*
    827 F.2d 718 (11th Cir. 1987) ........................................................................................10

14

*Loewen v. Lyft, Inc.,*
    129 F.Supp.3d 945 (N.D. Cal. 2015) ...............................................................................9

15

16

*Mortensen v. Bresnan Comm., LLC,*
    722 F.3d 1151 (9th Cir. 2013) ..........................................................................................7

17

18

*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
    460 U.S. 1 (1983) .............................................................................................................7

19

*Pablo v. Service Master Global Holdings, Inc.,*
    No. C 08-03894 SI, 2011 WL 3476473 (N.D. Cal. Aug. 9, 2011) ......................6, 11, 15

20

21

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC,*
    55 Cal. 4th 223 (2012) ......................................................................................................9

22

23

*Quinlan v. Macy's Corporate Servs.,*
    No. 1200737, 2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) ......................................12

24

*Rent-A-Ctr., W, Inc. v. Jackson,*
    561 U.S. 63 (2010) ...........................................................................................................7

25

26

*Renton v. Kaiser Found. Health Plan, Inc.,*
    No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001) ..........................13

27

28

*Smith v. Bayer Corp.,*
    131 S. Ct. 2368 (2011) .....................................................................................................7

# TABLE OF AUTHORITIES
(continued)

Page(s)

*St. Vincent Med. Ctr v. Mega Life & Health Ins. Co.,*
No. 2:12-cv-02694-SVW-CW, 2012 WL 3238510 (C.D. Cal. July 24, 2012)..............................13

*In re Titanium Dioxide Antitrust Litig.,*
962 F. Supp. 2d 861 ..............................................................................................6, 13, 14

*Tschudy v. JC Penney Corp.,*
No. 3:11-cv-01011-JM-KSC, 2015 WL 8484530 (S.D. Cal. Dec. 9, 2015)...................................13

*Vinole v. Countrywide Home Loans, Inc.,*
571 F.3d 935 (9th Cir. 2009)..........................................................................................1, 2, 6

*Wal-Mart Stores, Inc. v. Dukes,*
131 S. Ct. 2541 (2011) ..........................................................................................1, 5, 9, 11, 14

*Zieger v. Advance Am. Cash Advance Ctrs., Inc.,*
No. 13-1614-GMS, 2014 WL 7388365 (D. Del. Dec. 29, 2014) .........................................10, 11

## Statutes

9 U.S.C. § 2 ..........................................................................................................................7

Cal. Lab. Code § 2698 *et seq.* ...............................................................................................5

## Rules

Fed. R. Civ. P. 23(a)(1) ...........................................................................................................9

Fed. R. Civ. P. 23(a)(2) .........................................................................................................14

Fed. R. Civ. P. 23(a)(3)–(4) ...................................................................................................11

Fed. R. Civ. P. 23(b)(3).........................................................................................................14

Fed. R. Civ. P. 23(c)(1)(A) ...................................................................................................1, 6

Gibson, Dunn &
Crutcher LLP

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### INTRODUCTION

Plaintiff Raef Lawson's class allegations necessarily fail because the claims of all but *two* putative class members are subject to binding arbitration agreements with class action waivers. These agreements require Independent Delivery Partners to resolve all disputes with Grubhub exclusively through individual arbitration, and expressly state that they cover all claims arising out of the Independent Delivery Partners' independent contractor classification.  Put another way, Plaintiff Lawson seeks to represent a class of *two*.  All other putative class members must arbitrate any claims against Grubhub on an individual basis, consistent with the Federal Arbitration Act's ("FAA") "principal purpose" of "ensur[ing] that private arbitration agreements are enforced according to their terms."  *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011).

Under these circumstances, Lawson cannot possibly meet Rule 23's "stringent requirements for class certification."  *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).  As an initial matter, Lawson cannot satisfy Rule 23(a)'s numerosity requirement because only two persons could potentially be included in the putative class.  And as one of only two putative class members who have the right to sue in a judicial forum, Lawson is an atypical and inadequate class representative.  *See Avilez v. Pinkerton Gov. Servs., Inc.*, 596 Fed. Appx. 579, 579 (9th Cir. 2015); *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members.") (citation omitted).  Moreover, Lawson cannot satisfy Rule 23(a)'s commonality requirement, let alone Rule 23(b)'s predominance and superiority requirements.  In fact, given the overwhelming number of Independent Delivery Partners who have agreed to arbitration, a class proceeding is an *inferior* vehicle through which to litigate this case.

