UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAEF LAWSON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>GRUBHUB, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-05128-JSC<br><br>**ORDER RE: DISCOVERY DISPUTE**<br>Re: Dkt. No. 88 |

Plaintiff Raef Lawson sues Grub Hub Holdings Inc. and GrubHub Inc., a service that provides food delivery to customers via an on demand dispatch system. Plaintiff brings a claim for penalties pursuant to the Private Attorney General Act ("PAGA"), Cal. Labor Code § 2698, based on allegations that GrubHub has misclassified him as an independent contractor instead of an employee.[1] (Dkt. No. 41.) Now pending before the Court is the parties' joint letter brief regarding Defendants' request for an order compelling Plaintiff to produce his tax returns and other tax records from the relevant time period. (Dkt. No. 88.) For the reasons discussed below, the Court denies Defendants' request.

**DISCUSSION**

Defendants' Request for Production ("RFP") No. 35 seeks all documents relating to Plaintiff's "tax returns or other tax records during the" relevant time period. (Dkt. No. 88-1 at 3.) Defendants contend that Plaintiff's characterization of his status in his tax returns is relevant to his

---

[1] Initially, Plaintiff Lawson and co-plaintiff Andrew Tan filed the suit as a putative class action alleging various substantive violations under the California Labor Code on behalf of a putative class of other delivery drivers. (Dkt. No. 41.) After the Court granted Defendants' motion for an order denying class certification (Dkt. No. 65), the parties stipulated to the dismissal of Tan from this action. (Dkt. No. 78.) Only Lawson's PAGA claim remains.

intent to form an independent contractor relationship, one of the factors in determining employment status. (Dkt. No. 88 at 1 (citing *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 358 (1989)).) They argue that the tax forms will show Plaintiff's "working relationships with, and income derived from, other business and companies during the time that Plaintiff used the Grubhub platform[,]" which goes to the *Borello* factor of whether Plaintiff was engaged in a "distinct business" from Defendants and whether the entirety of Plaintiff's delivery blocks constitute compensable hours worked. (*Id.* at 1-2 (citation omitted).) Finally, they maintain that "business expense information typically listed in tax forms 1040 and Schedule C . . . relate[ ] to Plaintiff's claim that Grubhub has failed to reimburse necessary and reasonably business expenses." (Dkt. No. 88 at 2.) In response, Plaintiff "object[ed] to this Request on the grounds that it invades his right to privacy and that the information requested can be obtained in a less intrusive manner." (*Id.*) Put simply, Plaintiff contends that the requested materials are protected from disclosure by the tax privilege.

Both parties cite cases discussing the tax return privilege under federal law. (Dkt. No. 88 at 2 (citations omitted).) But the cases on which they rely all involve federal claims that gave rise to federal question jurisdiction.[2] Here, in contrast, Plaintiff's complaint alleges Class Action Fairness Act ("CAFA") jurisdiction under 28 U.S.C. § 1332(d) and is therefore before the Court on diversity jurisdiction, so state law controls questions of privilege. *In re Cal. Pub. Utils. Comm'n*, 892 F.2d 778, 791 (9th Cir. 1989); *see, e.g.*, *Taylor v. Shippers Transport Express, Inc.*, No. CV 13-2092-BRO (PLAx), 2014 WL 12560878, at *2 (C.D. Cal. May 27, 2014) (applying state law to tax privilege question in CAFA case); *Cortina v. Goya Foods, Inc.*, No. 14cv169 L

---

[2] *See, e.g.*, *Premium Serv. Corp. v. Sperry & Hutchinson Co.*, 511 F.2d 225, 229 (9th Cir. 1975) (antitrust action); *Heathman v. District Court*, 503 F.2d 1032, 1034-35 (9th Cir. 1974) ("We hold that the question of the existence and scope of the taxpayer's privilege, if any, to withhold tax return information is to be determined by federal law *for the purposes of this federal question case*.") (citation omitted).; *Natural Gas Pipeline Co. of Am. V. Energy Gathering, Inc.*, 2 F.3d 1397, 1411 (5th Cir. 1993) (civil RICO action); *Nesselrodte v. Diva's, LLC*, No. 3:11-cv-95, 2012 WL 2061523, at *2 (both federal and state law wage-and-hour claims); *Yong F. Ke v. 85 Fourth Avenue, Inc.*, No. 07 Civ. 6897 (BSJ) (JCF), 2009 WL 1058627, at *4 (S.D.N.Y. Apr. 20, 2009) (same); *Trudeau v. N.Y. State Consumer Protection Bd.*, 237 F.R.D. 325, 331 (N.D.N.Y. 2006) (violation of First Amendment rights); *Columbus Drywall & Indus., Inc. v. Masco Corp.*, No. 1:04-CV-3066-JEC, 2006 WL 5157686, at *7 (N.D. Ga. May 31, 2006) (antitrust action); *Young v. United States*, 149 F.R.D. 199, 201 (S.D. Cal. 1993) (Federal Tort Claims Act action).

