THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
KEVIN J. RING-DOWELL, SBN 278289
  kringdowell@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3945
Facsimile:  949.451.4220

Attorneys for Defendants GRUBHUB HOLDINGS
INC. and GRUBHUB INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW TAN and RAEF LAWSON in their capacities as Private Attorney General Representatives, and RAEF LAWSON, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>        v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>        Defendants. | CASE NO. 3:15-cv-05128-JSC<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**<br><br>**Hearing:**<br>Date:      June 29, 2017<br>Time:      9:00 AM<br>Place:     Courtroom F<br>Judge:     Hon. Jacqueline Scott Corley |

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:15-CV-05128-JSC

1  **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE THAT**, on Thursday, June 29, 2017 at 9:00 a.m., or as soon

3  thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom F of

4  the United States District Court, Northern District of California, located at 450 Golden Gate Avenue,

5  15th floor, San Francisco, California 94102, Defendants Grubhub Holdings Inc. and Grubhub Inc.

6  (collectively, "Grubhub") will and hereby do move this Court for summary judgment as to all of

7  Plaintiff Raef Lawson's claims.  This Motion will be made pursuant to Rule 56 of the Federal Rules of

8  Civil Procedure on the ground that there is no triable issue of material fact as to any of the causes of

9  action alleged in Plaintiff's Second Amended Complaint, and Grubhub is entitled to summary judgment

10  as a matter of law.

11       As an initial matter, Grubhub is entitled to summary judgment on all claims (Counts I–V)

12  because Plaintiff cannot prove that he was an employee of Grubhub.  On the contrary, the evidence

13  indisputably shows that Plaintiff's contractual relationship with Grubhub satisfied every indicia of a

14  classic independent contractor relationship.  Plaintiff had discretion to decide when to work (or to

15  refrain from working altogether), where to work, and how to complete the deliveries for food orders he

16  received through Grubhub.  He had the right to hire his own employees, subcontractors, or agents to

17  complete deliveries on his behalf.  And, perhaps most importantly, Plaintiff had the right to—and on a

18  routine basis, did—perform delivery and driving services for other companies *simultaneously* while he

19  was performing deliveries through Grubhub.  For these reasons, and those discussed in the

20  accompanying Memorandum of Points and Authorities, all of Plaintiff's claims fail.

21       Even if Plaintiff could create a triable issue of material fact as to his independent contractor

22  status (he cannot), Plaintiff's own admissions and/or inability to adduce evidence make clear that his

23  Labor and Business & Professions Code claims fail for the following additional, independent reasons:

24       •    <u>Minimum Wage and Overtime (Counts III and IV)</u>:  Plaintiff's minimum wage and

25  overtime claims fail as a matter of law because Plaintiff has not adduced and cannot adduce any

26  evidence showing that Plaintiff's delivery blocks constituted entirely compensable time under

27  California's minimum wage and overtime laws.  Furthermore, Plaintiff has identified only a single

28  week in which he believes that he worked a sufficient amount of compensable time to establish an

alleged Labor Code violation, but Plaintiff cannot recall how or why he believes that he was undercompensated, and the evidence proves he was not.

- Expense Reimbursement (Count I):  Plaintiff's expense reimbursement claim fails for three independent reasons:  (1) Plaintiff does not know and has no way of learning what his actual expenses were and therefore cannot prove that his actual expenses exceeded the amount that Grubhub reimbursed Plaintiff for mileage (50 cents per mile); (2) even if Plaintiff could prove that his actual expenses exceeded the mileage reimbursement that he received from Grubhub, Plaintiff cannot prove that those expenses were incurred to advance Grubhub's interests, particularly because Plaintiff simultaneously performed driving and delivery services for other companies; and (3) Plaintiff cannot prove that Grubhub knew, or had reason to know, that Plaintiff was incurring expenses that were not being compensated because Plaintiff never once notified Grubhub that its 50-cent per mile reimbursement was insufficient to cover Plaintiff's actual expenses.

- Unfair Competition Law (Count II):  Plaintiff's Unfair Competition Law ("UCL") claim under California Business and Professions Code section 17200 *et seq*. fails as a matter of law because it is wholly derivative of Plaintiff's minimum wage, overtime, and expense reimbursement claims (Counts I, III–IV), which fail for the reasons set forth above.  *See Alonzo v. Maximus, Inc*., 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) ("Plaintiffs' UCL claim 'stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action.'") (citation omitted).

- Private Attorneys General Act ("PAGA") Claim (Count V):  Plaintiff's PAGA claim, which is predicated on alleged violations of California's minimum wage, overtime, and expense reimbursement laws, fails as a matter of law because Plaintiff cannot prove that he is an "aggrieved employee" under PAGA.  *See Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 387 (2014) ("[A] person may not bring a PAGA action unless he or she is 'an aggrieved employee.'") (citation omitted); *see also Holak v. K Mart Corp*., 2015 WL 2384895, at *6 (E.D. Cal. May 19, 2015) (granting summary judgment in favor of defendant on PAGA claim "[b]ecause Plaintiff [was] not aggrieved by any of the specific Labor Code violations alleged in her PAGA claim").  Plaintiff is not an "aggrieved employee" under PAGA both because Plaintiff cannot prove that he is an employee and because Plaintiff cannot prove the alleged Labor Code violations underpinning his PAGA claim.

For each of these reasons, and for the reasons discussed more fully in the accompanying Memorandum of Points and Authorities, this Court should grant Grubhub's Motion for Summary Judgment.   This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations of Theane Evangelis, Stan Chia, and Jared Grebner in Support of Grubhub's Motion for Summary Judgment and supporting exhibits attached thereto, the records and papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

Dated:  May 25, 2017                        Respectfully submitted,


                                            THEANE EVANGELIS
                                            GIBSON, DUNN & CRUTCHER LLP


                                            By:   /s/ *Theane Evangelis*
                                                  Theane Evangelis

                                            Attorneys for Defendants Grubhub Holdings Inc.
                                            and Grubhub Inc.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION ................................................................................................... 1

II.   STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)] ............................ 1

III.   FACTUAL BACKGROUND ................................................................................... 2

    A.   Grubhub's Business Model And The DSP Agreements ................................. 2

    B.   DSPs' Freedom To Deliver Whenever And Wherever They Want .............................. 2

    C.   Compensation For DSPs For Food Orders Received Through Grubhub.................... 3

    D.   Plaintiff Raef Lawson ................................................................................... 4

    E.   Procedural History ........................................................................................ 5

IV.   LEGAL STANDARD ............................................................................................. 6

V.   ARGUMENT ......................................................................................................... 7

    A.   Grubhub Is Entitled To Summary Judgment For Each Of Plaintiff's Claims Because Plaintiff Cannot Prove That He Was An Employee Of Grubhub.................. 7

        1.   Grubhub Did Not Control Plaintiff. ..................................................... 8

            a.   Plaintiff Decided When To Perform Delivery Services........................ 8

            b.   Plaintiff Decided Where To Perform Delivery Services........................ 9

            c.   Plaintiff Had The Right To Perform Delivery Services For Other Companies......................................................................... 9

            d.   Plaintiff Had The Right To Negotiate His Fees And Earn Gratuities From Diners. ...................................................... 10

            e.   Plaintiff Had The Right To Choose Which Delivery Routes To Take.................................................................................. 10

            f.   Plaintiff Had The Right To Hire His Own Sub-Contractors To Perform Deliveries. .......................................................... 11

            g.   The Parties' DSP Agreement Granted Both Plaintiff And Grubhub A Mutual Right To Terminate The Contract At Will. ......... 11

            h.   Plaintiff Was Not Required To Wear A Uniform. ............................. 11

        2.   The Secondary *Borello* Factors Weigh Against A Finding Of Employment. ..................................................................................... 12

            a.   Plaintiff Was Engaged In A Distinct Business. .................................. 12

**TABLE OF CONTENTS** (continued)

Page

b. Plaintiff Accepted A DSP Agreement Defining The Parties' Relationship As An Independent Contractor Relationship. ............... 13

c. The Performance Of Deliveries Requires Skill. .................................. 13

d. Plaintiff Supplied The Instrumentalities And Tools Of His Work. ................................................................................................ 14

e. Plaintiff Performed Delivery Services For A Short Duration Of Time. ................................................................................................ 14

f. Grubhub Paid Plaintiff A Flat Per-Job Fee. ....................................... 15

g. Plaintiff's Work Was Not A Part Of The Regular Business Of Grubhub. ............................................................................................. 15

h. Plaintiff Had An Opportunity To Maximize Profit. ............................ 15

B. Plaintiff's Minimum Wage, Overtime, and Expense Reimbursement Claims Each Fail as a Matter of Law. ............................................................... 16

1. Plaintiff's Minimum Wage and Overtime Claims Fail As A Matter Of Law. ........................................................................................................ 17

a. Plaintiff Cannot Prove That Any Of His Delivery Blocks Constituted Entirely Compensable Time. ............................................ 17

b. Plaintiff Cannot Prove That He Experienced An Overtime Violation During The Week Of November 30, 2015. ......................... 20

2. Plaintiff's Expense Reimbursement Claim Fails as a Matter of Law. ............ 21

a. Plaintiff Cannot Prove That Grubhub Reimbursed Plaintiff At An Amount That Was Less Than His Actual Mileage Expenses. ...... 21

b. Plaintiff Cannot Prove That His Expenses Were Incurred In Direct Consequence Of His Discharge Of Duties For Grubhub. ........ 23

c. Plaintiff Cannot Prove That Grubhub Knew Or Had Reason To Know That Plaintiff Incurred Unreimbursed Business Expenses. ...... 24

C. Plaintiff's Derivative PAGA and UCL Claims Fail For The Same Reasons As Plaintiff's Labor Code Claims. ................................................................. 25

1. Plaintiff Lacks Standing To Assert A PAGA Claim. ................................... 25

2. Plaintiff's UCL Claim Fails Because Grubhub's Conduct Was Not Unlawful. .................................................................................................. 25

VI. CONCLUSION ................................................................................................. 25

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Aguilar v. Zep Inc.*,
  2014 WL 4245988 (N.D. Cal. Aug. 27, 2014)...........................................................................23

*Alexander v. FedEx Ground Package Sys., Inc.*,
  765 F.3d 981 (9th Cir. 2014)...................................................................................................11

*Ali v. U.S.A. Cab Ltd.*,
  176 Cal. App. 4th 1333 (2009)............................................................................................8, 10

*Alonzo v. Maximus, Inc.*,
  832 F. Supp. 2d 1122 (C.D. Cal. 2011)...................................................................................25

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986)..............................................................................................................6, 7

