SHANNON LISS-RIORDAN (State Bar No. 310719)
(sliss@llrlaw.com)
THOMAS FOWLER, *pro hac vice*
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

MATTHEW D. CARLSON (State Bar No. 273242)
(mcarlson@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (415) 630-2651
Facsimile:  (617) 994-5801

Attorneys for Plaintiff RAEF LAWSON

# UNITED STATES DISTRICT COURT
## FOR THE CALIFORNIA NORTHERN DISTRICT

| | |
|---|---|
| RAEF LAWSON, individually and on behalf of all other similarly situated individuals, and in his capacity as Private Attorney General Representative<br><br>              Plaintiff,<br><br>v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>              Defendants. | Case No. 15-cv-05128 JSC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:     June 29, 2017<br>Time:               9:00 a.m.<br>Courtroom:        F<br><br>BEFORE THE HON. JACQUELINE SCOTT CORLEY |

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................... 1

II.    FACTUAL BACKGROUND ......................................................................... 3

III.   ARGUMENT ................................................................................................. 8

       A.    Legal Standard ................................................................................... 8

       B.    The Court Must Deny GrubHub's Motion for Summary Judgment
             That Plaintiff Was an Independent Contractor Under California Law ................. 9

             i.    Ample Evidence Exists That GrubHub Had the Right To Control
                   The Manner and Means of Plaintiff's Work ...................................... 11

             ii.   GrubHub's Arguments That Plaintiff Was Free From the
                   Company's Control Do Not Entitle it to Summary Judgment ........................ 15

             iii.  Evidence in the Record Also Supports a Finding of Employment
                   Status Under Borello's Secondary Factors ........................................ 19

       C.    The Court Should Deny GrubHub's Motion for Summary Judgment
             with Respect to Plaintiff's Claims for Expense Reimbursement,
             Minimum Wage, and Overtime ........................................................... 23

             i.    GrubHub Does Not Reimburse Drivers for Their Expenses, in
                   Violation of Labor Code § 2802 ................................................. 23

             ii.   The Record Contains Evidence that Plaintiff Suffered Minimum
                   Wage and Overtime Violations .................................................. 24

IV.    CONCLUSION .............................................................................................. 28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

Air Couriers Int'l v. Employment Dev. Dep't.,
    150 Cal. App. 4th 923 (Cal. Ct. App. 2007) .............................................................. 14, 15, 18

4

5

Alexander v. FedEx Ground Package Sys., Inc.,
    765 F.3d 981 (9th Cir. 2014).................................................................................. passim

6

Armenta v. Osmose, Inc.,
    135 Cal. App. at 324 ...................................................................................................... 25

7

Augustus v. ABM Sec. Servs., Inc.,
    135 Cal. App. 4th 314 (Cal. App. Dec. 29, 2005)......................................................... 27

8

9

Ayala v. Antelope Valley Newspapers, Inc.,
    59 Cal. 4th 522 (2014)................................................................................................... 11

10

Clincy v. Galardi S. Enterprises, Inc.,
    808 F. Supp. 2d 1326 (N.D. Ga. 2011) ......................................................................... 21

11

12

Cotter v. Lyft, Inc.,
    60 F. Supp. 3d 1067 (N.D. Cal. 2015) .................................................................. passim

13

Coverall North America, Inc. v. Division of Unemployment Assistance,
    447 Mass. 852 (2006)............................................................................................... 17, 19

14

Dynamex Operations W., Inc. v. Superior Court,
    2014 WL 5173038 (Cal. Ct. App. Oct. 15, 2015) ......................................................... 10

15

16

Estate of Perry v. Green Card, Inc.,
    2006 WL 3479056 (R.I. Super. Nov. 30, 2006)............................................................. 12

17

Estrada v. FedEx Ground Package Sys., Inc.,
    154 Cal. App. 4th 1 (2007) .............................................................................. 9, 20, 21

18

Gattuso v. Harte-Hanks Shoppers, Inc.,
    42 Cal. 4th 554 (2007) ............................................................................................. 23, 24

19

20

Gauntlett v. Illinois Union Ins. Co.,
    2012 WL 4051218 (N.D. Cal. Sept. 13, 2012) ............................................................... 8

21

Grant v. Woods,
    71 Cal. App. 3d 647 (Cal. Ct. App. 1977) .................................................................... 22

22

23

Herman v. Express Sixy-Minutes Delivery Serv., Inc.,
    161 F.3d 299 (5th Cir. 1998)......................................................................................... 21

24

Hurtado v. Raly Dev., Inc.,
    2012 WL 3687488 (S.D. Fla. Aug. 27, 2012).............................................................. 16

25

26

JKH Enterprises, Inc. v. Dep. of Indus. Relations,
    142 Cal. App. 4th 1046 (Cal. Ct. App. 2006) ............................................. 14, 15, 18, 20

27

28

JustMed, Inc. v. Byce,
  600 F.3d 1118 (9th Cir. 2010)................................................................................. 12

Keller v. Miri Microsystems LLC,
  781 F.3d 799 (6th Cir. 2015)................................................................................... 21

Martinez v. Combs,
  49 Cal. 4th 35 (2010) ................................................................................... 3, 8, 10

Martins v. 3PD, Inc.,
  2013 WL 1320454 (D. Mass. Mar. 28, 2013) ......................................................... 9

Mendiola v. CPS Sec. Sols., Inc.,
  60 Cal. 4th 833 (2015) ........................................................................................... 26

Morillion v. Royal Packing Co.,
  22 Cal. 4th 575 (2000) ........................................................................................... 26

Narayan v. EGL, Inc.,
  616 F.3d 895 (9th Cir. 2010)..................................................................... 2, 9, 20, 21

O'Connor v. Uber Technologies, Inc.,
  82 F. Supp. 3d 1133 (N.D. Cal. 2015) ........................................................... passim

O'Connor v. Uber Technologies, Inc.,
  2015 WL 5138097 (N.D. Cal. Sept. 1, 2015)……………………………………………...11

Ruiz v. Affinity Logistics Corp.,
  754 F.3d 1093 (9th Cir. 2014).................................................................................. 19

S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,
  48 Cal. 3d 341 (1989) .................................................................................... passim

Sakacsi v. Quicksilver Delivery System, Inc.,
  2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) ....................................................... 21

Sales v. Bailey,
  2014 WL 3897726 (N.D. Miss. Aug. 8, 2014) ................................................. 12, 21

Santa Cruz Transp., Inc. v. Unemployment Ins. Appeals Bd.,
  235 Cal. App. 3d 1363 (Cal. Ct. App. 1991) ........................................................... 9

Scantland v. Jeffry Knight, Inc.,
  721 F.3d 1308 (11th Cir. 2013)............................................................................... 22

See's Candy Shops, Inc. v. Superior Court,
  210 Cal. App. 4th 889 (2012) ................................................................................. 27

Slayman v. FedEx Ground Package Sys., Inc.,
  765 F.3d 1033 (9th Cir. 2014)................................................................................. 18

Solis v. Int'l Detective & Protective Serv., Ltd.,
  819 F. Supp. 2d 740 (N.D. Ill. 2011) ...................................................................... 12

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

Stuart v. RadioShack Corp.,
   641 F. Supp. 2d 901 (N.D. Cal. 2009) ................................................... 24

Tan v. GrubHub, Inc.,
   171 F. Supp. 3d 998 (N.D. Cal. 2016) ................................................... 24

Tapager v. Birmingham,
   75 F. Supp. 375 (N.D. Iowa 1948) ......................................................... 12

Varisco v. Gateway Sci. & Eng'g, Inc.,
   166 Cal. App. 4th 1099 (Cal. App. Ct. 2008) ......................................... 21

Yellow Cab Coop., Inc. v. Workers' Comp. Appeals Bd.,
   226 Cal. App. 3d 1288 (Cal. Ct. App. 1991) ............................................ 9

**Statutes**

Cal. Lab. Code § 1194 ..................................................................................... 3

Cal. Lab. Code § 1197 ..................................................................................... 3

Cal. Lab. Code § 1198 ..................................................................................... 3

Cal. Lab. Code § 2698 ................................................................................. 3, 27

Cal. Lab. Code § 2802 ............................................................................. passim

Cal. Lab. Code § 510 ....................................................................................... 3

Cal. Lab. Code § 554 ....................................................................................... 3

