UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAEF LAWSON,

          Plaintiff,

    v.

GRUBHUB, INC., et al.,

          Defendants.

Case No. 15-cv-05128-JSC

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 102, 103, 112, and 123

       Plaintiff Raef Lawson, a former delivery driver, claims that he was an employee of Defendant Grubhub rather than an independent contractor, and thus entitled to certain labor protections including the reimbursement of expenses, minimum wage, and overtime. Cal. Lab. Code. §§ 2802, 1194, 1197, 510, 554. Pending before the Court is Grubhub's motion for summary judgment. (Dkt. No. 103.) Having carefully reviewing the parties' briefs, and having had the benefit of oral argument on June 29, 2017, the Court DENIES Grubhub's motion for summary judgment. There are material issues of disputed fact as to whether Plaintiff should have been treated as an employee and as whether, if he was an employee, Grubhub failed to reimburse for his expenses, for one week failed to pay him overtime, and on three occasions failed to pay him minimum wage.

## BACKGROUND

       Grubhub is an online and mobile food ordering company. (Dkt. 114-1 at 2.) Grubhub users can place a food order for pick up or delivery through the Grubhub platform. (Dkt. No. 104-14 at 3 pg. 27:12-28:5.) Plaintiff worked as a Grubhub delivery driver from August 2015 to February 2016. (Dkt. Nos. 104-1 at 3, 104-6 at 2.)

Drivers must meet certain preliminary requirements before they can begin driving for Grubhub. Drivers must submit proof of their driver's license and car insurance, be 19 years old, have two years of driving experience, and pass a background check. (Dkt. No. 114-10 at 2-4.) Drivers are not required to have prior experience. (Dkt No. 114-2 at 22 pg. 79:14-16.) Once hired, drivers go through an on-boarding process in person at the Grubhub office or online. (Dkt. No. 114-3 at 35 pgs. 131:23-132-7, 133:7-15.)

Drivers must use the appropriate bags for insulating food, which they can either buy themselves or lease from Grubhub. (Dkt. Nos. 114-4 at 20, 114-3 at 36 pg. 136:1-17.) Fees for the bags are waived if the drivers wear a Grubhub shirt and hat. (*Id*.) Drivers must provide a description of their vehicle, including bicycle if applicable, and use and maintain a smartphone at their own expense. (Dkt. No. 114-4 at 5 Sections 5.1, 5.2.) Drivers are not required to lease or rent any products or equipment from Grubhub. (*Id*. at Section 5.2.) Drivers are responsible for all equipment costs and expenses. (*Id*. at Section 5.4.)

Restaurants can rate the performance of the drivers. (*Id*. at 30 pg. 112: 16-18.) When Grubhub receives a driver complaint, Grubhub managers review the complaint and inform the driver. (*Id*. at 31 pgs. 115:12-116: 11.) Decisions about whether to terminate a driver are made by Grubhub's corporate employees and the legal department with the input of the driver specialists, who handle anything having to do with the drivers. (Dkt. No. 114-2 at 23 pg. 82:17-84:20.) Pursuant to the Delivery Service Provider Agreement, either Grubhub or the driver can terminate the agreement if either party has materially breached the agreement, or without cause upon 14 days written notice. (Dkt. No. 114-4 at 12 Section 13.1.)

Pursuant to the Service Level Agreement set forth in Appendix A of the Delivery Service Provider Agreement, Grubhub drivers must:

1. Download the necessary driver tools to fulfill Grubhub Delivery Orders;

2. Sign-up for weekly delivery blocks through either the Grubhub driver app or another means;

3.  When a delivery block starts, provide a status update to the dispatcher that the driver is "on-call" via the Grubhub driver tools;

4.  Not reject incoming orders or be otherwise unavailable to receive incoming calls during any scheduled block. Exceptions may be made for "extenuating circumstances" if the driver communicates these circumstances to the dispatcher;

5.  Provide status updates via the driver app when the driver has arrived at the restaurant, received the food, and leave the restaurant for delivery;

6.  Communicate with the Grubhub Care Team and/or dispatcher to notify them of potential diner issues; and

7.  Have no more than one moving violation in 24 months or be involved in any at fault accidents.

(Dkt. No. 114-4 at 16.) Grubhub reserves the right to modify these provisions of the Service Level Agreement in its sole discretion. (*Id*.)

