SHANNON LISS-RIORDAN (State Bar No. 310719)
(sliss@llrlaw.com)
THOMAS FOWLER, *pro hac vice*
(tfowler@llrlaw.com)
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone:     (617) 994-5800
Facsimile:     (617) 994-5801

Matthew D. Carlson (State Bar No. 273242)
mcarlson@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
466 Geary St., Suite 201
San Francisco, California 94102
Telephone: (415) 630-2651
Facsimile:  (617) 994-5801

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAEF LAWSON, individually and on behalf of all other similarly situated individuals, and in his capacity as Private Attorney General Representative<br><br>                    Plaintiff,<br><br>v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>                    Defendants. | Case No. 15-cv-05128 JSC<br><br><br>**PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br><br>BEFORE THE HON. JACQUELINE SCOTT CORLEY |

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION .................................................................................................. 1

II.   PROPOSED FINDINGS OF FACT ...................................................................... 3

III.  PROPOSED CONCLUSIONS OF LAW ............................................................. 9

   A.  The Evidence Will Demonstrate that GrubHub was Plaintiff's Employer ...................... 10

     i.   The Burden Will Be on GrubHub to Establish that Plaintiff was an Independent
          Contractor Rather than an Employee ................................................................ 10

     ii.  GrubHub Will Not Be Able to Meet its Burden to Prove that Plaintiff Was an
          Independent Contractor Under California Law .................................................. 11

          a. The Evidence Will Demonstrate that GrubHub had the Right to Control the Manner
          and Means of Plaintiff's Work ......................................................................... 12
          b. To the Extent that GrubHub will Argue that the Plaintiff was Free from the
          Company's Control, the Evidence will Show that GrubHub Nonetheless Retained
          "All Necessary Control" Over the Plaintiff's Performance ...................................... 14
          c. Plaintiff Will Show that the Secondary Borello Factors also Support Employment
          Status …………………….................................................................................... 18


   B.  The Evidence will Demonstrate that Plaintiff is Entitled to Damages Based on his Claims
       for Expense Reimbursement, Minimum Wage, and Overtime ........................................ 21

     i.    Plaintiff Will Show that GrubHub did Not Reimburse Him for His Expenses, in
           Violation of Labor Code § 2802 ...................................................................... 21

     ii.   Plaintiff Will Show that He Suffered Minimum Wage and Overtime Violations ......... 23

IV.   CONCLUSION .................................................................................................... 24

1

## TABLE OF AUTHORITIES

2
**Cases**

3
Air Couriers Int'l v. Employment Dev. Dep't.,
    150 Cal. App. 4th 923 (Cal. Ct. App. 2007) ................................................ 12, 14, 15

4
Alexander v. FedEx Ground Package Sys., Inc.,
5
    765 F.3d 981 (9th Cir. 2014) ................................................................................ passim

6
Augustus v. ABM Sec. Servs., Inc.,
    2 Cal. 5th 257 (2016) ........................................................................................... 24

7
Ayala v. Antelope Valley Newspapers, Inc.,
8
    59 Cal. 4th 522 (2014) .......................................................................................... 13

9
Clincy v. Galardi S. Enterprises, Inc.,
    808 F. Supp. 2d 1326 (N.D. Ga. 2011) ............................................................... 19

10
Cotter v. Lyft, Inc.,
11
    60 F. Supp. 3d 1067 (N.D. Cal. 2015) ....................................................... 12, 16, 19

12
Coverall North America, Inc. v. Division of Unemployment Assistance,
    447 Mass. 852 (2006) ........................................................................................ 16, 18

13
Estrada v. FedEx Ground Package Sys., Inc.,
14
    154 Cal. App. 4th 1 (2007) .......................................................................... 10, 19, 20

15
Gattuso v. Harte-Hanks Shoppers, Inc.,
    42 Cal. 4th 554 (2007) ....................................................................................... 21, 22

16
Grant v. Woods,
17
    71 Cal. App. 3d 647 (Cal. Ct. App. 1977) ............................................................ 21

18
Herman v. Express Sixy-Minutes Delivery Serv., Inc.,
    161 F.3d 299 (5th Cir. 1998) ............................................................................... 19

19
Hurtado v. Raly Dev., Inc.,
20
    2012 WL 3687488 (S.D. Fla. Aug. 27, 2012) ....................................................... 16

21
JKH Enterprises, Inc. v. Dep. of Indus. Relations,
    142 Cal. App. 4th 1046 (Cal. Ct. App. 2006) ............................................... 14, 15, 19

22
Keller v. Miri Microsystems LLC,
23
    781 F.3d 799 (6th Cir. 2015) ............................................................................... 19

24
Lawson v. GrubHub, Inc.,
    2017 WL 2951608, (N.D. Cal. July 10, 2017) ………………………...…….11, 12, 15, 20

25
Martinez v. Combs,
    49 Cal. 4th 35 (2010) ...................................................................................... 1, 11

26
Martins v. 3PD, Inc.,
27
    2013 WL 1320454 (D. Mass. Mar. 28, 2013) ..................................................... 11

28

ii

Mendiola v. CPS Sec. Sols., Inc.,
    60 Cal. 4th 833 (2015) .................................................................... 24

Morillion v. Royal Packing Co.,
    22 Cal. 4th 575 (2000) .................................................................... 24

Narayan v. EGL, Inc.,
    616 F.3d 895 (9th Cir. 2010)................................................... 10, 19, 20

O'Connor v. Uber Technologies, Inc.,
    82 F. Supp. 3d 1133 (N.D. Cal. 2015) ................................. 10, 12, 14, 19

O'Connor v. Uber Technologies, Inc.,
    2015 WL 5138097, (N.D. Cal. Sept. 1, 2015)......................................16

Ruiz v. Affinity Logistics Corp.,
    754 F.3d 1093 (9th Cir. 2014)........................................................ 18

S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,
    48 Cal. 3d 341 (1989) ............................................................. passim

Sakacsi v. Quicksilver Delivery System, Inc.,
    2007 WL 4218984 (M.D. Fla. Nov. 28, 2007) ...................................... 19

Sales v. Bailey,
    2014 WL 3897726 (N.D. Miss. Aug. 8, 2014) ...................................... 20

Santa Cruz Transp., Inc. v. Unemployment Ins. Appeals Bd.,
    235 Cal. App. 3d 1363 (Cal. Ct. App. 1991) ................................... 10, 11

Scantland v. Jeffry Knight, Inc.,
    721 F.3d 1308 (11th Cir. 2013)........................................................ 21

See's Candy Shops, Inc. v. Superior Court,
    210 Cal. App. 4th 889 (2012)......................................................... 24

Slayman v. FedEx Ground Package Sys., Inc.,
    765 F.3d 1033 (9th Cir. 2014)........................................................ 17

Varisco v. Gateway Sci. & Eng'g, Inc.,
    166 Cal. App. 4th 1099 (Cal. App. Ct. 2008) ...................................... 20

