1    SHANNON LISS-RIORDAN (State Bar No. 310719)
     (sliss@llrlaw.com)
2    THOMAS FOWLER, *pro hac vice*
     (tfowler@llrlaw.com)
3    LICHTEN & LISS-RIORDAN, P.C.
     729 Boylston Street, Suite 2000
4    Boston, MA 02116
     Telephone:     (617) 994-5800
5    Facsimile:     (617) 994-5801
6
7    Attorneys for Plaintiff RAEF LAWSON

8                    **UNITED STATES DISTRICT COURT**
                  **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
9

10

11   RAEF LAWSON, individually and on behalf of         Case No. 15-cv-05128 JSC
     all other similarly situated individuals, and in
12   his capacity as Private Attorney General
     Representative                                      **PLAINTIFF'S MOTION FOR**
13                                                       **INDICATIVE RULING PURSUANT TO**
                          Plaintiff,                     **RULE 62.1**
14
     v.
15                                                       BEFORE THE HON. JACQUELINE SCOTT
     GRUBHUB HOLDINGS INC. and GRUBHUB                   CORLEY
16   INC.,
17                                                       **Hearing:**
                          Defendants.                    Date:      October 11, 2018
18                                                       Time:      9:00 a.m.
                                                         Place:     Courtroom F
19                                                       Judge:     Hon. Jacqueline Scott Corley
20

21

22

23

24

25

26

27

28

---

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on Thursday, October 11, 2018, or as soon thereafter as the matter may be heard before the Honorable Jacqueline Scott Corley, in Courtroom F of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, 15th floor, San Francisco, California 94102, Plaintiff Raef Lawson will and hereby does move this Court to issue an indicative ruling, pursuant to Rule 62.1.

Specifically, Plaintiff seeks an indicative ruling from the Court stating that it is likely to grant a motion for relief from judgment brought under Rule 60(b)(6) should the Ninth Circuit remand the case, in light of the adoption of the ABC test by the California Supreme Court in Dynamex Operations West, Inc. v. Superior Court, 4 Cal. 5th   903 (2018), or at least that such a Rule 60(b)(6) motion raises a substantial issue.

Dated: September 1, 2018

Respectfully submitted,

RAEF LAWSON, individually and on behalf of all other similarly situated individuals, and in his capacity as Private Attorney General Representative

By his attorneys,

/s/ Shannon Liss-Riordan_____
Shannon Liss-Riordan (State Bar No. 310719)
Thomas Fowler, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 1

       A.     Legal Standard ........................................................................................ 1

       B.     Dynamex Requires a Reversal of the Verdict in this Case ......................... 3

              i.  The Court's findings regarding whether Plaintiff's work was a part of
                  GrubHub's regular course of business indicate that GrubHub cannot
                  satisfy Prong B of the ABC test, meaning that Plaintiff was an
                  employee ............................................................................................ 5

              ii. The Court's findings that Plaintiff was not engaged in a distinct
                  occupation or business means that GrubHub also cannot satisfy Prong
                  C of the ABC test ............................................................................... 8

              iii. GrubHub also cannot satisfy Prong A of the ABC test, because it
                  retained the right to control Plaintiff's work ......................................... 9

       C.     GrubHub's Arguments that Dynamex Should Not Apply in this Case are
              Meritless ................................................................................................ 11

              i.  Dynamex applies retroactively in this case ......................................... 11

              ii. Dynamex is applicable to Plaintiff's expense reimbursement claim in
                  addition to his minimum wage and overtime claims ............................. 16

       D.     The Requirements for the Application of Rule 60(b)(6) are Easily Met in
              this Case ................................................................................................ 18

III.   CONCLUSION ................................................................................................. 22

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

# TABLE OF AUTHORITIES

**Cases**

Adams v. Merrill Lynch Pierce Fenner & Smith,
   888 F.2d 696 (10th Cir. 1989) ...................................................................................... 29

Alvarado v. Dart Container Corp. of Cal.,
   4 Cal. 5th 542 (2018) .................................................................................................. 17

Angelotti v. Walt Disney Co.,
   192 Cal. App. 4th 1394 (2011) ................................................................................... 10

Apple Inc. v. Samsung Electronics Co., Ltd.,
   2012 WL 4097751 (N.D. Cal. Sept. 17, 2012) ............................................................ 2

Awuah v. Coverall North America, Inc.,
   707 F. Supp. 2d 80 (D. Mass. 2010) .................................................................... 10, 19

Barr v. ADandS, Inc.,
   57 Cal. App. 4th 1038 (1997) ............................................................................... 15, 17

Batts v. Tow-Motor Forklift Co.,
   66 F.3d 743 (5th Cir. 1995) ........................................................................................ 29

Berwick v. Uber Technologies, Inc.,
   Case No. 11-46730, Decision of the Labor Commissioner (June 3, 2015) ................. 22

Brinker Rest. Corp. v. Sup. Ct.,
   53 Cal. 4th 1004 (2012) .............................................................................................. 17

Carey v. Gatehouse Media, Inc.,
   92 Mass. App. Ct. 801 (2018) ......................................................................... 9, 10, 19

Chaves v. King Arthur's Lounge,
   2009 WL 3188948 (Mass. Super. July 30, 2009) ....................................................... 20

Connelly v. Hilton Grand Vacations Co., LLC,
   2017 WL 5194598 (S.D. Cal. Nov. 9, 2017) .............................................................. 28

Dalton v. Lee Publ'ns, Inc.,
   270 F.R.D. 555 (S.D. Cal.2010) ................................................................................. 25

Dynamex Operations W., Inc. v. Superior Court,
   230 Cal. App. 4th 718, 179 Cal. Rptr. 3d 69 (2014) .................................................. 24

Dynamex Operations West, Inc. v. Sup. Ct.,
   2014 WL 5173038 (Cal Ct. App. Oct. 15, 2014) ...................................................... 18

Dynamex Operations West, Inc. v. Superior Court,
   4 Cal. 5th 903 (2018)........................................................................................... passim

Estrada v. FedEx Ground Package Sys., Inc.,
   154 Cal. App. 4th 1 (2007) ................................................................................... 24, 25

Eubank v. Terminix Int'l, Inc.,
   2016 WL 6277422 (S.D. Cal. Oct. 27, 2016) ......................................... 4, 27, 28, 30

Evangelatos v. Superior Court,
   44 Cal. 3d 1188 (1988) ............................................................................................... 16

Fleece on Earth v. Dep't of Emple. & Training,
    923 A.2d 594 (Vt. 2007)................................................................................ 13

Gattuso v. Harte-Hanks Shoppers, Inc.,
    42 Cal. 4th 554 (2007) ................................................................................. 25

Iskanian v. CLS Transportation Los Angeles, LLC,
    59 Cal. 4th 348 (2014) ................................................................................. 27

Johnson v. VCG-IS, LLC,
    Case No. 30-2015-00802813, Preliminary Ruling Granting Plaintiff's Motion for Summary
    Judgment (Super. Ct. Cal. Aug. 30, 2018) (Adopted as Final in Open Court on August 31,
    2018)................................................................................................... 8, 20

Johnson v. VCG-IS, LLC,
    Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18, 2018) .. 15,
    16, 22, 23

Juarez v. Jani-King of California, Inc., et al.,
    No. 12-17759 (9th Cir.) ................................................................................ 21

Lawson v. GrubHub, Inc. et al.,
    302 F. Supp. 3d 1071 (N.D. Cal. 2018)................................................. passim