Because Lawson cannot possibly satisfy Rule 23, and because "[t]he overarching focus remains whether trial by class representation would further the goals of efficiency and judicial economy," the Court should resolve this issue in Grubhub's favor at this "early practicable time." *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir. 2009); *see also* Fed. R. Civ. P.

23(c)(1)(A).  Defendants respectfully request that the Court exercise its "broad discretion to control the class certification process," *Vinole*, 571 F.3d at 942, and deny class certification in this action.

**STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)]**

The following issues are raised by this Motion:

1.   Whether the Court should deny class certification on the ground that all but two of the Independent Delivery Partners in the putative class are bound by arbitration agreements with class action waivers, and therefore cannot be members of a class action.[1]

**FACTUAL BACKGROUND**

Grubhub is an online and mobile food ordering company that connects diners with local takeout and delivery restaurants through its website and associated mobile applications (collectively, the "Online Platform").  Chia Decl. ¶ 3.  Diners can place food orders with these takeout and delivery restaurants through Grubhub's Online Platform.  *Id.* ¶ 4.  Independent Delivery Partners, such as Plaintiffs Tan and Lawson, contract with Grubhub to use its Online Platform to deliver food orders from the restaurants to the diners at their homes and businesses in exchange for service fees.  *Id.* ¶ 4.  Starting in or around June 2014, diners could use the Online Platform to arrange for delivery of food orders from restaurants by Independent Delivery Partners.  *Id.* ¶ 3.

To access Grubhub's Online Platform, Independent Delivery Partners enter into Delivery Service Provider Agreements with Grubhub.  Chia Decl. ¶ 5.  After a driver expresses interest in providing delivery services using Grubhub's Online Platform, Grubhub sends the driver a Delivery Service Provider Agreement.  *Id.* ¶ 6.  These Delivery Service Provider Agreements govern the independent contractor relationship between Grubhub and Independent Delivery Partners, establishing the terms applicable to all delivery services arranged through the Online Platform and performed by the Independent Delivery Partners.  *Id.* ¶ 9.

Each of the Delivery Service Provider Agreements entered into by Independent Delivery Partners located in California contain arbitration agreements requiring both Grubhub and Independent Delivery Providers to arbitrate any covered claims they may have against one another on an

---

[1]   Grubhub expressly reserves the right to contest class certification on any and all other grounds.

DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION – CASE NO. 3:15-cv-05128-JSC

Gibson, Dunn &
Crutcher LLP

individual basis only, and not on a class or collective basis (the "Arbitration Provisions").[2]  Chia

Decl. ¶ 11, Exh. 1 § 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.  The

Arbitration Provisions require the parties "to resolve any and all disputes between or among them

exclusively through final and binding arbitration."[3]  *Id.*  Further, the Arbitration Provisions apply to

"any and all claims," including those arising out of or relating to the Independent Delivery Partner's

independent contractor classification, the Independent Delivery Partner's provision of delivery

services, and any other aspects of the relationship between Grubhub and the Independent Delivery

Partner.  *Id.*  These provisions also include a class action waiver, whereby the parties "mutually agree

that … they[4] waive their right to have any dispute or claim … heard or arbitrated as a class action."

*Id.*  The Arbitration Provisions also state that, "[u]nless applicable law provides otherwise, … the

Parties agree that GrubHub will[5] pay all of the Arbitrator's fees and costs."  Chia Decl. ¶ 12 Exh. 1

§ 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.

    Beginning in July 2015, all Delivery Service Provider Agreements used by Grubhub in

California have contained opt-out provisions that afford Independent Delivery Partners the right to

opt out of arbitration entirely.  Chia Decl. ¶ 14, Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.  Independent

Delivery Partners can opt out of the Arbitration Provisions by sending written notice, including via

email, to Grubhub of their election to opt out within 30 days of their acceptance of their Delivery

Service Provider Agreements.  *Id.*  The opt out provision further provides that "[s]hould [the]

Delivery Partner[6] not opt out of this Arbitration Provision within 30 days of Delivery Partner's

---

[2]  Since launching its Online Platform in California in June 2014, Grubhub has used six different versions of the Delivery Service Provider Agreement when contracting with Independent Delivery Partners in that state.  Chia Decl. ¶ 8, Exhs. 1–6.  The Arbitration Provisions appearing in these different versions of the Delivery Service Provider Agreement are substantially similar to one another.

[3]  Exhibit 1 uses slightly different language, stating that the Arbitration Provisions apply to "any justiciable disputes" between the parties.

[4]  Exhibit 1 uses "both" instead of "they."

[5]  Exhibits 1–4 use "shall" instead of "will."