(NLS), 2015 WL 11251806, at *2 (S.D. Cal. Oct. 7, 2015) (applying state law to attorney-client privilege question in CAFA case); *Stoba v. Saveology.com, LLC*, No. 13cv2925 BAS (NLS), 2015 WL 10857528, at *3 (S.D. Cal. July 7, 2015) (same). Under California law, a privilege protects forced disclosure of income tax returns. *Webb v. Standard Oil Co.*, 49 Cal. 2d 509, 513 (1957). The privilege is meant "to facilitate tax enforcement by encouraging a taxpayer to make full and truthful declarations in his return, without fear that his statements will be revealed or used against him for other purposes." *Id.* California courts have extended the privilege to cover records submitted with tax returns, including, for example, W-2s. *See Brown v. Super. Ct. of the City & Cnty. of San Francisco*, 71 Cal. App. 3d 141, 143-44 (1977) (holding that W-2s are "information contained in the returns" and thus fall within the scope of the privilege) (citation omitted); *Bowerman v. Field Assert Servs., Inc.*, No. 13-cv-00057-WHO, 2013 WL 6057043, at *2-3 (N.D. Cal. Nov. 14, 2013) (concluding that the privilege protected Schedule Cs, payroll tax records, and 1099s for any employees hired).

The tax privilege is not absolute and is waived or inapplicable where: "(1) there is an intentional relinquishment, (2) the gravamen of the lawsuit is so inconsistent with the continued assertion of the taxpayer's privilege as to compel the conclusion that the privilege has in fact been waived, or (3) a public policy greater than that of confidentiality of tax returns is involved." *Schnabel v. Super. Ct. of Orange Cnty.*, 5 Cal. 4th 704, 721 (1993) (internal quotation marks, citations, and brackets omitted). None of these exceptions applies in this case to force Plaintiff to disclose copies of his tax returns or attachments thereto.

First, there is no evidence that Plaintiff intentionally relinquished the privilege. Second, the gravamen of this misclassification lawsuit is not "so inconsistent" with Plaintiff's assertion of the privilege "as to compel the conclusion that the privilege has in fact been waived." *See Taylor*, 2014 WL 12560878, at *2; *Bowerman*, 2013 WL 6057043, at *2. In *Bowerman*, the court recognized that the fact that the plaintiffs paid self-employment taxes and filed Schedule Cs was relevant to their misclassification claim but that fact could be sufficiently established by the plaintiffs' proposed stipulation that they filed self-employment taxes, hired employees, and filed Schedule Cs with their tax returns. 2013 WL 6057043, at *2. Here, in the joint discovery letter,

3

Plaintiff acknowledged that he filed his tax returns as self-employed; thus, there is a judicial admission that Plaintiff filed as self-employed. The *Bowerman* court further concluded that information about the sources of the plaintiffs' income beyond the defendant and expenses they incurred was relevant to misclassification, but this information could be obtained through written discovery—like written responses and document production—and at depositions, so the lawsuit was not so inconsistent with the privilege that disclosure was required. *Id.* So too here, especially as Plaintiffs have offered to answer any additional questions in interrogatories that will not count towards Defendants' limit.

The third exception "has been narrowly construed, and has been applied only when warranted by a legislatively declared public policy." *Schnabel*, 5 Cal. 4th at 721. Defendants have not identified any public policy that outweighs the protection of tax returns under the circumstances presented here. Defendants insist that redacted tax returns in conjunction with a protective order governing disclosure supports production of the tax returns. But the "mere presence of a protective order does not affect th[e] analysis" of this factor. *Bowerman*, 2013 WL 6057043, at *3. Accordingly, the Court concludes that the California privilege protecting income tax returns prevails and declines to compel Plaintiff to produce the tax records identified in RFP No. 35.

Defendants' arguments to the contrary are unpersuasive. Defendants offer a number of reasons why the requested documents are relevant, but relevance alone does not overcome the privilege under California law. Next, Defendants fault Plaintiff for failing "to show *how* or *why* the production of tax documents . . . infringes on his right to privacy, as is his burden as the party resisting discovery." (Dkt. No. 88 at 2.) But this argument ignores the well-settled tax privilege of California law, which holds that the documents are protected *unless* the requesting party shows that an exception applies. *See Schnabel*, 5 Cal. 4th at 721. Finally, Defendants complain that denying their request and ordering them to propound interrogatories instead is tantamount to infringing their right to request discovery in the manner they see fit as it will limit the number of interrogatories they can use. But Plaintiffs have specifically offered to answer questions about self-employment, expenses, and other sources of income in additional interrogatories that do not

4

count towards Defendants' limits.  In short, none of Defendants' arguments persuades the Court that they have overcome the tax privilege and therefore are entitled to Plaintiff's tax records.  To the contrary, the clear weight of authority indicates that they are not.

## CONCLUSION

For the reasons discussed above, the Court DENIES Defendants' request for an order compelling Plaintiff to produce his tax records in response to RFP No. 35.

This Order disposes of Docket No. 88.

**IT IS SO ORDERED.**

Dated: May 4, 2017

JACQUELINE SCOTT CORLEY
United States Magistrate Judge