*Arnold v. Mutual of Omaha Ins. Co.*,
  202 Cal. App. 4th 580 (2011)...............................................................................7, 8, 9, 10, 16

*Ayala v. Antelope Valley Newspapers, Inc.*,*Beaumont-Jacques v. Farmers Grp., Inc.*,
  217 Cal. App. 4th 1138 (2013)...............................................................................................11

*Berry v. Cty of Sonoma*,
  30 F.3d 1174 (1994)................................................................................................................19

*Bhan v. NME Hosps., Inc.*,
  929 F.2d 1404 (9th Cir. 1991)..............................................................................................7, 20

*Cassady v. Morgan, Lewis, & Bockius LLP*,
  145 Cal. App. 4th 220 (Cal. Ct. App. 2006) ..........................................................................23

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986).................................................................................................................7

*Chavez v. Lumber Liquidators, Inc.*,
  2012 WL 1004850 (N.D. Cal. Mar. 26, 2012).........................................................................25

*Christensen v. CVS Pharm., Inc.*,
  2017 WL 118030 (Cal. Ct. App. Jan. 12, 2017) .....................................................................22

*Desimone v. Allstate Ins. Co.*,
  2000 WL 1811385 (N.D. Cal. Nov. 7, 2000)..............................................8, 11, 12, 13, 16

*Estrada v. FedEx Ground Package Sys., Inc.*,
  154 Cal. App. 4th 1 (2007)......................................................................................................12

Gibson, Dunn &
Crutcher LLP

**TABLE OF AUTHORITIES** (continued)

Page(s)

*Federico v. Overland Contracting, Inc.*,
 2013 WL 5516187 (N.D. Cal. Oct. 4, 2013)................................................................23

*Fireman's Fund Ins. Co. v. Davis*,
 37 Cal. App. 4th 1432 (1995).........................................................................................9

*Gattusso v. Harte-Hanks Shoppers, Inc.*,
 42 Cal. 4th 554 (2007) ...........................................................................................21, 22

*Gomez v. Lincare, Inc.*,
 173 Cal. App. 4th 508 (2009)........................................................................................17

*Hammitt v. Lumber Liquidators, Inc.*,
 19 F. Supp. 3d 989 (May 13, 2014) .........................................................................24, 25

*Hennighan v. Insphere Ins. Sols., Inc.*,
 38 F. Supp. 3d 1083 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016) ..............7, 8, 9, 11,
 12, 13, 14, 15, 16

*Henry v. Med-Staff, Inc.*,
 2007 WL 1998653 (C.D. Cal. July 5, 2007) .................................................................18

*Holak v. K Mart Corp.*,
 2015 WL 2384895 (E.D. Cal. May 19, 2015)................................................................25

*Irwin v. Mascott*,
 94 F. Supp. 2d 1052 (N.D. Cal. 2000) .........................................................................25

*Iskanian v. CLS Trans. Los Angeles, LLC*,
 59 Cal. 4th 348 (2014) ..................................................................................................25

*Lara v. Worker's Comp. Appeals Bd.*,
 182 Cal. App. 4th 393 (2010).........................................................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ........................................................................................................6

*Mendiola v. CPS Security Solutions, Inc.*,
 60 Cal. 4th 833 (2015) .............................................................................................17, 18

*Merchants Home Delivery Serv., Inc. v. N.L.R.B.*,
 580 F.2d 966 (9th Cir. 1978).........................................................................................11

*Millsap v. Fed'l Express Corp.*,
 227 Cal. App. 3d 425 (1991)...................................................................................7, 8, 15

Gibson, Dunn &
Crutcher LLP

1

2

**TABLE OF AUTHORITIES** (continued)

Page(s)

3
*Minnard v. Rotech Healthcare, Inc.*,
  2008 WL 2169716 (E.D. Cal. May 22, 2008)................................................................17

4

5
*Mission Ins. Co. v. Workers' Comp. Appeals Bd.*,
  123 Cal. App. 3d 211 (1981)................................................................11, 14

6
*In re Oracle Corp. Secs. Litig.*,
7
  627 F.3d 376 (9th Cir. 2010)................................................................6

8
*Ortiz v. CVS Caremark Corp.*,
  2014 WL 1117614 (N.D. Cal. Mar. 19, 2014)................................................22, 23

9
*Owens v. Local No. 169, Ass'n of W. Pulp & Paper Workers*,
10
  971 F.2d 347 (9th Cir. 1992)................................................................18, 19

11
*Rabanal v. Rideshare Port Mgmt., LLC*,
12
  2013 WL 6020340 (Cal. Ct. App. Nov. 14, 2013)................................................8, 9, 10, 11

13
*Robinson v. City of San Bernardino Police Dep't*,
  992 F. Supp. 1198 (C.D. Cal. 1998)................................................................8, 10, 13

14
*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*,
15
  48 Cal. 3d 341 (1989)................................................................7, 12, 13, 14, 15

16
*Sahinovic v. Consol. Delivery & Logistics, Inc.*,
  2004 WL 5833528 (N.D. Cal. Sept. 13, 2004)................................................8, 14, 15

17

18
*Silva v. See's Candy Shops, Inc.*,
  7 Cal. App. 5th 235 (2016)................................................................18

19
*State Comp. Ins. Fund v. Brown*,
20
  32 Cal. App. 4th 188 (1995)................................................................8, 14, 15

21
*Taylor v. List*,
  880 F.2d 1040 (9th Cir. 1989)................................................................7

22

23
*Taylor v. Waddell & Reed, Inc.*,
  2012 WL 3584942 (S.D. Cal. Aug. 20, 2012)................................................8, 9, 13

24
*Torres v. Reardon*,
25
  3 Cal. App. 4th 831 (1992)................................................................8

26
*UA Local 343 v. Nor.-Cal Plumbing, Inc.*,
  48 F.3d 1465 (9th Cir. 1994)................................................................7

27
*Varisco v. Gateway Science & Eng'g, Inc.*,
28
  166 Cal. App. 4th 1099 (2008)................................................................8, 11

**TABLE OF AUTHORITIES** (continued)

Page(s)

*Wheat v. J.B. Hunt Transp., Inc.*,
   2016 WL 1397673 (C.D. Cal. Apr. 5, 2016) ...................................................................17

**Statutes**

Business and Professions Code §§ 17200–17208 ......................................................................6

Cal. Labor Code § 510 .............................................................................................................6

Cal. Labor Code § 554 .............................................................................................................6

Cal. Labor Code § 1194 ........................................................................................................6, 7

Cal. Labor Code § 1197 .............................................................................................................6

Cal. Labor Code § 1198 .............................................................................................................6

Cal. Labor Code § 2699 ........................................................................................................7, 25

Cal. Labor Code § 2802 ........................................................................6, 7, 21, 22, 23, 24

**Rules**

Fed. R. Civ. P. 56(a) .................................................................................................................6

Fed. R. Civ. P. 56(e) .................................................................................................................7

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:15-CV-05128-JSC

# I.    INTRODUCTION

Each of Plaintiff Raef Lawson's claims is based on his contention that, while accepting food delivery requests through Grubhub's online platform, he was an employee of Grubhub.  Yet, the evidence—including Plaintiff's own testimony—proves otherwise.  For example, Plaintiff testified that in 2015 and 2016 (the relevant time frame), he performed delivery or driving services as an independent contractor for no less than *ten* companies—including direct competitors of Grubhub.  The evidence further shows that on more than 40 occasions, Plaintiff performed delivery or other driving services for other companies *during* the blocks of time in which he was making deliveries through Grubhub.  Because the undisputed factual record proves that Plaintiff was not an employee of Grubhub, each of his claims fails as a matter of law.

Moreover, even if Plaintiff could create a triable issue of material fact as to his classification status (he cannot), Plaintiff has not adduced and cannot adduce evidence proving his claims that Grubhub violated California's expense reimbursement, minimum wage, and overtime laws, for a variety of reasons.  Plaintiff also is not an "aggrieved employee" under the Private Attorneys General Act ("PAGA"), and therefore his derivative PAGA claim (Count V) and his derivative Unfair Competition Law ("UCL") claim (Count II) must be dismissed as a matter of law.

# II.    STATEMENT OF ISSUES TO BE DECIDED [L.R. 7-4(A)(3)]

1.    Whether this Court should grant summary judgment as to all of Plaintiff's claims (Counts I–V) because Plaintiff was *not* a Grubhub employee.

2.    Whether this Court should grant summary judgment as to Plaintiff's minimum wage and overtime claims (Counts III–IV) because Plaintiff cannot prove that Plaintiff's delivery blocks constituted entirely compensable time under California's minimum wage and overtime laws.

3.    Whether this Court should grant summary judgment as to Plaintiff's expense reimbursement claim (Count I) because (1) Plaintiff cannot prove that his actual expenses exceeded the amount Grubhub reimbursed Plaintiff for mileage (50 cents per mile); (2) Plaintiff cannot prove that his alleged expenses were incurred in direct discharge of Grubhub's interests; and (3) Plaintiff cannot prove that Grubhub knew, or had reason to know, that Plaintiff was incurring expenses that were not being fully compensated.

1       4.      Whether this Court should grant summary judgment as to Plaintiff's UCL and PAGA

2   claims (Counts II and V), which are wholly derivative of the preceding individual claims.

3              **III.     FACTUAL BACKGROUND**

4   **A.     Grubhub's Business Model And The DSP Agreements**

5           Grubhub is an online and mobile marketplace that connects diners with takeout and delivery

6   restaurants through its website and associated mobile applications.  Decl. of Stan Chia ("Chia Decl.")

7   ¶ 2.  In most instances, diners place food orders through Grubhub's online platform, and Grubhub

8   transmits those orders to restaurants that employ or contract with their own in-house delivery persons,

9   who deliver the food to diners.  *Id.*; Decl. of Theane Evangelis ("Evangelis Decl.") ¶ 14, Ex. 13 at

10  27:12–28:5; Evangelis Decl. ¶ 15, Ex. 14 at 33:3–35:5.  However, when restaurants are unable or

11  unwilling to hire their own delivery persons, Grubhub sometimes contracts with Delivery Service

12  Providers ("DSPs"), such as Raef Lawson ("Plaintiff"), to deliver the food to diners.  Chia Decl. ¶ 2.

13          To access Grubhub's online platform and receive food orders, DSPs must first enter into a

14  Delivery Service Provider Agreement ("DSP Agreement") with Grubhub.  Chia Decl. ¶ 3.  Grubhub

15  has used various versions of the DSP Agreement over time, but all DSP Agreements define the

16  relationships between Grubhub and DSPs as independent contractor relationships.  *See, e.g., id.* ¶ 4,

17  Ex. 1 ¶ 7.1; *id.* ¶ 6, Ex. 3 ¶ 6(a).  All DSP Agreements also grant DSPs the right to perform delivery

18  services "for other entities and customers, even should such business[es] directly compete with

19  GrubHub," and to do so "concurrently or subsequently" while delivering food orders received through

20  the Grubhub platform.  *See, e.g., id.* ¶ 4, Ex. 1 ¶ 2.4; *see also id.* ¶ 6, Ex. 3 ¶ 4(d).  And all DSP

21  Agreements permit DSPs to use their own sub-contractors or employees to perform deliveries of the

22  orders that DSPs accept through Grubhub.  *See, e.g., id.* ¶ 4, Ex. 1 ¶ 2.2; *id.* ¶ 6, Ex. 3 ¶ 7.