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

## I.    INTRODUCTION

Defendants GrubHub Holdings Inc. and GrubHub Inc. (collectively "GrubHub") are a food ordering and delivery service, which dispatches drivers and bike couriers through a mobile phone application or through GrubHub's website to deliver food to its customers around the country.  Plaintiff Raef Lawson worked as a delivery driver from October 2015 to February 2016, delivering food to GrubHub's customers in Los Angeles, California. GrubHub requires its drivers to be available to accept deliveries during shifts they are signed up for, to accept a certain percentage of delivery assignments, and to generally remain in the areas in which they are signed up to work.  GrubHub employs individuals (dispatchers, who were later called "operation specialists") who monitor the progress of deliveries, assign or reassign deliveries to drivers based on their assessment of which drivers will best be able to perform them, and keep in touch with the drivers regarding their deliveries.  If a driver fails to perform or fulfill GrubHub's requirements to the company's satisfaction, or engages in behavior that GrubHub decides is not appropriate, GrubHub may unilaterally, in its discretion, terminate the driver. The job of a GrubHub delivery driver is a low-skilled job, and no prior experience or education is required, other than having a driver's license and passing a background check.  The drivers are not contracted to perform a single, or limited, amount of work; instead, their contracts are ongoing unless they quit or GrubHub terminates them.  GrubHub unilaterally determines the amount the drivers are paid, which is generally on an hourly basis.  GrubHub drivers have no way to distinguish themselves to customers so as to build their own customer base; the work they perform is for GrubHub's customers, not their own customers.  And the work that the drivers perform is at the very core of GrubHub's business.

Notwithstanding these facts, GrubHub has disclaimed any employment relationship with its drivers, including Mr. Lawson, instead classifying them as independent contractors.  It has now moved for summary judgment, seeking a legal ruling from this Court that Mr. Lawson was an independent contractor as a matter of law.  The Court must deny this motion.  At the very least, there are a number of factual issues to be weighed, precluding summary judgment.  At the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

trial scheduled to begin on September 5, 2017, Plaintiff intends to present a full record of evidence that should persuade the Court that GrubHub has not met its burden to establish that he was an independent contractor.[1]  In this memorandum, Plaintiff summarizes a portion of that evidence, from which the Court should recognize that it cannot rule on the papers that GrubHub has carried its burden.

Indeed, in two other recent similar high-profile cases, courts in this district have denied summary judgment to companies which, like GrubHub, have classified as independent contractors their entire workforces who perform the company's core service (transportation), based primarily on the arguments that they have merely served as technological intermediaries between customers and drivers operating "independent" businesses, and the drivers are free to work when they want and work for competitors as well.  In those cases – against "on-demand" "ride-sharing" companies Uber and Lyft – Judge Chen and Judge Chhabria both rejected the companies' contentions that summary judgment was warranted in their favor on employee status. See O'Connor v. Uber Technologies, Inc., 82 F. Supp. 3d 1133 (N.D. Cal. 2015); Cotter v. Lyft, Inc., 60 F. Supp. 3d 1067 (N.D. Cal. 2015).  Here, Plaintiff's argument that GrubHub has misclassified him is arguably even stronger than in those cases, where his work was performed on shifts, unlike with Uber and Lyft (where drivers literally log in and out to work whenever they want).

While GrubHub attempts to mask the reality of its employment relationship with drivers like Mr. Lawson, courts have repeatedly held that "[t]he label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced." Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 989 (9th Cir. 2014). In order to determine whether a worker is an employee or an independent contractor, the Court must apply the test set forth in

---

[1]      "Once the employee establishes a prima facie case [that he performed services for the employer], the burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor." Narayan v. EGL, Inc., 616 F.3d 895, 900 (9th Cir. 2010).

Martinez v. Combs, 49 Cal. 4th 35 (2010).  That test establishes three means by which a worker may be classified as an employee; most commonly (including in Uber and Lyft), courts have focused on the third method of establishing employee status, which is the common law test set forth in S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341 (1989).  Under the Borello test, there are a number of factors to be weighed, with the most important factor being "the right to control the manner and means" of the work being performed.  Id. at 350.

As set forth further below, the Court must deny GrubHub's motion for summary judgment, as there is ample evidence from which the Court may determine at trial that GrubHub has not carried its burden to prove that Mr. Lawson was engaged in his own independent delivery business as an independent contractor.  Furthermore, the Court should deny GrubHub's motion for summary judgment with respect to Mr. Lawson's wage claims that stem from his misclassification, as the record contains evidence that: (1) GrubHub does not reimburse drivers for their expenses (violating Cal. Lab. Code § 2802); (2) at times, Mr. Lawson received less than minimum wage (violating Cal. Lab. Code §§ 1197 and 1194); and (3) GrubHub does not pay overtime (violating Cal. Lab. Code §§ 1194, 1198, 510, and 554), which Mr. Lawson was entitled to receive.  Thus, Mr. Lawson should be permitted to proceed to trial to prove that he is an aggrieved employee under these statutory provisions and so can pursue a representative claim under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 et seq.[2]

## II.    FACTUAL BACKGROUND

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[2]     As GrubHub urged in its CMC statement filed on April 27, 2017 (Dkt. 87), Plaintiff has now agreed that the upcoming trial in September will be limited to the question of whether Mr. Lawson is an aggrieved employee and thus can pursue his representative PAGA claims on behalf of the state and other GrubHub drivers in California.  The parties have agreed to defer until after this trial questions related to how the Court should manage the representative claims on behalf of other GrubHub drivers.  The parties are in the process of submitting that stipulation to the Court.

Ex. 1; Ex. 2 at. 27-29.[3]  Plaintiff Raef Lawson worked as a delivery driver for GrubHub from October 2015 to February 2016 in Los Angeles, California. Ex. 16 at 99. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Ex. 3 at 54.[4]

In order to work for GrubHub, drivers apply online and submit proof of insurance and driver's license. Ex. 10. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 80; Ex. 10 at 2-3.

Drivers must pass a background test. Ex. 2 at 80; Ex. 7 at 34-35; Ex. 10 at 2-3. ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 7 at 30. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 2 at 96; Ex. 3 at 132-34. ▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 2 at 152.

GrubHub supervises the quality of the drivers' work. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Ex. 3 at 112-13. ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3]  All exhibits cited herein (with the exception of exhibits submitted by GrubHub) are to the Declaration of Shannon Liss-Riordan and hereinafter will be cited as "Ex."

[4] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮ Ex. 2 at 118-22.  As Los Angeles General Manager Jeff Smith explained, ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. 2 at 143.

1

██████████████████████████████████████████ Ex. 3 at 112-16. ████████████████

2

██████████████████████████████████████████████████████████████████

3

██████████████████████████████████████████████████████████████

4

██████████████████ Ex. 2 at 82; Ex. 3 at 106-07; Ex. 7 at 158; Ex. 8. GrubHub retains the right to

5

terminate its drivers for any reason, including any action that GrubHub, in its sole discretion,

6

considers to constitute a breach of GrubHub's agreement. Ex. 4 at ¶¶ 13.1.1 and 13.1.2.

7

GrubHub's agreement with its drivers including Plaintiff contains a Service Level

8

Agreement, which sets out various requirements the drivers are required to follow, such as:

9

10    • Has downloaded the necessary driver tools to fulfill GrubHub delivery orders.

11    • Sign up for weekly delivery blocks either through the GrubHub driver app or
        another means.

12    • When delivery block starts, provide status update to dispatcher that you are "on
        call" via GrubHub driver tools.

13    • ***Should not reject incoming orders or be otherwise unavailable to receive***

14      ***incoming orders during any scheduled delivery block. Exceptions may be made***
        ***for extenuating circumstances if you timely communicate such circumstances***

15      ***to the dispatcher.***
      • Communicate with GrubHub's Care Team and/or dispatcher to notify them of

16        potential diner issues.
      • While this Agreement is in effect, you must have no more than one moving

17        violation in 24 months.

18
Ex. 4 at Appendix A (emphasis added). During the time Plaintiff worked for GrubHub, drivers

19

were terminated for reasons such as GrubHub having decided in its discretion that they had not

20

accepted enough orders, had performed deliveries too slowly, had received complaints from

21

customers or restaurants, had engaged in unprofessional behavior, or had been dishonest. Ex. 6.