Consistent with the Service Level Agreement the record reflects that if Grubhub delivery drivers want to deliver food to customers they sign-up for a "block" that specifies the time period and the specific region. (Dkt. No. 114-9 at 34 pg. 33:20-34:5.) Approximately once a week, Grubhub creates a certain number of blocks and releases these blocks to drivers, who sign-up in advance for the blocks they want to work. (*Id*. pg. 34:9-20.) Managers determine the number of blocks that are released based off of the historical order volume and predictions of how much demand there will be at any given time. (*Id*. pg. 36: 13-19.) Drivers can also receive orders when they are not signed up for a block by turning on the app and making themselves available. (Dkt. No. 104-16 at 7 pg. 71:3-8.)

Drivers can choose what market or region they want to deliver in. (Dkt. No. 104-14 at 4 pg. 14-15.) Drivers can request to switch zones by asking a driver specialist. (Dkt. No. 114-16 at 11 pg. 118:16-19.) Drivers are not expected to be in the zone when they start a block or to stay in their zone during the block. (Id. at pg. 119:12-21.)

When making the calculations as to how many blocks of time to release, managers anticipate that drivers will accept most of the orders they are given for the block they have signed

3

1   up for. (*Id*. at 36:24-37:5.) Sometimes, however, drivers receive an offer from Grubhub while

2   they are already making a delivery. (Dkt. No. 114-16 at 145:1-8.) According to Plaintiff,

3   Grubhub would "stack" orders, sending him as many as four to five orders at one time. (*Id*. 16-

4   19.)

5       Only one driver can pick a particular block of time. (*Id*. pg. 35:8-9.) The blocks vary in

6   length from two to five hours. (*Id*. at 35:15-19.) Once a driver signs up for a block, he or she is

7   expected to work that block of time. (*Id*. at 35:20-22.) When a driver's block starts the driver

8   turns on the Grubhub app and "toggle themselves available." (*Id*. pg. 34:5-7.) At that point

9   Grubhub sends the driver orders. (*Id*. pg. 34: 7-8.)

10      Drivers are paid in two ways, per delivery and by a minimum hourly rate. (Dkt. No. 114-4

11  at 19.) Drivers are paid "service fees" of $4.25 per fulfilled delivery plus $.50 per mile between

12  the restaurant and the customer. (*Id*.) Drivers are also guaranteed a minimum average payment of

13  $15 per hour, inclusive of gratuities, if drivers accept and fulfill 75% of the orders they receive

14  that day, and are available to receive incoming orders for the entirety of their scheduled delivery

15  blocks that week (Monday-Sunday). (*Id*.) Exceptions to the requirement that drivers remain

16  available to receive orders for all of their scheduled delivery blocks may be made for "extenuating

17  circumstances" if a driver timely communicates such circumstances to a dispatcher. (*Id*.) If a

18  driver works outside of a scheduled block, they do not receive the hourly minimum. (Dkt. No.

19  114-7 at 23 pg. 82:5-7.) Drivers are paid on weekly basis, unless otherwise specified by Grubhub.

20  (Dkt. No. 114-4 at 19.)

21      Drivers are expected to be available to accept deliveries during their block. (*Id*. at 36: 20-

22  23.) Attendant, operations, and driver specialists monitor whether a driver is toggled as available

23  and has shown up to perform deliveries. (*Id*. at 11 pg. 39:17-23.) These specialists "spot check"

24  and if they notice a driver is not available, they may call the driver to determine whether the driver

25  is working. (*Id*. at pg. 40:10-41:4.) Drivers have had their contracts terminated for not making

26  themselves available for blocks of time they have signed up for. (*Id*. at 43 pg.44:24-45:7.)

27  Plaintiff was terminated for this reason, that is, for not being available to receive orders and

28

4

performing delivery services during a high proportion of the delivery blocks he signed up for.

(Dkt. No. 114-5 at 2.)