Yellow Cab Coop., Inc. v. Workers' Comp. Appeals Bd.,
    226 Cal. App. 3d 1288 (Cal. Ct. App. 1991) ....................................... 10

**Statutes**

Cal. Lab. Code § 1194 .................................................................... 1

Cal. Lab. Code § 1194.2...............................................................25

Cal. Lab. Code § 1197 .................................................................... 1

Cal. Lab. Code § 1198 .................................................................... 1

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-CV-05128

Cal. Lab. Code § 2698 ........................................................................................ 1

Cal. Lab. Code § 2802 ........................................................................... 1, 21, 22, 23

Cal. Lab. Code § 510 ..................................................................................... 1, 23

Cal. Lab. Code § 554 ........................................................................................ 1

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
Case No. 3:15-cv-05128

1

2

## I.       INTRODUCTION

3

4         Plaintiff Raef Lawson submits this pre-trial brief pursuant to Case Management and

5    Pretrial Order (Non-Jury) No. 2, Dkt. 145. Plaintiff has brought this lawsuit against Defendants

6    GrubHub Holdings Inc. and GrubHub Inc. (collectively "GrubHub), challenging GrubHub's

7    misclassification of him as an independent contractor, and the resulting violations of California

8    law: (1) GrubHub did not reimburse Plaintiff for his expenses (violating Cal. Lab. Code § 2802);

9    (2) at times, Plaintiff received less than minimum wage (violating Cal. Lab. Code §§ 1197 and

10   1194); and (3) GrubHub does not pay overtime (violating Cal. Lab. Code §§ 1194, 1198, 510,

11   and 554), which Plaintiff was entitled to receive. Plaintiff has brought these claims on his own

12   behalf and also in his capacity as a representative under the Private Attorneys General Act

13   ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, pursuing a claim on behalf of all GrubHub drivers in

14   California. Pursuant to the Stipulation and Order of June 15, 2017, Dkt. 122, the upcoming first

15   phase of trial will be limited to Plaintiff's individual claims and the issue of whether Plaintiff

16   Lawson is an "aggrieved employee" under PAGA.

17        As will be shown through evidence presented at trial, GrubHub is a food ordering and

18   delivery service, which dispatches drivers through a mobile phone application or through

19   GrubHub's website to deliver food to its customers around the country. Plaintiff worked as a

20   delivery driver from October 2015 to February 2016, delivering food to GrubHub's customers in

21   Los Angeles, California. Plaintiff intends to show that despite the fact that GrubHub purports to

22   have classified him and the other drivers as independent contractors, under California law he was

23   properly classified as an employee. Courts have repeatedly held that "[t]he label placed by the

24   parties on their relationship is not dispositive, and subterfuges are not countenanced." Alexander

25   v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 989 (9th Cir. 2014). In order to determine

26   whether a worker is an employee or an independent contractor, the Court must apply the test set

27   forth in Martinez v. Combs, 49 Cal. 4th 35 (2010). That test establishes three means by which a

28

1

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

worker may be classified as an employee; most commonly, courts have focused on the third method of establishing employee status, which is the common law test set forth in <u>S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations</u>, 48 Cal. 3d 341 (1989). Under the <u>Borello</u> test, there are a number of factors to be weighed, with the most important factor being "the right to control the manner and means" of the work being performed. <u>Id.</u> at 350.

While GrubHub will attempt to mask the reality of its employment relationship with drivers like Plaintiff Lawson, Plaintiff intends to show that GrubHub's delivery drivers are just the type of workers that the California Labor Code is intended to protect. GrubHub expects its drivers to be available to accept deliveries during shifts they are signed up for, to accept a certain percentage of delivery assignments, and to generally remain in the areas in which they are signed up to work. GrubHub employs individuals (dispatchers, who were later called "operation specialists") who monitor the progress of deliveries, assign or reassign deliveries to drivers based on their assessment of which drivers will best be able to perform them, and keep in touch with the drivers regarding their deliveries. If a driver fails to perform or fulfill GrubHub's requirements to the company's satisfaction, or engages in behavior that GrubHub decides is not appropriate, GrubHub may unilaterally, in its discretion, terminate the driver. The job of a GrubHub delivery driver is a low-skilled job, and no prior experience or education is required, other than having a driver's license and passing a background check. The drivers are not contracted to perform a single, or limited, amount of work; instead, their contracts are ongoing unless they quit or GrubHub terminates them. GrubHub unilaterally determines the amount the drivers are paid, which is generally on an hourly basis. GrubHub drivers have no way to distinguish themselves to customers so as to build their own customer base; the work they perform is for GrubHub's customers, not their own customers. And the work that the drivers perform is at the very core of GrubHub's business.

1

2

**II.     PROPOSED FINDINGS OF FACT**

The evidence to be presented at trial will show the following facts:

3

4

5

6

7

1.      GrubHub is a Chicago-based food ordering and delivery service that dispatches delivery drivers in California and throughout the country via an on demand dispatch system. In order to use GrubHub, a customer can order food from restaurants through GrubHub's app or website, and GrubHub then dispatches a delivery driver to the restaurant to pick up the order and take it to the customer's residence or business.

8

9

2.      Plaintiff Raef Lawson worked as a delivery driver for GrubHub from October 2015 to February 2016 in Los Angeles, California.

10

11

12

13

3.      In order to work for GrubHub, drivers apply online and submit proof of insurance and driver's license, as well as a background check. They are not required to have any prior delivery experience, but simply must be at least 19 years old and have driven for at least two years.

14

15

16

17

18

4.      At times, GrubHub employees called driver specialists have called applicants in for screening before allowing them to work as drivers. Once hired, drivers are given instructions as to how to work with GrubHub through an "on-boarding" process, which takes place either in person at a GrubHub office or remotely online.

19

20

21

22

5.      Drivers must use insulated food bags, which they can either buy or lease from GrubHub (bearing GrubHub's logo), but the fees are waived if the drivers agree to wear GrubHub t-shirts and hats. GrubHub encourages its drivers to wear the GrubHub-branded t-shirts and hats during their blocks.

23

24

25

26

27

6.      Previously, GrubHub dispatchers manually chose which drivers to send deliveries to, though later this system was to some extent automated, with deliveries sent to drivers based on an algorithm. Even after the algorithm was implemented, GrubHub employees referred to as operations specialists could still override the system to manually reassign deliveries to other drivers, based on their discretion.

28

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

7.      GrubHub supervises the quality of the drivers' work. GrubHub solicits restaurants to rate the drivers' performance, and it provides means for restaurants and customers to submit complaints about the drivers. When complaints are submitted by restaurants or customers regarding drivers, GrubHub supervisors and managers evaluate the complaints and let the drivers know that the complaints were made.

8.      GrubHub retains the right to, and indeed exercises the right to, terminate drivers in its discretion. The very language of Plaintiff's agreement with GrubHub provides that GrubHub may terminate the agreement "immediately upon written notice to the breaching Party . . ., with such notice specifying the breached [sic] relied upon," or "without cause upon fourteen (14) days' prior written notice . . . ."