Lawson v. GrubHub, Inc.,
    2017 WL 2951608 (N.D. Cal. July 10, 2017) ........................................... 19

Lopez v. Ryan,
    678 F.3d 1131 (9th Cir. 2012) ..................................................................... 30

Martinez v. Combs,
    49 Cal. 4th 35 (2010) .............................................................................. passim

Mendiola v. CPS Sec. Solutions, Inc.,
    60 Cal. 4th 833 (Jan. 8, 2015) ..................................................................... 17

Narayan v. EGL, Inc.,
    616 F.3d 895 (9th Cir. 2010) ....................................................................... 14

Nationstar Mortg. LLC v. Hometown W. II Homeowners Ass'n,
    2017 WL 58567 (D. Nev. Jan. 4 2017) ......................................................... 3

Newman v. Emerson Radio Corp.,
    48 Cal. 3d 973 (1989)............................................................................ 15, 16

O'Connor v. Uber Technologies, Inc,
    82 F. Supp. 3d 1133 (N.D. Cal. 2015)......................................................... 5, 6

O'Connor v. Uber Technologies, Inc.,
    311 F.R.D. 547 (N.D. Cal. 2015) ................................................................ 25

Oliveira v. Advanced Delivery Sys., Inc.,
    2010 WL 4071360 (Mass. Super. Jul. 16, 2010)....................................... 19

Penn v. Prestige Stations, Inc.,
    83 Cal. App. 4th 336 (2000) ........................................................................ 16

People v. Guerra,
    37 Cal.3d 385 (1984) ................................................................................... 16

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

Phelps v. Alameida,
    569 F.3d 1120 (9th Cir. 2009) ................................................................ 3, 26, 29, 30

Ritter v. Smith,
    811 F.2d 1398 (11th Cir. 1987) ........................................................................ 29

Robertson v. Walker,
    2014 WL 4543068 (N.D. Cal. Sept. 12, 2014) ................................................ 3, 26

S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations,
    48 Cal. 3d 341 (1989) .................................................................................. passim

Sakkab v. Luxottica Retail North America, Inc.,
    803 F.3d 425 (9th Cir. 2016) ........................................................................ 27, 28

Schwann et al v. FedEx Ground Package Sys., Inc.,
    2013 WL 3353776 (D. Mass. July 3, 2013) ........................................................ 19

Sierra Club v. San Joaquin Local Agency Formation Com.,
    21 Cal. 4th 489 (1999) .................................................................................. 16, 17

Stubbs v. Covenant Sec. Servs., Ltd.,
    2015 WL 5521984 (N.D. Cal. Sept. 16,  2015) .................................................. 11

United States v. Security Industrial Bank,
    459 U.S. 70 (1982) ........................................................................................ 16

Wilson v. Al McCord, Inc.,
    858 F.2d 1469 (10th Cir. 1988) ........................................................................ 29


**Statutes**

Cal. Lab. Code § 1194 ................................................................................ 4

Cal. Lab. Code § 1197 ................................................................................ 4

Cal. Lab. Code § 1198 ................................................................................ 4

Cal. Lab. Code § 2698 *et seq.* ................................................................ 4, 27, 30

Cal. Lab. Code § 2802 .......................................................................... passim

Cal. Lab. Code § 510 .................................................................................. 4

Cal. Lab. Code § 554 .................................................................................. 4

G.L. c. § 148B ........................................................................................ 9


**Rules**

Fed. R. App. P. 12.1(a) .............................................................................. 2

Fed. R. App. P. 12.1(b) ............................................................................ 1, 2

Fed. R. Civ. P. 60 .................................................................................... 3

Fed. R. Civ. P. 60(b) .............................................................................. 1, 2

Fed. R. Civ. P. 60(b)(6) ........................................................................ passim

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

Fed. R. Civ. P. 60(c) ............................................................................................ 2, 3

Fed. R. Civ. P. 62.1 ............................................................................................ 1, 31

Fed. R. Civ. P. 62.1(a) ............................................................................................ 2

Fed. R. Civ. P. 62.1(b) ............................................................................................ 2

**Regulations**

Cal. Code Regs., tit. 8, §11090. ........................................................................ 23, 24

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

## PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1

## I.     INTRODUCTION

On May 4, 2018, Plaintiff submitted to the Ninth Circuit a Motion to Remand, arguing that this case should be remanded back to this Court for reconsideration in light of the California Supreme Court's recent decision in <u>Dynamex Operations West, Inc. v. Superior Court</u>, 4 Cal. 5th 903 (2018). Although the Ninth Circuit denied Plaintiff's Motion (Appellate Dkt. 22), its denial was "without prejudice to appellant filing a motion for limited remand accompanied by an indication that the district court is willing to entertain a post-judgment motion related to the arguments raised in the motion to remand" pursuant to Fed. R. App. P. 12.1(b). As such, Plaintiff now submits this motion pursuant to Fed. R. Civ. P. 62.1, seeking an indicative ruling on a motion for relief from judgment under Fed. R. Civ. P. 60(b).

Because the California Supreme Court's decision in <u>Dynamex</u> has instituted an ABC misclassification test that should changes the outcome of this case, this Court should enter an indicative ruling that it would grant Plaintiff's motion for relief from judgment, or at the very least state that the application of <u>Dynamex</u> in this case raises a substantial issue. Indeed, in the context of staying Plaintiff's Motion to Deny Costs (Dkt. 238 at 3), this Court has already stated that "Given that the California Supreme Court adopted a new independent contractor test, there is a strong likelihood that Plaintiff's appeal will at least result in a remand." At this stage, it is now appropriate for the Court to issue an indicative ruling that will permit Plaintiff to renew his Motion for Remand with the Ninth Circuit.

## II.     ARGUMENT

### A.     Legal Standard

Under Rule 62.1(a), "If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion of the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed.

1

R. Civ. P. 62.1(a). Should the Court state "that it would grant the motion or that the motion raises a substantial issue, the movant must promptly notify the circuit clerk, and the Court of Appeals may then decide whether to remand for further proceedings. Apple Inc. v. Samsung Electronics Co., Ltd., 2012 WL 4097751, *2 (N.D. Cal. Sept. 17, 2012) (citing Fed. R. Civ. P. 62.1(b); Fed. R. App. P. 12.1(a) and (b)).

Given the fact that application of the Dynamex ABC test changes the outcome of the Court's original verdict, the Court should indicate that, given a remand, it is inclined to reverse its decision pursuant to Fed. R. Civ. P. 60(b). Rule 60(b)(6) provides that a party may seek relief from a judgment for any "reason that justifies relief."[1] Both the Ninth Circuit and courts within this District have found that a substantive change in the decisional law can justify relief under Rule 60(b)(6). See Phelps v. Alameida, 569 F.3d 1120, 1134-40 (9th Cir. 2009); Robertson v. Walker, 2014 WL 4543068, *3-4 (N.D. Cal. Sept. 12, 2014). In determining whether a change in law justifies relief from judgment, courts in the Ninth Circuit consider:

(1) whether a change in the law "upset or overturned a settled legal principle";

(2) whether the petitioner was diligent in seeking relief;

(3) the extent of the parties' reliance interest in the finality of the case;

---

[1]     Rule 60(c) requires that motions made pursuant to Rule 60(b) must be made within a reasonable time.  Plaintiff has satisfied this requirement. This Court issued its verdict on February 8, 2018 (Dkt. 221), and Plaintiff timely appealed on March 7, 2018 (Dkt. 226). The California Supreme Court issued its decision in Dynamex on April 30, 2018. Plaintiff promptly moved for the Ninth Circuit to remand this case to this Court for reconsideration on May 4, 2018 (Appellate Dkt. 10), and the Ninth Circuit issued its decision denying Plaintiff's motion but inviting Plaintiff to seek an indicative ruling from this Court on July 17, 2018 (Appellate Dkt. 22). Plaintiff's counsel intended to file this motion shortly after the issuance of that order but was delayed due to the serious illness and then passing of her mother-in-law, which prevented this motion from being completed and submitted sooner.  Those events occupied several of the weeks following that order. Plaintiff submits that he has nevertheless satisfied the timing requirement of Rule 60(c).