[6]  When referring to the Independent Delivery Partner, Exhibit 4 uses "PDSP and DSP" and Exhibits 5–6 use "Delivery Partner."

acceptance of this Agreement, such acceptance of this Agreement will[7] constitute mutual acceptance of the terms of this Arbitration Provision" by the Independent Delivery Partner and Grubhub.  *Id.*

Grubhub tracks and maintains records of the written notices that it receives from Independent Delivery Partners electing to opt out of the Arbitration Provisions contained in their Delivery Service Provider Agreements.  Chia Decl. ¶ 15.  The Independent Delivery Partner's election to opt out is also noted in her Salesforce profile.  *Id.* ¶ 16.  The original opt-out notice sent by the Independent Delivery Partner is also attached to his or her Salesforce profile, which must be manually reviewed.  *Id.* ¶ 16.

Plaintiff Lawson entered into a Delivery Service Provider Agreement with Grubhub on August 28, 2015 (the "August 28, 2015 Agreement").  Chia Decl. ¶ 19, Exh. 10.  Lawson entered into another Delivery Service Provider Agreement with Grubhub on March 11, 2016 (the "March 11, 2016 Agreement").  *Id.* ¶ 19, Exh. 12.  On August 31, 2015 and March 12, 2016, Lawson, unlike the vast majority of putative class members, opted out of arbitration by sending emails to Grubhub notifying Grubhub of his election to opt out.  *Id.* ¶¶ 21–22, 24.

Since June 2014, thousands of Independent Delivery Partners in California have contracted with Grubhub to use its Online Platform to deliver food orders to diners.  Chia Decl. ¶ 25.  Lawson is one of only *two* of these thousands of Independent Delivery Partners who have opted out of the Arbitration Provisions in their Delivery Service Provider Agreements.  *Id.* ¶¶ 21–22, 24.

## PROCEDURAL HISTORY

In the Second Amended Complaint, Plaintiff Lawson alleges the following putative class claims:  (1) failure to reimburse for business expenses in violation of California Labor Code Section 2802; (2) unlawful business practices under California Business and Professions Code § 17200, et seq. based on violations of California Labor Code Sections 2802, 1197, 1194, 1198, 510, and 554; (3) failure to pay minimum wage in violation of California Labor Code Sections 1194 and 1197; and (4) failure to pay overtime wages in violation of California Labor Code Sections 1194,

---

[7]  Exhibit 4 Agreement uses "shall" instead of "will."

DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION – CASE NO. 3:15-cv-05128-JSC

1    1198, and 554.  SAC (Counts I through IV).[8]  Plaintiff Lawson seeks to represent a putative class of

2    "all Grubhub drivers who have worked in California."  SAC ¶ 24.

3            In the Joint Case Management Statement filed on April 28, 2016, Grubhub informed the

4    Court that it intended to file an "early" motion to deny class certification "on the ground that Plaintiff

5    Lawson cannot satisfy the requirements for class certification under Federal Rule of Civil Procedure

6    23 because virtually all of the other Independent Delivery Partners . . . have signed arbitration

7    agreements with class action waivers."  Dkt. 45 at 9–10.  In response, Plaintiffs indicated they were

8    "amenable" to an early motion to deny class certification on this basis.  *Id.* at 9.  In light of the

9    parties' agreement that this issue should be resolved early in the litigation, the Court ordered

10   Grubhub to file a motion to deny class certification by June 2, 2016.  *See* Dkt. 49.

11                                           **LEGAL STANDARD**

12           The class action "is an exception to the usual rule that litigation is conducted by and on behalf

13   of the individual named parties only."  *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013)

14   (citations omitted).  Those requirements are "stringent" and "exclude most claims."  *Am. Express Co.*

15   *v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013).

16           "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class

17   whose claims they wish to litigate."  *Dukes*, 131 S. Ct. at 2550.  "[A] class representative must be

18   part of the class and possess the same interest and suffer the same injury as the class members."  *Id.*

19   at 2550 (quotation marks and citation omitted).  Rule 23(a)'s four threshold "requirements—

20   numerosity, commonality, typicality, and adequate representation—effectively limit the class claims

21   to those fairly encompassed by the named plaintiff's claims."  *Id.* at 2550 (quotation marks and

22   citation omitted).  In addition, a party seeking certification must also satisfy at least one of Rule

23   23(b)'s provisions.  *Comcast*, 133 S. Ct. at 1428.  A party seeking to maintain a class action under

24   Rule 23(b)(3) must also meet the heightened requirement of demonstrating that common questions

25

26   _____

27   [8]  Plaintiffs also seek penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code
     Section 2698 *et seq.*, on behalf of themselves and "all other current and former aggrieved

28   employees of GrubHub who have worked in California."  SAC (Count V).