23  **B.     DSPs' Freedom To Deliver Whenever And Wherever They Want**

24          DSPs can receive orders and perform deliveries at any time, simply by turning on their Grubhub

25  application and "toggling on" their availability.  *See* Evangelis Decl. ¶ 15, Ex. 14 at 70:23–71:8, 74:2–

26  6.  DSPs can also choose to sign up to perform deliveries during a delivery block (e.g., 2-hour or 3-

27  hour time blocks).  DSPs can select whichever delivery block they would like, at any time, or they can

28  refrain from signing up for delivery blocks altogether.  *Id.* ¶ 15, Ex. 14 at 59:21–64:3; *id.* ¶ 11, Ex. 10

at 102:15–105:23 ("Q: So the bottom line was that if you didn't want to work on the Grubhub app, you didn't schedule yourself; is that right? A: Right."). Only DSPs who choose to sign up for delivery blocks are eligible to receive the "true-up" adjustments discussed below. *See infra* Part III(D). However, DSPs are not obligated to accept any given food order that they receive, even if they sign up for a delivery block. *Id.* ¶ 14, Ex. 13 at 93:18–24; *id.* ¶ 11, Ex. 10 at 128:25–129:4.

DSPs who sign up for delivery blocks also have discretion to select the geographic zones in which they would like to perform deliveries. Evangelis Decl. ¶ 13, Ex. 12 at 87:7–15 ("We give drivers the option to choose what market, what region they want to deliver in."); *id.* ¶ 15, Ex. 14 at 118:25–120:1. These zones vary in size depending on the market, but typically are large; to take one example, the city of San Francisco is a single zone. *Id.* ¶ 15, Ex. 14 at 148:9–150:6. Grubhub does not require DSPs to remain within these zones during the DSPs' delivery blocks or during periods in which DSPs are simply "toggled on" as available in the Grubhub platform. *Id.* ¶ 15, Ex. 14 at 118:7–120:1.

## C.   Compensation For DSPs For Food Orders Received Through Grubhub

DSPs who use the Grubhub online platform to accept offers receive a flat per-job service fee for each delivery they complete, plus 100% of any gratuities that diners leave for them. *See* Evangelis Decl. ¶ 13, Ex. 12 at 66:8–67:7; *id.* ¶ 14, Ex. 13 at 105:9–109:15. DSPs have a right to negotiate the amount of these service fees. *See* Chia Decl. ¶ 4, Ex. 1 ¶ 8.1; Evangelis Decl. ¶ 15, Ex. 14 at 163:12–164:10 ("[T]hey can negotiate"). In the absence of such negotiation, however, DSPs receive a default fee that has differed over time and is based on geography. *See* Chia Decl. ¶ 4, Ex. 1 ¶ 8.1. During the period in which Plaintiff performed deliveries, DSPs in Plaintiff's geographic area received service fees of $4.25 per delivery, *see* Evangelis Decl. ¶ 7, Ex. 6, or $4.00 per delivery, *see id.*, ¶ 10, Ex. 9.

In addition, Grubhub reimburses drivers at a rate of 50 cents per mile for each straight-line mile between the restaurant and the diner. *See* Evangelis Decl. ¶ 3, Ex. 2 at GH000488; *id.* ¶ 13, Ex. 12 at 66:8–67:7; *id.* ¶ 14, Ex. 1 at 105:9–109:15. For example, if a DSP "pick[s] up [two] orders from the same restaurant for [two] diners, [the DSP] will receive $0.50, times the sum of Distance 1 and Distance 2," as shown in the figure on the right-hand side of the page:



*See* Evangelis Decl. ¶ 3, Ex. 2 at GH000488.  In other words, DSPs who pick up multiple orders from a restaurant and deliver those orders to diners who are nearby one another can be and routinely are *over*-compensated for their mileage.  Grubhub communicated this reimbursement policy to DSPs in the DSPs' weekly pay statements, including those sent to Plaintiff, and Plaintiff was aware of the reimbursement policy.  *See, e.g.*, Evangelis Decl. ¶ 11, Ex. 10; *id.* ¶ 12, Ex. 11 at 187:9–12.

Finally, in addition to these per-job service fees, gratuities, and mileage reimbursements, Grubhub also offered certain "true-up" payments to DSPs who (1) signed up for delivery blocks; and (2) accepted a certain percentage of the food orders they received (e.g., 75%).  *See* Evangelis Decl. ¶ 8, Ex. 7; *id.* ¶ 14, Ex. 13 at 105:9–106:11.  These "true up" payments guaranteed DSPs who met the criteria a certain minimum amount per hour, irrespective of whether they would have been entitled to that amount based on the other compensation elements discussed above.  *Id.* ¶ 14, Ex. 13 at 105:9–106:11.  During the time period in which Plaintiff provided deliveries, these "true-up" payments guaranteed DSPs $15.00 per hour, *id.* ¶ 2, Ex. 1, or $11.00 per hour, *see id.* at ¶ 10, Ex. 9.

## D.  Plaintiff Raef Lawson

Plaintiff first entered into a DSP Agreement with Grubhub on August 28, 2015.  *See* Chia Decl. ¶ 4, Ex. 1.  Plaintiff accepted an amendment to that agreement on December 5, 2015.  *Id.* ¶ 5, Ex. B.  Plaintiff was deactivated from the platform in February 2015.  Evangelis Decl. ¶ 5, Ex. 4.  However, since filing this lawsuit, Plaintiff has chosen to again contract with Grubhub, by signing a second DSP Agreement on March 11, 2016, and a third on April 7, 2017.  Chia Decl. ¶ 6, Ex. 3; *id.* ¶ 5, Ex. 4.

In 2015–2016, Plaintiff performed delivery and driving services for no less than *ten* companies, including Grubhub, Uber, Lyft, Postmates, Caviar, Scoobeez, Amazon Flex, DoorDash, TaskRabbit, and Jolt.  *See* Evangelis Decl. ¶ 12, Ex. 11 at 36:11–37:20, 61:23–64:24.  On more than 40 occasions, Plaintiff made himself available to perform services for companies other than Grubhub *during* his Grubhub delivery blocks, or when he was "toggled on" to receive offers from Grubhub.[1]  *See* Evangelis Decl. ¶ 23, Ex. 20.  Furthermore, Plaintiff often accepted delivery and driving requests from other

---

[1]  These examples represent only a small sliver of Plaintiff's multi-apping.  Plaintiff only recently informed Grubhub, during his May 15, 2017 deposition, that he performed driving and delivery services for several additional on-demand applications—which left Grubhub with insufficient time to subpoena Plaintiff's records from these additional companies.

companies, including Postmates and Caviar, after he had accepted an offer from Grubhub and before he had completed that delivery—i.e., while Plaintiff was *mid-delivery* for a Grubhub order. *Id.*

To take one example, on January 10, 2016, Plaintiff was logged into three different applications (Grubhub, Caviar, and Postmates) and performed deliveries using all *three* simultaneously:

| 1/10/2016 | 5:00 PM | 5:30 PM | 6:00 PM | 6:30 PM | 7:00 PM | 7:30 PM | 8:00 PM | 8:30 PM | 9:00 PM | 9:30 PM | 10:00 PM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Grubhub Block | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Grubhub Delivery | | | | | | | | | | | |
| Postmates Delivery | | | | | | | | | | | |

*See* Evangelis Decl. ¶ 4, Ex. 3(c) at GH00513; *id.* ¶ 19, Ex. 18 at PM0107; *id.* ¶ 20, Ex. 19 at ii-1, iii-2; *see also id.* ¶ 23, Ex. 20.

On other occasions, Plaintiff signed up for a Grubhub delivery block, but did not deliver a *single order* using Grubhub; instead, Plaintiff performed deliveries for Grubhub's competitors during his Grubhub delivery block. Plaintiff did this, for example, on January 30, 2016 (among other days):

| 1/30/2016 | 5:00 PM | 5:30 PM | 6:00 PM | 6:30 PM | 7:00 PM | 7:30 PM | 8:00 PM | 8:30 PM | 9:00 PM |
|---|---|---|---|---|---|---|---|---|---|
| Grubhub Block | | | | | | | | | |
| Postmates Delivery | | | | | | | | | |
| Postmates Delivery | | | | | | | | | |

*See* Evangelis Decl. ¶ 3(a), Ex. 3(a) at GH00507; *id.* ¶ 19, Ex. 18 at PM0106; *id.* ¶ 20, Ex. 19 at ii-2, iii-2; *see also id.,* ¶ 23, Ex. 20.

### E.   Procedural History

On September 23, 2015, a DSP named Andrew Tan filed this lawsuit against Grubhub in San Francisco Superior Court as a putative class and representative action, which Grubhub removed to this Court on November 9, 2015. *See* Dkt. 1. Plaintiff joined the case on December 15, 2015, *see* Dkt. 15, and filed the operative complaint on April 12, 2016, *see* Dkt. 41. On July 19, 2016, this Court denied class certification of Plaintiff's claims, *see* Dkt. 65, and on November 4, 2016, the Court dismissed Andrew Tan pursuant to a voluntary stipulation of dismissal, *see* Dkt. 78.

The operative complaint asserts four claims on behalf of Plaintiff in an individual capacity: (1) an expense reimbursement claim under Labor Code section 2802 (Count I), (2) a UCL claim under

Business and Professions Code sections 17200–17208 (Count II), (3) a minimum wage claim under Labor Code sections 1194 and 1197 (Count III), and (4) an overtime claim under Labor Code sections 510, 554, 1194, and 1198 (Count IV), as well as (5) a representative PAGA claim based on the preceding alleged Labor Code violations (Count V).  Dkt. 41 at 7–9.