22

23    ████████████████████████████████████████████████

24  ██████████████████████████████ Ex. 2 at 67; Ex. 9 at 35. ██████████████

25  ██████████████████████████ Ex. 2 at 61-69. ████████████████████

26  ██████████████████████████████████████████████████████████

27  ██████████████████████████████████████████████████

28  ██████████████████████████████████████████████████

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

████████████████████████████████████████████████. Ex. 2 at 61-66; Ex. 11 at 132-36.  GrubHub has used an online employee sign-up program (called "WhenIWork") to schedule drivers for their blocks of time. Ex. 20. ████████████████████████████████ ██████████████████████████████████████████ ████████████████ Ex. 2 at 22. Drivers who do not show up to work and make themselves available when they are scheduled for their blocks are subject to termination, and GrubHub has indeed terminated drivers for not being available and taking deliveries during their blocks. Ex. 6 at GH000543. In fact, Plaintiff himself was terminated for this reason – not being available to work on his scheduled blocks. Ex. 5.[5]

████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 2 at 68-69.  For example, Los Angeles General Manager Jeff Smith[6] testified that ██ ████████████████████████████████████████████ ████████████████████████████████████████████████████████. Ex. 2 at 68-69. ████████████████████████████████████████████ ████████████████████████████████████████████████████████. Ex. 2 at 102; Ex. 16 at 103-04.

GrubHub generally pays the drivers an hourly rate for the hours they are signed up to work on blocks. Ex. 4 at Service Fees and Equipment Appendix. [7] ████████████████████████

---

[5]     After Plaintiff was terminated by GrubHub in February 2016, he twice applied to work for GrubHub again – once in March 2016 and again in April 2017. Dkt. 105-3; Ex. 16 at 136-39. GrubHub has not permitted Plaintiff to work again since his termination.  Los Angeles General Manager Jeff Smith testified that ████████████████████████████████████ ████████████████████████ Ex. 2 at 190-92.

[6]     Rudy Mendoza served as the Los Angeles General Manager until November 2015, followed by Jeff Smith who took over that position after Mendoza and holds it today.  Ex. 19, GrubHub's Response to Int. 6; Ex. 11 at 12.

[7]     ██████████████████████████████████████████████████ ████████████████. Ex. 4 at Amendment 1; Ex. 2 at 207. ████████████████ ████████████████████████████████████ Ex. 2 at 174-75.

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

1

2

██████████████████████████████████████████████████████████

██████████████████████████████ [8] Ex. 4 at Service Fees and Equipment
3

4
Appendix; Ex. 2 at 175. In order to meet this minimum percentage, Mr. Lawson has explained

5
that drivers need to try to accept nearly every order that is offered to them (because at times, the

6
app does not alert them to all deliveries sent to them, and sometimes they are sent multiple

7
deliveries at once, which they cannot accept at the same time).  Ex. 16 at 144, 226-27. Drivers

8
need to accept this percentage of deliveries, not only to receive the minimum guaranteed hourly

9
rate, but also to avoid being terminated; GrubHub has terminated drivers who have not met this

10
minimum acceptance rate. Ex. 6.[9] ███████████████████████████████████

11
████████████████████████████. Ex. 2 at 174-75; Ex. 4 at Service Fees and

12
Equipment Appendix; Ex. 3 at 83, 121.

13
     GrubHub does not reimburse drivers for their expenses. ████████████████

14
████████████████████████████████████████████████████████████

15
████████████████████████████████████████████████████████████

16
█████████████████████ Ex. 2 at 169; Ex. 3 at 86-87; Ex. 9 at 70-71; Ex. 11 at 116.

17
     GrubHub does not pay overtime to drivers who work more than 40 hours per week or 8

18

19
_____

████████████████████████████████████████████████████████

20
Ex. 2 at 165; Ex. 3 at 83.

[8] ██████████████████████████████████████████████████████████████.

21
Ex. 2 at 163-65; Ex. 4 at Service Fees and Equipment Appendix; Ex. 11 at 110-11.

22
████████████████████████████████████████████████████████ Ex. 2 at

23
174; Ex. 7 at 78. ████████████████████████████ Ex. 4 at Service Fees and Equipment

24
Appendix; Ex. 2 at 209. ███████████████████████████████████████████

25
████████████████████████████████████████████████████ Ex. 4

at Service Fees and Equipment Appendix; Ex. 2 at 209.

26
[9] ████████████████████████████████████████████████

27
████████████████████████████████. Ex. 2 at 136; Ex. 4 at Service

Fees and Equipment Appendix; Ex. 7 at 82-84.   Mr. Lawson only worked when he was signed

28
up on a block. Ex. 16 at 218.

hours per day.  During the week of November 30, 2015, Plaintiff worked 44.75 hours, but he did not receive an overtime premium for the hours he worked in excess of 40 that week.  Ex. 14 at LAWSON000108-09.

In addition, GrubHub's payment system also does not ensure that drivers receive at least minimum wage for all hours worked. Plaintiff has identified at least three days on which he experienced minimum wage violations working for GrubHub. See infra Sec. III.C.ii.

## III.   ARGUMENT

### A.   Legal Standard

Summary judgment may only be granted in favor of GrubHub if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." O'Connor, 82 F. Supp. 3d at 1138 (quoting Alexander, 765 F.3d at 987). "A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable [factfinder], viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor." Gauntlett v. Illinois Union Ins. Co., 2012 WL 4051218, *5 (N.D. Cal. Sept. 13, 2012). More specifically, GrubHub "is entitled to summary judgment only if, viewing the evidence in the light most favorable to the [Plaintiff], this Court necessarily must conclude that [Plaintiff is an] independent contractor[] as a matter of law."  O'Connor, 82 F. Supp. 3d at 1138 (quoting Alexander, 765 F.3d at 988).[10]

"[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." Narayan,  616 F.3d at 900. "Once the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed

_____

[10]   Plaintiff contends that, applying the Martinez and Borello standards, he was GrubHub's employee.  Because the parties have agreed that the issue of employee status will be decided by the Court at a bench trial, Plaintiff simply now opposes GrubHub's motion for summary judgment, rather than cross-moving himself for summary judgment.  He has chosen not to cross-move for summary judgment so as to provide the Court the opportunity to review a full record at trial, and also in recognition of the fact that other courts addressing similar issues in the Uber and Lyft cases held that employee status was not appropriate to be decided on summary judgment. See O'Connor, 82 F. Supp. 3d at 1145-46; Cotter, 60 F. Supp. 3d at 1077 n.5.

employee was an independent contractor." Id.; see also O'Connor, 82 F. Supp. 3d at 1143 ("Although the Court's conclusion based on the record facts likely stand on logic and common sense alone, the case law makes abundantly clear that the drivers are Uber's presumptive employees."). Here, there can be no doubt that Plaintiff performed services for GrubHub, as GrubHub does not deny that fact.[11]  Likewise, the work performed by drivers like Plaintiff constitutes the core service that GrubHub provides to its customers.[12]  Moreover, numerous facts in the record prevent GrubHub from proving "that the presumed employee was an independent contractor" as a matter of law. Id. Thus GrubHub cannot be entitled to summary judgment when there are so many facts in the record (many undisputed) that support a finding of an employment relationship.

### B.    The Court Must Deny GrubHub's Motion for Summary Judgment That Plaintiff Was an Independent Contractor Under California Law

California employers are required to comply with the requirements of California wage and hour law, including both the California Labor Code and relevant Wage Orders set forth by the Industrial Welfare Commission ("IWC"). In Martinez v. Combs, 49 Cal. 4th at 69, the California Supreme Court exhaustively reviewed how the term "employ" had been defined by the Industrial Welfare Commission (IWC) and concluded that the common law definition set forth in Borello, 48 Cal. 3d at 350, is one of "three alternative definitions" of employment. These three alternative tests include "(a) to exercise control over the wages, hours or working

---

[11]     See also O'Connor, 82 F. Supp. 3d at 1141-45 (deciding on summary judgment that that Uber drivers perform services for Uber despite Uber's denial of this fact and argument that it was merely an intermediary between a customer and a driver); Yellow Cab Coop., Inc. v. Workers' Comp. Appeals Bd., 226 Cal. App. 3d 1288, 1294 (Cal. Ct. App. 1991) ("[t]he drivers, as active instruments of that enterprise, provide an indispensable 'service' to Yellow . . .").

[12]     See Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 9 (2007) (noting that "[i]n practice [] the work performed by the drivers is wholly integrated into FedEx's operation"); Santa Cruz Transp., Inc. v. Unemployment Ins. Appeals Bd., 235 Cal. App. 3d 1363, 1376 (Cal. Ct. App. 1991) ("the work performed by the [drivers] in this case is part of the regular business of [Defendant]" and "[t]he modern tendency is to find employment when the work being done is an integral part of the regular business of the employer . . . ."); Martins v. 3PD, Inc., 2013 WL 1320454, *14 (D. Mass. Mar. 28, 2013) (Defendant "is clearly a delivery company, hiring Plaintiffs for a vital and necessary aspect of its business . . . ").

conditions, *or* (b) to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship." Id. Thus, Martinez clarifies that Borello is but one way to establish an employment relationship in California.[13] "[P]ast decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." Id. at 61 (internal quotations admitted).