### DISCUSSION

### I.     Independent Contractor v. Employee

Under California law, the plaintiff establishes a prima facie case that the relationship was one of employer/employee once she comes forward with evidence that she provided services for the employer. *Narayan v. EGL, Inc.,* 616 F.3d 895, 900 (9th Cir. 2010). "The fact that one is performing work and labor for another is prima facie evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary." *Id.* at 901. As it is undisputed that Plaintiff provided delivery services to Grubhub, the burden is on Grubhub to prove Plaintiff was an independent contractor. *See Yellow Cab Coop. Inc. v. Worker's Comp. Appeals Bd.,* 226 Cal.App.3d 1288, 1294 (1991) (explaining that under California law there is "a presumption that a service provider is presumed to be an employee unless the principal affirmatively proves otherwise.")

Employee/independent contractor status is a mixed question of law and fact under California law. *Narayan*, 616 F.3d at 901. Because the ultimate determination of Plaintiff's employment status presents a mixed question of law and fact, Grubhub may only obtain summary judgment if all facts and evidentiary inferences material to the employee/independent contractor determination are undisputed, and a reasonable trier of fact viewing those undisputed facts and inferences could reach but one conclusion—that Grubhub drivers are independent contractors. *See Alexander v. FedEx Ground Package System, Inc.,* 765 F.3d 981, 988 (9th Cir. 2014). This standard is difficult to meet at the summary judgment stage, *see O'Conner v. Uber Technologies Inc.*, 82 F.3d 1133, 1148 (N.D. Cal. Mar. 11, 2015), and Grubhub has not met it.

### A.     Grubhub's Right to Control the Manner and Means of Plaintiff's Work

For the purpose of determining whether an employer can rebut a prima facie showing of employment, the most significant consideration is the employer's right to control work details. *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations (Borello),* 48 Cal.3d 341, 350 (1989). This right of control need not extend to every possible detail of the work; rather, the

relevant question is whether the employer retains "all necessary control" over the worker's performance. *Id.* at 357; *see also Air Couriers Int'l v. Emp't Dev. Dep't,* 150 Cal.App.4th 923, 934 (2007) (explaining that "the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved" does not preclude a finding of employment status).

The pertinent question is "not how much control a hirer *exercises,* but how much control the hirer retains the *right* to exercise." *Ayala v. Antelope Valley Newspapers Inc.,* 59 Cal.4th 522, 533 (2014) (citation omitted) (emphasis in the original). A reasonable trier of fact could find that Grubhub had the right to exercise all necessary control of the detail of Plaintiff's work.

First, when evaluating the extent of control, an employer's "right to discharge at will, without cause" is "strong evidence in support of an employment relationship." *Borello,* 48 Cal.3d at 350; *see also Ayala,* 59 Cal.4th at 531 (characterizing the right to discharge without cause as "[p]erhaps the strongest evidence of the right to control"); *Narayan,* 616 F.3d at 900 (characterizing the right to discharge at will as the "most important" factor for determining whether an employment relationship exists). This is because the "power of the principal to terminate the services of the agent [without cause] gives him the means of controlling the agent's activities." *Ayala,* 59 Cal.4th at 531 (citations omitted).

The Grubhub contract contained an automatic renewal clause and could be terminated by either party upon 14-days notice or upon breach of the agreement. Such an agreement is an indicator of an at-will employment relationship. *See Narayan*, 616 F.3d at 902-03 (contracts with automatic renewal clauses that could be terminated by either party upon 30-days notice "is a substantial indicator of an at-will relationship"); *Gonzalez v. Workers' Comp. App. Bd.,* 46 Cal.App.4th 1584, 1593 (1996) (contract with two-week notice termination provision constituted at-will employment where contract provided no consequences for employers' failure to give notice); *State Comp. Ins. Fund v. Brown,* 32 Cal.App.4th 188, 203(1995) (termination provision with 14-day notice requirement was "consistent either with an employment-at-will relationship or parties in a continuing contractual relationship").