9.      GrubHub has regularly terminated drivers in its sole discretion, with no notice and without any sort of opportunity for the drivers to challenge their termination, just as an employer may terminate an employee based on its sole determination that the employee has violated company policy. GrubHub has terminated drivers for, among other reasons, not being available to perform deliveries during the delivery blocks they had signed up for, declining too many orders sent to them during their delivery blocks, maintaining too low an order acceptance rate over time, failing to complete deliveries of orders they had accepted,  marking deliveries as complete when the deliveries were not actually made, traveling too far away from restaurants in their market during their delivery blocks, reaching out to customers after customers had cancelled an order, and taking too long to complete deliveries.

10.     The decisions of whether to terminate drivers are made with the input of GrubHub's general managers, as well as GrubHub driver specialists, who interact with the drivers, as well as employees at GrubHub's corporate offices in Chicago.

11.     When terminated drivers have reapplied to work at GrubHub, it has been in the discretion of GrubHub's general managers whether to allow the drivers to come back to work.

12.     GrubHub's agreement with its drivers including Plaintiff contains a Service Level

4

Agreement, which sets out various requirements the drivers are required to follow, such as:

- Has downloaded the necessary driver tools to fulfill GrubHub delivery orders.
- Sign up for weekly delivery blocks either through the GrubHub driver app or another means.
- When delivery block starts, provide status update to dispatcher that you are "on call" via GrubHub driver tools.
- Should not reject incoming orders or be otherwise unavailable to receive  incoming orders during any scheduled delivery block. Exceptions may be made for extenuating circumstances if you timely communicate such circumstances  to the dispatcher.
- Communicate with GrubHub's Care Team and/or dispatcher to notify them of potential diner issues.
- While this Agreement is in effect, you must have no more than one moving violation in 24 months.

13.     Delivery drivers work for GrubHub on shifts that GrubHub calls "blocks", which can range in time from one hour to five or more hours.

14.     GrubHub limits the number of drivers who can be signed up per block. The number of drivers who can be signed up to work at any given time is decided by the general manager in his discretion, which is based on the manager's predictions regarding the expected volume of orders that will need to be fulfilled during that period of time, as well as the manager's assumption that drivers who are signed up for blocks will accept all the orders that are offered to them.

15.     GrubHub has used an online employee sign-up program (called "WhenIWork") to schedule drivers for their blocks of time.

16.     If a driver is signed up for a block and cannot work that time, he or she is

expected to either trade their block with someone else, or take themselves off the schedule. Drivers who do not show up to work and make themselves available when they are scheduled for their blocks are subject to termination, and GrubHub has indeed terminated drivers for not being available and taking deliveries during their blocks.

17.   Plaintiff himself was terminated for not being available to work on his scheduled blocks.

18.   Signing up to work on blocks of time has generally been on a first-come-first-served basis, but at times GrubHub has given priority to certain drivers to pick their schedules before others based on such factors as how many deliveries the drivers could do in an hour, the drivers' acceptance rate, and the time that it takes the drivers to perform deliveries.

19.   Because of the limited number of drivers who can sign up for each block of time, the blocks often get filled up quickly, limiting the times during which drivers can work for GrubHub.

20.   During the drivers' blocks, GrubHub expects them to have their app toggled to indicate that they are available to accept orders at all times; drivers who are not available to accept orders during their entire blocks risk termination.

21.   During their blocks, the drivers are required to remain in geographical zones that are defined by GrubHub. Even within the zones, if the drivers are too far away from the restaurants from which they will be picking up orders, they are subject to termination. Similarly, if they take too long to perform their deliveries, they are subject to termination, so it is vital for the drivers to remain available near the restaurants within their zones.

22.   GrubHub monitors the drivers during their blocks in real time using GPS software.

23.   GrubHub generally pays the drivers an hourly rate for the hours they are signed up to work on blocks. Between the time that Plaintiff began working for GrubHub in October 21, 2015, and December 20, 2015, GrubHub's minimum guaranteed hourly rate was $15.00 per hour in Los Angeles. This amount was decreased to $11.00 per hour on December 21, 2015, and

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

remained at $11.00 until Plaintiff was terminated on February 14, 2016.

24.   GrubHub's general managers have discretion to determine what the guaranteed minimum hourly rate is for each region.

25.   GrubHub calculates the drivers' pay based upon a formula that accounts for the number of deliveries they perform and the distance from the restaurant to the customer for each delivery. GrubHub "trues up" the drivers' pay to its guaranteed hourly rate. In "truing up" the drivers' pay to this rate, GrubHub takes into account gratuities that are left by the customer for the driver. In other words, GrubHub's pay system provides that the amount the driver receives based upon its formula plus gratuities will be increased to its minimum hourly rate (assuming the driver has accepted the minimum percentage of deliveries for the shift).

26.   In order to receive the guaranteed minimum hourly rate, the drivers must accept a certain percentage of deliveries that are sent to them (75% during the time that Plaintiff worked in Los Angeles). In order to meet this minimum percentage, drivers need to try to accept nearly every order that is offered to them (because at times, the app does not alert them to all deliveries sent to them, and sometimes they are sent multiple deliveries at once – sometimes Plaintiff received up to four or five at a time – which they cannot accept at the same time). Drivers need to accept this percentage of deliveries, not only to receive the minimum guaranteed hourly rate, but also to avoid being terminated; GrubHub has terminated drivers who have not met this minimum acceptance rate.

27.   GrubHub's drivers are generally not supposed to work outside of a scheduled block. If drivers do work outside of a scheduled block, they do not receive the guaranteed minimum hourly rate.

28.   If a driver makes him or herself unavailable during a block, GrubHub will often remove the driver from the block, negatively impacting the driver's pay, since the driver would then not be eligible to receive the guaranteed minimum hourly rate for that block of time. GrubHub's operations specialists exercise their discretion in determining whether a driver who

7

has toggled his or her app to unavailable should be removed from a block.

29.    GrubHub drivers cannot negotiate their pay rate, nor the amounts that customers pay for delivery services. GrubHub unilaterally determines the amount and means of the compensation that the drivers receive for their work. GrubHub pays the drivers on a regular schedule by depositing money directly into drivers' accounts on a weekly basis, thereby controlling the amount the amount and manner of their payment.

30.    Operations specialists are also able to compel delivery drivers to perform deliveries great distances away if it is helpful to GrubHub.

31.    Operations specialists can and do force the drivers to perform orders.

32.    GrubHub's drivers do not deliver orders to their own customers but instead to GrubHub's customers. Plaintiff did not maintain his own distinct business with his own customers or business cards.

33.    While working for GrubHub, Plaintiff also worked for two other delivery companies, Postmates and Caviar.  Plaintiff did not operate his own delivery business.  When working for each of these companies, he delivered food to each of their respective customers, not to his own customers.

34.    Plaintiff does not recall performing deliveries for Postmates and Caviar while he was on a block for GrubHub.  GrubHub has presented evidence that he did, though this evidence only shows him performing deliveries for these companies during a small portion of the time that he was working on a GrubHub block.