(4) the delay between the finality of the judgment and the motion for Rule 60 relief; (5) the closeness of the relationship between the underlying decision and the now controlling precedent; and

(6) considerations of comity.

See Robertson, 2014 WL 4543068, *3 (citing Phelps, 569 F.3d at 1135-40).[2] As will be explained below, the consideration of each of these factors justify granting Plaintiff's motion in light of the Dynamex decision.

### B.    **Dynamex Requires a Reversal of the Verdict in this Case**

On February 8, 2018, after a bench trial that took place from September 5-12, 2017, with closing arguments held on October 30, 2017, this Court issued its decision (Dkt. 221) finding that GrubHub did not misclassify Plaintiff as an independent contractor. Plaintiff brought claims under the California Labor Code and the Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*, alleging that GrubHub misclassified him and other delivery drivers across California as independent contractors and thereby violated the Labor Code by failing to pay minimum wage (Cal. Lab. Code §§ 1197 and 1194), failing to pay a time-and-a-half overtime premium for hours worked in excess of forty in a given workweek or in excess of eight per day (Cal. Lab. Code §§ 1194, 1198, 510, and 554), and failing to reimburse for necessary business expenses (Cal. Lab. Code § 2802). In finding that Plaintiff was properly classified as an independent contractor and thus not able to prevail on those claims, this Court applied the test articulated in S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations, 48 Cal. 3d 341 (1989).

---

[2]    Although the Ninth Circuit articulated this standard in the context of habeas corpus petitions, at least two district courts in the Ninth Circuit have applied it in deciding Rule 60(b)(6) motions in non-habeas civil cases based on a change in law. See Nationstar Mortg. LLC v. Hometown W. II Homeowners Ass'n, 2017 WL 58567, *2-3 (D. Nev. Jan. 4 2017) (granting reconsideration in a foreclosure case based on a change in law after decision on motion for summary judgment); Eubank v. Terminix Int'l, Inc., 2016 WL 6277422, *6 (S.D. Cal. Oct. 27, 2016) (granting reconsideration in a class action based on a change in law after district court's final decision while appeal was pending).

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

However, in <u>Dynamex</u>, the California Supreme Court has now announced that, rather than the <u>Borello</u> test, a far stricter test, referred to as an "ABC" test, governs the question of whether workers like the Plaintiff have been misclassified. <u>See</u> <u>Dynamex</u>, 4 Cal. 5th at 956-57.  Thus, because the Court did not have the benefit of this important new appellate authority at the time it issued its decision, this Court should now reconsider the decision in light of <u>Dynamex</u>.

Under <u>Borello</u>, the "'most significant consideration' is the putative employer's 'right to control work details'" which "need not extend to every possible detail of the work." <u>O'Connor v. Uber Technologies, Inc</u>, 82 F. Supp. 3d 1133, 1138 (N.D. Cal. 2015) (quoting <u>Borello</u>, 48 Cal. 3d at 350). In addition to the right of control, the <u>Borello</u> test also considers "a number of 'secondary' indicia," including:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, which reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principle; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

<u>Borello</u>, 48 Cal. 3d at 350.  These secondary indicia "cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." <u>Id.</u> at 351.  No one <u>Borello</u> factor "is dispositive when analyzing employee/independent contractor status." <u>O'Connor</u>, 82 F. Supp. 3d at 1140.

However, the California Supreme Court's decision in <u>Dynamex</u> upends this analysis and requires that the Court's decision be reconsidered. In <u>Dynamex</u>, the Supreme Court recognized that the multi-factor <u>Borello</u> test has led to uncertainty and manipulation by putative employers and that an "ABC" test would better satisfy the "history and purpose of the suffer or permit to work standard in California's wage orders."  <u>Dynamex</u>, 4 Cal. 5th at 956-57.  Citing its decision in <u>Martinez v. Combs</u>, 49 Cal. 4th 35 (2010), which set forth three definitions of "to employ" under California law: "(a) to exercise control over the wages, hours or working conditions, *or* (b)

to suffer or permit to work, *or* (c) to engage, thereby creating a common law employment relationship," <u>id.</u> at 64, the <u>Dynamex</u> Court explained the "suffer or permit" standard is "exceptionally broad," "must be liberally construed," and applies to the employee/independent contractor inquiry.  <u>Dynamex</u>, 4 Cal. 5th at 954.

The California Supreme Court thus held that the proper standard for resolving that inquiry is: first, to provide workers with a presumption of employee status, placing the burden on the putative employer to establish that the worker is an independent contractor; and second, to require the putative employer to establish each of three factors to prove independent contractor status, commonly called an "ABC" test.  <u>Id.</u> at 956-57. Those factors require the putative employer to demonstrate that: "(A) the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed."  <u>Id.</u>  The ABC test is conjunctive, meaning that if the putative employer cannot establish *all three factors* with regard to a worker, that worker is an employee as a matter of law. <u>See</u> <u>id.</u> at 957.

> **i.    The Court's findings regarding whether Plaintiff's work was a part of GrubHub's regular course of business indicate that GrubHub cannot satisfy Prong B of the ABC test, meaning that Plaintiff was an employee**

Notably, the <u>Dynamex</u> Court specifically adopted the Massachusetts version of the "ABC" test, which contains a very strict "B" prong. <u>See</u> <u>id.</u> at 956 n.23. Under that prong, the alleged employer can only establish independent contractor status by showing that the work performed is outside the employer's usual course of business.  In other words, "when a clothing manufacturing company hires work-at-home seamstresses to make dresses from cloth and

patterns supplied by the company that will thereafter be sold by the company . . . or when a bakery hires cake decorators to work on its custom-designed cakes . . . the workers are part of the hiring entity's usual business operation and the hiring business can reasonably be viewed as having suffered or permitted the workers to provide services as employees." Id. at 959 (internal citations omitted).

Importantly, this Court has already made findings that must change the outcome of its decision when viewed in light of the ABC test. First, in the context of analyzing one of the secondary factors under the Borello test – whether the work performed by Plaintiff was part of GrubHub's regular business – the Court already found that GrubHub "is in the business of online restaurant ordering and . . . of also providing food delivery for certain restaurants" and that "at the time [Plaintiff] drove for Grubhub food delivery was part of Grubhub's regular business . . . ." Lawson v. GrubHub, Inc. et al., 302 F. Supp. 3d 1071, 1091 (N.D. Cal. 2018). The Court specifically noted that "Grubhub deliberately entered the food delivery business in certain urban markets" and "developed an entire mobile app and algorithm and created entire company departments to facilitate Grubhub's delivery services." Id. As the Court found, GrubHub's argument that its primary business was as a platform for food ordering was unavailing because it was also in the business of food delivery. See id.  This case is similar to Johnson v. VCG-IS, LLC, Case No. 30-2015-00802813, Preliminary Ruling Granting Plaintiff's Motion for Summary Judgment (Super. Ct. Cal. Aug. 30, 2018) (Adopted as Final in Open Court on August 31, 2018) (attached hereto as Exhibit B), where a California Superior Court has held (on summary judgment) that an exotic dancer was a strip club's employee because the defendant "holds itself out as a 'strip club' and the exotic dancers who perform there, including plaintiffs, are central to the defendant's business . . . ." Likewise, as this Court has already found that GrubHub is a delivery service, and the delivery drivers performed that delivery work for GrubHub, under Prong B of the ABC test, GrubHub cannot avoid liability by attempting to define itself around its obvious course of business.