Gibson, Dunn &
Crutcher LLP

1    predominate over individual ones, and that a class action is the superior method of adjudication.  *Id.*

2    at 1432.

3         A plaintiff cannot satisfy Rule 23's requirements in the face of arbitration agreements with

4    class action waivers that bind the absent putative class members he seeks to represent.  Such

5    provisions render a plaintiff atypical and an inadequate representative of the proposed class.  *Avilez v.*

6    *Pinkerton Gov. Servs., Inc.*, 596 Fed. Appx. 579 (9th Cir. 2015).  And where only a few putative class

7    members are not subject to an arbitration provision, the proposed class cannot satisfy Rule 23(a)'s

8    numerosity requirement.  *See, e.g.*, *Champ v. Siegel Trading Co.*, No. 89 C 7148, 1990 WL 19984, at

9    *7 (N.D. Ill. Feb. 27, 1990) ("[A]ny class would have to be limited to persons who did not agree to

10   arbitration.  An adequate showing of numerosity for such a class does not appear.").  Arbitration

11   agreements with class action waivers also destroy commonality and preclude findings of

12   predominance and superiority.  *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d at

13   861–63; *Pablo v. Service Master Global Holdings, Inc.*, No. C 08-03894 SI, 2011 WL 3476473, at *3

14   (N.D. Cal. Aug. 9, 2011).

15        Rule 23(c)(1)(A) requires that the class certification question be resolved "[a]t an early

16   practicable time."  Fed. R. Civ. P. 23(c)(1)(A).  A defendant may bring a "preemptive" motion to

17   deny class certification if it is apparent that the plaintiff cannot meet Rule 23's requirements.  *See,*

18   *e.g.*, *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 939–40 (9th Cir. 2009) ("Nothing in the

19   plain language of Rule 23(c)(1)(A) either vests plaintiffs with the exclusive right to put the class

20   certification issue before the district court or prohibits a defendant from seeking early resolution of

21   the class certification question.").

22                                    **ARGUMENT**

23   **A.    All But Two Putative Class Members Are Bound by Valid Arbitration Provisions and**
         **Class Action Waivers Covering the Claims Asserted Here.**
24
          All members of the proposed class, except Plaintiff Lawson and *one* other Independent
25
     Delivery Partner, are subject to valid arbitration agreements and class action waivers that cover all of
26

27

28

1    Lawson's class claims.  Accordingly, these putative class members must pursue their claims in

2    arbitration on a bilateral basis, rather than as members of Lawson's proposed class.[9]

3            The Federal Arbitration Act ("FAA") declares a "liberal federal policy" favoring the

4    enforcement of arbitration agreements.  *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745

5    (2011).  The FAA provides that "[a] written provision in . . . a contract evidencing a transaction

6    involving commerce to settle by arbitration a controversy thereafter arising out of such contract or

7    transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or

8    in equity for the revocation of any contract."  9 U.S.C. § 2.  As the Supreme Court has explained,

9    "the informality of arbitral proceedings is itself desirable, reducing the cost and increasing the speed

10   of dispute resolution."  *Concepcion*, 131 S. Ct. at 1749.  Accordingly, the FAA is designed "to move

11   the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."

12   *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983); *see also Gilmer v.*

13   *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991).  The FAA does not simply place arbitration

14   agreements on equal footing with other contracts; rather, it "*give[s] preference (instead of mere*

15   *equality) to arbitration provisions*."  *Mortensen v. Bresnan Comm., LLC*, 722 F.3d 1151, 1160 (9th

16   Cir. 2013) (emphasis added).

17           The Arbitration Provisions at issue in this case state that they are "governed by the Federal

18   Arbitration Act."  Chia Decl. Exh. 1 § 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6

19   § 12.  Moreover, the Delivery Service Provider Agreements containing the Arbitration Provisions

20   affect interstate commerce because food delivery using the Grubhub Online Platform is available in

21   dozens of cities, *see* Chia Decl. ¶ 3.  *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003).