With respect to his expense reimbursement claim, Plaintiff has limited the expenses for which he seeks reimbursement solely to mileage.  *See* Dkt. 88 at 3, 5.  Plaintiff has also admitted that he was aware of Grubhub's mileage reimbursement policy, *see supra* Part III(C), that he has never tried to quantify the amount of actual mileage expenses he allegedly incurred while performing deliveries through Grubhub, and that he never informed Grubhub that he believed that the reimbursement he received from Grubhub was insufficient.  Evangelis Decl. ¶ 12, Ex. 11 at 187:9–19, 202:22–25.

With respect to his minimum wage and overtime claims, Plaintiff has identified only a single week in which in which he believes that he worked a sufficient amount of compensable time to establish an alleged Labor Code violation, but he cannot recall how or why he believes that he was undercompensated.  *See* Dkt. 41 ¶ 23; Evangelis Decl. ¶ 12, Ex. 11 at 190:23–24, 197:14–198:20, 200:16–201:19, 203:13–24, 227:21–228:5.

## IV.    LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Partial summary judgment is proper if there is no "genuine issue as to any material fact" regarding any "part" of a claim or defense.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  "Material facts are those which may affect the outcome of the proceedings."  *Anderson*, 477 U.S. at 248.  No genuine issue of material fact exists if "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted).

Where "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  Once the moving party meets its burden, the burden shifts to the nonmoving party to "set out 'specific facts showing that there is a genuine issue for trial.'"

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted).  That party must then "make a showing sufficient to establish the existence of [the] element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.  This burden "is not negligible," *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994), and cannot be carried by "conclusory allegations unsupported by factual data," *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989), or a "mere . . . scintilla of evidence," *Anderson*, 477 U.S. at 252.  Rather, the nonmoving party "must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

## V.   ARGUMENT

### A.   Grubhub Is Entitled To Summary Judgment For Each Of Plaintiff's Claims Because Plaintiff Cannot Prove That He Was An Employee Of Grubhub.

To prevail on his claims, Plaintiff must prove, as a threshold matter, that he was an employee of Grubhub, rather than an independent contractor.  *See* Cal. Labor Code §§ 1194, 2699(a), 2802; *see also* Dkt. 41 at 7–8 (predicating Plaintiff's UCL claim on alleged Labor Code violations).  "Because the California Labor Code does not expressly define 'employee,' the common law test for employment applies." *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083, 1097 (N.D. Cal. 2014), *aff'd*, 650 F. App'x 500 (9th Cir. 2016).  As the California Supreme Court explained in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, this test requires a court to consider the putative employer's "right to control work details," as well as several "'secondary' indicia."  48 Cal. 3d 341, 350–51, 355 (1989).

Although the question whether a worker is an employee "is ordinarily a question of fact," "if from all the facts only one inference may be drawn it is a question of law." *Millsap v. Fed'l Express Corp.*, 227 Cal. App. 3d 425, 431 (1991).  Not all of the factors enumerated in *Borello* must point in favor of independent contractor status; on the contrary, "if one or two of the individual factors might suggest an employment relationship, summary judgment is nevertheless proper when . . . all the factors weighed and considered as a whole establish that [plaintiff] was an independent contractor." *Arnold v. Mutual of Omaha Ins. Co.*, 202 Cal. App. 4th 580, 588 (2011).  For this reason, courts can, and regularly do, hold that individuals who provide services to others are independent contractors, as a matter of law. *See Sahinovic v. Consol. Delivery & Logistics, Inc.*, 2004 WL 5833528 (N.D. Cal. Sept. 13, 2004) (on

1   summary judgment, holding that courier drivers were independent contractors); *Millsap*, 227 Cal. App.

2   3d at 425 (affirming summary judgment order finding delivery driver to be independent contractor).[2]

3       ## 1.   Grubhub Did Not Control Plaintiff.

4       "Under the common law, the principal test of an employment relationship is whether [Grubhub]

5   has the right to control the manner and means of accomplishing the result desired." *Ayala v. Antelope*

6   *Valley Newspapers, Inc.*, 59 Cal. 4th 522, 531 (2014) (quotation marks and citations omitted).  For an

7   individual to be an employee, "the right to exercise complete or authoritative control must be shown,

8   rather than mere suggestion as to detail." *Ali v. U.S.A. Cab Ltd.*, 176 Cal. App. 4th 1333, 1347 (2009).

9   Thus, a "worker is an independent contractor when he or she follows the employer's desires only in

10  the result of the work, and not the means by which it is achieved." *Id.*  In virtually every conceivable

11  manner, Plaintiff—not Grubhub—controlled the manner and means of Plaintiff's performance.

12      ### a.   Plaintiff Decided When To Perform Delivery Services.

13      It is indisputable that Plaintiff had complete freedom to decide when, if ever, to perform

14  deliveries through Grubhub.  *See* Chia Decl. ¶ 4, Ex. 1 ¶ 3.1 ("PDSP shall have complete discretion to

15  designate the dates it will make itself . . . available"); *id.* ¶ 6, Ex. 3 ¶ 4.  Indeed, after Plaintiff signed

16  up to use Grubhub, Plaintiff chose to wait several months before performing his first delivery.

17  Evangelis Decl. ¶ 12, Ex. 11 at 86:23–87:2.  Plaintiff chose which specific days and times to provide

18  deliveries, as well.  *Id.* ¶ 12, Ex. 11 at 102:15–105:23; *see also id.* ¶ 14, Ex. 13 at 64:20–65:21.  And,

19  even after signing up to perform deliveries on certain days, Plaintiff regularly would "toggle off" of

20  Grubhub or decline offers, with "no major ramifications."  *Id.* ¶ 12, Ex. 11 at 145:19–146:20; *id.* ¶ 15,

21  Ex. 14 at 59:18–20 (DSPs "100 percent" can decline orders), 100:21–102:11.  Plaintiff's discretion to

22  decide when, if ever, to provide deliveries weighs strongly against a finding of employment.  *See*

23

24

25  [2]   *See also Hennighan*, 38 F. Supp. 3d 1083 (sales agent); *Taylor v. Waddell & Reed, Inc.*, 2012 WL
    3584942 (S.D. Cal. Aug. 20, 2012) (financial advisers); *Desimone v. Allstate Ins. Co.*, 2000 WL
26  1811385 (N.D. Cal. Nov. 7, 2000) (insurance agents); *Robinson v. City of San Bernardino Police*
    *Dep't*, 992 F. Supp. 1198 (C.D. Cal. 1998) (phlebotomist); *see also Rabanal v. Rideshare Port*
27  *Mgmt., LLC*, 2013 WL 6020340 (Cal. Ct. App. Nov. 14, 2013) (unpublished) (van drivers);
    *Arnold*, 202 Cal. App. 4th at 580 (insurance agent); *Lara v. Worker's Comp. Appeals Bd.*, 182
28  Cal. App. 4th 393 (2010) (gardener); *Varisco v. Gateway Science & Eng'g, Inc.*, 166 Cal. App.
    4th 1099 (2008) (inspector); *State Comp. Ins. Fund v. Brown*, 32 Cal. App. 4th 188 (1995)
    (truckers); *Torres v. Reardon*, 3 Cal. App. 4th 831 (1992) (gardener).

*Hennighan*, 38 F. Supp. 3d at 1100 (agent was independent contractor because he "establish[ed] his own schedule"); *Taylor*, 2012 WL 3584942, at *5 (financial company was not employer because it "did not set financial advisor schedules"); *Rabanal*, 2013 WL 6020340, at *7 (van drivers were independent contractors because they "decided when they wanted to work").

### b.   Plaintiff Decided Where To Perform Delivery Services.

In addition to having the right to decide *when* to perform deliveries, Plaintiff had complete freedom to decide *where* to perform deliveries.  Evangelis Decl. ¶ 13, Ex. 12 at 87:5–15; *id.* ¶ 15, Ex. 14 at 118:25–120:1; Chia Decl. ¶ 4, Ex. 1 ¶ 3.1 ("PDSP shall notify Grubhub . . . of the . . . general geographic location(s) that PDSP will be available to perform Delivery Services.").  Plaintiff exercised this independence by choosing to perform deliveries in areas with which he "was familiar" that were "closest to where [he] was living."  Evangelis Decl. ¶ 12, Ex. 11 at 102:15–104:24; 107:3–14.  This geographic autonomy indisputably establishes that Grubhub did not control Plaintiff.  *See Arnold*, 202 Cal. App. 4th at 588 (plaintiff was independent contractor because she "used her own judgment in determining . . . [the]  place . . . in which she would solicit"); *Fireman's Fund Ins. Co. v. Davis*, 37 Cal. App. 4th 1432, 1442–43 (1995) (sales manager was independent contractor because "place of work . . . [was] left to the discretion of [plaintiff]").

### c.   Plaintiff Had The Right To Perform Delivery Services For Other Companies.

Further demonstrating that Grubhub did not control Plaintiff, the parties' DSP Agreements allowed Plaintiff to perform delivery and driving services for other companies, including Grubhub's competitors, simultaneously while delivering orders that Plaintiff received through the Grubhub platform.  *See* Chia Decl. ¶ 4, Ex. 1 ¶ 2.4; *id.* ¶ 6, Ex. 3 ¶ 4(d); Evangelis Decl. ¶ 15, Ex. 14 at 125:5–128:8, 138:25–141:2.  As explained above, Plaintiff frequently exercised that right.  For example, not only did Plaintiff perform delivery and driving services for several companies (including Grubhub's competitors) during the same time period in which he used Grubhub, *see* Evangelis Decl. ¶ 12, Ex. 11 at 36:11–37:20, 61:23–64:9, Plaintiff made himself available on more than 40 occasions to perform deliveries for Postmates and Caviar *during* his Grubhub delivery blocks, *id.* ¶ 23, Ex. 20.  Most tellingly, Plaintiff even provided services for other companies while he was *mid-delivery* for an order

Gibson, Dunn & Crutcher LLP

he had received through Grubhub. *Id.* For these reasons, Grubhub did not control Plaintiff. *See Arnold*, 202 Cal. App. 4th at 588 (agent was independent contractor because her "appointment with [defendant] was nonexclusive"); *Robinson*, 992 F. Supp. at 1208 (phlebotomist was independent contractor because she "practice[d] her profession for others when not working for defendant"); *Rabanal*, 2013 WL 6020340, at *7 (van drivers were independent contractors because they "decided . . . whether . . . [to] solicit fares from other transportation networks").