As courts in California have primarily focused on Borello in analyzing employment status, however, Plaintiff will focus on this test primarily. Under Borello, the "'most significant consideration' is the putative employer's 'right to control work details'" which "need not extend to every possible detail of the work." O'Connor, 82 F. Supp. 3d at 1138 (quoting Borello, 48 Cal. 3d at 350); see also Cotter, 60 F. Supp. 3d at 1075.

In addition to the right of control, the Borello test also considers "a number of 'secondary' indicia," including:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, which reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principle; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

---

[13]     In Dynamex Operations W., Inc. v. Superior Court, 2014 WL 5173038, *9 (Cal. Ct. App. Oct. 15, 2015), the court considered claims brought under Cal. Lab. Code § 2802 by delivery drivers and found that "[t]o the extent that reimbursement sought by [Plaintiffs] in their section 2802 claim" implicate Wage Order 9, "the IWC definition of employee must be applied pursuant to Martinez." As in Dynamex, this Court can apply any of the three alternative definitions set forth in Martinez to Plaintiff's claims as they clearly implicate Wage Order 9 by requiring drivers to provide necessary tools and equipment. See Cal. Code Regs. Tit. 8 § 11090, subd. 8, 9(B). Plaintiff notes that Dynamex is currently pending before the California Supreme Court, S222732. Plaintiff thus focuses here on the Borello test but notes that he is also entitled to a finding that he was an employee under the other (and broader) standards for employee status under Martinez.

<u>Borello</u>, 48 Cal. 3d at 350. These secondary indicia "cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." <u>Id.</u> at 351. No one <u>Borello</u> factor "is dispositive when analyzing employee/independent contractor status." <u>O'Connor</u>, 82 F. Supp. 3d at 1140. Clearly, the record here demonstrates that there are myriad issues of fact to be considered and weighed that preclude summary judgment here, especially where the facts and all inferences must be viewed in the light most favorable to Plaintiff.

### i.    Ample Evidence Exists That GrubHub Had the Right To Control The Manner and Means of Plaintiff's Work

The California Supreme Court has held that, under <u>Borello</u>'s common law test, "the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." <u>Ayala v. Antelope Valley Newspapers, Inc.</u>, 59 Cal. 4th 522, 532 (2014); <u>Alexander</u>, 765 F.3d at 988 ("The right to terminate at will, without cause, is strong evidence in support of an employment relationship."). Here the record contains evidence that GrubHub retains the right to, and indeed exercises the right to, terminate drivers in its discretion.  The very language of Plaintiff's agreement with GrubHub provides that GrubHub may terminate the agreement "immediately upon written notice to the breaching Party . . ., with such notice specifying the breached [sic] relied upon," Ex. 4 ¶ 13.1.1, or  "without cause upon fourteen (14) days' prior written notice . . . ." Ex. 4 at ¶ 13.1.2.[14]  Moreover, there is ample

---

[14]    GrubHub contends that its contract contains a mutual termination clause that is evidence of an independent contractor relationship. However, this assertion mischaracterizes the cases.  As the court recognized in <u>O'Connor v. Uber Technologies, Inc.</u>, 2015 WL 5138097, *20 n.19 (N.D. Cal. Sept. 1, 2015), "Uber argues that contracts which provide a *mutual* right to terminate at will are 'evidence of an independent-contractor' relationship and thus are somehow distinguishable from contracts that only provide the employer with a right to terminate at will, which contracts would indicate an employment arrangement. Uber is incorrect. The driver's right to terminate at will is indicative of employee status." Indeed, independent contractor arrangements are usually for a discrete project or a finite term. Ongoing relationships, that end only when one party or the other terminates the relationship, more closely resemble an employee-employer relationship. <u>See, e.g.</u>, <u>JustMed, Inc. v. Byce</u>, 600 F.3d 1118, 1127 (9th Cir. 2010) (noting that the fact that the "software was an ongoing concern for the company, not a discrete project that JustMed expected Byce to simply finish and be done with," cut in favor of finding employment rather than independent contractor relationship); <u>Solis v. Int'l Detective & Protective Serv., Ltd.</u>, 819 F. Supp. 2d 740, 752 (N.D. Ill. 2011) (evidence weighed toward employee status where the facts

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

evidence that GrubHub has indeed regularly terminated drivers in its sole discretion, with no

notice and without any sort of opportunity for the drivers to challenge it, just as an employer may

terminate an employee based on its sole determination that the employee has violated company

policy. For example, the record contains evidence that GrubHub has terminated drivers for,

among other reasons, not being available to perform deliveries during the delivery blocks they

had signed up for (Ex. 6 at GH000543), declining too many orders sent to them during their

delivery blocks (Ex. 6 at GH000544), maintaining too low an order acceptance rate over time

(GH000763), failing to complete deliveries of orders they had accepted (Ex. 6 at GH000579),

marking deliveries as complete when the deliveries were not actually made (Ex. 6 at GH000770),

traveling too far away from restaurants in their market during their delivery blocks (Ex. 6 at

GH000638, GH000710, GH000754), reaching out to customers after customers had cancelled an

order (Ex. 6 at GH000639), and taking too long to complete deliveries (Ex. 6 at GH000659,

GH000803). ██████████████████████████████████████████████████

██████████████████████████████████████████████████████████████████

████████████████████████████████████████. Ex. 2 at 82; Ex. 3 at 106-07; Ex. 7 at 158;

Ex. 8.

　　　　In addition to the ability to terminate drivers at will based on GrubHub's determination in

its discretion that they have violated company policy, the record contains much other evidence of

---

indicated that the parties "contemplated a long-term relationship"); Sales v. Bailey, 2014 WL
3897726, *11 (N.D. Miss. Aug. 8, 2014) (duration of relationship weighed in favor of employee
status where plaintiffs had "sought an indefinite employment relationship"). Moreover, if one
party to an independent contractor arrangement quits before the end of the contract term or
discrete project, it typically owes contract damages. Estate of Perry v. Green Card, Inc., 2006
WL 3479056, *5 (R.I. Super. Nov. 30, 2006), as amended (Dec. 1, 2006) (finding the "power to
deprive [a worker] totally or substantially of a necessary aid to [their work] without the
[defendant] being in breach of any obligation . . . [is] incompatible with the freedom of control
enjoyed by an independent contractor") (internal quotation omitted). Here, either party can
terminate at any time and neither party owes any damages for terminating the contract early,
further supporting Plaintiff's contention that this is in fact an employment relationship. Tapager
v. Birmingham, 75 F. Supp. 375, 386 (N.D. Iowa 1948) (finding "salesmen's quitting or their
discharge was never considered as constituting a breach of any existent contract or agreement"
and this fact cut toward employee status).

GrubHub's right to control the manner and means of its drivers' work including that of Plaintiff. First, as explained above, GrubHub drivers work on shifts called blocks, and during those blocks, GrubHub expects them to have their app toggled to indicate that they are available to accept orders at all times; drivers who are not available to accept orders during their entire blocks risk termination. Ex. 5; Ex. 6 at GH000543-44.  Indeed, Mr. Lawson himself was terminated for this very reason.  Ex. 5. [15]

As discussed above, while they are on a block, drivers must accept at least 75% (later, 85%) of the orders offered to them, or else they will not receive the guaranteed minimum hourly pay, and they may be at risk of termination.  Mr. Lawson has explained that, for all practical purposes, drivers must accept every order possible in order to meet this minimum acceptance rate.  See supra, p. 8.[16]

████████████████████████████████████████ Ex. 2 at 61-69. ████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
█████████████████ Ex. 2 at 61-69; Ex. 11 at 133. Like in a number of other industries that allow employees to sign up for shifts when they want, drivers can sign up for the blocks that are made available in GrubHub's discretion.  In any event, courts have recognized that employees can have freedom to set their own schedules, and this fact does not make them independent

---

[15] ████████████████████████████████████████████. Ex. 2 at 135-36; Ex. 12; Ex. 13.  Los Angeles General Manager Jeff Smith testified █████████████████████████████████████████████████. Ex. 2 at 136.