Second, while Plaintiff could decide when to toggle-on to make himself available for shifts, Grubhub's own manager testified that when drivers want to sign up for deliveries, they sign

6

up for blocks of time created by Grubhub managers, which are limited in number. Pursuant to the Service Level Agreement set forth in Appendix A of the Delivery Service Provider Agreement, Grubhub drivers must sign-up for weekly delivery blocks through either the Grubhub driver app or another means. Once a driver signs-up for a block, he must remain available and deliver the majority of the orders he receives from Grubhub or face potential termination. Moreover, while drivers can make themselves available outside of the blocks, they are not eligible for the $15 hour minimum payment during these times.

Grubhub's argument that drivers are "not obligated to accept any given food order they receive, even if they sign up for a delivery block" is unpersuasive. The Service Level Agreement explicitly states that drivers "should not reject incoming orders or be otherwise unavailable to receive incoming orders during any scheduled delivery block." (Dkt. No. 114-4 at 16.) Pursuant to clause 3.3 of the Delivery Service Provider Agreement, breach of the Service Level Agreement constitutes a material breach of the agreement, which could result in termination.

Grubhub has not met the difficult burden of proving that, drawing all inferences from the evidence in Plaintiff's favor, every reasonable trier of fact would have to find that it did not have the right to exercise all necessary control over the details of Plaintiff's work.

### B. Secondary *Borello* Factors

The putative employer's right to control work details is not the only relevant factor and the control test cannot be "applied rigidly and in isolation." *Borello*, 48 Cal.3d at 350. Thus, a number of "secondary indicia" are relevant to the employee/independent contractor determination. *Id.* These additional factors include:

(a) whether the one performing services is engaged in a distinct occupation or business;

(b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision;

(c) the skill required in the particular occupation;

(d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work;

(e) the length of time for which the services are to be performed;

7

(f) the method of payment, whether by the time or by the job;

(g) whether or not the work is a part of the regular business of the principal; and

(h) whether or not the parties believe they are creating the relationship of employer-employee. *Id.* at 351. Five additional factors (some overlapping or related to those outlined above) for evaluating a potential employment relationship, including: (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service rendered is an integral part of the alleged employer's business. *Narayan,* 616 F.3d at 900. The fact finder must "assess and weigh all of the incidents of the relationship with the understanding that no one factor is decisive, and that it is the rare case where the various factors will point with unanimity in one direction or the other." *Narayan,* 616 F.3d at 901 (citation omitted).

A number of secondary factors point towards an employment relationship. Plaintiff's occupation did not require a high level of skill. Grubhub drivers are not required to possess any special license beyond a normal driver's license, and no skills beyond the ability to drive. *See Narajan*, 616 F.3d at 902; *see also JKH Enters., Inc. v. Dep't of Indus. Relations,* 142 Cal.App.4th 1046, 1064 (2006) (courier service drivers did not require a high level of skill).

The indefinite nature of Plaintiff's tenure with Grubhub also indicates an employment relationship. Plaintiff's agreement with Grubhub automatically renewed every 60 days. This was not a circumstance where a contractor was hired to perform a specific task for a defined period of time. There was no contemplated end to the service relationship at the time Plaintiff began working for Grubhub.

A reasonable fact finder could further conclude that company oversight as to whether a driver is driving as scheduled and the complaint feedback system supports a finding of an employment relationship. Drawing all reasonable inferences in Plaintiff's favor, a trier of fact could find that drivers are expected to be available to accept deliveries during their block.

Grubhub attendant, operations, and driver specialists monitor whether a driver is toggled as available and has shown up to perform deliveries. These specialists "spot check" and if they notice a driver is not available they may call the driver to determine whether the driver is working. Drivers can be terminated for not driving during their scheduled block. Complaints about drivers are reviewed by Grubhub managers and communicated to drivers. While drivers are not supervised in regards to the moment-to-moment details of their work, they are supervised in regards to when they work and given feedback about their deliveries if complaints are received.

Grubhub drivers are also central to the Grubhub business. Grubhub is a food ordering and delivery business. While some customers can order from Grubhub and have the restaurant deliver the food, Grubhub provides drivers so that customers can order from restaurants without drivers. Grubhub has not submitted evidence regarding the percentage of restaurant drivers versus Grubhub drivers for Grubhub orders; thus, for the purposes of summary judgment, a reasonable fact finder could conclude that the Grubhub drivers are a major part of Grubhub's regular business.