35.    GrubHub's managers preferred driver not be working for other companies while on a block for GrubHub.

36.    Plaintiff and other drivers did not hire subcontractors to perform delivery work for GrubHub on their behalf.

37.    Even if a driver did have a subcontractor, GrubHub still maintained control. GrubHub's agreement provides that any subcontractors must submit to a background check for

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

GrubHub and must be at least 19 years old with two years of driving experience – just like all other delivery drivers.

38.     GrubHub does not reimburse drivers for their expenses. The "mileage" component of the drivers' pay was not identified as expense reimbursement.  Bike couriers also received the same "mileage" component of pay.

39.     Plaintiff is owed at least $286.10 in unreimbursed expenses, based upon the IRS mileage reimbursement rate.

40.     GrubHub does not pay overtime to drivers who work more than 40 hours per week or 8 hours per day. During the week of November 30, 2015, Plaintiff worked 44.75 hours, but he did not receive an overtime premium for the hours he worked in excess of 40 that week. Plaintiff is owed $26.84 for these overtime hours.

41.     GrubHub's payment system also does not ensure that drivers receive at least minimum wage for all hours worked. Plaintiff did not receive minimum wage during a number of days throughout his employment with GrubHub.  Altogether, Plaintiff is owed $273.62 in unpaid minimum wage.

42.     Since Plaintiff was terminated by GrubHub on February 14, 2016, he has twice applied to work for GrubHub again – once in March 2016 and once in April 2017. GrubHub has not permitted him to work again since his termination.

43.     GrubHub also employs delivery drivers in Massachusetts, which it classifies as employees rather than independent contractors. The job of a GrubHub delivery driver in California is the same job as a GrubHub delivery driver in Massachusetts.  There are not material differences between the way GrubHub treats its drivers in these two states.

## III.     PROPOSED CONCLUSIONS OF LAW

The evidence that will be presented at trial, summarized above, will establish  that GrubHub misclassified Mr. Lawson as an independent contractor. Thus, the Court should award

9

him damages in the amount of unpaid mileage reimbursement, the amount needed to compensate him minimum wage for all hours he worked, the amount needed to compensate him a time-and-a-half overtime premium for all hours that he worked in excess of 40 in a week, liquidated damages, and attorneys' fees (for which claimant will submit a petition at the Court's request). These conclusions are discussed below.

### A.     The Evidence Will Demonstrate that GrubHub was Plaintiff's Employer

#### i.     The Burden Will Be on GrubHub to Establish that Plaintiff was an Independent Contractor Rather than an Employee

"[U]nder California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee." Narayan v. EGL, Inc., 616 F.3d 895, 900 (9th Cir. 2010). "Once the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor." Id.; see also O'Connor v. Uber Technologies, Inc., 82 F. Supp. 3d 1133, 1143 (N.D. Cal. 2015) ("Although the Court's conclusion based on the record facts likely stand on logic and common sense alone, the case law makes abundantly clear that the drivers are Uber's presumptive employees."). The evidence will demonstrate that Plaintiff performed services for GrubHub, having made food deliveries on GrubHub's behalf, which is at the core of GrubHub's business. O'Connor, 82 F. Supp. 3d at 1141-45 (deciding on summary judgment that that Uber drivers perform services for Uber despite Uber's denial of this fact and argument that it was merely an intermediary between a customer and a driver); Yellow Cab Coop., Inc. v. Workers' Comp. Appeals Bd., 226 Cal. App. 3d 1288, 1294 (Cal. Ct. App. 1991) ("[t]he drivers, as active instruments of that enterprise, provide an indispensable 'service' to Yellow . . ."); Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 9 (2007) (noting that "[i]n practice [] the work performed by the drivers is wholly integrated into FedEx's operation"); Santa Cruz Transp., Inc. v. Unemployment Ins.

10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Appeals Bd., 235 Cal. App. 3d 1363, 1376 (Cal. Ct. App. 1991) ("the work performed by the [drivers] in this case is part of the regular business of [Defendant]" and "[t]he modern tendency is to find employment when the work being done is an integral part of the regular business of the employer . . . ."); Martins v. 3PD, Inc., 2013 WL 1320454, *14 (D. Mass. Mar. 28, 2013) (Defendant "is clearly a delivery company, hiring Plaintiffs for a vital and necessary aspect of its business . . . ").

ii.     GrubHub Will Not Be Able to Meet its Burden to Prove that Plaintiff Was an Independent Contractor Under California Law

California employers are required to comply with the requirements of California wage and hour law, including both the California Labor Code and relevant Wage Orders set forth by the Industrial Welfare Commission ("IWC"). In Martinez v. Combs, 49 Cal. 4th at 69, the California Supreme Court exhaustively reviewed how the term "employ" had been defined by the Industrial Welfare Commission (IWC) and concluded that the common law definition set forth in Borello, 48 Cal. 3d at 350, is one of "three alternative definitions" of employment. These three alternative tests include "(a) to exercise control over the wages, hours or working conditions, or (b) to suffer or permit to work, or (c) to engage, thereby creating a common law employment relationship." Id. Thus, Martinez clarifies that Borello is but one way to establish an employment relationship in California. "[P]ast decisions . . . teach that in light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such protection." Id. at 61 (internal quotations admitted).

As courts in California, including this Court in denying GrubHub's motion for summary judgment, have primarily focused on Borello in analyzing employment status, however, Plaintiff will focus on this test primarily. See Lawson v. Grubhub, Inc., 2017 WL 2951608, *3-6 (N.D. Cal. July 10, 2017). Under Borello, the "'most significant consideration' is the putative

employer's 'right to control work details'" which "need not extend to every possible detail of the work." O'Connor, 82 F. Supp. 3d at 1138 (quoting Borello, 48 Cal. 3d at 350); see also Lawson, 2017 WL 2951608, *3 ("For the purpose of determining whether an employer can rebut a prima facie showing of employment, the most significant consideration is the employer's right to control work details"); Cotter, 60 F. Supp. 3d at 1075. This right of control need not extend to every possible detail of the work; rather, the relevant question is whether the employer retains "all necessary control" over the worker's performance. Lawson, 2017 WL 2951608, *3; see also Air Couriers Int'l v. Emp't Dev. Dep't, 150 Cal.App.4th 923, 934 (2007) (explaining that "the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved" does not preclude a finding of employment status).

In addition to the right of control, the Borello test also considers "a number of 'secondary' indicia," including:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, which reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principle; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

Borello, 48 Cal. 3d at 350. These secondary indicia "cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." Id. at 351. No one Borello factor "is dispositive when analyzing employee/independent contractor status." O'Connor, 82 F. Supp. 3d at 1140.