It is important to reiterate that <u>Dynamex</u> specifically adopted the Massachusetts iteration of the ABC test and specifically Massachusetts' version of Prong B. <u>Dynamex</u>, 4 Cal. 5th at 955-56 n.23.  In Massachusetts, courts have rejected the arguments that GrubHub advanced at trial. For example, the Massachusetts Appeals Court recently made clear in <u>Carey v. Gatehouse Media, Inc.</u>, 92 Mass. App. Ct. 801, 805-11 (2018), that companies cannot avoid liability for misclassification under Prong B of G.L. c. § 148B (the Massachusetts Independent Contractor Statute) by creative labeling of what their usual course of business is.  Instead, a court must determine what the defendant's actual usual course of business is.  That court explained that "the manner in which a business defines itself is relevant to determining its usual course of business," <u>Id.</u> at 805, but "[o]f course, this approach must have its limits. A business cannot alter the substance of its usual course of business merely by careful (or careless) self-labeling in its dealings with contractors, employees, customers or the public," <u>Id.</u> at 806 n.9.

The <u>Carey</u> court also noted that "a service need not be the sole, principal, or core product that a business offers its customers, or inherently essential to the economic survival of that type of business, in order to be furnished in the usual course of that business." <u>Id.</u> at 808. Similarly, in <u>Dynamex</u>, the California Supreme Court approvingly cited <u>Awuah v. Coverall North America, Inc.</u>, 707 F. Supp. 2d 80, 82 (D. Mass. 2010), a Massachusetts case applying the "ABC" test, which concluded that, under Prong B, the defendant was in the commercial cleaning business, despite its efforts to characterize itself merely as a "franchisor" that sold franchises without being itself engaged in commercial cleaning.  The <u>Awuah</u> court concluded that the plaintiffs, who performed the cleaning, were employees of the defendant under Prong B because the defendant could not prove that their work was outside its usual course of business, rejecting the defendant's argument that "franchising" was itself the defendant's business.

Here, while GrubHub argued at trial that its principal business was facilitating food orders rather than food delivery, <u>Carey</u> makes clear that food delivery need not be GrubHub's "sole, principal or core" business in order to comprise a part of its usual course of business for

purposes of Prong B. Id. Thus, the Court's conclusion under Borello that Plaintiff's work was a part of GrubHub's regular business – despite the fact that food delivery is not GrubHub's sole course of business – is equally applicable to an application of Prong B under Dynamex.[3]  Thus, under prong B of the ABC test, it is apparent that GrubHub cannot carry its burden to establish independent contractor status, because the test is conjunctive, meaning that Plaintiff was an employee and the Court's decision should thus be reversed. See Dynamex, 4 Cal. 5th at 959-61.

**ii.     The Court's findings that Plaintiff was not engaged in a distinct occupation or business means that GrubHub also cannot satisfy Prong C of the ABC test**

Under Prong C of the ABC test, GrubHub must show that "that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." Id. at 956-57. In the context of the secondary Borello factor that requires an evaluation of whether Plaintiff was in a "distinct occupation or business," the Court found that:

> Mr. Lawson was not engaged in a distinct occupation or business. He did not run a delivery business of which Grubhub was simply one client . . . . He did not get to decide how much Grubhub paid him or how much Grubhub's customers paid for his delivery services. Instead, Mr. Lawson worked multiple low-wage jobs in addition to his nascent acting career.

Lawson, 302 F. Supp. 3d at 1089 (internal citation omitted). Moreover, this Court rejected GrubHub's argument that Plaintiff had a distinct business given the fact that he identified himself on his tax return as self-employed, because "[g]iven that GrubHub and the other 'gig economy'

---

[3]     Indeed, similar to Carey, other California courts examining this Borello secondary factor have confirmed this Court's conclusion that employees' work can be integrated into the defendant's business, and this Borello factor can point toward employee status, even where the services are an important part – but not the sole or even the primary course – of the defendant's business. See Angelotti v. Walt Disney Co., 192 Cal. App. 4th 1394, 1405 (2011) (finding stunt man to be employee of a production company, where court noted that "[f]ilm production, including stunts performed for the films, was part of the regular business of [the] production company."); Stubbs v. Covenant Sec. Servs., Ltd., 2015 WL 5521984, at *7 (N.D. Cal. Sept. 16, 2015) (noting that security guards could be part of usual course of business, where defendant's business was manufacturing dangerous chemicals).

companies for whom he performed services classified him as an independent contractor that is what he had to put on his return." Id. Therefore, the Court has already made ample findings that demonstrate that GrubHub cannot satisfy Prong C.

Citing to Borello, the Dynamex Court, in explaining Prong C, stated that "[a]s a matter of common usage, the term 'independent contractor,' when applied to an individual worker, ordinarily has been understood to refer to an individual who *independently* has made the decision to go into business for himself or herself." Dynamex, 4 Cal. 5th at 962 (emphasis in original). Further, the court noted that "[s]uch an individual generally takes the usual steps to establish and promote his or her independent business – for example, through incorporation, licensure advertisements, routine offerings to provide the services of the independent business to the public or to a number of potential customers and the like." Id. On the other hand:

> When a worker has not independently decided to engage in an independently established business but instead is simply designated an independent contractor by the unilateral action of a hiring entity, there is a substantial risk that the hiring business is attempting to evade the demands of an applicable wage order through misclassification.

Id. Here, the Court's clear findings that Plaintiff did not independently decide to engage in an independently established business indicates that GrubHub's business model is exactly what the Dynamex had in mind when adopting the ABC test, as GrubHub unilaterally designates its drivers, including Plaintiff, as independent contractors in order to evade the Labor Code and wage order. Thus, GrubHub cannot satisfy Prong C, and Plaintiff must be considered to have been GrubHub's employee.

### iii.   GrubHub also cannot satisfy Prong A of the ABC test, because it retained the right to control Plaintiff's work

Although this Court did not find that the degree to which GrubHub retained the right to control the details of Plaintiff's work supported employee status under the Borello test, the Court's findings nevertheless mean that GrubHub cannot satisfy Prong A, "whether the worker is free from the control and direction of the hiring entity in connection with the performance of the

9

work, both under the contract for the performance of the work and in fact." <u>Dynamex</u>, 4 Cal. 5th at 956-57. The Court rested its conclusion regarding right of control on this analysis:

> Of primary significance, Grubhub did not control the manner or means of [Plaintiff's] work, including whether he worked at all or for how long or how often, or even whether he performed deliveries for Grubhub's competitors at the same time he had agreed to deliver for Grubhub.

<u>Lawson</u>, 302 F. Supp. 3d at 1091-92.