22   _____

23   [9]  Grubhub has not yet filed a motion to compel arbitration against the putative absent class
     members who are bound by Grubhub's Arbitration Provision because those individuals are not, at

24   this time, parties to this action.  *See, e.g., Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2379 (2011)
     (rejecting as "sure[] erro[r]" the notion that an unnamed class member "is a party to the class-

25   action litigation *before the class is certified*").  If this Court ultimately certifies a class containing
     individuals bound by Grubhub's arbitration agreement, Grubhub reserves the right to move to

26   compel arbitration against those individuals.  Further, Grubhub reserves the right to enforce any
     provision in the arbitration agreements delegating to an arbitrator the authority to resolve disputes

27   regarding the validity or enforceability of the Arbitration Provision.  *See Rent-A-Ctr., W, Inc. v.*
     *Jackson*, 561 U.S. 63, 72 (2010) (delegation of authority to arbitrator to determine the validity of

28   arbitration agreement is enforceable under FAA).

There can also be no reasonable dispute that Plaintiff Lawson's class claims fall within the scope of the valid and binding Arbitration Provisions of the Delivery Service Provider Agreements. These provisions expressly state that they apply to all disputes between Independent Delivery Partners and Grubhub.  Chia Decl. ¶ 11 Exh. 1 § 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.  Moreover, all of Lawson's claims are premised on his allegation that "GrubHub has misclassified Plaintiffs and other similarly situated delivery drivers as independent contractors." SAC ¶ 2.  The Arbitration Provisions expressly provide that the parties must arbitrate "any and all claims" arising out of or relating to the Independent Delivery Partner's independent contractor classification and relationship with Grubhub.  Chia Decl. ¶ 11 Exh. 1 § 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.

Furthermore, all putative class members (except Lawson and one other California Independent Delivery Partner) are precluded from bringing their claims on a class basis in any forum because of the class action waivers contained within the Arbitration Provisions.  The Arbitration Provisions provide that the parties "mutually agree that … [they] waive their right to have any dispute or claim … heard or arbitrated as a class action."  Chia Decl. Exh. 1 § 14; Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12.  It is now well-settled that arbitration agreements containing class action waivers are valid and enforceable.  *See, e.g.*, *Concepcion*, 131 S. Ct. at 1748 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."); *Johnmohammadi v. Bloomingdales, Inc.*, 755 F.3d 1072, 1072, 1074 (9th Cir. 2014) ("Johnmohammadi can't argue that the class-action waiver is unenforceable under California law.") (citing *Concepcion*, 131 S. Ct. at 1750–51); *accord Iskanian v. CLS Transportation, LLC*, 59 Cal. 4th 348, 359–60 (2014) (enforcing class action waiver and finding California's "refusal to enforce such a waiver on grounds of public policy or unconscionability is preempted by the FAA").  Indeed, numerous courts have recently upheld similar arbitration agreements, even without the additional protections that Grubhub's fair and balanced Arbitration Provisions provide.  *See, e.g.*, *Loewen v. Lyft, Inc.*, 129 F.Supp.3d 945 (N.D. Cal. 2015) (enforcing arbitration agreement with class action waiver even without provision stating that company would pay arbitrator's fees and costs); *Cobarruviaz v. Maplebear, Inc.*, No. 15-CV-

Gibson, Dunn &
Crutcher LLP

00697-EMC, 2015 WL 6694112, at *8 (N.D. Cal. Nov. 3, 2015) (enforcing arbitration agreement with class action waiver after severing fee-splitting provision); *see also Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246–47 (2012) (arbitration agreement not unconscionable unless it is "so one-sided as to 'shock the conscience' . . . . Both procedural unconscionability and substantive unconscionability must be shown.").

Accordingly, putative class members who did not opt out of arbitration cannot adjudicate their claims on a class basis in any forum.

**B.      Lawson Cannot Satisfy Any—Let Alone All—of the Requirements of Rule 23.**

In light of the fact that all but *two* of the putative absent class members in this action have agreed to arbitrate their claims with Grubhub on a bilateral basis, it is clear as matter of law that Lawson cannot satisfy *any* of the requirements of Rule 23. *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982).  Accordingly, Lawson cannot establish that class treatment is appropriate. *See Comcast*, 133 S. Ct. at 1432; *Dukes*, 131 S. Ct. at 2551.

**1.      Lawson Cannot Satisfy Rule 23(a)'s Numerosity Requirement.**

As almost all of the Independent Delivery Partners must arbitrate their claims on an individual, non-class basis, Lawson's proposed class of *two* members undeniably fails to satisfy Rule 23's numerosity requirement.  "[T]he class [must be] so numerous that joinder of all members is impracticable." *Dukes*, 131 S. Ct. at 2548 (citing Fed. R. Civ. P. 23(a)(1)).  Courts have denied class treatment for lack of numerosity even for proposed classes far greater in number.  *See, e.g.*, *Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n*, 446 U.S. 318, 330 (1980) (noting that a class of fifteen "would be too small to meet the numerosity requirement" after reviewing district court decisions denying certification on numerosity grounds); *Harik v. California Teachers Ass'n*, 326 F.3d 1042, 1051 (9th Cir. 2003) (vacating certification of classes with "seven, nine, and 10 members . . . on numerosity grounds"); *Foster v. City of Oakland*, No. C 05-03110 MHP, 2007 WL 219796, at *6 (N.D. Cal. Jan. 29, 2007) (denying certification where Plaintiffs "produced no evidence that the size of the potential class is larger than fifteen members").