### d.   Plaintiff Had The Right To Negotiate His Fees And Earn Gratuities From Diners.

On issues of pay, Plaintiff also exercised substantial autonomy over the manner and means of performance. Plaintiff had the right to negotiate with Grubhub regarding the amount that he would receive as a fee for the delivery services he performed. *See* Chia Decl. ¶ 4, Ex. 1 ¶ 8.1 ("Nothing will prevent PDSP or Grubhub from negotiating a different Service Fee than that set forth in this Agreement for any given Engagement."); Evangelis Decl. ¶ 15, Ex. 14 at 163:12–164:10. And Plaintiff can, and did, accept gratuities from diners to whom he delivered food. *See* Chia Decl. ¶ 4, Ex. 1 ¶ 8.2; *id.* ¶ 6, Ex. 3 ¶ 5(b); *see also* Evangelis Decl. ¶ 14, Ex. 13 at 105:21–22. Plaintiff's ability to negotiate and set his pay further demonstrates that Grubhub did not control Plaintiff. *See Ali*, 176 Cal. App. 4th at 1349 (finding relevant the fact that drivers "set their own rates").

### e.   Plaintiff Had The Right To Choose Which Delivery Routes To Take.

The parties' DSP Agreements afforded Plaintiff—not Grubhub—control over "the manner, method or means PDSP use[d] to complete the Delivery Services." Chia Decl. ¶ 4, Ex. 1 ¶ 2.2; *id.* ¶ 6, Ex. 3 ¶ 4(c). One important aspect of this control right was Plaintiff's right to decide which routes to take while performing deliveries. *See* Evangelis Decl. ¶ 12, Ex. 11 at 139:3–140:15 ("Q: How did you decide what route to take? A: I don't remember exactly . . . Did anyone at Grubhub ever tell you what route to take to a restaurant? A: Not to a restaurant I don't think."); *id.* ¶ 15, Ex. 14 at 159:15–25 ("They take the route that they want to take."). Plaintiff's ability to decide which routes to take—with no input from Grubhub—establishes that Grubhub did not control the manner and means of Plaintiff's delivery services. *See Rabanal*, 2013 WL 6020340, at *7 (van drivers were independent contractors, in part, because the drivers "could determine the order of, and the routes for, pickup and drop-off").

### f.      Plaintiff Had The Right To Hire His Own Sub-Contractors To Perform Deliveries.

Not only did Plaintiff have autonomy to decide how to perform delivery services *himself*; he had freedom to choose whether to hire or contract with *other* individuals to perform deliveries on his behalf.  *See* Chia Decl. ¶ 4, Ex. 1 ¶ 2.2 (granting Plaintiff authority to "utilize employees, contractors, subcontractors, agents or representatives to perform all or some of the Delivery Services."); *id.* ¶ 6, Ex. 1 ¶ 7.  The fact that Plaintiff "was not required to do the work himself [and] . . . had the right to have the work done by" someone else provides yet another reason to hold that Grubhub did not control Plaintiff.  *Mission Ins. Co. v. Workers' Comp. Appeals Bd.*, 123 Cal. App. 3d 211, 222 (1981); *Merchants Home Delivery Serv., Inc. v. N.L.R.B.*, 580 F.2d 966, 974–75 (9th Cir. 1978) (owner-operators were independent contractors because they "ha[d] the right to employ their own helpers to assist them in making deliveries"); *Desimone*, 2000 WL 1811385, at *12.

### g.      The Parties' DSP Agreement Granted Both Plaintiff And Grubhub A Mutual Right To Terminate The Contract At Will.

A defendant's unilateral "right to discharge [a putative employee] at will is '[s]trong evidence in support of an employment relationship.'"  *Alexander v. FedEx Ground Package Sys., Inc*., 765 F.3d 981, 994 (9th Cir. 2014) (citation omitted).  By contrast, a "mutual termination provision" that provides *both* parties a termination right "is consistent with either an employer-employee or independent contractor relationship."  *Id.* at 995.  Here, the DSP Agreements include *mutual* at will termination provisions.  *See* Chia Decl. ¶ 4, Ex. 1 ¶¶ 13.1, 13.1.2 ("This Agreement shall remain in effect . . . until terminated . . . [b]y either Party or DSP without cause upon fourteen (14) days' prior written notice"); *id.* ¶ 6, Ex. 1 ¶ 11(a).  These provisions confirm that Grubhub did not control Plaintiff.  *See, e.g.*, *Hennighan*, 338 F. Supp. 3d at 1105 (a "mutual termination clause" weighs in favor of independent contractor status); *Desimone*, 2000 WL 1811385, at *15 (summary judgment for defendant was appropriate, in part, because "there was a mutual termination clause"); *Beaumont-Jacques v. Farmers Grp., Inc.*, 217 Cal. App. 4th 1138, 1147 (2013) (same); *Varisco*, 166 Cal. App. 4th at 1107 (same).

### h.      Plaintiff Was Not Required To Wear A Uniform.

Finally, Plaintiff's ability to dictate the manner and means of his performance extended to his attire.  Grubhub did not require Plaintiff to wear a uniform and it was entirely up to Plaintiff to decide

what he wanted to wear.  Evangelis Decl. ¶ 15, Ex. 14 at 132:12–132:16 (DSPs can "wear whatever they want"), 190:22–191:6.  While Grubhub offered Plaintiff a Grubhub t-shirt and hat, Grubhub never once required Plaintiff to don this clothing.  *Id.* ¶ 12, Ex. 11 at 94:18–23 ("Q: Did you have to get a shirt and hat?  A: No."), 133:13–16.  This factor, too, weighs in favor of a finding that Grubhub did not control the manner and means of Plaintiff's services.  *See Desimone*, 2000 WL 1811385, at *12 (defendant did not control plaintiff where defendant "place[d] little constraint on Plaintiffs' or their employees' manner of dress"); *cf. Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 12 (2007) (drivers were employees because FedEx controlled "every exquisite detail of the drivers' performance, including the color of their socks").

**2.    The Secondary *Borello* Factors Weigh Against A Finding Of Employment.**

In addition to the right to control, the secondary indicia enumerated in *Borello* overwhelming demonstrate that Plaintiff was not an employee of Grubhub as a matter of law.

**a.    Plaintiff Was Engaged In A Distinct Business.**

A key secondary factor in the common law classification test is whether the individual who provides the service "is engaged in a distinct occupation or business." *Borello*, 48 Cal. 3d at 350–51. Here, Plaintiff undoubtedly engaged in a distinct business before, during, and after the period in which he performed deliveries through Grubhub.  As one might expect from an independent contractor, Plaintiff provided driving and delivery services for *ten* different companies during 2015–2016, including Grubhub, Uber, Lyft, Postmates, Caviar, Scoobeez, Amazon Flex, DoorDash, Jolt, and TaskRabbit.  *See* Evangelis Decl. ¶ 12, Ex. 11 at 36:11–37:20, 61:23–64:24.  Often, Plaintiff provided services to other companies during the same weeks, days, and even hours in which he used Grubhub. *Id.*; *see also id.* ¶ 23, Ex. 20.  In fact, Plaintiff frequently performed services for other companies while he was in the *middle* of delivering food for an order received through Grubhub.  *Id.* ¶ 23, Ex. 20.  As such, this factor strongly weighs against a finding of employment.  *See Hennighan*, 38 F. Supp. 3d at 1102 ("The fact that [plaintiff] sold insurance on behalf of other companies supports his classification as an independent contractor.").

### b. Plaintiff Accepted A DSP Agreement Defining The Parties' Relationship As An Independent Contractor Relationship.

Although "[t]he label placed by the parties on their relationship is not dispositive," "a worker's express or implied agreement to forego coverage as an independent contractor is 'significant,'" and courts must consider "whether or not the parties believe they are creating the relationship of employer-employee." *Borello*, 48 Cal. 3d at 351, 358.  Here, this factor plainly weighs in favor of independent contractor status because Plaintiff accepted DSP Agreements stating that he intended "to create the relationship of principal and independent contractor . . . not that of employer and employee." Chia Decl. ¶ 4, Ex. 1 ¶ 7.1; *id.* ¶ 6, Ex. 1 ¶ 6(a); Evangelis Decl. ¶ 12, Ex. 11 at 129:11–20; *see also Robinson*, 992 F. Supp. at 1206 ("[W]here the parties enter into a written agreement which . . . states the legal nature of the relationship they intend to create, the agreement is a significant factor."); *Taylor*, 2012 WL 3584942, at *4.  In addition, Plaintiff identified himself as self-employed on his income taxes, further evidence that he was not Grubhub's employee.  *See* Chia Decl. ¶ 4, Ex. 1 ¶ 8.4; *id.* ¶ 6, Ex. 3 ¶ 5(d); Evangelis Decl. ¶ 12, Ex. 11 at 44:3–14, 52:3–16; *see also* Dkt. 89 at 4 ("[T]here is a judicial admission that Plaintiff filed as self-employed.").  Indeed, Plaintiff himself testified that his occupation during this period was "gig economy" work.  *Id.* at 61:23–62:1; *see Hennighan*, 38 F. Supp. 3d at 1100 (the fact that "[a]n individual . . . identifies himself as self-employed on personal tax returns weighs in favor of finding an independent contractor relationship."); *Desimone* 2000 WL 1811385, at *16 (plaintiffs' filing of taxes as self-employed supported independent contractor status).

Moreover, *before* signing up to perform deliveries through Grubhub, Plaintiff filed a DLSE complaint against Postmates alleging employment misclassification.  *See* Evangelis Decl. ¶ 17, Ex. 16. Since then, Plaintiff also has filed a number of other complaints with the DLSE against Grubhub, Caviar, and Scoobeez containing similar allegations of employment misclassification.  *Id.* ¶ 12, Ex. 11 at 190:23–191:9; *id.* ¶ 16, Ex. 15; *id.* ¶ 18, Ex. 17.  For all these reasons, there is ample reason to believe that Plaintiff was particularly familiar with the distinctions between employment and independent contractor relationships when he accepted the DSP Agreements at issue here.

### c. The Performance Of Deliveries Requires Skill.

Courts also consider "the skill required in the particular occupation" under the common law classification test.  *Borello*, 48 Cal. 3d at 350–51.  As Judge Armstrong of the Northern District of

California explained in a driver misclassification case, where, as here, "the primary skills involve driving and delivery," "this factor is neutral or slightly favors a finding that Plaintiffs are [independent contractors]." *Sahinovic*, 2004 WL 5833528, at *7; *see also Brown*, 32 Cal. App. 4th at 202 (affirming order finding that truck drivers were independent contractors because "truck driving . . . requires abilities beyond those possessed by a general laborer").  Indeed, Plaintiff's own testimony confirms that Plaintiff used skill to maximize profit and minimize loss.  *See infra* Part V(A)(2)(h).  Like *Sahinovic*, this Court should hold that the skills required for Plaintiff's work (driving and delivery) are neutral or weigh slightly in favor of independent contractor status.