[16] ████████████████████████████████████████████ Ex. 15 at 144.  They thus have to accept every order they can while on shift, or else risk not meeting their minimum. Drivers are not free to turn down orders at their whim. Ex. 4 at Service Fees and Equipment Appendix. If GrubHub determines that a driver rejects jobs too frequently during their blocks, the driver is subject to termination. Ex. 6 at GH000544, GH000763.

contractors.  See <u>Air Couriers Int'l v. Employment Dev. Dep't.</u>, 150 Cal. App. 4th 923, 926 (Cal. Ct. App. 2007) (holding hires were employees as a matter of law despite the fact that "drivers determined their own schedules"); <u>JKH Enterprises, Inc. v. Dep. of Indus. Relations</u>, 142 Cal. App. 4th 1046, 1051 (Cal. Ct. App. 2006) (holding certain hires were employees as a matter of law despite the fact that they were 'not required to work either at all or on any particular schedule); <u>see also</u> <u>O'Connor</u>, 82 F. Supp. 3d at 1152 (denying summary judgment where drivers had complete flexibility to work whenever they wanted). Additionally Los Angeles General Manager Jeff Smith testified ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████. Ex. 2 at 68-69.

Even within the zones, if the drivers are too far away from the restaurants from which they will be picking up orders, they are subject to termination. Ex. 6 at GH000638, GH000710, GH000754. Similarly, if they take too long to perform their deliveries, they are subject to termination, so it is vital for the drivers to remain available near the restaurants within their zones. Ex. 6 at GH000659, GH000803. Operations specialists are also able, however, to compel delivery drivers to perform deliveries great distances away if it is helpful to GrubHub. Ex. 17. Similarly, operations specialists can force the drivers to perform orders. Ex. 17. For example, Plaintiff was given an order that would require complete a 40 minute round trip, which would cause him to work past the end of his block, and even though he asked an operations specialist to reassign it, he was told he needed to complete it. Ex. 17.

███████████████████████████████████████████████████ ███████████████████████████. Ex. 2 at 80; Ex. 7 at 58 Ex. 10 at 2-3. ███████████████████████████████████████████ ███████████████████████████. Ex. 3 at 136. ██████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████

---

14

1

██████████████████████████████████████████████████████████████

2

████████ Ex. 2 at 132, 152. Plaintiff Lawson wore the GrubHub shirt and hat during his blocks.

3

Ex. 16 at 94-95.

4

      **ii.**      **GrubHub's Arguments That Plaintiff Was Free From the Company's**
5
              **Control Do Not Entitle it to Summary Judgment**

6

      Despite the extensive evidence of control described above, GrubHub argues that Plaintiff

7

was an independent contractor because he had flexibility in choosing when to work, and

8

GrubHub did not tell him exactly every detail of what to do (such as what route to take to drive

9

to a restaurant or a customer's home).  Of course, many employees have flexibility in their work

10

hours, and it is not uncommon in the service industry for workers to have the opportunity to sign

11

up for available shifts that work for their schedule (such as servers at hotels and restaurants).[17]

12

Also, not every employee has a boss hovering over her shoulder watching her every move;

13

employees may have some freedom in deciding how to perform their jobs.  ████████████

14

15

████████████████████████████████████████████████████████████████

16

██████████████████████████████████████████████████████

17

████████████████████████████████████████████████

18

██████████████████████████████ Given the evidence of control

19

summarized above, and most notably GrubHub's retention in its contracts with drivers of the

20

right to terminate drivers in its discretion, the record certainly contains enough evidence of

21

GrubHub's control over drivers including Plaintiff to preclude an award of summary judgment to

22

GrubHub on the question of employee status.

23

[17]      As the court in O'Connor pointed out, "freedom to choose one's days and hours of
work . . . does not in itself preclude a finding of an employment relationship," because "[t]he

24

more relevant inquiry is how much control Uber has over its drivers *while they are on duty* for
Uber."  O'Connor, 82 F. Supp. at 1152 (emphasis in original) (citing Air Couriers Int'l v.

25

Employment Dev. Dep't., 150 Cal. App. 4th 923, 926 (Cal. Ct. App. 2007); JKH Enterprises, Inc.
v. Dep. of Indus. Relations, 142 Cal. App. 4th 1046, 1051 (Cal. Ct. App. 2006).  GrubHub also

26

argues that Plaintiff's "choice" to wait several months before performing his first delivery
somehow demonstrates the company's lack of control over him. In fact, Plaintiff testified that the

27

delay between the time that he signed the agreement with GrubHub on August 28, 2015, and the
time he started performing deliveries for GrubHub on October 25, 2015, resulted from his

28

inability to get the block scheduling system to work correctly. Ex. 16 at 99.

GrubHub also focuses much of its argument on the fact that it claims that Plaintiff performed work for its competitors, Postmates and Caviar, while he worked for GrubHub. However, the fact that a worker has juggled multiple jobs for multiple employers does not make him an independent contractor. As Judge Chen noted in O'Connor, Uber drivers who have worked for multiple companies "closely resemble fast-food workers who may work shifts at both Burger King and McDonald's," rather than an individual with "a distinct business . . . that serves many clients." 2015 WL 5138097, *23 n.24. Judge Chhabria likewise rejected rejected Lyft's similar argument that because its drivers were free to drive for other ride-sharing apps or to hold other jobs, that fact made them independent contractors. Cotter, 60 F. Supp. 3d at 1079-80.[18]  In both cases, Uber and Lyft argued that their drivers could and did perform work for other companies – even at the same time as they were performing work for Uber or Lyft – but both courts denied the companies' motions for summary judgment on employee status.   The fact that a number of companies (that call themselves "sharing economy" companies) have, in recent years, set up a system by which their workers can perform delivery services for them on a flexible schedule, thus allowing the possibility of some overlap with work performed for other companies, does not mean that the workers are engaged in their own independent business while they are performing these delivery services.  Indeed, Mr. Lawson did not establish his own independent delivery service; he did not set up "Raef's Delivery" and seek to acquire his own customers to whom he would deliver meals.  Instead, he signed up to work for several food delivery companies, each of which has its own customers, and when he was working for GrubHub, he did so as an employee of GrubHub, not as his own independent business operation.[19]

---

[18]   As courts have noted, "such 'freedom' [to work for other companies] alone does not tip this factor in favor of independent contractor status, as '[a]n employee may, of course, work for different employers at different times and still be an employee of each.'"  Hurtado v. Raly Dev., Inc., 2012 WL 3687488, *14 (S.D. Fla. Aug. 27, 2012) (citing Beliz, 765 F.2d at 1329).

[19]   When Plaintiff worked for GrubHub, he was clearly wearing the "hat" of GrubHub rather than of his own personal business.  See Coverall North America, Inc. v. Division of

---

16

In any event, Plaintiff disputes GrubHub's claim regarding the amount of time that his work for GrubHub may have overlapped with his work for these other companies.[20]   At trial, he will dispute the amount of overlap that occurred, and as he testified, these companies have faced complaints that they have not been fully accurate in recording what times their drivers have taken deliveries.  Ex. 16 at 123, 155, 184. He was also surprised, when shown at his deposition, the amount of time the records appeared to show there was overlap in his shifts for GrubHub and for Postmates and Caviar, because he was well aware when working for GrubHub that he needed to be focused on GrubHub deliveries and needed to accept every order that he could that was offered to him; he did not recall performing this overlapping work. Ex. 16 at 169.[21] In any event, if he was working for other companies while on a block of time for GrubHub, he acknowledged that would be "risky," Ex. 16 at 123, and in fact, he was ultimately terminated for not being available to accept orders during his blocks. Ex. 5. This evidence thus undermines GrubHub's contention that drivers were free to work for other companies while on a block for GrubHub.

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████. Ex. 2 at
_____

Unemployment Assistance, 447 Mass. 852, 858-59 (2006) (finding cleaning worker who had been classified by the company as an independent contractor was an employee since she "wore the hat" of the company, as demonstrated by the fact that she did not have her own clients and could not negotiate her rates with customers; moreover, any customer she served was not her own customer, but a customer of the company's).

[20]   Although GrubHub refers to a number of "sharing economy" companies who Plaintiff has worked for in recent years, the only other companies he worked for during the time period that he worked for GrubHub were Postmates and Caviar.  The fact that he moved frequently from one company to another is simply reflective of the fact that these companies have all set up systems that allow for work to be scheduled flexibly.  Indeed, many employers throughout the economy in recent years have been providing flexible work options for their employees, often allowing employees to sign up for what shifts they want to work (such as hotel employers, many restaurants, and other service providers).