A trier of fact could also reasonably find that Grubhub's two-step compensation system with a guarantee of a minimum hourly pay more closely resembles an employment relationship than contractor relationship. If drivers work during a scheduled block they are paid by the job until Grubhub determines that they have accepted at least 75% of the orders received in a week, at which point the drivers are paid at least $15 an hour. Drivers are incentivized to sign up for blocks in order to qualify for this hourly rate. Moreover, drivers are paid weekly, not per completed job.

Some factors weigh in favor of finding the drivers are independent contractors. First, Grubhub drivers supply their own equipment (a vehicle or bicycle, and a smartphone to use the Grubhub app to receive orders) and are not required to wear Grubhub clothing. These facts, however, do not mean they are not employees as a matter of law. *See JHK*, 142 Cal.App.4th at 1048-1049; *Air Couriers*, 150 Cal.App.4th at 938–39.

Second, drivers are not required to work in a particular location or remain in a particular area once they toggle-on as available, and some drivers, including Plaintiff, performed work for other companies while driving for Grubhub. However, there is a dispute as to whether Plaintiff in

9

fact needed to remain in a particular area to perform the deliveries. Further, that Plaintiff performed delivery services for other companies while relevant is not dispositive of the lack of an employment relationship. *See JHK*, 142 Cal.App.4th at 1051, 1066; *Air Couriers*, 150 Cal.App.4th at 926, 938–39.

Third, the parties apparently believed they created an independent contractor relationship as the Delivery Service Provider Agreement expressly acknowledged that Plaintiff was an independent contractor. However, this written language is not dispositive under California's employment test. See *Borello,* 48 Cal. 3d at 349 ("The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.")

\*\*\*

Grubhub's motion for summary judgment that Plaintiff was an independent contractor must be denied. "Under California's multi-faceted test of employment, there exists at the very least sufficient indicia of an employment relationship between the plaintiff[] driver and [Grubhub] such that a reasonable jury could find the existence of such a relationship." *Narayan*, 616 F.3d at 904.

## II.     Plaintiff's Claims for Reimbursement, Minimum Wage, and Overtime

Grubhub also argues that even assuming a trier of fact could find that Plaintiff was an employer, no reasonable trier of fact could find in his favor on his substantive labor violation claims.

### A.     *Reimbursement*

California Labor Code Section 2802(a) requires "an employer to indemnify its employees for expenses they necessarily incur in the discharge of their duties." *Gattuso v. Harte-Hanks, Inc.*, 42 Cal.4th 554, 558-559 (2007). "[A]n employer may satisfy its statutory reimbursement obligation under Section 2802 by paying employees enhanced compensation in the form of increases in base salary or commission rates, provided the employer establishes some means to identify the portion of overall compensation that is intended as expense reimbursement, and provided also that the amounts so identified are sufficient to fully reimburse the employees for all expenses actually and necessarily incurred." *Id*. at 575.

Grubhub compensated Plaintiff with a "service fee" of $4.25 per fulfilled delivery plus 50 cents per mile between the restaurant and customer. A reasonable trier of fact could find that Grubhub did not reimburse Plaintiff for mileage expenses and instead that the 50 cents per mile was part of a formula for determining compensation.

If the purpose of the 50 cents per mile is to cover gasoline costs, then why do Grubhub bicyclists receive this alleged reimbursement? Further, the "service fee" only covers 50 cents per mile from the restaurant to the customer; Grubhub Plaintiff was not compensated for the necessary expense of getting to the restaurant – drivers cannot deliver food if they do not have it in their possession.

Moreover, this "service fee" converts to $15 per hour if the alleged Grubhub employee accepts and fulfills at least 75% of orders received and is available for the entirety of each scheduled delivery block that week. Grubhub has not identified any evidence showing that the alleged employees who qualify for this hourly rate also receive 50 cents per mile. Finally, in the Service Fees and Equipment Appendix to the Service Provider Agreement, the 50 cents per mile is identified as part of the "service fee," it is not explicitly labeled as reimbursement. Therefore, Grubhub has also failed to indisputably meet the first prong of the test - to properly identify the portion of overall compensation that is intended to be expense reimbursement.