> **a.   The Evidence Will Demonstrate that GrubHub had the Right to Control the Manner and Means of Plaintiff's Work**

The evidence will demonstrate that GrubHub retains the right to control the manner and

means of Plaintiff's work. <u>See</u> July 10, 2017, Hearing Tr. at 8-9. The California Supreme Court has held that, under <u>Borello</u>'s common law test, "the strongest evidence of the right to control is whether the hirer can discharge the worker without cause, because the power of the principal to terminate the services of the agent gives him the means of controlling the agent's activities." <u>Ayala v. Antelope Valley Newspapers, Inc.</u>, 59 Cal. 4th 522, 532 (2014); <u>Alexander</u>, 765 F.3d at 988 ("The right to terminate at will, without cause, is strong evidence in support of an employment relationship."). The very language of Plaintiff's agreement with GrubHub provides that GrubHub may terminate the agreement "immediately upon written notice to the breaching Party . . ., with such notice specifying the breached [sic] relied upon," or "without cause upon fourteen (14) days' prior written notice . . . ."  Moreover, Plaintiff will submit evidence that GrubHub has terminated drivers for numerous reasons relating to the drivers' failure to adhere to GrubHub's various rules and requirements.

In addition to the ability to terminate drivers at will based on GrubHub's determination in its discretion that they have violated company policy, Plaintiff will submit additional evidence of GrubHub's right to control the manner and means of its drivers' work including that of Plaintiff. First, GrubHub drivers work on shifts called "blocks", and during those blocks, GrubHub expects them to have their app toggled to indicate that they are available to accept orders at all times; drivers who are not available to accept orders during their entire blocks risk termination. Indeed, Mr. Lawson himself was terminated for this very reason. While they are on a block, drivers had to accept at least 75% (at the time that Plaintiff worked for GrubHub) of the orders offered to them, or else they would not receive the guaranteed minimum hourly pay, and they may be at risk of termination. For all practical purposes, drivers must accept every order possible in order to meet this minimum acceptance rate.  Also, if a driver makes himself unavailable during a block, GrubHub will often remove the driver from the block, negatively impacting the driver's pay, since the driver would then not be eligible to receive the guaranteed minimum hourly rate for that block of time.

Plaintiff will show that GrubHub also controlled his schedule. The number of blocks that the drivers signed up for were limited, determined at the General Managers' discretion in light of the volume of orders they expected.[1] Additionally, GrubHub's general manager could offer priority scheduling to favored drivers who have what he considered to be good acceptance rates and delivery times, meaning that those drivers get first pick of the blocks.

The evidence will also show that GrubHub controlled Plaintiff's work during his blocks. While on a block, the drivers are required to remain in zones set by GrubHub. Even within the zones, if the drivers are too far away from the restaurants from which they will be picking up orders, they are subject to termination. Similarly, if they take too long to perform their deliveries, they are subject to termination, so it is vital for the drivers to remain available near the restaurants within their zones. Operations specialists are also able, however, to compel delivery drivers to perform deliveries great distances away if it is helpful to GrubHub. GrubHub also promotes its branding by encouraging the drivers to wear shirts and hats with GrubHub logos on them.  While GrubHub will assert that its drivers are not required to wear this branded clothing, it encourages them to do so because, if the driver wears them, GrubHub waives the lease fees for the insulated food bags. Plaintiff Lawson wore the GrubHub shirt and hat during his blocks.

> **b.    To the Extent that GrubHub will Argue that the Plaintiff was Free from the Company's Control, the Evidence will Show that GrubHub Nonetheless Retained "All Necessary Control" Over the Plaintiff's Performance**

---

[1]    In any event, courts have recognized that employees can have freedom to set their own schedules, and this fact does not make them independent contractors.  See Air Couriers Int'l, 150 Cal. App. 4th at 926 (holding hires were employees as a matter of law despite the fact that "drivers determined their own schedules"); JKH Enterprises, Inc. v. Dep. of Indus. Relations, 142 Cal. App. 4th 1046, 1051 (Cal. Ct. App. 2006) (holding certain hires were employees as a matter of law despite the fact that they were 'not required to work either at all or on any particular schedule); see also O'Connor, 82 F. Supp. 3d at 1152 (denying summary judgment where drivers had complete flexibility to work whenever they wanted).

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff anticipates that GrubHub will argue that there were facets of Plaintiff's work that GrubHub did not control. However, the employer's "right of control need not extend to every possible detail of the work; rather, the relevant question is whether the employer retains "all necessary control" over the worker's performance. <u>Lawson</u>, 2017 WL 2951608, *3 (quoting <u>Borello</u>, 48 Cal. 3d at 350); <u>see also</u> <u>Air Couriers Int'l</u>, 150 Cal. App. 4th at 934 (explaining that "the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved" does not preclude a finding of employment status). As Plaintiff explained in his Opposition to Summary Judgment, many employees have flexibility in their work hours, and it is not uncommon in the service industry for workers to have the opportunity to sign up for available shifts that work for their schedule (such as servers at hotels and restaurants).[2] Also, not every employee has a boss hovering over her shoulder watching her every move; employees may have some freedom in deciding how to perform their jobs.  Here, however, the evidence will show that GrubHub drivers including Plaintiff did have dispatchers (or "operations specialists") monitoring their deliveries, ensuring they were completed in a timely manner, and assigning or reassigning deliveries in their discretion (and threatening to remove drivers from blocks) if they did not believe they were carrying out their deliveries properly. Given the evidence of control that will be presented, and most notably GrubHub's retention in its contracts with drivers of the right to terminate drivers in its discretion, the inevitable conclusion will be that Plaintiff was GrubHub's employee.

GrubHub will focus much of its argument on the fact that it claims that Plaintiff performed work for its competitors, Postmates and Caviar, while he worked for GrubHub.

---

[2]     As the court in <u>O'Connor</u> pointed out, "freedom to choose one's days and hours of work . . . does not in itself preclude a finding of an employment relationship," because "[t]he more relevant inquiry is how much control Uber has over its drivers *while they are on duty* for Uber." <u>O'Connor</u>, 82 F. Supp. at 1152 (emphasis in original) (citing <u>Air Couriers Int'l v. Employment Dev. Dep't.</u>, 150 Cal. App. 4th 923, 926 (Cal. Ct. App. 2007); <u>JKH Enterprises, Inc.</u>, 142 Cal. App. 4th at 1051.

However, the fact that a worker has juggled multiple jobs for multiple employers does not make

him an independent contractor. As Judge Chen noted in O'Connor, Uber drivers who have

worked for multiple companies "closely resemble fast-food workers who may work shifts at both

Burger King and McDonald's," rather than an individual with "a distinct business . . . that serves

many clients." 2015 WL 5138097, *23 n.24. Judge Chhabria likewise rejected Lyft's similar

argument that because its drivers were free to drive for other ride-sharing apps or to hold other

jobs, that fact made them independent contractors. Cotter, 60 F. Supp. 3d at 1079-80.[3]  In both

cases, Uber and Lyft argued that their drivers could and did perform work for other companies –

even at the same time as they were performing work for Uber or Lyft – but both courts denied

the companies' motions for summary judgment on employee status.   The fact that a number of

companies (that call themselves "sharing economy" companies) have, in recent years, set up a

system by which their workers can perform delivery services for them on a flexible schedule,

thus allowing the possibility of some overlap with work performed for other companies, does not

mean that the workers are engaged in their own independent business while they are performing

these delivery services.  Plaintiff will confirm that he did not establish his own independent

delivery service; he did not set up "Raef's Delivery" and seek to acquire his own customers to

whom he would deliver meals.  Instead, he signed up to work for several food delivery

companies, each of which has its own customers, and when he was working for GrubHub, he did

so as an employee of GrubHub, not as his own independent business operation.[4]

---

[3]       As courts have noted, "such 'freedom' [to work for other companies] alone does not tip
this factor in favor of independent contractor status, as '[a]n employee may, of course, work for
different employers at different times and still be an employee of each.'"  Hurtado v. Raly Dev.,
Inc., 2012 WL 3687488, *14 (S.D. Fla. Aug. 27, 2012) (citing Beliz, 765 F.2d at 1329).