However, in construing prong A, the <u>Dynamex</u> Court favorably cited a case in which the Vermont Supreme Court (using a similar iteration of the ABC Test) found that a clothing company retained the right to control the work of its knitters and sewers even though they "worked at home on their own machines at their own pace and on the days and at the times of their own choosing," because "'[t]o reduce part A of the ABC test to a matter of what time of day and in whose chair the knitter sits when the product is produced ignores the protective purpose of the [applicable] law.'" <u>Dynamex</u>, 2018 WL 1999120, *30 n.27 (quoting <u>Fleece on Earth v. Dep't of Emple. & Training</u>, 923 A.2d 594, 599-600 (Vt. 2007)).  Indeed, the <u>Dynamex</u> Court also specifically noted when discussing Prong A that the "suffer or permit" test from which the ABC test was derived was "intended to be broader and more inclusive than the common law test." GrubHub's right to terminate at will, which under California law is the most important factor in determining the employer's right to control, <u>see</u> <u>Narayan v. EGL, Inc.</u>, 616 F.3d 895, 900 (9th Cir. 2010), should lead to the conclusion under <u>Dynamex</u> that GrubHub also cannot satisfy Prong A, and the fact that Plaintiff had some control over when he worked is not the significant detractor from GrubHub's right to control that this Court characterized it as.

Of course, <u>Dynamex</u> makes clear that it is not even necessary for the Court to reach additional prongs of the test if it finds that the defendant cannot satisfy even one of the three prongs. <u>See</u> <u>Dynamex</u>, 4 Cal. 5th at 966 ("[E]ach part of the ABC test may be independently determinative of the employee or independent contractor question . . . .")**.**  Thus, the Court need

not even reach Prongs A and C, since it is evident that GrubHub cannot satisfy Prong B of the ABC test.

## C.     GrubHub's Arguments that <u>Dynamex</u> Should Not Apply in this Case are Meritless

Obviously realizing that the application of <u>Dynamex</u> would result in the reversal of this Court's decision, GrubHub opposed Plaintiff's Motion to Remand before the Ninth Circuit by arguing that <u>Dynamex</u> was inapplicable to this case. First, GrubHub argued that <u>Dynamex</u> cannot be applied retroactively in this case, only prospectively. Second, GrubHub argued that even if <u>Dynamex</u> applies in this case, it applies only to Plaintiff's minimum wage and overtime claims and not Plaintiff's expense reimbursement claim. As will be explained, neither of those arguments can prevail.

### i.     <u>Dynamex</u> applies retroactively in this case

There is no question that <u>Dynamex</u> – a unanimous decision of the California Supreme Court – applies to this case. At least one California Superior Court has now confirmed that <u>Dynamex</u> should be applied retroactively. <u>See</u> <u>Johnson v. VCG-IS, LLC</u>, Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18, 2018) (attached hereto as Exhibit A).  In considering the retroactivity question, the <u>Johnson</u> Court found:

> Even though *Dynamex* established a new standard for evaluating independent contractor/employee issues (at least as to claims brought under the IWC wage orders), it did not state that its decision applied only prospectively. Given the age of the claims in the *Dynamex* case, and given the Court's longstanding acknowledgment of its authority to make such a statement (*see Newman v. Emerson Radio Corp.*, (1989) 48 Cal. 3d 973, 978), the lack of such a pronouncement suggests that the decision should apply retroactively. Although not necessarily determinative, the Court's later decision (on June 20, 2018) to deny requests to modify its decision to state that *Dynamex* will only be applied prospectively supports this conclusion. In light of "the general rule that judicial decisions are given retroactive effect" (*Newman, supra* at 978), and because it is up to the Supreme Court to declare an exception to this rule (*see Barr v. ADandS, Inc.*, (1997) 57 Cal. App. 4th 1038, 1053), this Court will apply *Dynamex* retroactively.

Johnson, Case No. 30-2015-00802813, at 2 (Ex. A). As the Johnson Court correctly observed, "[t]he general rule that judicial decisions are given retroactive effect is basic in our legal tradition." Newman v. Emerson Radio Corp., 48 Cal. 3d 973, 978 (1989); see also Sierra Club v. San Joaquin Local Agency Formation Com., 21 Cal. 4th 489, 509 (1999). The California Supreme Court has gone so far to say that "[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student." Evangelatos v. Superior Court, 44 Cal. 3d 1188, 1207 (1988) (citing United States v. Security Industrial Bank, 459 U.S. 70, 79 (1982)). See also Penn v. Prestige Stations, Inc., 83 Cal. App. 4th 336, 338-42 (2000) (applying new California Supreme Court precedent, even though the decision was not issued until after the judgment had been entered in the case under review); People v. Guerra, 37 Cal.3d 385, 399 (1984) ("even a non-retroactive decision . . . ordinarily governs all cases still pending on direct review when the decision is rendered."). Especially given the fact that the Dynamex Court rejected Dynamex's request for a modification of its decision that would clarify that Dynamex's application would be prospective only, it is amply clear that its application is retroactive. See Barr v. ADandS, Inc., 57 Cal. App. 4th 1038, 1053 (1997) ("We know of no decisions where the traditional retroactive effect of a judicial decision was altered to apply prospectively other than through pronouncements of the Supreme Court.").[4]

---

[4]   Admittedly, there is a *narrow* exception to the retroactivity rule, "when considerations of fairness and public policy are so compelling in a particular case that, on balance, they outweigh the considerations that underlie the basic rule"; the California Supreme Court also looks at whether the new decision would "raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law." Sierra Club, 21 Cal. 4th at 508 (citation omitted). However, if the California Supreme Court had believed that the Dynamex decision met this narrow exception, one would have expected it to have said that in the course of its 82-page decision or subsequently agreed to grant Dynamex's request for a modified decision. Indeed, the California Supreme Court has routinely found that its decisions regarding wage orders and the Labor Code apply retroactively. See, e.g., Alvarado v. Dart Container Corp. of Cal., 4 Cal. 5th 542, 573 (2018) ("Furthermore, if we were to restrict our holding … to prospective application, we would, in effect, negate the civil penalties, if any, that the Legislature has determined to be appropriate in this context, giving employers a free pass as regards their past conduct . . . . In doing so, we would exceed our appropriate judicial role."); Mendiola v. CPS Sec. Solutions, Inc., 60 Cal. 4th 833, 848 n.18 (Jan. 8, 2015) ("At oral argument,

1

2          GrubHub protested to the Ninth Circuit that due process prohibits the retroactive

3   application of <u>Dynamex</u>, because GrubHub purportedly did not have fair notice that <u>Borello</u> was

4   not the applicable test.  GrubHub claims that the use of the <u>Borello</u> test in deciding whether a

5   worker was properly classified as an independent contractor was "settled law" and that all parties

6   agreed that <u>Borello</u> was the sole appropriate test to apply to the claims at issue in this case.  This

7   assertion is **not** correct.  Plaintiff noted in his brief in opposition to summary judgment (Dkt.

8   112-3 at 9-10), his pretrial proposed findings of fact and conclusions of law (Dkt. 180 at 11-12),

9   as well his proposed findings of fact and conclusions of law following the bench trial (Dkt. 217

10  at 43 n.65), that <u>Borello</u> was but one way to establish an employment relationship in California,

11  because the California Supreme Court in <u>Martinez</u> had held that there were three means by

12  which a worker may be classified as an employee, which included not only the <u>Borello</u> common

13  law test but also two additional definitions of employment: "(a) to exercise control over the

14  wages, hours, or working conditions, *or* (b) to suffer or permit to work . . . ." <u>Martinez</u>, 49 Cal.