Virtually all of the Independent Delivery Partners must be excluded from any class definition in this case because they are subject to the Arbitration Provisions, requiring them to arbitrate their

claims individually. *See, e.g.*, *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 n.5 (11th Cir. 1987) (noting that putative class members whose claims are subject to valid arbitration agreements "could not be considered members of the class"); *Balasanyan v. Nordstrom, Inc.*, No. 3:11-CV-2609-JM WMC, 2013 WL 4517821, at *23 (S.D. Cal. Aug. 12, 2013) (holding that putative class members who signed arbitration agreements were properly excluded from the class).

Courts regularly consider such evidence—i.e., the existence of an enforceable arbitration agreement—when evaluating numerosity under Rule 23(a). For instance, in *King v. Capital One Bank (USA), N.A.*, No. 3:11-cv-00068, 2012 WL 5570624 (W.D. Va. Nov. 15, 2012), the court granted the defendant's motion to strike the class allegations from the plaintiff's complaint because most of the putative class members had signed an arbitration clause and the plaintiff had not. The court emphasized that "allowing Plaintiff to represent individuals bound to pursue their claims in arbitration would render the arbitration clauses totally useless, in contravention of the FAA," and reasoned that the class could only consist of those who "like Plaintiff, did not sign the Client Agreement containing the arbitration clause." *Id.* at *14. But after reviewing evidence about the defendant's "standard procedures for signing up clients," the court concluded that "[t]here are almost certainly not enough [individuals] to satisfy Rule 23(a)(1)'s numerosity requirement," as "it is exceedingly implausible that there are very many, if any, other individuals who [became clients] without signing either a paper or an electronic copy of the Client Agreement containing the arbitration clause." *Id.*

Similarly, in *Zieger v. Advance Am. Cash Advance Ctrs., Inc.*, No. 13-1614-GMS, 2014 WL 7388365, at *7 (D. Del. Dec. 29, 2014), the court struck the plaintiff's class allegations when the defendant submitted evidence that the plaintiff was the only individual to opt out of the dispute resolution clause that was binding on other putative class members, finding that a "class of one" could never satisfy the numerosity requirement. *Id.*; *see also Champ v. Siegel Trading Co.*, No. 89 C 7148, 1990 WL 19984, at *7 (N.D. Ill. Feb. 27, 1990) ("[A]ny class would have to be limited to persons who did not agree to arbitration. An adequate showing of numerosity for such a class does not appear."); *Pablo v. Service Master Global Holdings, Inc.*, No. C 08-03894 SI, 2011 WL 3476473,

at *2 (N.D. Cal. Aug. 9, 2011) ("The arbitration agreements raise concerns about whether plaintiffs will be able to satisfy Rule 23(a)'s numerosity requirement.").

Here, Grubhub has presented incontrovertible evidence that there are only *two* putative class members who opted out of the Arbitration Provisions in their Delivery Service Provider Agreements. An Independent Delivery Partner can gain access to Grubhub's Online Platform only if she accepts the Delivery Service Provider Agreement. *See* Chia Decl. ¶ 5. Thus, it is "exceedingly implausible" that there are any Independent Delivery Partners who used the Grubhub platform without signing a Delivery Service Provider Agreement. *King*, 2012 WL 5570624, at *14. Moreover, Grubhub maintains accurate records of any opt-out notices that it receives from Independent Delivery Partners. A manual review of these records makes clear that only *two* Independent Delivery Partners in California opted out of the Arbitration Provisions. *See* Chia Decl ¶¶ 15–16, 21–24. Every other Independent Delivery Partner cannot be a member of this proposed class. If a "class of one" will not satisfy the numerosity requirement, neither will Lawson's class of two. *Zieger*, 2014 WL 7388365, at *7. It follows that a class cannot be certified in this case.