### d.   Plaintiff Supplied The Instrumentalities And Tools Of His Work.

Yet another factor that weighs against a finding of employment is the fact that Plaintiff "supplie[d] the instrumentalities [and] tools" necessary for the work—namely, a vehicle and smartphone.  *Borello*, 48 Cal. 3d at 350–51; Chia Decl. ¶ 4, Ex. 1 ¶¶ 3.1, 5.2; *id.* ¶ 6, Ex. 1 ¶ 4(d) ("Delivery Partner maintains at its own expense all equipment it deems necessary"); *see also* Evangelis Decl. ¶ 12, Ex. 11 at 98:8–15.  Particularly where, as here, an individual provides her own vehicle, an employment relationship does not exist.  *See Hennighan*, 38 F. Supp. 3d at 1104 (the fact that plaintiff "provid[ed] his own equipment, including his car [and] cell phone," suggested an independent contractor relationship); *Sahinovic*, 2004 WL 5833528, at *8 (delivery couriers were independent contractors because "[p]laintiffs, not [defendant], supplied the equipment used, e.g., the vehicles."); *Brown*, 32 Cal. App. 4th at 203 (truckers were independent contractors because they made "the capital investment in their trucks"); *Mission Ins. Co.*, 123 Cal. App. 3d at 216.

### e.   Plaintiff Performed Delivery Services For A Short Duration Of Time.

The short, intermittent duration of time during which Plaintiff performed deliveries further weighs against a finding of employment.  Most notably, the DSP Agreements that Plaintiff accepted stated that the parties' relationship was "not . . . an uninterrupted service arrangement"; instead, each day during which Plaintiff made himself available was "treated as a separate service arrangement." Chia Decl. ¶ 4, Ex. 1 ¶¶ 3.1, 13.2; *id.* ¶ 6, Ex. 1 ¶ 11(b); *see also Brown*, 32 Cal. App. 4th at 203 (truckers were independent contractors even though, in contrast to the situation here, "[t]he contracts [were] indefinite," because "the work [was] performed and compensated on a job-by-job basis").

Plaintiff also made deliveries through Grubhub for only five short months—completing his first delivery in October 2015 and his last delivery in February 2016. *See* Evangelis Decl. ¶ 12, Ex. 11 at 86:23–87:4, 226:8–10. And, within those five months, Plaintiff received deliveries through Grubhub only intermittently, on 59 days. *See id.* ¶ 4, Exs. 3(a), 3(c); *cf. Hennighan*, 38 F. Supp. 3d at 1104 (working relationship that lasted two years was "neutral" for this factor).

### f.      Grubhub Paid Plaintiff A Flat Per-Job Fee.

It is undisputed that Grubhub compensated Plaintiff on a flat per-job basis for each offer that Plaintiff accepted and completed, plus 100% of any gratuities that Plaintiff received from diners and the true-up modifications and mileage reimbursements discussed above. *See supra* Part III(C); Dkt. 41 at 12 ("Grubhub drivers receive a flat fee for each delivery completed plus gratuities added by customers."); Evangelis Decl. ¶ 14, Ex. 13 at 105:9–106:11. Because Plaintiff's compensation depended on the number of orders he chose to accept, and was not solely a function of the hours he worked, this factor also weighs against an employment relationship. *See Sahinovic*, 2004 WL 5833528, at *4 (finding that plaintiffs were independent contractors, in part, because "[p]laintiffs were paid for job assignments performed"); *Millsap*, 227 Cal. App. 3d at 431.

### g.      Plaintiff's Work Was Not A Part Of The Regular Business Of Grubhub.

Plaintiff characterizes Grubhub as a "food delivery service" in his Complaint, Dkt. 51 ¶ 1; however, that characterization is incorrect. Instead, Grubhub is "a marketplace that connects diners to restaurants." Evangelis Decl. ¶ 14, Ex. 13 at 27:12–28:5; Chia Decl. ¶ 4, Ex. 1 (Grubhub "connects diners with local takeout and delivery restaurants"). In fact, most of Grubhub's business derives from orders placed with restaurants that *already* have their own delivery persons. Evangelis Decl. ¶ 14, Ex. 13 at 27:12–28:5; *id.* ¶ 15, Ex. 14 at 33:3–35:5. Thus, this factor weighs against an employment relationship. *See Sahinovic*, 2004 WL 5833528, at *8; *Brown*, 32 Cal. App. 4th at 202.

### h.      Plaintiff Had An Opportunity To Maximize Profit.

Finally, Plaintiff controlled his profit or loss in at least four ways—another factor that weighs against an employment relationship. *Borello*, 48 Cal. 3d at 355. First, Plaintiff had the right to use his own employees or sub-contractors to perform deliveries on his behalf. *Supra* Part V(A)(1)(f). Second, Plaintiff had the right to (and did) choose for himself where, when, and for how long to perform

deliveries, and how to manage his costs—factors that all bear on Plaintiff's profitability.  *Supra* Parts V(A)(1)(a), (b); *Hennighan*, 38 F. Supp. 3d at 1092 (plaintiff "bore the risk of profit or loss by controlling the amount of time, effort, and financial investment he chose to put into his sales activities").   Third, the DSP Agreements required Plaintiff to carry insurance while performing deliveries, Chia Decl. ¶ 4, Ex. 1 ¶ 10, which "reflects the reality, that Plaintiff[] [was] responsible for [his] profits and losses."  *Desimone*, 2000 WL 1811385, at *15.  And finally, Plaintiff chose to take part in Grubhub's incentive-based promotions, which were based on how many deliveries he accepted. Evangelis Decl. ¶ 12, Ex. 11 at 93:25–94:6, 101:22–102:5 ("Q:  Did you develop a strategy to maximize your profitability while performing services for Grubhub?   A:   To what I thought was the most profitable so I guess, yeah, you could say that.").

*     *     *

The law provides that summary judgment should be granted even if certain *Borello* factors weigh in favor of an employment relationship, so long as "all the factors weighed and considered as a whole" establish that an employment relationship does not exist.  *Arnold*, 202 Cal. App. 4th at 590. Here, *every* factor in the common law analysis weighs against an employment relationship.  Therefore, summary judgment is warranted.  Notably, and in sum, Plaintiff had unfettered autonomy to determine whether and when to perform deliveries, or to refrain from performing deliveries altogether.  Plaintiff had the contractual right to negotiate service fees for his deliveries, accept gratuities, and terminate his relationship with Grubhub at will.  Plaintiff even had authority to hire employees or sub-contractors to deliver on his behalf.  And, perhaps most importantly, Plaintiff could (and did) deliver for other companies, often while *simultaneously* performing deliveries for orders he had accepted from Grubhub. For all of these reasons, this Court should hold that Plaintiff cannot prove an employment relationship and grant summary judgment to Grubhub.

## B.   Plaintiff's Minimum Wage, Overtime, and Expense Reimbursement Claims Each Fail as a Matter of Law.

Even assuming a triable issue of fact exists as to whether Lawson was an employee (it does not), Lawson's minimum wage, overtime, and expense claims—claims for which Plaintiff bears the burden of proof at trial—each fail for their own separate reasons.

1.      **Plaintiff's Minimum Wage and Overtime Claims Fail As A Matter Of Law.**

     a.      **Plaintiff Cannot Prove That Any Of His Delivery Blocks Constituted Entirely Compensable Time.**

California law requires employers to compensate their employees for all "hours worked." *Wheat v. J.B. Hunt Transp., Inc.*, 2016 WL 1397673, at *4 (C.D. Cal. Apr. 5, 2016). This Court previously stated that "the foundation on which Plaintiffs' minimum wage and overtime claims presumably rests" is "that drivers could not engage in personal activities during their shifts and thus that *their entire shifts were compensable*." Dkt. 38 at 12 (emphasis added). The Court also has acknowledged that it previously "dismissed [Plaintiff's] minimum wage and overtime claims because [Plaintiff] had not pleaded specific facts to support [his] contention that [his] waiting time was compensable," and that Plaintiff later rectified "this problem by alleging that *all shift time is compensable work time*." Dkt. 64 (emphasis added); *see also* Dkt. 41 ¶ 14 ("The time . . . spent on shift was all compensable working time."). Now that the case has progressed beyond the pleading stage, however, it has become readily apparent, based on the evidence, that the blocks of time that Plaintiff selected to provide delivery services were *not* all compensable time working for Grubhub.

As the California Supreme Court made clear in *Mendiola v. CPS Security Solutions, Inc.*, not all "on-call time constitutes hours worked," and courts must instead weigh a host of factors to determine whether on-call time is compensable in a given case. 60 Cal. 4th 833, 840–41 (2015). Specifically, "courts considering whether on-call time constitutes hours worked have primarily focused on the extent of the employer's control," and that fact-intensive inquiry turns on "various factors": (1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on the employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time. *Id.* at 840–41. In addition, courts consider whether the "[o]n-call waiting time . . . is spent primarily for the benefit of the employer and its business." *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 523–24 (2009) (on-call time was not compensable where plaintiffs "confirmed they had engaged in some personal activities while on call"); *see also Minnard v. Rotech Healthcare, Inc.*, 2008 WL 2169716, at *14 (E.D. Cal. May 22, 2008);

1  *Silva v. See's Candy Shops, Inc.*, 7 Cal. App. 5th 235, 253 (2016), *review denied* (Mar. 22, 2017).  Here,

2  *none* of these factors support Plaintiff's claim that the entirety of his delivery blocks were compensable:

3  •  <u>On-Premises Living Requirement</u>:  Plaintiff does not claim—and cannot reasonably

4  argue—that he was subject to any type of on-premises living requirement.  *See Owens v. Local No.*

5  *169, Ass'n of W. Pulp & Paper Workers*, 971 F.2d 347, 356 (9th Cir. 1992) (waiting time was not

6  compensable where "Plaintiffs were not subject to an on-premises living requirement").

7  •  <u>Excessive Geographical Restriction</u>:  Plaintiff also cannot reasonably claim that he was

8  subject to "excessive geographical restriction."  *Mendiola*, 60 Cal. 4th at 840–41.  On the contrary,

9  Plaintiff had total discretion to sign up for a Grubhub block, or not.  *See* Evangelis Decl. ¶ 15, Ex. 14

10  at 59:21–64:3; *id.* ¶ 12, Ex. 11 at 102:15–105:23.  And, whenever he signed up for a delivery block, he

11  had discretion to select the geographic zones in which he wanted to perform deliveries.  *See* Evangelis

12  Decl. ¶ 13, Ex. 12 at 87:5–15; *id.* ¶ 15, Ex. 14 at 118:25–120:1.  These zones were often quite large;

13  for instance, San Francisco, San Jose, and (in Plaintiff's case) the South Bay in Los Angeles were each

14  separate zones.  *See* Evangelis Decl. ¶ 6, Ex. 5; *id.* ¶ 15, Ex. 14 at 148:9–150:6.  Under any rationale,

15  zones of such a large scope are not "*excessive* geographical restrictions."  *Mendiola*, 60 Cal. 4th at 841

16  (emphasis added).  In any event, Grubhub did not require Plaintiff to remain within these zones.