[21]   Even by GrubHub's accounting, even if the time records produced by Postmates and Caviar are accurate, they show overlap in work performed for those companies during less than 7% of the blocks of time in which he was signed up for GrubHub. Exhibit 3(a), (b), and (c) (Dkts. 104, 104-3, 104-4, and 104-5.)  At times employees may have (against their employers' wishes) performed tasks for another job, but that fact in and of itself does not prove the worker is not an employee.

126-28; Ex. 9 at 86.

GrubHub also argues Plaintiff purportedly had the right to hire subcontractors to perform work for him.  This argument places form over substance, as there is no evidence in the record that drivers actually did this.  Plaintiff himself certainly never hired a subcontractor to perform his deliveries. Ex. 16 at 175-76. ███████████████████████████████████████

████████████████████████████████████████████████████████████████

Ex. 2 at 155; Ex. 3 at 83; Ex. 11 at 53.[22]

Even if Plaintiff had the full extent of freedom from control that GrubHub argues he had, courts have noted that "the simplicity of the work" may make "detailed supervision, or control, unnecessary." Air Couriers Int'l, 150 Cal. App. 4th at 937. Thus, in Borello and JKH Enterprises, "the minimal degree of control that the employer exercised over the details of the work [of farmworkers and couriers] was not considered dispositive because the work did not require a high degree of skill and it was an integral part of the employer's business." JKH Enterprises, Inc., 142 Cal. App. 4th at 1064. Like the drivers in JKH Enterprises, Inc. and Air Couriers Int'l, GrubHub drivers do not need a high degree of skill to perform their jobs, but their work is "an integral part" of GrubHub's business. Indeed, GrubHub requires only that its applicant have two years of driving experience, and the drivers are performing the service at the very core of GrubHub's business – delivery of food to customers. Ex. 10. Ultimately, GrubHub may not dictate each and every detail of its drivers' work, but it exercises "absolute overall control of all meaningful aspects of this business relationship." Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1101 (9th Cir. 2014).

---

[22]    Even if drivers did hire subcontractors (and there is no evidence that any did), GrubHub's agreement provides that any subcontractors must submit to a background check for GrubHub and must be 19 years old with two years driving experience – just like all other delivery drivers. Ex. 4 at ¶¶ 6.1 and 6.2. The Ninth Circuit has explicitly rejected GrubHub's assertion, holding that where FedEx drivers could hire additional drivers only if they met FedEx's standards, this was not a true entrepreneurial opportunity or independent contractor relationship. See Alexander, 765 F.3d at 993-94; Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1045-46 (9th Cir. 2014).

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

For example, in <u>Alexander</u>, 765 F.3d at 993, the Ninth Circuit noted that "FedEx sets the rates charged to customers, bills the customers, and collects payment." <u>Id.</u> The same is true of GrubHub.  Indeed, "the drivers [cannot] negotiate for higher rates, as independent contractors commonly can," <u>Ruiz</u>, 754 F.3d at 1101, ████████████████████████████████

████████████. Ex. 2 at 174-75.[23] Likewise, as in <u>Alexander</u>, GrubHub "pays the drivers on a regular schedule" by depositing money directly into drivers' accounts on a weekly basis, thereby controlling the amount the amount and manner of their payment.  <u>Alexander</u>, 765 F.3d at 993; Ex. 14 at 930. Moreover, it is GrubHub that "obtains the clients in need of the service and provides the workers to conduct it." <u>Id.</u> As in <u>Alexander</u>, where the Ninth Circuit concluded that "[d]rivers deliver packages to FedEx's customers, not to their own customers," here, GrubHub drivers deliver food to GrubHub's customers, not to their own customers. <u>See also</u> <u>Coverall North America, Inc.</u>, 447 Mass. 852 (cleaning worker was employee of cleaning company where she performed services wearing the "hat" of the company, not her own independent business, and any customers for whom she performed cleaning work were the company's customers).

### iii.    Evidence in the Record Also Supports a Finding of Employment Status Under <u>Borello</u>'s Secondary Factors

In addition to the primary "right of control" factor, most if not all of the other <u>Borello</u> factor point to a conclusion that Plaintiff was GrubHub's employee, or at least raise issues precluding the grant of summary judgment in GrubHub's favor.

With respect to the first factor, while working for GrubHub, Plaintiff was not engaged in a "distinct occupation or business." As discussed above, Plaintiff was not running "Raef's Delivery Service."  The customers for whom he delivered food orders were GrubHub's

---

[23]    GrubHub maintains that the delivery drivers can negotiate their rates, but the testimony of its COO, ████████████████████████████████████████████████████████████
████████████████████████ Ex. 3 at 121. General Manager Jeff Smith████████████████████
████████████████████████████. Ex. 2 at 165.  GrubHub's position that the drivers' ability to earn gratuities means that GrubHub lacks control over them is nonsensical, as gratuities are nearly universal among employees in the service industry.

customers.  He did not have an incorporated business.  He did not have business cards.  He performed the services that GrubHub offered to its customers.  If he performed those services well, customers could not call him back to ask him to deliver future orders for them.[24]  Although he also worked for other competing companies, he did not perform this work as his own business, but only was able to do so because a number of companies have recently made it possible for people like Mr. Lawson to work flexible hours that may allow some overlap.[25]

There is evidence in the record supporting Plaintiff on the second factor as well, "whether the work is performed under the principal's direction," <u>Alexander</u>, 765 F.3d at 995.  ██

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████          See supra, pp. 6, 14.

Likewise, the third factor, "the skill required in the occupation," also favors Plaintiff.  Many courts have held that the job of a driver does "not require a high degree of skill".  <u>JKH Enterprises</u>, 142 Cal. App. 4th at 1064.[26]

The fourth factor is "whether the principal or worker provides the instrumentalities, tools, and place of work." <u>Estrada</u>, 154 Cal. App. 4th at 9. GrubHub argues that because the drivers furnish their own vehicles, this factor favors GrubHub. However, the investment Plaintiff made

---

[24]   Indeed, GrubHub terminates drivers who contact drivers independently of GrubHub. Ex. 6 at GH000639.

[25]   As noted above, Plaintiff does not believe he did perform deliveries for other companies while on shift for GrubHub (or at least not to the degree that the records—which may not be fully accurate--may suggest), as he was aware that he would be risking termination from GrubHub for doing so. ████████████████████████████████████████████
███████████████████████████████████████████████████████. Ex. 2 at 126-27.

[26]   <u>See also</u> <u>O'Connor</u>, 82 F. Supp. 3d at 1152 ("[A] jury could conclude that driving a car (as opposed to, *e.g.*, a truck or bus) does not require a special skill, particularly if no special driver's license is required"); <u>Cotter</u>, 60 F. Supp. 3d at 1080 ("And driving for Lyft requires no special skill – something we often expect independent contractors to have"); <u>Estrada</u>, 154 Cal. App. 4th at 12 ("only required skill is the ability to drive"); <u>Narayan</u>, 616 F.3d at 903 (drivers needed no "special license beyond a normal driver's license, and no skills beyond the ability to drive").

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

in his vehicle is extremely minor when compared with the substantial investment that GrubHub has made in developing its website and app.[27]

The fifth factor, "the length of time for performance of services," Alexander, 765 F.3d at 996, favors Plaintiff as well. For example, where "a contractor was hired to perform a specific task for a defined period of time," a court is more likely to find an independent contractor relationship, but here "[t]here was no contemplated end to the service relationship at the time that the plaintiff Drivers began working." Narayan, 616 F.3d at 903. Here, the contract automatically renewed every sixty days, and there was no contemplated end to Plaintiff's relationship with GrubHub, unless he quit or was fired.[28]

The sixth factor, the "method of payment" utilized by GrubHub, Estrada, 154 Cal. App 4th at 8, favors Plaintiff as well. As discussed above, although GrubHub utilized a formula in determining what the drivers would be paid (because the pay was typically "trued up" to get them to a guaranteed hourly rate), Plaintiff was generally paid on an hourly basis. "An hourly rate traditionally indicated an employment relationship." Varisco v. Gateway Sci. & Eng'g, Inc., 166 Cal. App. 4th 1099, 1106 (Cal. App. Ct. 2008).[29]

The seventh factor, "whether the work is part of the principal's regular business, favors

___

[27]   See, e.g., Sakacsi v. Quicksilver Delivery System, Inc., 2007 WL 4218984 at *7 (M.D. Fla. Nov. 28, 2007) (holding relative investment weighed in favor of employee status where many courier drivers "used their own personal cars to make [] deliveries" and courier service's cost for purchasing and maintaining its software and system far outweighed the costs to drivers); see also Keller v. Miri Microsystems LLC, 781 F.3d 799, 810 (6th Cir. 2015) ("[I]nvestment of a vehicle is no small matter, [but] that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes") (quoting Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 304 (5th Cir. 1998)); Clincy v. Galardi S. Enterprises, Inc., 808 F. Supp. 2d 1326, 1346-47 (N.D. Ga. 2011) (relative investment weighed in favor of employee status where dancer's $50,000 annual investment related to her work did not exceed the nightclub's investment in its business).