Thus, assuming Plaintiff is an employee, a reasonable trier of fact could conclude that Grubhub does not sufficiently reimburse drivers for the expenses they incur in the discharge of their duties. Grubhub's insistence that summary judgment in its favor is nonetheless appropriate because Plaintiff has not shown which expenses he incurred while driving for Grubhub and which for other companies is unpersuasive. It is undisputed that he made deliveries for Grubhub and thus incurred expenses. The amount of those expenses is an issue for trial, should that issue need to be reached.

B.    *Overtime*

"Wage and hour claims are today governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the IWC." *Brinker Restaurant Corp. v. Superior*

11

*Court*, 53 Cal.4th 1004, 1026 (2012). "The IWC, a state agency, was empowered to issue wage orders, which are legislative regulations specifying minimum requirements with respect to wages, hours, and working conditions." *Mendiola v. CPS Sec. Solutions, Inc.*, 60 Cal.4th 833, 838 (2015).

Labor Code Section 510(a) provides, in relevant part: "Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Wage Order 4 requires that employees be paid one and one-half times their regular rate of pay for "all *hours worked* over 40 hours in the workweek." *Mendiola*, 60 Cal.4th at 838 (emphasis in original).

California law requires that employees be compensated for all time "during which an employee is subject to the control of an employer." *Morillion v. Royal Packing Co.,* 22 Cal.4th 575, 578 (2000). "Courts have identified various factors bearing on an employer's control during on-call time: '(1) whether there was an on-premises living requirement; (2) whether there were excessive geographical restrictions on employee's movements; (3) whether the frequency of calls was unduly restrictive; (4) whether a fixed time limit for response was unduly restrictive; (5) whether the on-call employee could easily trade on-call responsibilities; (6) whether use of a pager could ease restrictions; and (7) whether the employee had actually engaged in personal activities during call-in time.'" *Mendiola*, 60 Cal.4th at 841 (citing *Owens v. Local No. 169*, 971 F.2d 347, 351 (9th Cir. 1992)). Furthermore, "[o]n-call waiting time may be compensable if it is spent primarily for the benefit of the employer and its business." *Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 523-524 (2009); *Armour & Co. v. Wantock*, 323 U.S. 126, 132 (1944) (time firefighters spent on call in the on-site fire hall was compensable, even though they spent time in "idleness" and "amusements").

Several factors weigh in favor of concluding that Grubhub drivers should be compensated for the hours they are toggled-on and available for deliveries, at least when they have signed up for weekly delivery blocks. When signed up for a block, the driver is required to advise dispatch that

the driver is "on call" and "[s]hould not reject incoming orders or be otherwise unavailable to receive incoming orders during any scheduled delivery blocks." (Dkt. No. 114-4 at 16.) A driver cannot go far if he has to be available to make a delivery in the geographic area to which he chose assignment.

There is also evidence the frequency of calls was unduly restrictive. While Plaintiff had rest periods and sometimes performed delivery services for other companies, there is also evidence that Plaintiff received up to four orders at the same time. (Dkt. No. 114-16 at 145:1-8.) Moreover, drivers cannot "easily" trade responsibilities. Once toggled-on, a driver is required to respond to an order and remain available during the duration of the scheduled delivery block, and while the Delivery Service Provider Agreement permits subcontractors, these individuals must execute Appendix C – essentially establishing a direct contractual arrangement with Grubhub. (Dkt. No. 114-5 at 4 and 16.) These requirements do not make the services easily transferrable, nor is there any evidence that Plaintiff or any other Grubhub drivers actually hired subcontractors to perform deliveries. A pager would not ease restrictions because Plaintiff's mobile phone, the modern day equivalent of a pager, is the mechanism that communicates the restrictions and is a work requirement - Grubhub's app is the means by which drivers receive orders.

Factor four is at best neutral. While there is no evidence that Grubhub required a set time limit for deliveries, given the nature of the service—delivering restaurant food—a reasonable trier of fact could find that deliveries had to be made rather quickly and that Grubhub monitored the performance of the drivers.