[4]       When Plaintiff worked for GrubHub, he was clearly wearing the "hat" of GrubHub rather
than of his own personal business.  See Coverall North America, Inc. v. Division of
Unemployment Assistance, 447 Mass. 852, 858-59 (2006) (finding cleaning worker who had
been classified by the company as an independent contractor was an employee since she "wore
the hat" of the company, as demonstrated by the fact that she did not have her own clients and

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

1

2   In any event, Plaintiff will dispute the length of time that GrubHub claims regarding the

3   amount of time that his work for GrubHub may have overlapped with his work for these other

4   companies.[5]  At trial, he will dispute the amount of overlap that occurred, and as he testified,

5   these companies have faced complaints that they have not been fully accurate in recording what

6   times their drivers have taken deliveries.[6] In fact to the extent that he did work for other

7   companies, this was obviously not acceptable to GrubHub given that he was ultimately

8   terminated for not being available to accept orders during his blocks. This evidence thus

9   undermines GrubHub's contention that drivers were free to work for other companies while on a

10  block for GrubHub.

11      GrubHub will also argue that Plaintiff purportedly had the right to hire subcontractors to

12  perform work for him.  This argument places form over substance, as there will be no evidence

13  record that drivers (including Plaintiff) actually did this.[7]

14  could not negotiate her rates with customers; moreover, any customer she served was not her
    own customer, but a customer of the company's).

15

16  [5]    Although GrubHub refers to a number of "sharing economy" companies who Plaintiff
    has worked for in recent years, the only other companies he worked for during the time period

17  that he worked for GrubHub were Postmates and Caviar.  The fact that he moved frequently
    from one company to another is simply reflective of the fact that these companies have all set up

18  systems that allow for work to be scheduled flexibly.  Indeed, many employers throughout the
    economy in recent years have been providing flexible work options for their employees, often

19  allowing employees to sign up for what shifts they want to work (such as hotel employers, many
    restaurants, and other service providers).

20  [6]    Even by GrubHub's accounting, even if the time records produced by Postmates and
    Caviar are accurate, they show overlap in work performed for those companies during less than

21  7% of the hours in the blocks of time in which he was signed up for GrubHub.  At times
    employees may have (against their employers' wishes) performed tasks for another job, but that

22  fact in and of itself does not prove the worker is not an employee.

23  [7]    Even if drivers did hire subcontractors (and there is no evidence that any did), GrubHub's
    agreement provides that any subcontractors must submit to a background check for GrubHub and

24  must be 19 years old with two years driving experience – just like all other delivery drivers. The
    Ninth Circuit has explicitly rejected GrubHub's assertion, holding that where FedEx drivers

25  could hire additional drivers only if they met FedEx's standards, this was not a true
    entrepreneurial opportunity or independent contractor relationship. See Alexander, 765 F.3d at

26  993-94; Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1045-46 (9th Cir. 2014).

27

28
                                           17
    PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
                        CASE NO. 3:15-cv-05128

Ultimately, GrubHub may not dictate each and every detail of its drivers' work, but it exercises "absolute overall control of all meaningful aspects of this business relationship." <u>Ruiz v. Affinity Logistics Corp.</u>, 754 F.3d 1093, 1101 (9th Cir. 2014); <u>see also</u> <u>Coverall North America, Inc.</u>, 447 Mass. 852 (cleaning worker was employee of cleaning company where she performed services wearing the "hat" of the company, not her own independent business, and any customers for whom she performed cleaning work were the company's customers).

### c.   Plaintiff Will Show that the Secondary <u>Borello</u> Factors also Support Employment Status

In addition to the primary "right of control" factor, the evidence will show that the other <u>Borello</u> factors also point to the conclusion that Plaintiff was GrubHub's employee.

With respect to the first factor, while working for GrubHub, the evidence will show that Plaintiff was not engaged in a "distinct occupation or business." As discussed above, Plaintiff was not running "Raef's Delivery Service."  The customers for whom he delivered food orders were GrubHub's customers.  He did not have an incorporated business.  He did not have business cards.  He performed the services that GrubHub offered to its customers.  If he performed those services well, customers could not call him back to ask him to deliver future orders for them.[8] Although he also worked for other competing companies, he did not perform this work as his own business, but only was able to do so because a number of companies have recently made it possible for people like Mr. Lawson to work flexible hours that may allow some overlap.[9]

With respect to the second factor, "whether the work is performed under the principal's direction," <u>Alexander</u>, 765 F.3d at 995, the evidence will also support a conclusion that Plaintiff was an employee.  As discussed above, the evidence will show that GrubHub monitors

---

[8]      Indeed, GrubHub terminates drivers who contact customers independently of GrubHub.

[9]      As noted above, Plaintiff does not believe he did perform deliveries for other companies while on shift for GrubHub (or at least not to the degree that the records—which may not be fully accurate—may suggest), as he was aware that he would be risking termination from GrubHub for doing so.

everything from the drivers' availability while they are on block, how many orders they are accepting, how quickly they are delivering orders, and even where the drivers are when they wait for delivery orders.

Likewise, the third factor, "the skill required in the occupation," also favors Plaintiff. Many courts have held that the job of a driver does "not require a high degree of skill". JKH Enterprises, 142 Cal. App. 4th at 1064.[10]

The fourth factor is "whether the principal or worker provides the instrumentalities, tools, and place of work." Estrada, 154 Cal. App. 4th at 9. GrubHub argues that because the drivers furnish their own vehicles, this factor favors GrubHub. However, Plaintiff will show that the investment he made in his vehicle is extremely minor when compared with the substantial investment that GrubHub has made in developing its website and app.[11]

The fifth factor, "the length of time for performance of services," Alexander, 765 F.3d at 996, favors Plaintiff as well. For example, where "a contractor was hired to perform a specific task for a defined period of time," a court is more likely to find an independent contractor relationship, but here "[t]here was no contemplated end to the service relationship at the time that

---

[10]    See also O'Connor, 82 F. Supp. 3d at 1152 ("[A] jury could conclude that driving a car (as opposed to, *e.g.*, a truck or bus) does not require a special skill, particularly if no special driver's license is required"); Cotter, 60 F. Supp. 3d at 1080 ("And driving for Lyft requires no special skill – something we often expect independent contractors to have"); Estrada, 154 Cal. App. 4th at 12 ("only required skill is the ability to drive"); Narayan, 616 F.3d at 903 (drivers needed no "special license beyond a normal driver's license, and no skills beyond the ability to drive").