15  4th at 64.[5] Therefore, since at least 2010, it has been clear that <u>Borello</u> was not the sole

16  applicable test that determined employment status.  The fact that the Court did not acknowledge

17  <u>Martinez</u> in its decision denying summary judgment, <u>Lawson v. GrubHub, Inc.</u>, 2017 WL

18  _____

19  [defendant's] counsel urged that our decision only apply prospectively. The general rule that
    judicial decisions are given retroactive effect is basic in our legal tradition. . . . We see no reason

20  to depart from the general rule here.") (internal quotations omitted); <u>Brinker Rest. Corp. v. Sup.</u>
    <u>Ct.</u>, 53 Cal. 4th 1004, 1030-50 (2012) (applying its holding retroactively regarding rest time and

21  meal periods and remanding to the trial court for further consideration of the plaintiffs' class
    certification motions, because the ruling "changed the legal landscape").  Even the case that the

22  <u>Dynamex</u> Court interpreted in announcing the ABC test, <u>Martinez</u>, applied retroactively. <u>See id.</u>
    at 69-78.

23  [5]      Plaintiff also specifically highlighted the pendency of <u>Dynamex</u> at the California

24  Supreme Court, which stood to clarify that the Court could apply any of the three alternative
    definitions set forth in <u>Martinez</u>. (Dkt. 112-03 at 10 n.13; Dkt. 220.)  Furthermore, **a year before**

25  **this case was filed,** the Appeals Court in <u>Dynamex Operations West, Inc. v. Sup. Ct.</u>, 2014 WL
    5173038, *6-9 (Cal Ct. App. Oct. 15, 2014), had also explicitly rejected the argument that

26  <u>Borello</u> was the only applicable employment classification test in the context of Labor Code
    claims, noting that "<u>Martinez</u>, in effect, fills the gap between the common law employer-focused

27  approach and the need for a standard attuned to the needs and protection of employees."

28

2951608 (N.D. Cal. July 10, 2017), and in its decision following trial, does not mean that <u>Borello</u> was conclusively the sole applicable test – a point which <u>Dynamex</u> has now reaffirmed.[6]

In light of <u>Martinez</u>, GrubHub's argument – that it was well settled that <u>Borello</u> was the only applicable test – is plainly wrong. The <u>Dynamex</u> decision did not create a new test out of whole cloth (as GrubHub would have this Court believe) but instead embraced the ABC test as a means to narrow and clarify the extraordinarily broad "suffer or permit" language, which was one of the three definitions of "employ" described in <u>Martinez</u> back in 2010. The <u>Dynamex</u> Court noted that a literal application of "suffer or permit" was "too broad," <u>Dynamex</u>, 4 Cal. 5th at 965, and therefore, in order to *narrow* that definition, the Court found that "it is appropriate,

---

[6]      GrubHub also contended before the Ninth Circuit that, if <u>Dynamex</u> applies here, due process would require a new trial under the ABC test.  There is no need for a new trial, as the facts were already extensively developed in the trial, and each of the three prongs of the ABC test are also factors of the <u>Borello</u> test. The parties presented evidence on each factor at trial, and the Court simply now needs to apply the correct legal analysis to these facts.  Indeed, under the ABC test in Massachusetts, which the California Supreme Court expressly adopted in <u>Dynamex</u>, courts routinely decide employee classification questions as a matter of law on summary judgment, without the need for a trial, since the issue under Prong B is simply the evident question of what the defendant's usual course of business is.  <u>See, e.g.</u>, <u>Carey</u>, 92 Mass. App. Ct. at 805-11 (affirming grant of summary judgment in favor of plaintiff delivery drivers who asserted they had been misclassified by newspaper company); <u>Schwann et al v. FedEx Ground Package Sys., Inc.</u>, 2013 WL 3353776, *4 (D. Mass. July 3, 2013) (granting summary judgment to FedEx delivery drivers claiming misclassification, holding that FedEx is a delivery business, despite its attempt to portray itself as a "logistics" company); <u>Awuah</u>, 707 F. Supp. 2d at 82-84 (granting summary judgment to cleaning "franchisees" on misclassification claims under second prong of ABC test, despite defendant's attempt to portray itself as a "franchise" company) (cited in <u>Dynamex</u>); <u>Oliveira v. Advanced Delivery Sys., Inc.</u>, 2010 WL 4071360 (Mass. Super. Jul. 16, 2010) (holding delivery drivers to be employees of delivery company under ABC test as a matter of law; <u>Chaves v. King Arthur's Lounge</u>, 2009 WL 3188948 (Mass. Super. July 30, 2009) (granting summary judgment to plaintiff exotic dancers under ABC test and noting that "failing to prove the second prong of the test is sufficient to find that Chaves was an employee under the statute").  Indeed, in the <u>Johnson</u> summary judgment order issued yesterday (Exhibit B), a California court has likewise recognized that this simpler analysis does not require lengthy trials like the one the parties went through in this case, simply to determine a worker's classification under the B Prong of the ABC test.

and most consistent with the history and purpose of the suffer or permit to work standard in California's wage orders, to interpret the standard" as the ABC test, id. at 956-57.  The Court embraced the ABC test because it would "provide greater clarity and consistency, and less opportunity for manipulation, than a test or standard that invariably requires the consideration and weighing of a significant number of disparate factors on a case-by-case basis." Id. at 964. Plaintiff submits that the outcome of the bench trial in this case was exactly the kind of manipulation of the multifactor Borello test that concerned the California Supreme Court and which it sought to correct in Dynamex. Thus, departing from the normal rule that judicial decisions apply retroactively would conflict with the public policy and fairness concerns that the Dynamex Court sought to advance.[7]

It is also difficult for GrubHub to argue that it reasonably relied on Borello in classifying its delivery drivers as independent contractors, when the result under Borello is still very far from clear.  Although GrubHub learned in February 2018 that it had prevailed under the Borello test in this case, based upon this Court's analysis of the circumstances of one driver (in a hotly contested case that resulted in a decision that Plaintiff appealed), that recent decision is hardly a pillar of certainty that GrubHub can claim to have relied on for years in deciding its business practices.  In fact, if GrubHub had simply looked to an opinion of the California Labor Commissioner from several years ago in deciding whether a similar "gig economy" worker was correctly classified as an independent contractor, it would have noted that the California Labor Commissioner decided in Berwick v. Uber Technologies, Inc., Case No. 11-46730, Decision of the Labor Commissioner (June 3, 2015), that an Uber driver should have been classified as an

---

[7]     Even the Ninth Circuit has been well aware of the pendency and anticipated retroactive impact of Dynamex.  In Juarez v. Jani-King of California, Inc., et al., No. 12-17759, for example (a case in which the district court had ruled that the plaintiff cleaning workers were independent contractors), the Ninth Circuit deferred oral argument (in an already briefed case), stayed the case back in February 2015 when the California Supreme Court first granted review in Dynamex, and then remanded the case for reconsideration once Dynamex issued. See Jani-King, Dkt. 57, 69.

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128

employee for wage law purposes.  In light of that decision, which had facts arguably less favorable to employee status under the <u>Borello</u> analysis than the facts pertaining to GrubHub drivers,[8] it is hard for a company such as GrubHub to argue that it "reasonably relied on" the <u>Borello</u> test to provide it assurance that it was not violating the California Labor Code by classifying its drivers as independent contractors.