**2.  The Arbitration Provisions Destroy Typicality And Render Lawson an Inadequate Representative.**

To justify a departure from the "usual rule that litigation is conducted by and on behalf of the individual named parties only," *Dukes*, 131 S. Ct. at 2550, a plaintiff must show, among other things, that the "claims or defenses of the representative parties are typical of the claims or defenses of the class" and "the representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(3)–(4). A class representative's claims are typical only if they are "reasonably co-extensive" with those of the class members they seek to represent, *Hanlon v. Chrysler*, 150 F.3d 1011, 1020 (9th Cir. 1998), and the representative party must "'possess the same interest and suffer the same injury' as the class members." *Dukes*, 131 S. Ct. at 2550. To be "adequate" for purposes of Rule 23(a)(4), a class representative (1) must not have any conflicts of interest with the proposed class; and (2) must prosecute the action vigorously on behalf of the class. *Hanlon*, 150 F.3d at 1020; *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class

members.").  "Adequate representation depends on, among other factors, . . . a sharing of interest between representatives and absentees."  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  Here, Plaintiff cannot satisfy *any* of these necessary requirements in the face of the Arbitration Provisions.

In *Avilez v. Pinkerton Gov. Servs., Inc.*, 596 Fed. Appx. 579 (9th Cir. 2015), the Ninth Circuit held that Rule 23(a)'s typicality and adequacy requirements are *not* satisfied where a named plaintiff who is not subject to a class action waiver seeks to represent putative class members who have waived their right to participate in a class action.  There, the named plaintiff signed an arbitration agreement that did not contain a class action waiver, yet members of the class she sought to represent accepted agreements containing class action waivers.  *Id.* at 579.  The district court—ignoring the intractable difficulties arising from this situation—certified a class, and the Ninth Circuit reversed for lack of typicality and adequacy because the named plaintiff could not represent class members who had signed arbitration agreements containing class action waivers.  *Id.* ("[P]laintiff is not an adequate representative … and her claims lack typicality … [because] those who signed [class action] waivers have potential defenses that [plaintiff] would be unable to argue on their behalf.").

Applying this reasoning, district courts throughout the Ninth Circuit and elsewhere regularly deny class treatment for lack of adequacy and typicality where, as here, putative class members have accepted arbitration agreements with class action waivers that the named plaintiff has not accepted.  For instance, in *Quinlan v. Macy's Corporate Servs.*, No. 1200737, 2013 WL 11091572 (C.D. Cal. Aug. 22, 2013), the court declined to certify a class because the plaintiff was not subject to an arbitration agreement, whereas more than 90% of the purported class members were "enrolled in a binding arbitration program."  *Id.* at *3.  The court determined that this difference alone "renders [the plaintiff] atypical of the vast majority of the purported class members."  *Id.*

Similarly, in *Renton v. Kaiser Found. Health Plan, Inc.*, No. C00-5370RJB, 2001 WL 1218773 (W.D. Wash. Sept. 24, 2001), the Court denied the plaintiff's motion for certification of a class of individuals who had participated in health plans offered by the defendant, finding that the named plaintiff was not typical of the proposed class members.  *Id.* at *7.  The Court reasoned that "the named plaintiff  . . . stands in a different position legally than many class members" because

"[u]nlike many class members, [the plaintiff] was not subject to an arbitration agreement." *Id.* Numerous other district courts have reached similar conclusions. *See, e.g.*, *Tschudy v. JC Penney Corp.*, No. 3:11-cv-01011-JM-KSC, 2015 WL 8484530, at *3 (S.D. Cal. Dec. 9, 2015) (named plaintiffs not bound by the same arbitration agreements as putative class members "fail[ed] to satisfy the typicality and adequacy requirements of [Rule 23]"); *King v. Capital One Bank (USA), N.A.*, No. 3:11-cv-00068, 2012 WL 5570624, at *14 (W.D. Va. Nov. 15, 2012) (plaintiff not subject to arbitration "could not fairly and adequately represent in this Court the interests of individuals who are bound to pursue their claims in arbitration").

Here, Lawson is one of only *two* Independent Delivery Partners to opt out of the Arbitration Provisions in the Delivery Service Provider Agreements, and therefore "stands in a different position legally than [most] class members." *Renton*, 2001 WL 1218773, at *7; *see also In re Titanium Dioxide Antitrust Litigation*, 962 F. Supp. 2d at 861 (same). Lawson has no legal interest in the application of such provisions and no standing to challenge their enforceability. *See Baum v. Am.'s Servicing Co.*, No. 12-CV-00310-H BLM, 2012 WL 1154479, at *4 (S.D. Cal. Apr. 5, 2012) ("[A] plaintiff lacks standing to challenge a contract if he is not a party to the contract[.]"); *St. Vincent Med. Ctr v. Mega Life & Health Ins. Co.*, No. 2:12-cv-02694-SVW-CW, 2012 WL 3238510, at *3 (C.D. Cal. July 24, 2012) (plaintiff, as a stranger to the contract at issue, had no standing to challenge its enforceability). Because Lawson is not subject to the Arbitration Provisions, the absent putative class members who are will "have potential defenses [to such enforcement] that [Lawson] would be unable to argue on their behalf." *Avilez*, 596 F. App'x at 579.