17  Plaintiff was free to reject any offer he received and to drive outside the zone or simply "toggle off."

18  Evangelis Decl. ¶ 15, Ex. 14 at 118:7–120:1; *id.* ¶ 14, Ex. 13 at 93:18–24; *id.* ¶ 12, Ex. 11 at 128:25–

19  129:4; *see Henry v. Med-Staff, Inc.*, 2007 WL 1998653, at *8 (C.D. Cal. July 5, 2007) (granting

20  summary judgment for defendant where on-call employees were "free[] . . . to go wherever they wish").

21  •  <u>Whether The Frequency Of Calls Was Unduly Restrictive</u>:  The frequency of food

22  delivery offers that Plaintiff received varied, *see* Evangelis Decl. ¶ 3, Ex. 3(c) but, as Plaintiff himself

23  testified in deposition, Plaintiff personally experienced rest periods between calls, *see id.* ¶ 12, Ex. 11

24  at 144:20–145:7.  In fact, on several occasions, Plaintiff did not complete a single delivery during his

25  multi-hour delivery blocks.  *See id.* ¶¶ 3, Exs. 3(a), 3(c).  Plaintiff also performed services for several

26  other companies during his Grubhub delivery blocks, further evidence that the volume of orders he

27  received was not restrictive.  *See supra* Part V(A)(1)(c).  And, perhaps most importantly, Plaintiff had

28  discretion to turn down any orders he received through Grubhub.  *See* Evangelis Decl. ¶ 14, Ex. 13 at

93:18–24 ("Q: Can [DSPs] reject all of the orders that are offered to them during the time that they've signed up to work?  A: Yes."); *id.* ¶ 12, Ex. 11 at 128:25–129:4 ("Q: But you were free to reject those orders, right? . . . A: Yeah, I suppose.").  Therefore, even if Plaintiff hypothetically received a large volume of offers, he could not possibly have been "restricted" by those requests.  *See Owens*, 971 F.2d at 357 (waiting time was not compensable where "Plaintiffs were not required to accept all call-ins").

- <u>Whether A Fixed Time Limit For Response Was Unduly Restrictive</u>:  As just discussed, Plaintiff could reject any given offer that he received—a fact that destroys any notion that Plaintiff had to complete a given food delivery order within a given amount of time.  Moreover, even when Plaintiff chose to accept a given offer, it was up to Plaintiff to determine the manner by which to respond to that food order request.  *See* Evangelis Decl. ¶ 15, Ex. 14 at 160:5–13 (testifying that Grubhub has no rules or guidelines regarding how soon DSPs are expected to pick up an order after it is placed, or any kind of quality control standards); *see also* Chia Decl. ¶ 4, Ex. 1 ¶ 2.2; *id.* ¶ 6, Ex. 3 ¶ 4(c) (granting DSPs control over "the manner, method or means PDSP use[d] to complete the Delivery Services").

- <u>Whether The On-Call Employee Could Easily Trade On-Call Responsibilities</u>:  In the event that Plaintiff could not or did not want to perform deliveries during a delivery block, he had discretion to refrain from performing deliveries during that time.  Plaintiff could do so either by "try[ing] to swap [his delivery blocks with another driver] and if [he] couldn't, [he could] just tell [GrubHub] [he] couldn't make it and [GrubHub] would say okay."  Evangelis Decl. ¶ 15, Ex. 14 at 21:18–22, 101:13–103:6.  Alternatively, DSPs can simply "notify [Grubhub], and then they can leave," with no repercussion.  *Id.* ¶ 15, Ex. 14 at 100:21–101:6; *see Berry v. Cty of Sonoma*, 30 F.3d 1174, 1184–85 (1994) ("Because there is no policy against trading shifts and no evidence to support a conclusion that trading shifts is difficult, we conclude the coroners can easily trade shifts.").

- <u>Whether Plaintiff Actually Engaged In Personal Activities</u>:  Finally, it is undisputed that Plaintiff engaged in personal activities during his delivery blocks, including by performing deliveries for other companies.  *See supra* Part V(A)(1)(c).  Indeed, Plaintiff made himself available to perform delivery services for Postmates and Caviar on more than 40 occasions during the five months in which he used Grubhub.  Evangelis Decl. ¶ 23, Ex. 20.

For all of these reasons, Plaintiff cannot prove that his "entire shifts were compensable" under California's overtime and minimum wage laws.  Dkt. 38 at 12.

### b. Plaintiff Cannot Prove That He Experienced An Overtime Violation During The Week Of November 30, 2015.

In the operative complaint, as well as in Plaintiff's deposition, Plaintiff identified a single, solitary week in which he claims to have experienced an overtime violation—the week of November 30, 2015.[3]  Dkt. 41 ¶ 23; Evangelis Decl. ¶ 12, Ex. 11 at 190:23–24, 197:14–198:20, 200:16–201:19, 203:13–24, 227:21–228:5.  To be sure, the evidence does, in fact, show that Plaintiff signed up for delivery blocks totaling 44.75 hours during this week.  *See* Evangelis Decl. ¶ 3, Ex. 3(c).  However, for each and every reason discussed above, *see supra* Part V(B)(1)(a)—the absence of an on-premises living requirement, the absence of excessive geographical limitations, the absence of any unduly restrictive call frequencies or fixed response limits, Plaintiff's ability to trade delivery blocks with other DSPs or notify Grubhub of his unavailability, and Plaintiff's ability to engage in personal activities or work for other companies during these blocks—Plaintiff cannot prove that the *entire* delivery blocks that he signed up for during the week of November 30, 2015, all constitute compensable time.

In fact, the evidence regarding Plaintiff's use of Grubhub during the week of November 30, 2015, is particularly damaging to his claim of overtime.  Specifically, Plaintiff logged into *Caviar's* application to perform deliveries for *Caviar* for ████████████ during that week.  *See* Evangelis Decl. ¶ 23, Ex. 20.  In addition, Plaintiff was "toggled unavailable" during at least one delivery block that week.  *See id.* ¶ 9, Ex. 8.  If found to be non-compensable, these segments of time *alone* bring Plaintiff's weekly number of "hours worked" below 40 hours for the week.  Furthermore, Plaintiff only spent approximately 27 hours during the week of November 30, 2015 performing actual delivery services through Grubhub; during the remainder of his delivery blocks, Plaintiff was not performing an actual delivery.  *See id.* ¶ 4, Ex. 3(c).  Even worse, Plaintiff—who bears the burden of proving an overtime violation, and thus "must produce specific evidence" to support his claim, *Bhan*, 929 F.2d at

---

[3]  Curiously, the only week that Plaintiff claims to have worked a sufficient number of hours to warrant overtime pay is the week beginning November 30, 2015, less than two weeks before Plaintiff joined this case.  *See* Dkt. 15.  Prior to this week, the highest number of delivery block hours for which Plaintiff signed up was 27 hours.  *See* Evangelis Decl. ¶ 4, Exs. 3(a), 3(c).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:15-CV-05128-JSC

Gibson, Dunn &
Crutcher LLP

1409—cannot even recall what he was doing during his delivery blocks that week.  *See* Evangelis Decl. ¶ 12, Ex. 11 at 165:23–166:5 ("Q. Okay. What were you doing between 6:50 and 9:23 on December 2nd?  A: I don't remember.  Q. Do you have any idea?  A. No.  Q. How would we figure out what you were doing between 6:50 and 9:23 on December 2nd, 2015?  A. I don't know."); *id.* at 167:24–168:3 ("Q. Do you have any vivid memories about any other days that you were doing deliveries for GrubHub other than the few that you recall this afternoon? A: No, only those first two are memorable.").

*        *        *

In sum, Plaintiff's minimum wage and overtime claims are doomed because Plaintiff cannot present any plausible factual or legal support that his *entire* delivery blocks are compensable.  The overwhelming evidence in the record requires summary judgment in Grubhub's favor on these claims.

## 2.    Plaintiff's Expense Reimbursement Claim Fails as a Matter of Law.

Grubhub is also entitled to summary judgment as to Plaintiff's expense reimbursement claim— a claim that seeks only mileage-related expenses[4]—for three independent reasons.  First, Plaintiff cannot prove that his actual expenses exceeded the amount that Grubhub reimbursed Plaintiff for mileage (50 cents per mile) because Plaintiff does not know and has no way of learning what his actual expenses were.  Second, even if Plaintiff could prove that his actual expenses exceeded the mileage reimbursement that he received from Grubhub, Plaintiff cannot prove that those expenses were incurred to advance Grubhub's interests, as opposed to those of its competitors or Plaintiff himself, particularly because Plaintiff simultaneously performed driving and delivery services for other companies.  And finally, Plaintiff cannot prove that Grubhub knew, or had reason to know, that Plaintiff was incurring expenses that were not being fully compensated because Plaintiff never once notified Grubhub that he believed its 50-cent per mile reimbursement was insufficient to cover his actual expenses.

### a.    Plaintiff Cannot Prove That Grubhub Reimbursed Plaintiff At An Amount That Was Less Than His Actual Mileage Expenses.

In *Gattusso v. Harte-Hanks Shoppers, Inc.*, the California Supreme Court found that Labor Code section 2802 does not "restrict[] the methods that an employer may use to calculate

---

[4]   In a recent discovery-related brief, Plaintiff informed both Grubhub and the Court that "Plaintiff seeks reimbursement only for mileage."  *See* Dkt. 88 at 3; *see also id.* at 5 ("Plaintiff is content to seek expenses solely based on his mileage").