[28]   See also Sales v. Bailey, 2014 WL 3897726, *11 (N.D. Miss. Aug. 8, 2014) (duration of relationship weighed in favor of employee status where some plaintiffs worked for shorter periods but had "sought an indefinite employment relationship").

[29]   See also Alexander, 765 F.3d at 996 (employers may pay "by time, by the piece, or by successful completion of the service, instead of a fixed salary, and [it will] still constitute employee wages if other factors indicate an employer-employee relationship").

___

plaintiffs," as well, <u>Alexander</u>, 765 F.3d at 996, because "drivers [a]re performing an integral and entirely essential aspect of [GrubHub's] core business." As GrubHub explains in its effort to recruit drivers, GrubHub processes "hundreds of thousands of orders," and "as a driver, you'll be helping people get awesome meals from some of our best restaurants." Ex. 10 at 5. Indeed in answering "What is GrubHub?" on the FAQ page of GrubHub's website, GrubHub touts its delivery service: "In short: if you want to order delivery or pickup, this is an easier way for you to do that from a huge variety of restaurants." Ex. 19.

Finally, the eighth factor is "whether or not the parties believe they are creating the relationship of employer-employee." <u>Alexander</u>, 765 F.3d at 989. Although GrubHub's agreement, a contract of adhesion, described the relationship between Plaintiff and GrubHub as that of an independent contractor, Ex. 4, Plaintiff testified that, once he began working for GrubHub, he considered his relationship with GrubHub to be more like an employer-employee relationship.  Ex. 16 at 126. Moreover, this factor has been given the least weight by the courts, since companies typically require their workers in these cases to sign agreements stating that they are "independent contractors".[30]  "The belief of the parties as to the legal effect of their relationship is not controlling if as a matter of law a different relationship exists." <u>Grant v. Woods</u>, 71 Cal. App. 3d 647, 654 (Cal. Ct. App. 1977).[31]

---

[30]      To the extent that drivers may believe they are independent contractors, based on representations made in GrubHub's adhesive contracts, "California law is clear that [t]he label placed by the parties on their relationship is not dispositive." <u>Alexander</u>, 765 F.3d at 989 (internal quotation omitted).

[31]      GrubHub also argues that the drivers could maximize their profits based upon their managerial skill.  However, the record shows that Plaintiff, like many employees, simply attempted to make more money with GrubHub by working more shifts (which was often limited in availability), working more desirable shifts, or doing his job well (so that he would be rewarded by GrubHub, which at times incentivized drivers (like any good employer) by giving bonuses to top-performing drivers, Ex. 4 at Service Fees and Equipment Appendix).  <u>See</u> <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1316 (11th Cir. 2013). ("An individual's ability to earn more by being more technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business.") Plaintiff was not able to turn down orders that he thought were not "profitable" because he had to accept nearly every order offered to him or risk termination.  In fact, the record contains evidence of an operation specialist insisting that he take an order that he did not want to take which was out of his zone and would require him to work past his scheduled shift. Ex. 17.

1
2

**C.**   **The Court Should Deny GrubHub's Motion for Summary Judgment with Respect to Plaintiff's Claims for Expense Reimbursement, Minimum Wage, and Overtime**

3
4

      **i.**   **GrubHub Does Not Reimburse Drivers for Their Expenses, in Violation of Labor Code § 2802**

5
6

While GrubHub attempts to argue in its motion that it provides expense reimbursement to drivers, all of its witnesses ███████████████████████████████████████

7
8

████████████████████████████████████████████████████████████████ Ex. 2 at 169; Ex. 3 at 86-87; Ex. 9 at 70-71; Ex. 11 at 116.  The law in

9

California is clear that, in order for a payment to satisfy Labor Code § 2802, the employer must

10

clearly communicate to the employee that the payment constitutes expense reimbursement.  See

11

Gattuso v. Harte-Hanks Shoppers, Inc., 42 Cal. 4th 554, 574 (2007) ("an employer that uses

12

salary and/or commission increases to discharge its reimbursement obligation must also

13

communicate to its employees the method or basis for apportioning any increases in

14

compensation between compensation for labor performed and business expense

15

reimbursement."). ████████████████████████████████████████████

16

████████████████████████████████████████████████████████

17

████████████████████████████████████████████

18
19

Although GrubHub argues in its motion that the drivers' pay is based on a formula that includes

20

a component of $0.50 per mile, this portion of the drivers' compensation was simply that – a

21

portion of their compensation for labor performed.

22

It is clear that the $0.50 per mile does not legally qualify as expense reimbursement

23

because: (1) GrubHub did not communicate to drivers (including Plaintiff) that this payment was

24

intended to reimburse them for expenses; (2) the $0.50 per mile formula applies to bike couriers

25

as well as drivers, Ex. 4 at Service Fees and Equipment Appendix, and given that bikes clearly

26

cost less to maintain than cars, the payment can only be understood as compensation for labor,

27

since bike couriers would not require as much expense reimbursement as drivers; and (3)

28

GrubHub has argued that $0.50 per mile is <u>more</u> than would be needed to reimburse drivers for

their car expenses.[32]  Moreover, as described above, drivers do not typically receive their pay

based on GrubHub's formula accounting for number of deliveries and the $0.50 per mile

payment, since they typically receive a guaranteed minimum rate instead (to which their pay is

"trued up" – and if it is not "trued up" to this rate, it is because they accepted less than the

requisite percentage of orders for that shift, which puts them at risk of termination).

There can thus be no dispute that, if Plaintiff was misclassified as an independent

contractor, he is owed reimbursement for his expenses (for both his vehicle and his phone)[33],

pursuant to Labor Code § 2802.[34]

### ii.    The Record Contains Evidence that Plaintiff Suffered Minimum Wage and Overtime Violations

Finally, the record contains evidence supporting Plaintiff's claim that he is owed

overtime pay for work performed beyond 40 hours in a week, as well as minimum wage

reimbursement for work he performed resulting in pay lower than the California minimum

---

[32]     Courts have allowed drivers to use the IRS mileage reimbursement rate in order to establish their expenses under § 2802, rather than require them to prove their actual expenses. See, e.g., O'Connor v. Uber Technologies, Inc., 311 F.R.D. 547, 567 (N.D. Cal. 2015) (citing Gattuso, 42 Cal.4th at 569) (the IRS rate of reimbursement for mileage expenses is a "reasonable basis of computation of vehicle-related expenses.")  The IRS mileage reimbursement for cars is currently $0.535 per mile. See https://www.irs.gov/uac/2017-standard-mileage-rates-for-business-and-medical-and-moving-announced. GrubHub has argued to the Court that this amount would be too much reimbursement.  It is thus not credible that GrubHub paid its drivers on this basis in order to reimburse them for expenses, when it contends that this amount is more than drivers actually incur in vehicle expenses.

[33]     GrubHub argues that it should not be liable for paying expenses that Plaintiff incurred performing services for other companies.  Plaintiff, however, is not seeking here reimbursement for expenses incurred in connection with services performed for other companies, only for his expenses incurred in connection with his work for GrubHub.

[34]     GrubHub's argument that it was somehow not aware that Plaintiff had incurred unreimbursed business expenses, i.e. by driving a vehicle in order to perform deliveries for its customers, is simply not credible.  See Tan v. GrubHub, Inc., 171 F. Supp. 3d 998, 1005–06 (N.D. Cal. 2016) (noting that it was logical to infer that "an app-based delivery service requires a vehicle and a phone and thus expenses related to each.").  Likewise, GrubHub's suggestion that Plaintiff was required to actually seek reimbursement in order to have a viable claim under §2802, Mot. At 25, must also be rejected. Stuart v. RadioShack Corp., 641 F. Supp. 2d 901, 903 (N.D. Cal. 2009) (a claim under § 2802 "focuses not on whether an employee makes a request for reimbursement but rather on whether the employer either knows or has reason to know that the employee has incurred a reimbursable expense.").