Factor seven weighs in favor of Grubhub as Plaintiff would rest and sometimes deliver food for other companies when scheduled on a block, although there is no evidence in the record that he delivered for other companies during the one week he presently claims he is owed overtime. Factor one, the on-premises living requirement, is irrelevant because the nature of the work—driving--is inherently mobile and therefore cannot be decided in favor of either Plaintiff or Defendant. But given that other factors weigh in favor of Grubhub control, the Court cannot conclude that no reasonable fact finder could find that the hours a driver is toggled on is compensable time, at least when it is during a scheduled block.

Plaintiff worked 44.75 hours during the week of November 30, 2015  (Dkt. No. 114-14 at 15-16.)  Plaintiff did not receive overtime pay for the extra 4.75 hours that week; therefore Plaintiff's overtime claim survives summary judgment.

C.      *Minimum Wage*

Wage Order 4 also requires employers to pay their employees not less than the applicable minimum wage for all hours worked in the payroll period.  *Mendiola, 60 Cal.4th at 838.*  Plaintiff submitted a chart in his opposition brief identifying three days, November 25, 30, and December 6, 2015, where he was allegedly paid less than the minimum wage.  The chart is confusing as Plaintiff puts a dollar sign ($) in front of the column reflecting miles driven; however, the record suggests that the dollar sign was added in error.

California minimum wage was $9.00 on the dates at issue and the chart reflects that Plaintiff was paid just less than $9.00 when tips and his expenses are deducted from the amount paid.  Grubhub correctly emphasizes that Plaintiff has not submitted any evidence of actual expenses; however, it is undisputed that he drove a car and thus reasonable to infer that he had at least some expenses.  For example, if his proposed expenses for November 25, 2015 are excluded, his hourly wage rate is $9.00.  Even a few cents of expenses would bring his wage rate below the minimum wage, although just barely.  Grubhub has not proved that it is entitled to summary judgment.

**IV.     Administrative Motions to File Under Seal**

Also pending before the Court are Defendant's administrative motions to file under seal portions of its summary judgment motion (Dkt. No. 102) and reply brief (Dkt. No. 123), and Plaintiff's administrative motion to file under seal documents submitted in support of its opposition.  (Dkt. No. 112.)

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 597 (1978).*  A party must demonstrate "compelling reasons" to seal judicial records attached to a dispositive motion.  *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006).  Examples of compelling reasons include "the use of court records for improper purposes," such as "to gratify private spite, promote public scandal,

circulate libelous statements, or release trade secrets." *Id.* "[S]ources of business information that might harm a litigant's competitive strategy may also give rise to a compelling reason to seal," *Nixon*, 435 U.S. at 597, as may pricing, profit, and customer usage information kept confidential by a company that could be used to the company's competitive disadvantage, *see Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214 (Fed. Cir. 2013). The "compelling reasons" standard is a strict one, and "[s]imply mentioning a general category of privilege, without any further elaboration or any specific linkage with the documents, does not satisfy the burden." *Kamakana*, 447 F.3d at 1184. The court must "balance the competing interests of the public and the party who seeks to keep certain judicial records secret. After considering these interests, if the court decides to seal certain judicial records, it must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture." *Id.* at 1179; *see also Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1162 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 2374 (2012).

In addition, parties moving to seal documents must comply with the procedures set forth in Civil Local Rule 79-5. The rule permits sealing only where the parties have "establishe[d] that the document or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law." Civ. L.R. 79-5(b). It requires the parties to "narrowly tailor" their requests only to the sealable material. *Id.* at 79-5(d). Thus, although sometimes it may be appropriate to seal a document in its entirety, whenever possible a party must redact. *See Kamakana*, 447 F.3d at 1183 (noting a preference for redactions so long as they "have the virtue of being limited and clear"); *Murphy v. Kavo Am. Corp.*, 11-cv-00410-YGR, 2012 WL 1497489, at *2-3 (N.D. Cal. Apr. 27, 2012) (denying motion to seal exhibits but directing parties to redact confidential information). Whatever the basis, the court "must articulate [the] reasoning or findings underlying its decision to seal." *Apple Inc.*, 658 F.3d at 1162.