[11]    See, e.g., Sakacsi v. Quicksilver Delivery System, Inc., 2007 WL 4218984 at *7 (M.D. Fla. Nov. 28, 2007) (holding relative investment weighed in favor of employee status where many courier drivers "used their own personal cars to make [] deliveries" and courier service's cost for purchasing and maintaining its software and system far outweighed the costs to drivers); see also Keller v. Miri Microsystems LLC, 781 F.3d 799, 810 (6th Cir. 2015) ("[I]nvestment of a vehicle is no small matter, [but] that investment is somewhat diluted when one considers that the vehicle is also used by most drivers for personal purposes") (quoting Herman v. Express Sixty-Minutes Delivery Serv., Inc., 161 F.3d 299, 304 (5th Cir. 1998)); Clincy v. Galardi S. Enterprises, Inc., 808 F. Supp. 2d 1326, 1346-47 (N.D. Ga. 2011) (relative investment weighed in favor of employee status where dancer's $50,000 annual investment related to her work did not exceed the nightclub's investment in its business).

the plaintiff Drivers began working." <u>Narayan</u>, 616 F.3d at 903. Here, the contract automatically renewed every sixty days, and there was no contemplated end to Plaintiff's relationship with GrubHub, unless he quit or was fired.[12]

The sixth factor, the "method of payment" utilized by GrubHub, <u>Estrada</u>, 154 Cal. App 4th at 8, favors Plaintiff as well.  As discussed above, although GrubHub utilized a formula in determining what the drivers would be paid (because the pay was typically "trued up" to get them to a guaranteed hourly rate), Plaintiff was generally paid on an hourly basis.  "An hourly rate traditionally indicated an employment relationship." <u>Varisco v. Gateway Sci. & Eng'g, Inc.</u>, 166 Cal. App. 4th 1099, 1106 (Cal. App. Ct. 2008).[13]

The seventh factor, "whether the work is part of the principal's regular business, favors plaintiff[]," as well, <u>Alexander</u>, 765 F.3d at 996, because "drivers [a]re performing an integral and entirely essential aspect of [GrubHub's] core business." As this Court noted in its denial of GrubHub's Motion for Summary Judgment, "Grubhub drivers are also central to the GrubHub business. Grubhub is a food ordering and delivery business. While some customers can order from GrubHub and have the restaurant deliver the food, Grubhub provides drivers so that customers can order from restaurants without drivers." <u>Lawson</u>, 2017 WL 2951608.

Finally, the eighth factor is "whether or not the parties believe they are creating the relationship of employer-employee." <u>Alexander</u>, 765 F.3d at 989. Although GrubHub's agreement described the relationship between Plaintiff and GrubHub as that of an independent contractor, Plaintiff will testify that once he began working for GrubHub, he considered his

---

[12]   <u>See also</u> <u>Sales v. Bailey</u>, 2014 WL 3897726, *11 (N.D. Miss. Aug. 8, 2014) (duration of relationship weighed in favor of employee status where some plaintiffs worked for shorter periods but had "sought an indefinite employment relationship").

[13]   <u>See also</u> <u>Alexander</u>, 765 F.3d at 996 (employers may pay "by time, by the piece, or by successful completion of the service, instead of a fixed salary, and [it will] still constitute employee wages if other factors indicate an employer-employee relationship").

PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128

relationship with GrubHub to be more like an employer-employee relationship. Moreover, this factor has been given the least weight by the courts, since companies typically require their workers in these cases to sign agreements stating that they are "independent contractors".[14] "The belief of the parties as to the legal effect of their relationship is not controlling if as a matter of law a different relationship exists." <u>Grant v. Woods</u>, 71 Cal. App. 3d 647, 654 (Cal. Ct. App. 1977).[15]

### B.    The Evidence will Demonstrate that Plaintiff is Entitled to Damages Based on his Claims for Expense Reimbursement, Minimum Wage, and Overtime

#### i.    Plaintiff Will Show that GrubHub did Not Reimburse Him for His Expenses, in Violation of Labor Code § 2802

While GrubHub will attempt to argue that it provides expense reimbursement to drivers like Plaintiff, the evidence will show that to be untrue.  The law in California is clear that, in order for a payment to satisfy Labor Code § 2802, the employer must clearly communicate to the employee that the payment constitutes expense reimbursement.  <u>See</u> <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, 42 Cal. 4th 554, 574 (2007) ("an employer that uses salary and/or commission increases to discharge its reimbursement obligation must also communicate to its employees the method or basis for apportioning any increases in compensation between compensation for labor

---

[14]    To the extent that drivers may believe they are independent contractors, based on representations made in GrubHub's adhesive contracts, "California law is clear that [t]he label placed by the parties on their relationship is not dispositive." <u>Alexander</u>, 765 F.3d at 989 (internal quotation omitted).

[15]    GrubHub will also likely argue that the drivers could maximize their profits based upon their managerial skill. However,  Plaintiff, like many employees, simply attempted to make more money with GrubHub by working more shifts (which was often limited in availability), working more desirable shifts, or doing his job well (so that he would be rewarded by GrubHub, which at times incentivized drivers (like any good employer) by giving bonuses to top-performing drivers). <u>See</u> <u>Scantland v. Jeffry Knight, Inc.</u>, 721 F.3d 1308, 1316 (11th Cir. 2013). ("An individual's ability to earn more by being more technically proficient is unrelated to an individual's ability to earn or lose profit via his managerial skill, and it does not indicate that he operates his own business.").  Plaintiff was not able to turn down orders that he thought were not "profitable" because he had to accept nearly every order offered to him or risk termination.

performed and business expense reimbursement.").  None of GrubHub's top managers will be able to testify credibly that drivers are reimbursed for their expenses, or that they have been informed that they are being reimbursed.  Although GrubHub will argue that the drivers' pay is based on a formula that includes a component of $0.50 per mile, this portion of the drivers' compensation was simply that – a portion of their compensation for labor performed.

It is clear that the $0.50 per mile does not legally qualify as expense reimbursement because, as Plaintiff will demonstrate: (1) GrubHub did not communicate to drivers (including Plaintiff) that this payment was intended to reimburse them for expenses; (2) the $0.50 per mile formula applies to bike couriers as well as drivers, and given that bikes clearly cost less to maintain than cars, the payment can only be understood as compensation for labor, since bike couriers would not require as much expense reimbursement as drivers; and (3) GrubHub has argued that $0.50 per mile is <u>more</u> than would be needed to reimburse drivers for their car expenses.[16]  Moreover, the evidence will show that drivers such as Plaintiff do not typically receive their pay based on GrubHub's formula accounting for number of deliveries and the $0.50 per mile payment, since they typically receive a guaranteed minimum rate instead (to which their pay is "trued up" – and if it is not "trued up" to this rate, it is because they accepted less than the requisite percentage of orders for that shift, which puts them at risk of termination).