> ii.   **<u>Dynamex</u> is applicable to Plaintiff's expense reimbursement claim in addition to his minimum wage and overtime claims**

In opposition to Plaintiff's motion to remand before the Ninth Circuit, GrubHub argued that even if remand were granted, it should only be concerning Plaintiff's minimum wage and overtime claims and not as to Plaintiff's expense reimbursement claim brought pursuant to Cal. Lab. Code § 2802. The ABC test in <u>Dynamex</u>, GrubHub contends, does not apply to expense reimbursement claims. However, the California Superior Court in <u>Johnson</u>, Case No. 30-2015-00802813 (Ex. A), has already rejected GrubHub's argument in a context similar to this one. Although the <u>Dynamex</u> Court declined to address whether the ABC test would apply to an expense reimbursement claim brought pursuant to Cal. Lab. Code § 2802, leaving that question to be decided below (because it was not specifically addressed in the parties' briefs in that case), <u>see</u> <u>id.</u> at *3 n.5, it would make little sense not to apply the same standard for employee classification to an expense reimbursement claim.[9]  Indeed, the <u>Johnson</u> Court found that the ABC test adopted in <u>Dynamex</u> does not apply only to claims under the wage orders but also to claims under the Labor Code, including for expense reimbursement. <u>Johnson</u>, at 4 (Ex. A).  The

---

[8]   It was undisputed in <u>Berwick</u> that Uber drivers may work literally whenever they choose, whereas in this case, there was a disputed issue as to whether GrubHub drivers had that much freedom, or were instead generally expected to work during prearranged shifts.

[9]   As the <u>Johnson</u> Court noted, the suggestion that multiple tests should apply to state law wage and hour claims runs counter to the purpose of <u>Dynamex</u> – providing greater clarity and consistency in analyzing the issue of whether workers have been properly classified. <u>Johnson</u>, at 4 (Ex. A).

Johnson court reasoned that "where an individual is suing for violation of the minimum wage laws, etc., he or she is actually enforcing the Labor Code which, by its own terms, incorporates the wage orders." Id. at 5. Because claims such as for expense reimbursement under § 2802 are "rooted in the wage orders," the Johnson court found that the Dynamex ABC test applied. Id. at 5 (Ex. A).

Moreover, Wage Order No. 9 itself requires that an employer provide its employees with any "tools or equipment" that "are necessary to the performance of a job" (with certain exceptions not applicable here).  Wage Order No. 9-2001, par. 9, Cal. Code Regs., tit. 8, §11090.[10] This provision clearly requires an employer to reimburse an employee, where the employee was required to pay for such "tools or equipment" out of pocket, which is exactly the requirement of Labor Code § 2802.  Plaintiff here sought reimbursement for use of his vehicle, the main piece of equipment he needed in order to perform his work as a GrubHub delivery driver.  In Dynamex, the Appeals Court suggested that while some reimbursement would fall under Wage Order No. 9 (such as reimbursement for uniforms, equipment, etc.), reimbursement for personal vehicles would not.  See Dynamex Operations W., Inc. v. Superior Court, 230 Cal. App. 4th 718, 179 Cal. Rptr. 3d 69, 82 (2014) ("Claims for reimbursement for the rental or purchase of personal vehicles used in performing delivery services, even if viable under section 2802, appear to be outside the ambit of Wage Order No. 9").  In making this pronouncement, the Court cited to Estrada v. FedEx Ground Package Sys., Inc., 154 Cal. App. 4th 1, 24 (2007), which interpreted Wage Order No. 9 to allow employers to require their employees to provide their own vehicle, *provided that the "employer agree to reimburse the employee for all the costs incurred by the employee in the operation of the equipment*" (emphasis added).

---

[10]    The Johnson Court found that Sections 8 and 9 of Wage Order No. 10 covered the plaintiff's § 2802 expense reimbursement claim. Johnson, at 4 (Ex. A). Sections 8 and 9 of Wage Order No. 9, the applicable order in this case, contain identical language.

Thus, it appears that the <u>Estrada</u> Court was distinguishing between employees being able to recover expense reimbursement for the *purchase* of a vehicle as opposed to being able to recover for expenses associated with *using that vehicle for work*.  Here, Plaintiff sought reimbursement not for the *purchase* of his vehicle, but instead only for the costs incurred in *using* his vehicle to perform his work for GrubHub, which he measured through the IRS reimbursement rate. <u>See</u> <u>Gattuso v. Harte-Hanks Shoppers, Inc.</u>, 42 Cal. 4th 554, 569 (2007) (recognizing the IRS rate of reimbursement for mileage expenses is a "reasonable basis of computation of vehicle-related expenses."); <u>O'Connor v. Uber Technologies, Inc.</u>, 311 F.R.D. 547, 567 (N.D. Cal. 2015) (same); <u>Dalton v. Lee Publ'ns, Inc.</u>, 270 F.R.D. 555, 564 (S.D. Cal.2010).

Thus, Plaintiff contends that the ABC test announced in <u>Dynamex</u> applies to his expense reimbursement claim under § 2802 (for use of his vehicle), as well as to his minimum wage and overtime claims.  Indeed, it would be absurd for two different standards to apply, which could conceivably lead to a result that Plaintiff was an employee for the purposes of the Labor Code's minimum wage and overtime requirements but an independent contractor with respect to the Labor Code's expense reimbursement requirement.

**D.    The Requirements for the Application of Rule 60(b)(6) are Easily Met in this Case**

Given the fact that <u>Dynamex</u> announced a substantive change in the law that would change the outcome of this case if applied, this Court should find that relief from judgment is appropriate pursuant to Rule 60(b)(6). As explained previously, courts in the Ninth Circuit consider six factors when determining whether an intervening decision justifies reversal of a judgment under Rule 60(b)(6): (1) whether a change in the law "upset or overturned a settled legal principle";  (2) whether the petitioner was diligent in seeking relief; (3) the extent of the parties' reliance interest in the finality of the case; (4) the delay between the finality of the

judgment and the motion for Rule 60(b)(6) relief; (5) the closeness of the relationship between the underlying decision and the now controlling precedent; and (6) considerations of comity. See Robertson, 2014 WL 4543068, *3 (citing Phelps, 569 F.3d at 1135-40). In this case, an analysis of each of these factors supports granting relief under Rule 60(b)(6).

First, the law regarding what misclassification test should apply to Plaintiff's claims in this case was unsettled prior to Dynamex, which cuts in favor of granting Rule 60(b)(6) relief. See Phelps, 569 F.3d at 1136 ("[A]t the time the petitioner's case was being litigated in the district court, the Court of Appeals found that the law in our circuit was decidedly *un*settled," which "'necessarily cuts in favor of granting' the petitioner Rule 60(b)(6) relief . . . ."). As Plaintiff has explained supra, GrubHub's argument that the law was settled that Borello was the sole applicable test in this case is incorrect. The California Supreme Court in Martinez had established that there were two other misclassification tests in addition to the Borello common law test, one of which was "suffer or permit to work." Martinez, 49 Cal. 4th at 64.  The scope and meaning of "suffer or permit to work," however, was itself unsettled, and as the Dynamex Court noted, so broad that if the test were applied literally, it "could potentially encompass the type of traditional independent contractor – like an independent plumber or electrician – who could not reasonably have been viewed as the hiring business's employee." Dynamex, 4 Cal. 5th at 965. The Dynamex Court adopted the ABC test to narrow and clarify the "suffer or permit to work" test. This case is similar to Eubank, 2016 WL 6277422, *4, where the court found that Rule 60(b)(6) relief was warranted where the Ninth Circuit in Sakkab v. Luxottica Retail North America, Inc., 803 F.3d 425 (9th Cir. 2016), clarified that the Federal Arbitration Act did not preempt the California Supreme Court's ruling in Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348 (2014), that employment agreements could not contain enforceable waivers of the right to bring representative claims under PAGA. Because the preemption question had been unsettled prior to Sakkab, this factor supported Rule 60(b)(6) relief. Here too, because the law was unsettled prior to Dynamex, the first factor cuts in favor of granting Rule 60(b)(6) relief.