In sum, the divergence in the interests and positions of Lawson and the putative class members destroys typicality, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d at 861–62, and renders Lawson an inadequate representative and his claims atypical of those of the proposed class. *Avilez*, 596 F. App'x at 579.

### 3.   Lawson Cannot Satisfy the Commonality Requirement of Rule 23(a) or the Predominance or Superiority Requirements of Rule 23(b).

The Arbitration Provisions also doom commonality and predominance. Rule 23(a) requires "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Furthermore, Rule 23(b)(3)

requires that "the Court find[] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).[10]  Notably, "Rule 23(b)(3)'s predominance criterion is *even more demanding* than Rule 23(a)." *Comcast*, 133 S. Ct. at 1432 (emphasis added).  The Court has a duty to take a "close look" at whether that "vital prescription" is satisfied. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (quotation marks and citation omitted).

The Arbitration Provisions destroy any commonality among putative class members.  "What matters . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 131 S. Ct. at 2551 (quotation marks and citation omitted).  Here, there is no possibility of a class proceeding generating common answers because the Arbitration Provisions preclude the vast majority of class members from having their claims litigated in this action. *See In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 861 (D. Md. 2013) ("Where certain members of a class are subject to contracts containing arbitration clauses, while other class members are not, those differences in contractual relationships destroy[] the commonality and typicality of the class.").

Moreover, Lawson cannot possibly make the requisite showing of predominance and superiority under Rule 23(b)(3).  Common questions do not predominate over individual questions because Lawson is not bound by an arbitration agreement that applies to nearly all of the proposed class members. *See, e.g.*, *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d at 861–63 (granting motion to amend class definition to exclude putative class members with contracts including an arbitration provision because the class as defined does not meet the commonality, typicality, and predominance requirements of Rule 23).

Likewise, because almost all Independent Delivery Partners are subject to arbitration, a class proceeding is actually an *inferior* vehicle through which to litigate this action. *See Pablo*, 2011 WL 3476473, at *2 ("The arbitration agreements . . . support the Court's finding that a class action is not

---

[10]  Lawson alleges a class under Rule 23(b)(3).  SAC ¶¶ 31–32.

DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION – CASE NO. 3:15-cv-05128-JSC

Gibson, Dunn & Crutcher LLP

1    the superior method of adjudication in this case.").  Indeed, in the event of arbitration, the Arbitration

2    Provisions provide that Grubhub will pay the arbitrator's fees and costs, *see* Chia Decl. Exh. 1 § 14;

3    Exh. 2 § 14; Exh. 3 § 14; Exh. 4 § 14; Exh. 5 § 12; Exh. 6 § 12, confirming that arbitration is a far

4    more efficient and superior vehicle for adjudicating any claims of the absent Independent Delivery

5    Partners.  *See Concepcion*, 131 S. Ct. at 1749, 1751 (expressing a federal preference for the "greater

6    efficiency and speed" of arbitration and explaining that "the informality of arbitral proceedings is

7    itself desirable, reducing the cost and increasing the speed of dispute resolution").  This failure to

8    satisfy Rule 23(b)(3) also warrants an order denying class certification.

9                                                **CONCLUSION**

10           Because virtually all absent putative class members who Lawson seeks to represent are bound

11   by arbitration agreements containing class action waivers, he cannot, as a matter of law, satisfy any of

12   Rule 23's requirements.  Accordingly, and for all of the foregoing reasons, the Court should deny

13   class certification of his claims.

14

15

16   Dated: June 2, 2016                          Respectfully submitted,

17                                                GIBSON, DUNN & CRUTCHER LLP

18

19                                               By:      */s/ Theane Evangelis*
                                                          Theane Evangelis

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR AN ORDER DENYING CLASS CERTIFICATION – CASE NO. 3:15-cv-05128-JSC

1

## **ECF ATTESTATION**

2

   I, Dhananjay S. Manthripragada, hereby attest that concurrence in the filing of this document has been obtained from Theane Evangelis.

3

4

Dated: June 2, 2016                    By:    */s/ Dhananjay S. Manthripragada*

5                                                 Dhananjay S. Manthripragada

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28