Gibson, Dunn & Crutcher LLP

reimbursement" for employees' vehicle-related expenses.  42 Cal. 4th 554, 570 (2007).  Accordingly, an employer may satisfy its obligations under section 2802 in one of three ways—(1) by reimbursing an employee her actual expenses, a "burdensome" method that requires the employee to "keep detailed and accurate records of amounts spent," (2) by adopting a "mileage reimbursement method" by which the employee "need only keep a record of the number of miles driven" and the employer then "multiplies the work-required miles driven by a predetermined amount that approximates the per-mile cost of owning and operating an automobile," or (3) by providing the employee a "lump-sum payment," by which an "employer merely pays a fixed amount for automobile expense reimbursement."  *Id.* at 567–71.  However, "[i]f the employee can show that the reimbursement amount that the employer has paid is less than the actual expenses that the employee has necessarily incurred for work-required automobile use (as calculated using the actual expense method), the employer must make up the difference."  *Id.* at 569.  In other words, "any challenge to Defendant['s] [] reimbursement method would require Plaintiff[] to show that the mileage reimbursement was less than [his] actual expenses . . . ."  *Ortiz v. CVS Caremark Corp.*, 2014 WL 1117614, at *4–5 (N.D. Cal. Mar. 19, 2014).[5]

Here, it is undisputed that Grubhub used the second reimbursement option set forth in *Gattuso*, by reimbursing Plaintiff and other DSPs for their mileage at a rate of 50 cents per mile for each straight-line mile between the restaurant and the diner.[6]  *See* Evangelis Decl. ¶ 3, Ex. 2 at GH000488; *id.* ¶ 13, Ex. 12 at 66:8–67:7; *id.* ¶ 14, Ex. 13 at 105:9–109:15; *id.* ¶ 12, Ex. 11 at 187:9–12 ("Q:  Did you receive payments for mileage from Grubhub?  A:  There were what they called mileage in the pay statements.

---

[5]  As the California Court of Appeal has held, a plaintiff cannot prevail under section 2802 merely by showing that the mileage formula that an employer uses is less than the IRS mileage rate, given that "liability under section 2802 depends not on how an employer established its mileage reimbursement rate, but on whether the reimbursement provided is 'sufficient to fully reimburse the employees for all expenses actually and necessarily incurred.'"  *Christensen v. CVS Pharm., Inc.*, 2017 WL 118030 (Jan. 12, 2017) (unpublished) (citation omitted) (rejecting argument that mileage policy was "facially invalid" because it was set "10 to 15 cents below the IRS rate").

[6]  Grubhub reimbursed DSPs in this manner for each and every delivery, irrespective of whether the DSP took one trip or separate trips to complete multiple orders.  For example, if a DSP were to pick up two food orders from the same restaurant and deliver those two food orders to diners who lived five miles away from the restaurant and in close geographic proximity to one another, Plaintiff would receive $2.50 for one order (50 cents per mile multiplied by 5 miles) and $2.50 for the second order (same) for a total of $5.00, even if the DSP made only one trip from the restaurant to both of the diners.  *See* Evangelis Decl. ¶ 3, Ex. 2 at GH000488.  This reimbursement policy can, and routinely does, *over*-reimburse drivers' expenses.

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT – CASE NO. 3:15-CV-05128-JSC

Gibson, Dunn &
Crutcher LLP

They did include that."). Accordingly, the burden rests on Plaintiff "to show that the mileage reimbursement was less than [his] actual expenses." *Ortiz*, 2014 WL 1117614, at *5. As Plaintiff readily admits, however, Plaintiff does not have *any idea* what his actual expenses were.

As Plaintiff explained during his deposition, Plaintiff has "never attempted to quantify the amount of expenses [he] claim[s] to have incurred in connection with the work [he] performed for GrubHub[.]" Evangelis Decl. ¶ 12, Ex. 11 at 202:18–25; *id.* at 71:15–72:18 ("Q: Did you keep track of mileage at any time while you were driving for GrubHub? A: No."); *id.* at 188:15–189:6. As Plaintiff also conceded, Plaintiff cannot reconstruct those actual expenses now, after the fact, because Plaintiff "didn't keep track of expenses back then like [he] do[es] now." *Id.* at 188:20–189:6; *see also id.* at 71:15–72:18. Under these circumstances, where there is a complete absence of evidence showing that Plaintiff's actual expenses exceeded the mileage payment that Plaintiff received, and Plaintiff has admitted that he *cannot* meet his burden of proof, summary judgment is warranted. *See Federico v. Overland Contracting, Inc.*, 2013 WL 5516187, at *22 (N.D. Cal. Oct. 4, 2013) (dismissing expense claim on summary judgment because "Plaintiff [] submitted no [] evidence in support of this claim").

### b. Plaintiff Cannot Prove That His Expenses Were Incurred In Direct Consequence Of His Discharge Of Duties For Grubhub.

Even if Plaintiff knew what his actual mileage-related expenses were or some basis by which he could calculate those mileage-related expenses (which he cannot, by his own admission), Plaintiff still would need to demonstrate that Plaintiff incurred those expenses "in direct consequence of the discharge of his . . . duties" to Grubhub. Cal. Lab. Code § 2802(a); *see also Aguilar v. Zep Inc.*, 2014 WL 4245988, at *16 (N.D. Cal. Aug. 27, 2014). It cannot reasonably be disputed that an expense that a putative employee has incurred on behalf of *a competitor* is not incurred in "direct consequence" of the putative employee's employment-related duties. *See Cassady v. Morgan, Lewis, & Bockius LLP*, 145 Cal. App. 4th 220, 235, 237 (Cal. Ct. App. 2006) ("No public policy would be served by requiring employers to indemnify for expenses attributable to an employee's conduct while working for a different employer.").

Here, Plaintiff logged into Postmates and Caviar to receive delivery and food order requests more than 40 times during his Grubhub delivery blocks. Evangelis Decl. ¶ 23, Ex. 20. On many of

these occasions, Plaintiff completed deliveries for Postmates and Caviar simultaneously while completing deliveries for orders he had received through Grubhub. *Id.* And yet, by Plaintiff's own admission, Plaintiff has never "attempted to quantify what portion of [his] expenses [were] associated with work [he] provided to GrubHub versus Postmates versus Caviar" and does not have any documents that would enable him to do so. *Id.* ¶ 12, Ex. 11 at 188:15–189:6. This dooms his claims; otherwise, if Plaintiff were not required to prove which alleged mileage expenses were incurred in working for which company, Plaintiff could recover his alleged mileage expenses from all *three* companies (not to mention, the seven other companies for whom he provided delivery and driving services). That cannot be, and is not, the law.

### c.   Plaintiff Cannot Prove That Grubhub Knew Or Had Reason To Know That Plaintiff Incurred Unreimbursed Business Expenses.

Finally, Grubhub is entitled to summary judgment on Plaintiff's expense reimbursement claim because Plaintiff cannot produce any evidence showing that Grubhub knew, or had reason to know, that Plaintiff was allegedly incurring expenses for which he was not being fully reimbursed.

As federal courts across the State have explained, "[a]bsent evidence Defendant knew or had reason to know that Plaintiff had incurred business-related expenses" that were not being reimbursed, "Defendant is not liable for failure to reimburse Plaintiff for those expenses as a matter of law." *Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1001 (S.D. Cal. 2014) (citation omitted). As discussed above, Grubhub reimbursed Plaintiff 50 cents per mile for each straight-line mile between a restaurant and a diner. *See supra* Part V(B)(2)(a). And, as further discussed above, Plaintiff could receive reimbursement for more miles than he actually traveled if, for example, he "stack[ed]" orders and delivered multiple orders from the same restaurant at the same time. Evangelis Decl. ¶ 12, Ex. 11 at 144:14–19; *see supra* at n.6. Accordingly, Plaintiff can prevail on his claim only if he proves that Grubhub knew, or had reason to know, that the mileage reimbursement amount that it was providing to Plaintiff was insufficient to cover Plaintiff's actual mileage expenses.

Plaintiff cannot make this showing. Indeed, Plaintiff has conceded that he never once alerted Grubhub that he believed his mileage reimbursement payments to be insufficient. *See* Evangelis Decl. ¶ 12, Ex. 11 at 187:9–12 ("Q: Did you ever tell anybody at Grubhub that you believed you were entitled

to more reimbursement for mileage?  A: I don't think so."); *see also id.* at 202:22–25.  Because Grubhub had an expense reimbursement policy in place and Plaintiff chose not to inform Grubhub that he believed he had incurred additional mileage-related expenses, Plaintiff's expense reimbursement claim fails as a matter of law.  *See Chavez v. Lumber Liquidators, Inc.*, 2012 WL 1004850, at *10 (N.D. Cal. Mar. 26, 2012) ("[W]hether the employee actually sought reimbursement from [Defendant] for the expense[s] . . . appears to be critical."); *Hammitt*, 19 F. Supp. 3d at 989.

## C.   Plaintiff's Derivative PAGA and UCL Claims Fail For The Same Reasons As Plaintiff's Labor Code Claims.

### 1.   Plaintiff Lacks Standing To Assert A PAGA Claim.

California's PAGA statute permits only an "aggrieved employee" to assert a PAGA claim on behalf of the State of California.  *See* Cal. Labor Code § 2699(a); *see also Iskanian v. CLS Trans. Los Angeles, LLC*, 59 Cal. 4th 348, 387 (2014).  Because Plaintiff cannot prove that he was an "employee" of Grubhub, *see supra* Part V(A), or that he personally has experienced a Labor Code violation for any pay period, *see supra* Part V(B), this Court must grant summary judgment as to Plaintiff's PAGA claim (Count V).  *See, e.g., Holak v. K Mart Corp.*, 2015 WL 2384895, at *6 (E.D. Cal. May 19, 2015) (granting summary judgment in favor of defendant on PAGA claim "[b]ecause Plaintiff [was] not aggrieved by any of the specific Labor Code violations alleged in her PAGA claim").

### 2.   Plaintiff's UCL Claim Fails Because Grubhub's Conduct Was Not Unlawful.

Because Plaintiff's UCL claim "requires a violation" of the "borrow[ed]" predicate statutes, "[a] defense to the underlying offense is a defense under the [UCL]."  *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057 (N.D. Cal. 2000); *see also Alonzo v. Maximus, Inc.*, 832 F. Supp. 2d 1122, 1137 (C.D. Cal. 2011) ("Plaintiffs' UCL claim 'stand[s] or fall[s] depending on the fate of the antecedent substantive causes of action.'") (citation omitted, brackets in original).  Accordingly, Plaintiff's UCL claim fails for the same reasons that his predicate claims fail.

## VI.   CONCLUSION

For the reasons discussed above, Grubhub respectfully requests that the Court grant summary judgment for Grubhub.

Gibson, Dunn & Crutcher LLP

1

2 Dated:  May 25, 2017      Respectfully submitted,

3               THEANE EVANGELIS
                GIBSON, DUNN & CRUTCHER LLP

4

5             By: /s/ *Theane Evangelis*

6                Theane Evangelis

7            Attorneys for Defendants Grubhub Holdings Inc.
            and Grubhub Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## __ECF ATTESTATION__

2
  I, Dhananjay S. Manthripragada, hereby attest that concurrence in the filing of this document has been obtained from Theane Evangelis.

3

4

Dated:  May 25, 2017     By:  */s/ Dhananjay S. Manthripragada*

5
                  Dhananjay S. Manthripragada

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28