---

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No. 3:15-cv-05128

1    wage.[35]

2        Specifically, during the week of November 30, 2015, Plaintiff worked 44.75 hours, but he

3    was not compensated at a time-and-a-half overtime premium for the 4.75 hours in excess of 40,

4    see Ex. 14 at LAWSON000108-09, as required under California law.  See California Labor Code

5    and Wage Order 9; Cal. Lab. Code 510; Cal. Code Regs. tit. 8, § 11090, § 3.

6        In addition, as shown in the chart below, Plaintiff can identify at least three dates on

7    which he did not receive minimum wage for his work[36]:

---

[35]    The examples provided below are taken from Plaintiff's pay records that he currently has
in his possession.  GrubHub has yet to produce his pay records from the majority of the time he
worked for GrubHub (December 15, 2015 – February 2016), and so there may well be additional
overtime and minimum wage violations in addition to those identified here.  Plaintiff has been
conferring with GrubHub regarding this discovery issue and will bring it before the Court if it
cannot be resolved.  Plaintiff expects to have obtained his full pay records by the time of trial,
and those records may reveal additional instances of overtime and minimum wage violations.

[36]    California law (unlike federal law) requires that employees receive the state minimum
wage for all hours worked, not just that they average out to at least minimum wage over the
course of a week.  Cal. Lab. Code 1197; Wage Order 9; Cal. Code Regs. tit. 8, § 11090, § 4. See
Armenta v. Osmose, Inc., 135 Cal. App. 4th 314, 324 (Cal. App. Dec. 29, 2005) ("We conclude,
therefore, that the FLSA model of averaging all hours worked "in any work week" to compute an
employer's minimum wage obligation under California law is inappropriate").

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

| Date | Total pay | Total pay minus tips[37] | Miles driven | Expenses[38] | Total pay minus tips and expenses[39] | Hours worked | Effective hourly rate |
|---|---|---|---|---|---|---|---|
| 11/25/2015 | $65.84 | $42.75 | $2.72 | $1.56 | $41.18 | 4.75 | $8.67 |
| 11/30/2015 | $97.50 | $61.84 | $8.61 | $4.95 | $56.89 | 6.5 | $8.75 |
| 12/6/2015 | $85.94 | $49.50 | $6.20 | $3.57 | $45.93 | 5.5 | $8.35 |

Ex. 14 at LAWSON000108, LAWSON000141, LAWSON000183, LAWSON000201.  In 2015, California minimum wage was $9 per hour, and so this chart shows evidence of dates in which Plaintiff received less than the minimum wage.

GrubHub denies that Plaintiff suffered overtime or minimum wage or violations because it claims that he cannot count all the hours he was signed up for a block of time as compensable. However, based on the record facts described above, this time is compensable, and GrubHub's motion for summary judgment on Plaintiff's overtime and minimum wage claims must be denied. As shown above, Plaintiff understood that he was required to be working for GrubHub the entire

---

[37]     Plaintiff calculated his expenses for each of these days by multiplying the miles listed on his pay statement by the IRS expense reimbursement rate for 2015 ($0.575 per mile). ████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 4 at Service Fees and Equipment Appendix, Ex. 2 at 165-66, ████████████████████████.

[38]     California does not permit employers to take a "tip credit," and therefore the amount of tips that Plaintiff received may not be counted toward his minimum wage. Hennig v. Indus. Welfare Comm., 46 Cal. 3d 1262, 1280 (1988).

[39]     In determining what Plaintiff was paid for each of these days, the calculation must take into account that he was not reimbursed his necessary expenses to perform his job.  Unreimbursed expenses that drove his net pay below the minimum wage are recoverable as minimum wage damages. See Arriaga v. Florida Pacific Farms, L.L.C., 305 F.3d 1228, 1241 (11th Cir. 2002) (costs that drive workers' wages below minimum wage are recoverable as minimum wage damages); Brown v. Abercrombie & Fitch Co., 2015 WL 9690357, at *8 (C.D. Cal. July 16, 2015) ("[a]n employee who has ostensibly been paid the minimum wage but has been required to make an expenditure which reduces the employee's net income below the minimum wage is, in essence, in the same position as an employee who was paid less than the minimum wage at the outset. Both have been required to satisfy their living expenses with less than the minimum wage.").

1

2

time he was on a block and ready to take all orders that came to him. Ex. 16 at 144, 226-27.

3

███████████████████████████████████████████████████████████████

4

███████████████████████████████████████████████████████████████

5

████████████████████████████████ that drivers were subject to termination (and were in

6

fact terminated) if they did not accept enough orders or actually be available for taking orders

7

during their blocks of time.  Ex. 6.

8

            While GrubHub will attempt to argue at trial that Plaintiff was not actually working for

9

GrubHub during all the hours he was on a block, this evidence creates at least a genuine issue of

10

material fact on this question.[40]  Importantly as well, it is not necessary for Plaintiff to have

11

actually been performing a delivery during every minute of the block hours he was signed up for,

12

in order for those hours to all be compensable.  Obviously, at times he would have to wait for

13

another order to come through, but as noted, the record evidence supports Plaintiff's contention

14

that he had to be at the ready at all times during a block to take the next order and that GrubHub

15

was, at the least, suffering or permitting him to work at those times by having him be available to

16

take orders.[41]

17

18

[40]        Moreover, notably, the records GrubHub obtained regarding Plaintiff's work for Postmates and Caviar do not show him having performed any deliveries for either of those companies on the dates described above where he has shown minimum wage violations, nor during the week for which he has shown an overtime violation.  Evangelis Decl., Exhibit 3(a), (b), and (c) Dkts. 104, 104-3, 104-4, and 104-5.

19

20

21

[41]        Under the Wage Order definitions of "hours worked," hours are compensable when an employee is *either* "subject to the control of an employer," *or* when an employee is "suffered or permitted to work, whether or not required to do so." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 582 (2000), as modified (May 10, 2000).  GrubHub cites Mendiola v. CPS Sec. Sols., Inc., 60 Cal. 4th 833, 840 (2015), reh'g denied (Mar. 18, 2015), for the proposition that Plaintiff's scheduled blocks of time are not compensable because he could engage in non-work-related activities during these shifts.  However, the mere fact that he might engage in some non-work-related activities between productive minutes does not make the shift time non-compensable.  See Morillion, 22 Cal. 4th at 582; see also See's Candy Shops, Inc. v. Superior Court, 210 Cal. App. 4th 889, 893 (2012) (noting that "an employee's work shift" is "compensable time"); see also 29 CFR 553.221 ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace…" (in this case, Plaintiff's vehicle))*;* Mendiola, 60 Cal. 4th at 842 ("listening to music and drinking coffee while working in an office setting can also be characterized as personal activities, which would not otherwise render the time working noncompensable.").  GrubHub's argument would effectively compel the conclusion that, for example, an employee who takes a few minutes to

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**IV.     CONCLUSION**

The Court must deny GrubHub's motion for summary judgment.  The record has ample evidence from which the Court can conclude that Plaintiff was GrubHub's employee and that he suffered violations of the California Labor Code, including expense reimbursement, overtime, and minimum wage violations.  Plaintiff should thus be permitted to proceed to trial to prove that he is an aggrieved employee and thus can pursue his representative PAGA claims on behalf of the state and other GrubHub drivers throughout California.

---

talk with his or her coworker about personal issues should be docked pay for that conversation. To be sure, excessive incidents of using work time for personal matters might get an employee fired – and indeed here Plaintiff actually was fired for not accepting enough orders (Ex. 5) -- but it does not mean that the employee's shift is not compensable.  See also Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257 (2016) ("on duty" rest breaks during scheduled shifts -- during which employees walked to various nearby destinations and engaged in other leisure activities such as smoking, reading, and surfing the internet -- were compensable hours worked, where employees were required to "keep their radios and pagers on during rest breaks, to remain vigilant, and to respond when needs arise").

Date: June 8, 2017

Respectfully submitted,

RAEF LAWSON, individually and on behalf of all
other similarly situated individuals, and in his
capacity as Private Attorney General Representative

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (State Bar No. 310719)
(sliss@llrlaw.com)
Thomas Fowler, *pro hac vice*
tfowler@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: (617) 994-5800
Facsimile:  (617) 994-5801

Matthew D. Carlson (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (415) 630-2651
Facsimile:  (617) 994-5801

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this motion was served by electronic filing on June 8, 2017, on all counsel of record.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
CASE NO. 3:15-cv-05128