A. *Plaintiff's Motion to File Portions of His Opposition Under Seal*

Plaintiff moves to seal the deposition transcripts of witnesses Jeff Smith, Stanley Chia, Jared Grebner, Chris McMahon, and Rudy Mendoza in their entirety, as well as the portions of the opposition citing these transcripts. (Dkt. No. 112.) Plaintiff also seeks to file under seal exhibit 8,

1   internal company emails regarding Plaintiff's termination, and exhibit 15, maps of the San

2   Francisco and Los Angeles Grubhub delivery areas.  (*Id*.)  Plaintiff states that these documents

3   have been designated as confidential pursuant to the Stipulated Protective Order between the

4   parties (Dkt. No. 94.)

5       Defendant filed Stan Chia's declaration in support of Plaintiff's motion to file under seal.

6   (Dkt. No. 117.)  Mr. Chia identifies the portions of Plaintiff's opposition, exhibit 2, and exhibit 3

7   that are proprietary business information.  Mr. Chia also seeks to seal exhibits 8, 11, and 15 in

8   their entirety.  Mr. Chia states these documents reflect "internal Grubhub confidential and

9   proprietary information not otherwise publicly available, including information relating to and

10  reflecting market research information, contractual arrangements, competitively sensitive

11  information, and other sensitive Grubhub information."

12      Exhibit 8 discusses Plaintiff's termination and the fact that Plaintiff did not perform

13  deliveries during his scheduled blocks.  These emails are not sensitive business information.

14  Exhibit 11 is the deposition of Rudy Mendoza, a general manager of Grubhub.  Mr. Chia seeks to

15  file this deposition under seal in its entirety.  This is overly broad.  Grubhub must narrowly tailor

16  its request to only the sealable material that concerns sensitive business information.  *See* Civ.

17  L.R. 79-5(d)(1)(B).

18      The Court, however, concludes that the redactions in Plaintiff's opposition, exhibit 2,

19  exhibit 3, and exhibit 15 concern sensitive business information, and therefore grants the motion

20  to seal in regards to these documents.   The request to seal exhibits 8 and the entire deposition of

21  Mr. Mendoza is denied.

22      B.   *Defendant's Motions to File Portions of Its Summary Judgment and Reply Briefs
             Under Seal*

23      Defendant seeks to file under seal certain documents related to nonparty Caviar, who has

24  also submitted a declaration in support of the motion to file under seal.  (Dkt. No. 107.)  Caviar

25  agreed to produce information to Grubhub, its competitor in the food delivery space, only after the

26  information would be produced under "Attorney's Eyes Only."  Grubhub and Caviar seek to file

27  exhibit 19 under seal, Caviar business records reflecting proprietary and confidential methods of

28

1    tracking couriers' use of the Caviar platform.  Grubhub and Caviar also seek to file under seal

2    exhibit 20, which describes the data produced in exhibit 19, and select portions of pages 5 and 20

3    which discuss exhibit 19.  Caviar states that both exhibits contain trade secrets.  This Court agrees.

4          Defendant also seeks to seal portions of exhibits 3 and 5 to its reply brief, which discuss

5    how drivers receive orders and how Grubhub manages drivers, and part of footnote 9, which

6    discusses whether the parties negotiate fees.  Grubhub states that these redactions contain

7    proprietary business information that is not otherwise publicly available.  The Court concludes this

8    redacted language is sensitive business information and grants Defendant's motion to file under

9    seal.

10    **CONCLUSION**

11          For the reasons stated above, the Court DENIES Defendant's motion for summary

12    judgment, GRANTS Plaintiff's motion to file under seal portions of Plaintiff's opposition, exhibit

13    2, exhibit 3, and exhibit 15 as identified in Mr. Chia's declaration, and GRANTS Defendant's two

14    motions to file under seal.

15          This Order disposes of Docket Nos. 102, 103, 112, and 123.

16

17    **IT IS SO ORDERED.**

18    Dated: July 10, 2017

19

20    *Jacqueline Scott Corley*

21    JACQUELINE SCOTT CORLEY
       United States Magistrate Judge

22

23

24

25

26

27

28