Thus when Plaintiff inevitably demonstrates that he was misclassified as an independent contractor there can be little dispute that he is owed reimbursement for his expenses, pursuant to

---

[16]        Courts have allowed drivers to use the IRS mileage reimbursement rate in order to establish their expenses under § 2802, rather than require them to prove their actual expenses. <u>See</u>, <u>e.g.</u>, <u>O'Connor v. Uber Technologies, Inc.</u>, 311 F.R.D. 547, 567 (N.D. Cal. 2015) (citing <u>Gattuso</u>, 42 Cal.4th at 569) (the IRS rate of reimbursement for mileage expenses is a "reasonable basis of computation of vehicle-related expenses.")  The IRS mileage reimbursement for cars is currently $0.535 per mile. <u>See</u> https://www.irs.gov/uac/2017-standard-mileage-rates-for-business-and-medical-and-moving-announced. GrubHub has argued to the Court that this amount would be too much reimbursement.  It is thus not credible that GrubHub paid its drivers on this basis in order to reimburse them for expenses, when it contends that this amount is more than drivers actually incur in vehicle expenses.

Labor Code § 2802. Based upon the mileage records that GrubHub has produced, and in light of Plaintiff's own reasonable recollection, he will show that he is owed at least $286.10 in unreimbursed mileage expenses.

### ii.     Plaintiff Will Show that He Suffered Minimum Wage and Overtime Violations

Finally, Plaintiff will show that he is owed overtime pay for work performed beyond 40 hours in a week, as well as minimum wage reimbursement for work he performed resulting in pay lower than the California minimum wage.

Specifically, GrubHub's records reveal that during the week of November 30, 2015, Plaintiff worked 44.75 hours, but he was not compensated at a time-and-a-half overtime premium for the 4.75 hours in excess of 40, as required under California law, resulting in $26.84 of damages.  See California Labor Code and Wage Order 9; Cal. Lab. Code 510; Cal. Code Regs. tit. 8, § 11090, § 3.

In addition, an analysis of GrubHub's records will show that Plaintiff did not receive minimum wage for his work on a number of days throughout his employment with GrubHub resulting in approximately $273.62 of minimum wage damages.

GrubHub will deny that Plaintiff suffered overtime or minimum wage or violations based on its contention that he cannot count all the hours he was signed up for a block of time as compensable. However, the evidence will show that this time is compensable. Plaintiff understood that he was required to be working for GrubHub the entire time he was on a block and ready to take all orders that came to him. GrubHub's managers wanted drivers to take all orders that were sent to them and scheduled drivers for blocks of time based on the understanding that they would take all orders that were sent to them. Drivers were subject to termination (and were in fact terminated) if they did not accept enough orders or actually be available for taking orders during their blocks of time.

While GrubHub will attempt to argue that Plaintiff was not actually working for GrubHub during all the hours he was on a block, it is not necessary for Plaintiff to have actually been performing a delivery during every minute of the block hours he was signed up for, in order for those hours to all be compensable.   Obviously, at times he would have to wait for another order to come through, but as noted, the evidence will support Plaintiff's contention that he had to be at the ready at all times during a block to take the next order and that GrubHub was, at the least, suffering or permitting him to work at those times by having him be available to take orders.[17]

## IV.   CONCLUSION

For the reasons discussed above, and as will be more fully presented at the trial, Plaintiff Raef Lawson was misclassified as an independent contractor by GrubHub. Under California law, he is entitled to damages for expense reimbursement, minimum wage and overtime. Plaintiff is also owed liquidated damages for his overtime and minimum wage damages. See Sillah v. Command International Security Services, 154 F. Supp. 3d 891 (Dec. 22, 2015) (citing Cal. Lab.

---

[17]   Under the Wage Order definitions of "hours worked," hours are compensable when an employee is *either* "subject to the control of an employer," *or* when an employee is "suffered or permitted to work, whether or not required to do so." Morillion v. Royal Packing Co., 22 Cal. 4th 575, 582 (2000), as modified (May 10, 2000).  GrubHub has previously cited to Mendiola v. CPS Sec. Sols., Inc., 60 Cal. 4th 833, 840 (2015), reh'g denied (Mar. 18, 2015), for the proposition that Plaintiff's scheduled blocks of time are not compensable because he could engage in non-work-related activities during these shifts.  However, the mere fact that he might engage in some non-work-related activities between productive minutes does not make the shift time non-compensable.  See Morillion, 22 Cal. 4th at 582; see also See's Candy Shops, Inc. v. Superior Court, 210 Cal. App. 4th 889, 893 (2012) (noting that "an employee's work shift" is "compensable time"); see also 29 CFR 553.221 ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace…" (in this case, Plaintiff's vehicle)); Mendiola, 60 Cal. 4th at 842 ("listening to music and drinking coffee while working in an office setting can also be characterized as personal activities, which would not otherwise render the time working noncompensable."); Augustus v. ABM Sec. Servs., Inc., 2 Cal. 5th 257 (2016) ("on duty" rest breaks during scheduled shifts -- during which employees walked to various nearby destinations and engaged in other leisure activities such as smoking, reading, and surfing the internet -- were compensable hours worked, where employees were required to "keep their radios and pagers on during rest breaks, to remain vigilant, and to respond when needs arise").

1    Code § 1194.2). Plaintiff is therefore an aggrieved employee under PAGA.

2

3    Date: August 18, 2017

4
                                        Respectfully submitted,
5
                                        RAEF LAWSON, individually and on behalf of all
6                                       other similarly situated individuals, and in his
                                        capacity as Private Attorney General Representative
7

8                                       By his attorneys,

9                                       /s/ Shannon Liss-Riordan_____
                                        Shannon Liss-Riordan (State Bar No. 310719)
10                                      Thomas Fowler, *pro hac vice*
                                        LICHTEN & LISS-RIORDAN, P.C.
11                                      729 Boylston Street, Suite 2000
                                        Boston, MA 02116
12                                      (617) 994-5800
                                        Email:  sliss@llrlaw.com, tfowler@llrlaw.com
13

14
                                        Matthew D. Carlson (State Bar No. 273242)
15                                      mcarlson@llrlaw.com
                                        LICHTEN & LISS-RIORDAN, P.C.
16                                      466 Geary St., Suite 201
                                        San Francisco, California 94102
17                                      Telephone: (415) 630-2651
                                        Facsimile:  (617) 994-5801
18

19

20

21                   **<u>CERTIFICATE OF SERVICE</u>**

22
          I hereby certify that a copy of this motion was served by electronic mail on August 18,
23   2017, on all counsel of record.

24                                      /s/ Shannon Liss-Riordan
                                        Shannon Liss-Riordan
25

26

27

28
PLAINTIFF'S PRE-TRIAL BRIEF AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW
CASE NO. 3:15-cv-05128