Second, Plaintiff has been diligent in seeking relief following the issuance of <u>Dynamex</u>. As Plaintiff explained in note 1, <u>supra</u>, Plaintiff promptly moved the Ninth Circuit to remand this case for reconsideration four days after the California Supreme Court issued its <u>Dynamex</u> decision. This Court issued its verdict on February 8, 2018 (Dkt. 221), and Plaintiff timely appealed on March 7, 2018 (Dkt. 226). The California Supreme Court issued its decision in <u>Dynamex</u> on April 30, 2018, and Plaintiff moved the Ninth Circuit for remand on May 4, 2018 (Appellate Dkt. 10.). Further, following the Ninth Circuit's invitation to Plaintiff to seek an indicative ruling on July 17, 2018, (Appellate Dkt. 22), Plaintiff filed this motion within a reasonable amount of time (though delayed several weeks beyond what he originally intended, due to an illness and death in his counsel's family, <u>see supra</u> n.1).  Plaintiff has thus been diligent. <u>See</u> <u>Eubank</u>, 2016 WL 6277422, * 4 (even where plaintiff waited nine months between the <u>Sakkab</u> decision and Rule 60(b)(6) motion, this factor weighed in favor of granting relief).

Third, the parties in this case have not had relied substantially on the finality of the judgment. Here, not only did Plaintiff file a timely appeal of the judgment, but the California Supreme Court then issued <u>Dynamex</u>, which will affect the employment status analysis for GrubHub's drivers going forward. Simply put, neither party believed the outcome of this case was final,[11] and it is abundantly clear that even if the judgment in this case remains undisturbed, GrubHub will be unable to rely on it in light of <u>Dynamex</u>. <u>See</u> <u>Connelly v. Hilton Grand Vacations Co., LLC</u>, 2017 WL 5194598, *3 (S.D. Cal. Nov. 9, 2017) (finding that there was not a strong interest in finality where "neither party thought they were done with this case in its entirely as there [was] no question Plaintiffs would appeal the decision."). Indeed, numerous courts have similarly found that 60(b)(6) relief is appropriate in light of intervening law where "an appeal or remand of the case is still pending." <u>See</u> <u>Batts v. Tow-Motor Forklift Co.</u>, 66 F.3d

---

[11]     Even this Court acknowledged during closing argument that "I doubt I will be the last word." Closing Argument Tr. at 1428 (Dkt. 225-3).

743, 748 n.6 (5th Cir. 1995) (citing <u>Adams v. Merrill Lynch Pierce Fenner & Smith</u>, 888 F.2d

696, 702 (10th Cir. 1989); <u>Wilson v. Al McCord, Inc.</u>, 858 F.2d 1469, 1478-79 (10th Cir. 1988)).

Fourth, there has not been a significant delay between the finality of the judgment and

Plaintiff's Motion for Rule 60(b)(6) relief. The Court entered judgment on February 8, 2018 (Dkt.

222). "This factor represents the simple principle that a change in the law should not indefinitely

render preexisting judgments subject to potential challenge." <u>Phelps</u>, 569 F.3d at 1138. Again,

this case is currently on appeal and thus not yet finalized. Moreover, only just more than six

months have passed since this Court entered judgment against Plaintiff. <u>See id.</u> at 1138 (citing

<u>Ritter v. Smith</u>, 811 F.2d 1398, 1402 (11th Cir. 1987) for the proposition that filing a motion for

reconsideration nine months after the original judgment became final was "only a very brief

delay").

Fifth, the decision in <u>Dynamex</u> is closely connected with Plaintiff's case. This factor

"weighs against reconsideration when the outcome for the moving party would not be affected

by the new decision because it was based on 'an entirely separate reason.'" <u>Eubank</u>, 2016 WL

6277422, *6 (citing <u>Lopez v. Ryan</u>, 678 F.3d 1131, 1137 (9th Cir. 2012)). Where, however, the

outcome of the original decision will be affected by the new decision, those decisions can be

considered closely related, which weighs strongly in favor of Rule 60(b)(6) relief. <u>Id.</u> As Plaintiff

explained *supra* in Section II.B, the <u>Dynamex</u> ABC test completely supplants the Court's

analysis under <u>Borello</u> and ultimately requires that the outcome of the trial be reversed. It is

difficult to envision a more closely related case.

Sixth, and finally, courts consider concerns regarding comity, as "the need for comity

between the independently sovereign state and federal judiciaries is an important consideration,

as is the duty of federal courts to ensure that federal rights are fully protected." <u>Phelps</u>, 569 F.3d

at 1139. In <u>Phelps</u>, the Ninth Circuit considered comity in the context of a habeas corpus petition

in which the federal court had to balance its role as the protector of an individual's federal rights

with maintaining the integrity of California's judicial system. <u>See id.</u> at 1139-40. Here, on the

21

other hand, granting reconsideration would promote comity because Plaintiff was prohibited from availing himself of important rights under the California Labor Code, the wage orders, and PAGA, since under the <u>Borello</u> common law test, the Court found that he was not GrubHub's employee. <u>Lawson</u>, 302 F. Supp. 3d at 1093. The only countervailing federal interest that GrubHub could point to would be its argument that retroactive application of <u>Dynamex</u> would violate its due process rights under the United States Constitution, but as Plaintiff has already explained <u>supra</u>, this argument must be rejected.

## III.    CONCLUSION

Because <u>Dynamex</u> supplants the <u>Borello</u> common law analysis of Plaintiff's employment status and requires that the Court's decision following the bench trial in this case be reversed, reconsideration is warranted. The Ninth Circuit has invited Plaintiff to seek an indicative ruling from this Court, which suggests that the Ninth Circuit is likely to remand the case if this Court would entertain a motion for relief from judgment. This Court has already indicated that the advent of the <u>Dynamex</u> ABC test at least warrants a remand from the Ninth Circuit in this Court's Order staying Plaintiff's Motion to Deny Costs (Dkt. 238 at 3), and, pursuant to Rule 62.1, the Court should now indicate that it would grant Plaintiff's Motion for Relief from Judgment should the case be remanded, or at the very least that Plaintiff's motion raises a substantial issue.

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
Case No. 3:15-cv-05128

Dated: September 1, 2018

Respectfully submitted,

RAEF LAWSON, individually and on behalf of all other similarly situated individuals, and in his capacity as Private Attorney General Representative

By his attorneys,

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan (State Bar No. 310719)
Thomas Fowler, *pro hac vice*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
Email:  sliss@llrlaw.com, tfowler@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by electronic filing on September 1, 2018, on all counsel of record.

/s/ Shannon Liss-Riordan
Shannon Liss-Riordan

PLAINTIFF'S MOTION FOR INDICATIVE RULING PURSUANT TO RULE 62.1
CASE NO. 3:15-cv-05128