THEODORE J. BOUTROUS JR., SBN 132099
  tboutrous@gibsondunn.com
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

Attorneys for Defendants GRUBHUB
HOLDINGS INC. and GRUBHUB INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ANDREW TAN and RAEF LAWSON in their capacities as Private Attorney General Representatives, and RAEF LAWSON, individually and on behalf of all other similarly situated individuals,<br><br>        Plaintiffs,<br><br>    v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>        Defendants. | CASE NO. 3:15-cv-05128-JSC<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR AN INDICATIVE RULING UNDER RULE 62.1**<br><br>**Hearing:**<br>Date:     October 11, 2018<br>Time:    9:00 a.m.<br>Place:   Courtroom F—15th Floor<br>Judge:  Hon. Jacqueline Scott Corley |

Gibson, Dunn &
Crutcher LLP

# <u>TABLE OF CONTENTS</u>

Page

I. INTRODUCTION .................................................................................................................1

II. ARGUMENT .....................................................................................................................3

    A.    The Ninth Circuit should decide in the first instance whether *Dynamex* applies retroactively. ......................................................................................................... 3

    B.    Plaintiff's motion does not satisfy the extraordinary requirements for reconsideration under Rule 60(b)(6). .............................................................................. 4

    C.    Due process principles and Grubhub's reasonable reliance on the *Borello* standard preclude retroactive application of *Dynamex* to this case. ........................... 8

    D.    *Dynamex* does not apply in any event to Plaintiff's expense reimbursement claim. .................................................................................................................. 13

    E.    Applying *Dynamex* would not change the outcome of the Court's classification ruling. ................................................................................................................ 14

        1.    Grubhub did not control or direct Plaintiff's performance. ........................... 15

        2.    Plaintiff's work was not part of Grubhub's usual course of business............. 17

        3.    Plaintiff was engaged in an independent trade, occupation, or business. ....... 20

    F.    Plaintiff's claims fail on the merits because of his fraudulent conduct. .................... 21

III. CONCLUSION....................................................................................................................22

**Cases**                                                                                                              **Page(s)**

*Alatraqchi v. Uber Techs., Inc.,*
  No. 11-42020 CT (Cal. Labor Comm. Aug. 1, 2012) ...................................................................11

*Alexander v. FedEx Ground Package System, Inc.*
  (9th Cir. 2014) 765 F.3d 981 ...........................................................................................................12

*Anderson v. S.F. Rent Stabilization & Arb. Bd.,*
  192 Cal. App. 3d 1336 (1987) ....................................................................................................10, 13

*Athol Daily News v. Bd. of Review of Div. of Emp't & Training,*
  439 Mass. 171 (2003) ............................................................................................................20, 21, 22

*Austin v. City of Bisbee, Ariz.,*
  855 F.2d 1429 (9th Cir. 1988) ...........................................................................................................3

*Ayala v. Antelope Valley Newspapers, Inc.,*
  59 Cal. 4th 522 (2014) ......................................................................................................................12

*Beneli v. NLRB,*
  873 F.3d 1094 (9th Cir. 2017) ...........................................................................................................3

*Berwick v. Uber Techs., Inc.,*
  No. 11-46730 (Cal. Labor Comm. June 3, 2015) ...........................................................................11

*BMW of North America, Inc. v. Gore,*
  517 U.S. 559 (1996) .......................................................................................................................2, 9

*Boston Bicycle Couriers, Inc. v. Deputy Direct of Division of Employment & Training,*
  56 Mass. App. Ct. 473 (2002) ...........................................................................................................21

*Bouie v. City of Columbia,*
  378 U.S. 347 (1964) ............................................................................................................................9

*Cal. Trucking Ass'n v. Su,*
  ___ F.3d ___, 2018 WL 4288953 (9th Cir. Sept. 10, 2018) .............................................2, 7, 12, 14

*Cannon v. Crowley,*
  318 Mass. 373 (1945) ........................................................................................................................19

*Chebotnikov v. LimoLink, Inc.,*
  2017 WL 2888713 (D. Mass. July 6, 2017) ....................................................................................15

*Christopher v. SmithKline Beecham Corp.,*
  132 S. Ct. 2156 (2012) ...................................................................................................................9, 10

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Davis v. Metro Prods., Inc.*,
885 F.2d 515 (9th Cir. 1989)...........................................................................4

*Dynamex Operations West, Inc. v. Super. Ct.*,
4 Cal. 5th 903 (2018) ...........................................1, 6, 7, 13, 14, 15, 16, 17, 20, 21

*Eisenberg v. Uber Techs., Inc.*,
ADRS No. 15-6878-MDM (2016) ...................................................................12

*F.C.C. v. Fox Television Stations, Inc.*,
132 S. Ct. 2307 (2012) ...................................................................................9

*Fleece on Earth v. Dept's of Emp. & Training*,
181 Vt. 458 (2007) ..................................................................................16, 17

*Gonzalez v. Crosby*,
545 U.S. 524 ....................................................................................................5

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........................................................................................9

*Isenberg v. California Emp. Stab. Com.*,
30 Cal. 2d 34 (1947) .....................................................................................11

*Johnson v. VCG-IS, LLC*,
Case No. 30-2015-00802813 (Super. Ct. Cal. July 18, 2018) ...................6, 10

*Jones v. Ryan*,
733 F.3d 825 (9th Cir. 2013).............................................................................5

*Kowis v. Howard*,
3 Cal. 4th 888 (1992) .....................................................................................10

*Kubinec v. Top Cab Dispatch, Inc.*,
2014 WL 3817016 (Mass. Super. Ct. June 25, 2014).....................................20

*Landgraf v. USI Film Products*,
511 U.S. 244 (1994) ........................................................................................9

*Lawson v. Grubhub Inc.*,
No. 18-15386 (9th Cir.), Dkt. 10.....................................................1, 18, 19, 20

*Lopez v. Ryan*,
678 F.3d 1131 (9th Cir. 2012) ..........................................................................5

*Martinez v. Combs*,
49 Cal. 4th 35 (2010) ................................................................................6, 12

Gibson, Dunn &
Crutcher LLP

**Page(s)**

*Moss v. Super. Ct.*,
    17 Cal. 4th 396 (1998) .................................................................................2, 9, 10

*Nationwide Mut. Ins. Co. v. Darden*,
    503 U.S. 318 (1992) ................................................................................................14

*Olszewski v. Scripps Health*,
    30 Cal. 4th 798 (2003) ..........................................................................................10

*Phelps v. Alameida*,
    569 F.3d 1120 (9th Cir. 2009) ........................................................................5, 7, 8

*Razak v. Uber Techs., Inc.*,
    2018 WL 1744467 (E.D. Pa. Apr. 11, 2018) .........................................................11

*Robertson v. Walker*,
    2014 WL 4543068 ....................................................................................................5

*Ruiz v. Affinity Logistics Corp.*,
    754 F.3d 1093 (9th Cir. 2014) ..............................................................................12

*Sagar v. Fiorenza*,
    2014 WL 794966 (Mass. Super. Ct. Jan. 18, 2014) ........................................19, 20

*Sebago v. Boston Cab Dispatch, Inc.*,
    471 Mass. 321 (2015) .....................................................................................18, 19, 20

*Sierra Club v. San Joaquin Local Agency Formation Com.*,
    21 Cal. 4th 489 (1999) ..........................................................................................10

*Simon v. San Paolo U.S. Holding Co., Inc.*,
    35 Cal. 4th 1159 (2005) ..........................................................................................9

*Tieberg v. Unemployment Ins. App. Bd.*,
    2 Cal. 3d 943 (1970) ..............................................................................................11

*Times-Argus Ass'n v. Department of Employment & Training*,
    146 Vt. 320 (1985) .................................................................................................16

*Uber Techs., Inc. v. Biafore*,
    Case No. BS172429 (Cal. Super. Ct. July 2, 2018) ..............................................11

*Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of
    Adjustment, Cent. Region*,
    558 U.S. 67 (2009) ..................................................................................................4

*Vega v. Postmates Inc.*,
    78 N.Y.S.3d 810 (N.Y. Sup. Ct. 2018) ................................................................12

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

**Statutes**                                                                                     **Page(s)**

Cal. Code Regs., tit. 8, § 11090(2)(D) ...................................................................................14

Cal. Lab. Code § 2699 ...........................................................................................................9

Cal. Lab. Code § 2750.5 .......................................................................................................14

Cal. Lab. Code § 2802 .........................................................................................................15

**Other Authorities**

Wright & Miller, *Federal Practice & Procedure* § 2864 (3d ed. Sept. 2018) .......................................5

**Rules**

Fed. R. Civ. P. 60(b) ........................................................................................................2, 5

Fed. R. Civ. P. 62.1(a)..........................................................................................................5

DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 62.1 MOTION – CASE NO. 3:15-CV-05128-JSC

Gibson, Dunn &
Crutcher LLP

# I. INTRODUCTION

Plaintiff Raef Lawson vigorously litigated his misclassification-based wage-and-hour claims against Defendants Grubhub Holdings Inc. and Grubhub Inc. (together, "Grubhub") for three years and through a full trial on the merits. This Court found that Plaintiff was properly classified as an independent contractor and entered a verdict for Grubhub, which Plaintiff appealed. *See* Dkt. 221. Four months ago, Plaintiff asked the Ninth Circuit to remand his appeal so that this Court could consider whether the California Supreme Court's recent decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), affects the outcome of his case. *See Lawson v. Grubhub Inc.*, No. 18-15386 (9th Cir.), Dkt. 10. But the Ninth Circuit denied this request—indeed, it went one step further and pushed the appeal forward by setting an immediate briefing schedule. *Id.*, Dkt. 22.

Now, Plaintiff attempts an end run around the Ninth Circuit's ruling and asks this Court for extraordinary relief—an advisory opinion while his appeal is pending—in the hope of achieving the precise remand expressly denied by the Ninth Circuit. This Court should decline to interject itself into the pending appeal, and opine on the very same issues that the Ninth Circuit is already poised to consider after thorough briefing and argument. Rather, the Court should reject Plaintiff's attempt to thwart the just and speedy resolution of this case with unnecessary litigation.

A court may only relieve a party of a final judgment if "extraordinary circumstances" exist. Plaintiff comes nowhere close to making such a showing. The Ninth Circuit has invited Plaintiff to present his arguments regarding *Dynamex* in his merits briefing. And his appeal is proceeding quickly. The court set an August 20, 2018 deadline for Plaintiff's Opening Brief—although Plaintiff has shown no urgency in prosecuting his appeal, having taken one 30-day extension and requested an additional extension until this motion has been heard. *See id.*, Dkt. 24, 25. The Ninth Circuit is fully capable of deciding what impact, if any, *Dynamex* has on this case. Indeed, this issue presents several dispositive questions of law that *must* ultimately be answered by the Ninth Circuit, including: Does *Dynamex* apply retroactively by its own terms? If so, does *Dynamex* apply outside the context of the IWC wage orders presented in that case? Even if *Dynamex* applies to some or all of Plaintiff's claims by its own terms, would retroactive application in this case comport with federal due process under the facts presented here?

Gibson, Dunn & Crutcher LLP

DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 62.1 MOTION – CASE NO. 3:15-CV-05128-JSC

Rather than allow the Ninth Circuit to answer those questions, Plaintiff urges this Court to intervene and decide these important legal questions in the first instance. But regardless how this Court might decide these issues, the Ninth Circuit will have the final say on all questions of law. There is no reason to delay that decision any longer. Nor is there any reason to risk wasting significant time and judicial resources grappling with gateway issues before this Court when the Ninth Circuit could obviate the need for those proceedings if it concludes—as it should—that *Dynamex* cannot be applied retroactively in this case, or that it should not be applied to certain of Plaintiff's claims in any event. If this Court were to agree with Grubhub that *Dynamex* does not apply, this Court's verdict would stand and Plaintiff could take an immediate appeal, at which point he would be in the same position he is in now. And if this Court were to agree with Plaintiff and hold that *Dynamex* does apply, a retrial would be necessary, Plaintiff would get a second chance to prosecute claims that previously failed, and—at the end of the day—the parties would be right back where they are now, asking the Ninth Circuit to decide whether and how *Dynamex* applies. Plaintiff's request to derail the normal appellate process should be summarily rejected.

Moreover, there is no merit to Plaintiff's hypothetical Rule 60(b) motion. First, basic principles of fairness and due process preclude retroactive application of the new ABC test in a way that would nullify years of litigation and a full trial based on undisputed legal precedent dating back nearly 70 years, and potentially subject Grubhub to statutory penalties without fair notice of precisely what conduct could give rise to liability. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 574 (1996); *Moss v. Super. Ct.*, 17 Cal. 4th 396, 429 (1998). Neither the California Supreme Court nor the Ninth Circuit has ever before applied any test other than *Borello* to the classification question at issue in this case.

Second, even if *Dynamex* could be applied retroactively, it would not change the Court's conclusion that Plaintiff was properly classified as an independent contractor. As an initial matter, the ABC test does not govern Plaintiff's expense-reimbursement claim because *Dynamex*, by its own terms, applies only to claims brought under IWC wage orders. *See Cal. Trucking Ass'n v. Su*, ___ F.3d ___, 2018 WL 4288953, *3 n.4 (9th Cir. Sept. 10, 2018) ("*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent

Gibson, Dunn &
Crutcher LLP

contractor or an employee for purposes of enforcing California's labor protections."). In fact, the California Supreme Court expressly disclaimed any suggestion that *Dynamex* governs claims for expense reimbursement under California Labor Code section 2802. And assuming *arguendo* that the ABC test does apply to Plaintiff's remaining claims for overtime and minimum-wage violations (it does not), due process entitles Grubhub to a new trial on those claims, Plaintiff still plainly qualifies as an independent contractor under that test, and Plaintiff failed to carry his burden to prove violations of overtime and minimum wage laws in any event. *See* Dkt. 216-1 at 98–109.

Finally, even if this Court were inclined to apply the ABC test to Plaintiff's claims in the first instance, it may not relieve Plaintiff of the judgment it has already entered. The Court's verdict is based on the *Borello* test, which was settled law at the time of trial, and reopening the case to determine whether that test still governs would serve only to undermine finality and cause delay, especially considering that the Ninth Circuit is both fully capable of resolving this question of law and *must* ultimately answer it.

Accordingly, this Court should follow the lead of the Ninth Circuit and deny Plaintiff's motion for an indicative ruling. By doing so, the Court will promote the fair, speedy, and expeditious resolution of the issues presented in the forum that is ultimately responsible for answering them.

## II. ARGUMENT

### A. The Ninth Circuit should decide in the first instance whether *Dynamex* applies retroactively.

The key question teed up by Plaintiff's motion is whether *Dynamex* can be applied retroactively in this case. That legal question is already pending before the Ninth Circuit, which will have the ultimate say in any event because "whether [a court's] holding should be applied retroactively" presents a pure "question[] of law." *Austin v. City of Bisbee, Ariz.*, 855 F.2d 1429, 1432 (9th Cir. 1988); *see also Beneli v. NLRB*, 873 F.3d 1094, 1098 (9th Cir. 2017) ("Whether new standards should be applied retroactively is a question of law, which we review de novo."). Two months ago, Plaintiff asked the Ninth Circuit to remand that very issue to this Court. The Ninth Circuit declined and set an immediate briefing schedule for the appeal, precisely because when an appeal presents a pure question of law not passed upon by the district court, "the Court [of Appeal]

can and should resolve [it] without need for remand." *Union Pac. R. Co. v. Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 79 (2009); *see also Davis v. Metro Prods., Inc.*, 885 F.2d 515, 522 (9th Cir. 1989) (there is "no need to remand" for decision of a "question of law").

Undeterred, Plaintiff now tries his luck with a Rule 62.1 motion, soliciting this Court's support for another bite at the remand apple. The Court should deny the motion. Permitting the Ninth Circuit to address what effect—if any—*Dynamex* has in this case would conserve judicial resources and facilitate the efficient resolution of this dispute. Considering that issue on remand would simply delay the inevitable because an appeal of this Court's decision would surely follow no matter the outcome, leaving the parties exactly where they are now. Moreover, if this Court were to hold that *Dynamex* applies to any of Plaintiff's claims, the parties would be compelled to relitigate Plaintiff's claims under that standard before they could return to the Ninth Circuit. As explained below, relitigating any of Plaintiff's claims under *Dynamex* would be no small feat: due process requires, at a minimum, a new trial on Plaintiff's classification claim.[1] And if the Ninth Circuit came to a different conclusion, holding that *Dynamex* does not apply retroactively in this case, the significant expenditure of time and resources of the Court and the parties would have been for naught. Accordingly, the Court should summarily deny Plaintiff's motion and allow the appeal to proceed as scheduled.

**B.   Plaintiff's motion does not satisfy the extraordinary requirements for reconsideration under Rule 60(b)(6).**

Plaintiff does not demonstrate the sort of "extraordinary circumstances" required for relief under Rule 60(b)(6). This Court is not asked simply to decide whether it would apply *Dynamex* in the first instance. Rather, it must determine whether it will ***defer*** considering Plaintiff's motion, ***deny*** the motion, or "state either that it would grant *the [hypothetical] motion [for reconsideration under Rule 60(b)(6)]* if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1(a)(3) (emphasis added). That rule provides that "the court *may* relieve a

---

[1] Even if Plaintiff could be classified as an employee under *Dynamex* (he cannot), Plaintiff is not entitled to relief on his overtime, minimum wage, and expense reimbursement claims anyway, because he failed to prove those claims at trial. *See* Dkt. 261-1 at 98–115.

Gibson, Dunn & Crutcher LLP

party or its legal representative from a final judgment, order, or proceeding for [reasons inapplicable here] . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b) (emphasis added). There is a high threshold for granting a motion for reconsideration under this rule; as one leading treatise observes, "[c]ourts have found few narrowly-defined situations that clearly present 'other reasons justifying relief'" required by Rule 60(b)(6). Wright & Miller, *Federal Practice & Procedure* § 2864 (3d ed. Sept. 2018). This makes eminent sense, as Rule 60(b)(6) "has been described as 'an unprecedented addition to the Rules'" that "go[es] beyond the grounds for relief that would have been available under older procedures." *Id.* Indeed, for this reason the Ninth Circuit emphasizes that "the exercise of a court's ample equitable power under Rule 60(b)(6) to reconsider its judgment 'requires a showing of extraordinary circumstances.'" *Phelps v. Alameida*, 569 F.3d 1120, 1135 (9th Cir. 2009).

The facts here do not present such extraordinary circumstances. Although "*Dynamex* announced a substantive change in the law," Dkt. 240 at 18, "it is clear that 'a change in the law will not *always* provide the truly extraordinary circumstances necessary to reopen a case,'" *Jones v. Ryan*, 733 F.3d 825, 839 (9th Cir. 2013) (quoting *Phelps*, 569 F.3d at 1133). Rather, the Court must consider six factors to determine whether a motion to reopen under Rule 60(b)(6) should be granted: (1) "the nature of the intervening change in the law"; (2) "the petitioner's exercise of diligence in pursuing the issue"; (3) "the interest in finality"; (4) the "delay between the finality of the judgment and the motion for Rule 60(b)(6) relief"; (5) "the degree of connection between the intervening change of law and [the movant's] case"; and (6) "comity." *Lopez v. Ryan*, 678 F.3d 1131, 1135–37 (9th Cir. 2012). These factors weigh decisively against reconsideration.

***First***, whatever change in law *Dynamex* effected "d[oes] not warrant reconsideration [because] the original decision 'was by all appearances correct' under then-prevailing legal precedent." *Robertson v. Walker*, 2014 WL 4543068, at *3 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 536–37). *Borello* has governed misclassification claims like those asserted by Plaintiff for nearly three decades, and there is little dispute that the ABC test adopted in *Dynamex* is a marked departure from *Borello*. While Plaintiff relies heavily on a California superior court's ruling on a motion in limine in *Johnson v. VCG-IS, LLC*, Case No. 30-2015-00802813 (Super. Ct. Cal. July 18,

2018), that decision acknowledged that "*Dynamex* established a *new standard* for evaluating independent contractor/employee issues (at least as to claims brought under the IWC wage orders)." *Id.* at 2 (emphasis added). And Plaintiff's own motion concedes that "the California Supreme Court's decision in *Dynamex* upends th[e] analysis" under *Borello*. Dkt. 240 at 4.

Plaintiff does not dispute that the ABC test is irreconcilable with *Borello*, but nevertheless insists that it was unclear at the time of trial whether *Borello* even applied to Plaintiff's claims. In Plaintiff's view, "[t]he California Supreme Court in *Martinez* had established that there were two other misclassification tests in addition to the *Borello* common law test," and because "[t]he scope and meaning of" one of them "was itself unsettled," *Dynamex* merely "adopted the ABC test to narrow and clarify" the law. Dkt. 240 at 19. But there was no indication that any of these "alternative" tests might apply to Plaintiff's claims. On the contrary, *Martinez* emphasized the peculiar features of the IWC wage orders that supported application of a broader array of misclassification tests *in that context*. The court explained that "[w]hile the common law definition of employment plays an important role in the wage orders' definition . . . , to apply only the common law definition while ignoring the rest of the IWC's broad regulatory definition would substantially impair the commission's authority and the effectiveness of its wage orders." *Martinez v. Combs*, 49 Cal. 4th 35, 65 (2010). In particular, "language consistently used by the IWC to define the employment relationship, beginning with its first wage order in 1916 ('suffer, or permit'), was commonly understood to reach irregular working arrangements that fell outside the common law, having been drawn from statutes governing child labor and occasionally that of women," and because the IWC was created "to regulate the employment of women and minors, to use this language to define the employment relationship was thus uniquely appropriate." *Id.* Clearly, these considerations have no force outside IWC wage orders. And *Dynamex* confirmed that *Martinez* does not undermine *Borello*'s applicability to claims other than those under the IWC wage orders, emphasizing that it "express[ed] no view on th[e] question" whether the ABC test applies to claims "other than [those] encompassed by the wage order[s]," *Dynamex*, 4 Cal. 5th at 916 n.5; *see Cal. Trucking Ass'n v. Su*, 2018 WL 4288953, *3 n.4 (9th Cir. Sept. 10, 2018).

**Second**, the interests in finality, and against delay, counsel against reopening the case. Plaintiff argues that finality concerns are not implicated here because "even if the judgment in this case remains undisturbed, [Grubhub] will be unable to rely on it in light of *Dynamex*," and in any event, there are no reliance interests "where an appeal or remand of the case is still pending." Dkt. 240 at 20. Similarly, he observes that "there has not been a significant delay between the finality of the judgment and [his] Motion for Rule 60(b)(6) relief." *Id.* at 21. But this takes a far too narrow view of the finality and delay concerns. The parties have spent years litigating this case under *Borello*, including to a final verdict after trial. The question Plaintiff now raises—whether the ABC test applies to his claims after *Dynamex*—and the defenses presented by Grubhub—including whether federal due process would permit the retroactive application of the ABC test—are issues that the Ninth Circuit is fully competent to resolve in the first instance on the record already before it. Reopening this case would serve only to delay—potentially for years—the final resolution of this case. And it would cast unnecessary doubt on this Court's verdict. For example, if the Court were to reopen the case and agree with Plaintiff that *Dynamex* applies to Plaintiff's claims, vacating the trial verdict, the parties would be forced to retry Plaintiff's claims to a final judgment before the Ninth Circuit has the opportunity to weigh in on the dispositive, antecedent question that is already before it. This is as unnecessary as it is inadvisable.

**Finally**, *Dynamex* is not "closely connected" with this Court's verdict because it should not apply retroactively in this case and did not directly overrule *Borello* with respect to Plaintiff's claims. Courts have found this factor satisfied where "the intervening change in the law *directly overruled* the decision for which reconsideration was sought." *Phelps*, 569 F.3d at 1139 (emphasis added). But as explained above, neither *Martinez* nor *Dynamex* directly overruled *Borello* with respect to Plaintiff's expense-reimbursement claim. *See Dynamex*, 4 Cal. 5th at 917 n.5 ("The drivers contend that the wage order definitions should apply to all the relief sought under section 2802 . . . . [T]hat issue is not before us and we express no view on that question."); *see Cal. Trucking Ass'n v. Su*, ___ F.3d ___, 2018 WL 4288953, *3 n.4 (9th Cir. Sept. 10, 2018) ("*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections."). And Plaintiff

does not contend otherwise. On the contrary, Plaintiff asserts that *Dynamex* should be *extended* to this claim. *See* Dkt. 240 at 16 (admitting that "the *Dynamex* Court declined to address whether the ABC test would apply to an expense reimbursement claim brought pursuant to Cal. Lab. Code § 2802"). But this is precisely the type of situation that does *not* merit reopening the case. As the Ninth Circuit explained, "this factor is designed to recognize that the law is regularly evolving," and "the mere fact that [it] do[es] so cannot upset all final judgments that have predated any specific change in law." *Phelps*, 569 F.3d at 1139.

Nor is *Dynamex* closely connected to Plaintiff's minimum-wage and overtime claims. *Dynamex* did not overrule *Borello* with respect to claims, like Plaintiff's, that arose before *Dynamex* was decided. And in any event, Plaintiff's minimum-wage and overtime claims fail irrespective of whether the *Borello* or the ABC test applies because Plaintiff failed to prove at trial that his Grubhub blocks constituted compensable on-call time—especially considering Plaintiff's fraudulent practice of "perform[ing] little to no deliveries and yet get[ting] compensated as if he had been available for entire blocks." Dkt. 221 at 22.

### C. Due process principles and Grubhub's reasonable reliance on the *Borello* standard preclude retroactive application of *Dynamex* to this case.

Basic principles of fairness and due process preclude retroactive application of the ABC test adopted in *Dynamex*—a tectonic shift in state law—to the independent contractor classification question *already decided at trial*. Indeed, retroactive application of the California Supreme Court's ruling could potentially expose Grubhub to potentially massive liability even though it lacked fair notice that even proper classification of independent contractors under *Borello* is insufficient to exempt them from laws ordinarily applicable only to "employees." Due process concerns are particularly acute in this case, where Grubhub successfully defended against Plaintiff's claims at trial under a standard that *all parties and the Court* agreed applied to the claims at issue.

"Elementary notions of fairness enshrined in [the U.S. Supreme Court's] constitutional jurisprudence dictate that a person receive fair notice" of both "the conduct that will subject him to punishment" and "the severity of the penalty that a State may impose." *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 574 (1996); *see also Landgraf v. USI Film Products*, 511 U.S. 244, 266

Gibson, Dunn & Crutcher LLP

(1994) ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation"); *Simon v. San Paolo U.S. Holding Co., Inc.*, 35 Cal. 4th 1159, 1171 (2005). Fair notice requires that a defendant be able to determine—in advance, and based on objectively identifiable standards—what conduct can give rise to liability. *See, e.g., Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972) (explaining that "a basic principle of due process" requires "that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly"); *see also Sessions v. Dimaya,* 138 S. Ct. 1204, 1225 (2018) (Gorsuch, J., concurring) ("Perhaps the most basic of due process's customary protections is the demand of fair notice. . . . [That principle holds] true in civil cases affecting a person's life, liberty, or property.").

Consistent with these fundamental principles, the U.S. Supreme Court has held that, for example, where a defendant acts in reliance on agency guidance that is unclear about whether certain conduct can give rise to civil sanctions, due process forbids punishing a defendant for that conduct based on the agency's later "interpretation" of the ambiguous guidance. *See, e.g., F.C.C. v. Fox Television Stations, Inc.*, 132 S.Ct. 2307, 2317–18 (2012); *Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156, 2167 (2012) (refusing to defer to an agency's "interpretation of ambiguous regulations to impose potentially massive liability . . . for conduct that occurred well before that interpretation was announced").

California courts likewise decline to make new rules retroactive where doing so would violate the parties' due process rights. The California Supreme Court has explained that "retroactive application of a decision disapproving prior authority on which a person may reasonably rely in determining what conduct will subject the person to penalties," much "[l]ike retroactive application of an 'unforeseeable and retroactive judicial expansion of' a statute" "denies due process." *Moss v. Super. Ct.*, 17 Cal. 4th 396, 429 (1998) (quoting *Bouie v. City of Columbia*, 378 U.S. 347, 352 (1964)). Here, Plaintiff seeks civil penalties under California's Private Attorneys General Act, Cal. Lab. Code § 2699 *et seq.*, for failure to reimburse business expenses and pay minimum wage and overtime compensation. Imposition of such penalties without fair notice of the conduct that may

Gibson, Dunn & Crutcher LLP

subject Grubhub to liability would be unconstitutional. *Christopher*, 132 S.Ct. at 2167; *Moss*, 17 Cal. 4th at 429.

That rule applies not only to cases involving civil penalties, sanctions, or punitive damages, but—as Plaintiff acknowledges (Mot. at 12–13)—for *all types* of civil liability. Courts routinely "decline to follow [the] standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law." *Sierra Club v. San Joaquin Local Agency Formation Com.*, 21 Cal. 4th 489, 508–09 (1999). For example, in *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 829 (2003), the California Supreme Court invalidated two state statutes as preempted by federal law, but still concluded that they provided the defendant a safe harbor from a plaintiff's claim for restitution under Business and Professions Code section 17200. *Id.* at 829. The court refused to apply its decision retroactively in *Olszewski* because the defendant reasonably relied on the statutes at issue, and thus subjecting the defendant to civil liability would have resulted in a due process violation. *Id.* at 829–30.

Plaintiff cites a California trial court ruling to suggest that that *Dynamex* should be applied retroactively in all cases. (Mot. at 11–12 (citing *Johnson v. VCG-IS, LLC*, Case No. 30-2015-00802813, Ruling on Motion in Limine (Super. Ct. Cal. July 18, 2018)).) But that ruling—on a motion *in limine*, no less—carries no precedential weight. *See Anderson v. S.F. Rent Stabilization & Arb. Bd.*, 192 Cal. App. 3d 1336, 1356 (1987). *Johnson* also addressed *Dynamex*'s retroactivity only under California law and based on facts unique to that case—it did not purport to resolve any federal due process questions or address whether retroactivity would be appropriate in other cases, particularly where a party asserted a reliance interest and had already proceeded to trial under the then-controlling *Borello* standard. Plaintiff also notes that the California Supreme Court declined an invitation to modify *Dynamex* to clarify whether it should apply retroactively, but that ruling has no precedential effect, *see generally Kowis v. Howard*, 3 Cal. 4th 888, 896–97 (1992), and could just as easily indicate that the Supreme Court left that question to be answered on a case-by-case basis.

The potential imposition of liability on Grubhub under the California Supreme Court's new formulation of the independent contractor classification test—one that was not found anywhere in the

Gibson, Dunn & Crutcher LLP

Labor Code provision invoked by Plaintiff, in guidelines or handbooks promulgated by the California Division of Labor Standards Enforcement, or in any previously controlling case law—would violate Grubhub's due process rights, particularly in light of prior California appellate decisions. Grubhub— like other California companies—could and reasonably did rely on longstanding rules for classifying independent contractors under California's *Borello* test, which reflects principles dating back nearly 70 years. *See, e.g.*, *Tieberg v. Unemployment Ins. App. Bd.*, 2 Cal. 3d 943, 946-51 (1970); *Isenberg v. California Emp. Stab. Com.*, 30 Cal. 2d 34, 39 (1947) (applying "control test" elucidated in *Borello*). Moreover, California's Labor & Workforce Development Agency for many years has received notices of claims asserted and lawsuits filed challenging independent contractor classification pursuant to the Private Attorneys General Act—including in this case—and has never intervened to assert that any test other than *Borello* should apply to the claims at issue.

Citing a single ruling from the California Labor Commissioner, Plaintiff argues that Grubhub could not rely on *Borello* in classifying drivers who contracted with Grubhub to perform food delivery orders as independent contractors. (Mot. at 15 (citing *Berwick v. Uber Techs., Inc.*, No. 11-46730 (Cal. Labor Comm. June 3, 2015).) Not so. The California Labor Commissioner came to the opposite conclusion in other cases. *See, e.g.*, *Alatraqchi v. Uber Techs., Inc.*, No. 11-42020 CT (Cal. Labor Comm. Aug. 1, 2012) (concluding that a driver who uses the Uber application is independent contractor under *Borello* test). And this Court's holding that Plaintiff properly was classified as an independent contractor is consistent with numerous other judicial decisions, arbitrations, and administrative orders that have found "gig economy" workers to be independent contractors rather than employees under *Borello* and similar tests. *See, e.g.*, *Razak v. Uber Techs., Inc.*, 2018 WL 1744467, at *19 (E.D. Pa. Apr. 11, 2018) ("[G]iven the 'totality of the circumstances,'" plaintiffs "have not brought to the record sufficient proof to meet their burden of showing that they are employees" under the Fair Labor Standards Act); *Uber Techs., Inc. v. Biafore*, Case No. BS172429 (Cal. Super. Ct. July 2, 2018) (attached hereto as Exhibit A) (confirming arbitral award finding that "drivers had been properly classified as independent contractors"); *see also Vega v. Postmates Inc.*, 78 N.Y.S.3d 810, 812 (N.Y. Sup. Ct. 2018) ("[Plaintiffs'] proof does not constitute substantial

evidence of an employer-employee relationship to the extent that it fails to provide sufficient indicia of Postmates' control over the means by which these couriers perform their work.").

Plaintiff also claims *Borello* was "but one way" to establish an employment relationship in California following *Martinez*. Not so. The test applied in *Martinez* was derived from the "IWC's regulatory definitions" and applied only to claims brought under Labor Code section 1194. *Martinez*, 49 Cal. 4th at 51–52, 68–77; *see supra* pp. 6–7. The *Martinez* test was not applied more broadly to other employment classification claims. Indeed, the California Supreme Court and the Ninth Circuit continued to apply *Borello* as the definitive framework for determining whether a worker is an independent contractor in numerous recent decisions. *See, e.g.*, *Alexander v. FedEx Ground Package System, Inc.* (9th Cir. 2014) 765 F.3d 981, 988–97 (applying the "multi-factored test set forth in *Borello*" as the correct "test of an employment relationship" under California law); *Ruiz v. Affinity Logistics Corp.*, 754 F.3d 1093, 1100-05 (9th Cir. 2014) ("The California Supreme Court has explained that to determine whether a worker is an employee or independent contractor, a court should evaluate . . . a number of factors" set forth in *Borello*); *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 530-31 (2014). If *Dynamex* had the sweeping retroactive application that Plaintiff proposes, countless cases would need to be retried. Moreover, the California Supreme Court and the Ninth Circuit have *never before held* that any alternative test applies outside of California Labor Code section 1194 claims. *See Cal. Trucking Ass'n v. Su*, ___ F.3d ___, 2018 WL 4288953, *3 n.4 (9th Cir. Sept. 10, 2018) ("*Dynamex* did not purport to replace the *Borello* standard in every instance where a worker must be classified as either an independent contractor or an employee for purposes of enforcing California's labor protections."). Plaintiff himself conceded that California courts have "primarily focused" on *Borello* when addressing employment classification claims (*see* Dkt. 110 at 10), and applied *Borello* in key pretrial briefing and during his opening statement at trial.

Because Grubhub reasonably relied on *Borello* in classifying drivers as independent contractors and litigated this case for years—through an exhaustive trial, no less—under that agreed-upon standard, the Court should decline to apply *Dynamex* retroactively in this case. That result is all the more compelling given the impermissible due process implications of potentially subjecting Grubhub to statutory penalties and civil liability under a completely new classification standard.

**D.** ***Dynamex* does not apply in any event to Plaintiff's expense reimbursement claim.**

Even if *Dynamex* could be applied retroactively (it cannot), it does not apply to Plaintiff's expense-reimbursement claims under California Labor Code section 2802. Indeed, *Dynamex* itself declined to extend the ABC test to such claims. In that case, the plaintiff "challenge[d] the Court of Appeal's conclusion that the *Borello* standard is applicable to their cause of action under section 2802 insofar as that claim seeks reimbursement for business expenses other than business expenses encompassed by the wage order." *Dynamex*, 4 Cal. 5th at 916 n.5. But the Court "express[ed] no view on that question," concluding that it had not been properly presented. *Id.*

Plaintiff asks the Court to nonetheless extend the ABC test's application under California law for three reasons, none of which is persuasive. ***First***, Plaintiff points to the California trial court's *motion in limine* ruling in *Johnson*, Case No. 30-2015-00802813 (Super. Ct. Cal. July 18, 2018), which he claims "already rejected GrubHub's argument in a context similar to this one." Dkt. 240 at 16. But *Johnson* has no precedential effect, *see Anderson*, 192 Cal. App. 3d at 1356, and addresses *none* of the federal due process and reliance issues presented here. *See supra* p. 10.

***Second***, Plaintiff asserts that "it would make little sense not to apply the same standard for employee classification to an expense reimbursement claim," especially as "the suggestion that multiple tests should apply to state law wage and hour claims runs counter to the purpose of *Dynamex*—providing greater clarity and consistency in analyzing the issue of whether workers have been properly classified." Dkt. 240 at 16 & n.9. But *Dynamex* rejected similar concerns "that a 'two-test' approach to the employee or independent contractor distinction would invariably lead to inconsistent determinations for disparate claims under different labor statutes brought by the same individual," reasoning that "[a]ny potential inconsistency . . . arises from the IWC's determination that it is appropriate to apply a distinct and particularly expansive definition of employment regarding obligations imposed by a wage order." *Dynamex*, 4 Cal. 5th at 948; *accord Cal. Trucking Ass'n v. Su*, 2018 WL 4288953, *3 n.4 (9th Cir. Sept. 10, 2018).

***Third***, Plaintiff argues that the same test must apply to section 2802 claims and claims under the IWC wage orders because "'where an individual is suing for violations of the minimum wage laws, etc., he or she is actually enforcing the Labor Code which, by its own terms, incorporates the

Gibson, Dunn &
Crutcher LLP

wage orders.'" Dkt. 240 at 17. But this contention also fails. As an initial matter, Plaintiff's assertion that section 2802 merely incorporates the expense-reimbursement rights embodied in the wage orders is belied by his own admission that the two provisions cover different expenses. *See* Dkt. 240 at 17–18; *see also Dynamex*, 4 Cal. 5th at 916 n.5 (noting that the plaintiff in that case brought a section 2802 action "seek[ing] reimbursement for business expenses *other than business expenses encompassed by the wage order*") (emphasis added). But even if it were not, a statute's incorporation of substantive standards promulgated in a regulation (such as the governing minimum wage or the expenses for which a worker must be reimbursed) does not expand the *plaintiffs* who may assert a claim under that statute. This is particularly so with respect to wage-and-hour laws. Indeed, *Dynamex* based its adoption of the ABC test on the particular features of IWC wage orders, which "purposefully adopt[] [their] own definition of 'employ' . . . that is intentionally broader than the standard of employment that would otherwise apply." *Dynamex*, 4 Cal. 5th at 947–48. And the departure from the *Borello* standard was only justified in *Dynamex* by "the history and purpose of the suffer or permit to work standard in California's wage orders." *Dynamex*, 4 Cal. 5th at 956–57. Section 2802, by contrast, does not adopt the broad definition of "employer" set out in the wage orders. *Compare* Cal. Code Regs., tit. 8, § 11090(2)(D), *with* Cal. Lab. Code § 2750.5. And generally speaking, where the legislature "has used the term 'employee' without defining it, [courts] have concluded that [it] intended to describe the conventional master-servant relationship as understood by common-law agency doctrine," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)—that is, the test articulated in *Borello*.[2]

## E. Applying *Dynamex* would not change the outcome of the Court's classification ruling.

Even if *Dynamex* could be applied retroactively, it would not change the Court's conclusion that Plaintiff is an independent contractor, not Grubhub's employee. Under the "ABC test" adopted by the California Supreme Court in *Dynamex*, "a worker is properly considered an independent

---

[2] The superior court in *Johnson* suggested that section 2802 must sweep as broadly as the wage order because "there is no private right of action under the wage orders." But there is nothing unusual about a regulation that applies to a broad set of actors and which may be enforced generally by a governmental agency (the IWC wage orders), but which confers a private right of action on only a subset of the regulated class (section 2802).

contractor to whom a wage order does not apply only if the hiring entity establishes: (A) that the worker is free from the control and direction of the hirer in connection with the performance of the work, both under the contract for the performance of such work and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed for the hiring entity." *Dynamex*, 4 Cal. 5th at 916–17. All three prongs of the ABC test support Plaintiff's classification as an independent contractor.[3]

### 1. Grubhub did not control or direct Plaintiff's performance.

Plaintiff's argument that he is an employee under prong A of the ABC test is unavailing. This prong looks to whether "the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact," *Dynamex*, 4 Cal. 4th at 957, and closely tracks the control test under *Borello*. Indeed, the California Supreme Court emphasized in *Dynamex* that "because a worker who is subject . . . to the type and degree of control a business typically exercises over employees would be considered an employee under the common law test, such a worker would, a fortiori, also be properly treated as an employee for purposes of the suffer or permit to work standard." *Id.* at 958. And for that reason, "[t]he hiring entity must establish that the worker is free of such control to satisfy part A of the test." *Id.*

Plaintiff disputes the relevance of *Borello*'s control analysis to this prong of the ABC test, noting that "in construing prong A, the *Dynamex* Court favorably cited a case in which the Vermont Supreme Court . . . found that a clothing company retained the right to control the work of its knitters and sewers even though they 'worked at home on their own machines at their own pace and on the days and times of their own choosing.'" Dkt. 240 at 10 (citing *Dynamex*, 4 Cal. 4th at 958 n.27). But

---

[3] If the Court concludes that *Dynamex* should be applied to the classification question presented in this case, Grubhub reserves its right to present evidence at a new trial. As Plaintiff himself emphasizes (Mot. at 3–5), the ABC test turns on unique factual questions that were not the subject of the original trial under the *Borello* standard. As other courts have recognized, the ABC test often turns on "disputed issues of material fact" that preclude resolution of the classification question on summary judgment. *Chebotnikov v. LimoLink, Inc.*, 2017 WL 2888713, at *8 (D. Mass. July 6, 2017).

that case is unhelpful to Plaintiff for two reasons.  First, the Vermont Supreme Court's opinion noted that its interpretation of prong A departed from that of the Massachusetts Supreme Judicial Court.  *See Fleece on Earth v. Dept's of Emp. & Training*, 181 Vt. 458, 464 (2007) ("To support its position that the control test in part A is essentially the common law master-servant test, FOE cites *Athol Daily News v. Board of Review of Division of Employment & Training*, 439 Mass. 171 (2003) . . . . We reached the opposition conclusion in *Times-Argus Ass'n v. Department of Employment & Training*, 146 Vt. 320 (1985).").  As the California Supreme Court has emphasized, although "[t]he wording of the ABC test varies in some respects from jurisdiction to jurisdiction," "[t]he version we have set forth  in text . . . tracks the Massachusetts version of the ABC test."  *Dynamex*, 4 Cal. 5th at 956 n.23.  Second, that case simply concluded that a worker's flexibility over when and where to work is not *dispositive* of control:  "To reduce part A of the ABC test to a matter of what time of day and in whose chair the knitter sits when the product is produced ignores the protective purpose of the unemployment compensation law."  *Fleece on Earth*, 181 Vt. at 600.  Ultimately, the court in that case found prong A satisfied because the putative employer exercised substantial control over the means of performing the work, regardless of where and when the work was performed.  *See id.* ("That the product is knit, not crocheted, and how it is to be knit, is dictated by the pattern provided by FOE.").  That is not the case here.

As this Court has already held, Plaintiff exercised nearly complete freedom from control while using the Grubhub app.  Of course, Plaintiff "controlled whether and when [he] worked and for how long." Dkt. 221 at 20.  He "could decide not to work a block he signed up for right up to the time the block started," and even then "had no obligation to perform any delivery offered to him by Grubhub even though he had signed up to work a particular block."  *Id.*  But that is not all.  "Grubhub did not control how he made the deliveries—whether by car, motorcycle, scooter or bicycle."  *Id.* at 19.  It "never inspected or even saw a photograph of Mr. Lawson's vehicle" and "did not control Mr. Lawson's appearance while he was making Grubhub deliveries."  *Id.*  Additionally, "Grubhub did not require Mr. Lawson to undergo any particular training or orientation," "[h]e was not told what supplies, if any, he had to have with him," and "Grubhub did not control who could be with Mr. Lawson in his vehicle, or even accompany him into a restaurant to pick up an order or to a customer's

Gibson, Dunn & Crutcher LLP

door to make a delivery." *Id.* at 19–20. Indeed, "[n]o one at Grubhub was Mr. Lawson's boss or supervisor," and Grubhub "did not prepare performance evaluations of Mr. Lawson." *Id.* at 22. This ultimately cost Grubhub: "For weeks, if not months, Mr. Lawson was able to perform little to no deliveries and yet get compensated as if he ha[d] been available for entire blocks." *Id.* And as this Court rightly noted, "Mr. Lawson's gaming of the Grubhub driver app further illustrates how little control Grubhub had over the details of Mr. Lawson's work." *Id.*

Contrary to Plaintiff's assertion, *see* Dkt 240 at 10, Grubhub's purported right to terminate at will does not change this outcome. Notably, Plaintiff does not, and cannot, allege that he was *actually* terminated at will—as this Court found, "Mr. Lawson's dishonesty eventually led to Grubhub's termination of his Agreement *for cause*." Dkt. 221 at 22 (emphasis added). And while prong A turns on the worker's freedom from control "both under the contract for the performance of the work and in fact," *Dynamex*, 4 Cal. 5th at 964, this Court has also rejected Plaintiff's claim that the contract's termination provisions favor employee status. *See* Dkt. 221 at 25 ("Grubhub's right to terminate at will is neutral in the right to control analysis."). Even if it did not, the right to terminate at will does not erase the many considerations showing that "the right to control factor weighs strongly in favor of finding that Mr. Lawson is an independent contractor." *Id.*

### 2. Plaintiff's work was not part of Grubhub's usual course of business.

Plaintiff's argument that he is an employee under prong B of the ABC test is similarly unavailing. Prong B of the ABC test asks whether "the worker performs work that is outside the usual course of the hiring entity's business." *Dynamex*, 4 Cal. 5th at 955–56. The key inquiry is whether a worker is "reasonably viewed as providing services to the business in a role comparable to that of an employee, rather than in a role comparable to that of a traditional independent contractor." *Id.* at 959. "[A] purported employer's own definition of its business is indicative of the usual course of that business. Another factor is 'whether the service the individual is performing is necessary to the business of the employing unit or merely incidental.'" *Sebago v. Boston Cab Dispatch, Inc.*, 471 Mass. 321, 333 (2015) (citations omitted).

Plaintiff claims this Court already made findings that conclusively resolve this inquiry. (Mot. at 6.) He is mistaken. While the Court addressed whether Plaintiff's work was simply "***part of***

Gibson, Dunn &
Crutcher LLP

Grubhub's regular business" as one of more than a dozen *Borello* factors, *Lawson*, 302 F. Supp. 3d at 1090 (emphasis added), the prong B inquiry focuses on whether Plaintiff's work was "***necessary to***" Grubhub's *raison d'être* as a technology company that facilitates and operates an online take-out marketplace. *Sebago*, 471 Mass. at 334–36. Simply put, it was not. And if the Court were to consider the merits of this issue on remand, Grubhub has a due process right to present evidence on this issue in a new trial in light of the different standard, including new evidence regarding the sources of Grubhub's revenue, the relative significance of each revenue source—facilitating delivery orders, in particular—to Grubhub's total revenue, and the nature of Grubhub's business model.

The Supreme Judicial Court of Massachusetts' ruling in *Sebago* underscores why Plaintiff was properly classified as an independent contractor. There, licensed taxicab drivers who leased taxicabs and medallions alleged that defendants—taxicab owners, radio dispatch associations, and a garage service—had improperly classified them as independent contractors. The court disagreed, holding that defendants satisfied all three prongs of the independent contractor test as a matter of law. *Id.* at 329–337. As to prong B, the court explained that although some owners describe themselves as "taxicab services," they do not actually provide or "hold themselves out as providing transportation services to passengers." *Id.* at 335. Nor does it matter that drivers "incidentally contribute to the owners' advertising revenues," because the owners "are not directly dependent on the success of the drivers" and do not depend on drivers' "fares and tips" as a primary source of revenue. *Id.* at 334. Similarly, although the radio dispatch associations actually "advertise themselves as providing taxicab services and . . . arrange for the transportation of passengers," the "realities of [their] actual business operations" demonstrate that the "radio associations' business is not directly dependent on the drivers' services," because their "*raison d'être* is to provide dispatch services to medallion owners—a service that is funded by medallion owners and only incidentally dependent on drivers." *Id.* at 335. Nor did it matter that dispatch services profited by "creat[ing] a base of customers (passengers)" for drivers, because that benefit is "incidental to the ordinary course of the radio associations' business of selling dispatch services to medallion owners." *Id.* at 336. As the court emphasized, "[o]ne may be engaged in a business that cannot be conducted unless he . . . can [deliver] the finished product to [customers]. It is hard to imagine a business that is not dependent in

Gibson, Dunn & Crutcher LLP

some way upon transportation.  In such instances, ***while transportation is a necessity***, ***it does not thereby become a part of or a process in the business*** but it continues as ancillary and incidental thereto." *Id.* (quoting *Cannon v. Crowley*, 318 Mass. 373, 376 (1945)) (emphasis added); *accord Sagar v. Fiorenza*, 2014 WL 794966, at *6 n.11 (Mass. Super. Ct. Jan. 18, 2014) (rejecting claim that prong B is satisfied simply because "without the services of [drivers], [a dispatch] business would cease to operate," because "that outcome would be an indirect consequence of the cessation of [drivers'] services, rather than a direct one").

Here, as in *Sebago* and *Sagar*, Plaintiff's work was not part of Grubhub's "usual course of business" simply because Plaintiff provided transportation services as an incidental part of Grubhub's operation.  First, as the Court already recognized in its post-trial opinion, Grubhub holds itself out as "an internet restaurant ordering platform that connects diners with participating restaurants." *Lawson*, 302 F. Supp. 3d at 1090.  Plaintiff emphasizes the Court's finding that facilitation of "delivery services" was "part of" Grubhub's business under the *Borello* test, and that Grubhub "developed an entire mobile app and algorithm and created entire company departments to facilitate Grubhub's delivery services." (Mot. at 6 (citing *Lawson*, 302 F. Supp. 3d at 1091).)  But that is equally true of the radio dispatch associations in *Sebago*, which marketed taxicab services, arranged for the transportation of passengers by the plaintiff-drivers, and profited from those services. *Sebago*, 471 Mass. at 335.  Nonetheless, Grubhub—like the radio associations in *Sebago*—is not, and never has been, "directly dependent" on delivery as a primary source of revenue. *Id.* at 334–36.  The "realities" of Grubhub's "actual business operations" demonstrate that Grubhub's "*raison d'être*" as an online take-out marketplace is to market restaurants to a broad audience of diners while offering diners a singular destination to browse for dining options. *Id.*  Grubhub did not even offer to facilitate food delivery during its first 10 years of operations. *Lawson*, 302 F. Supp. 3d at 1090.  And although Grubhub—like all of the defendants in *Sebago*—profited incidentally from delivery orders that it facilitated, those delivery orders were *less* lucrative than self-delivery or customer pickup orders, and incidental delivery revenue constituted a small percentage of Grubhub's total revenue during the relevant time frame.  Nor does it matter that at the time Plaintiff contracted to perform deliveries, "more diners had Grubhub deliver their food than picked it up themselves." *Lawson*, 302

Gibson, Dunn &
Crutcher LLP

F. Supp. 3d at 1090.  That simply animates the unremarkable fact that most businesses are "dependent in some way upon transportation," which "does not thereby become a part of or a process in the business but it continues as ancillary and incidental thereto." *Sebago*, 471 Mass. at 336; *Sagar*, 2014 WL 794966, at *6 n.11.  In short, Grubhub-facilitated deliveries are simply *incidental* to Grubhub's "usual course" of business as a technology company that operates an online marketplace.

### 3. Plaintiff was engaged in an independent trade, occupation, or business.

Prong C of the ABC test asks whether "the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed." *Dynamex*, 4 Cal. 5th at 955–56.  "The critical inquiry under this prong is whether 'the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.'" *Sebago*, 471 Mass. at 336–37 (quoting *Athol Daily News v. Bd. of Review of Div. of Emp't & Training*, 439 Mass. 171, 181 (2003)).  Where a worker "ha[s] the right to offer his services to 'anyone wishing to s[o] avail themselves,'" he will qualify as an independent contractor.  *Sagar*, 2014 WL 794966, at *8.

There can be no dispute here that Plaintiff was capable of performing food delivery using other clients' platforms.  Indeed, this Court has already found that Plaintiff did precisely that:  "[O]n many occasions [Plaintiff] made deliveries for Grubhub's restaurant delivery competitors while working a Grubhub scheduled block."  Dkt. 221 at 21.  Similarly, Plaintiff "had the right to reject any order offered during his scheduled block," *id.* at 20—another indicium of work in an independently established trade, occupation, or business.  *See Kubinec v. Top Cab Dispatch, Inc.*, 2014 WL 3817016, at *13 (Mass. Super. Ct. June 25, 2014) (concluding that plaintiff taxi driver is not an employee under prong C where "[h]e can take advantage of referrals that Top Cap sends him or reject them if he thinks he can earn more picking up other fares that he finds himself").

Plaintiff ignores the substantial case law explaining prong C of the ABC test, instead focusing solely on the Court's conclusion that Plaintiff was not "engaged in a distinct occupation or business" *under the* Borello *test*.  *See* Dkt. 240 at 8–9.  And Plaintiff offers no explanation for his assumption that *Dynamex* incorporates this prong—but *only* this prong—of the test that it otherwise displaced.

The most Plaintiff can muster is *Dynamex*'s language indicating that "[a]s a matter of common usage, the term 'independent contractor,' when applied to an individual worker, ordinarily has been understood to refer to an individual who *independently* has made the decision to go into business for himself or herself." Dkt. 240 at 9 (quoting *Dynamex*, 4 Cal. 5th at 962). But this language hardly incorporates *Borello*'s "distinct occupation or business" prong. On the contrary, *Dynamex* expressly cited *Boston Bicycle Couriers, Inc. v. Deputy Direct of Division of Employment & Training*, 56 Mass. App. Ct. 473 (2002), in its discussion of prong C. *Dynamex*, 4 Cal. 5th at 963 n.31. As that case explained, the factors

> tending to show a proprietary interest in an independently established trade or business include, but are not limited to, that: (1) the individual worker is free both to operate an independent enterprise and to perform services without hindrance from the employing unit; (2) the independent enterprise was created and exists separate and apart from the worker's relationship with the particular employing unit; (3) the worker's independent enterprise is not interconnected with, and is not dependent in any way upon, engagement by the particular employing unit, or other companies engaged in the subject industry; and (4) the worker's independent enterprise would survive as an ongoing business entity, notwithstanding the termination of the relationship with the employing unit.

*Boston Bicycle Couriers*, 56 Mass. App. Ct. at 480–81. The Massachusetts Supreme Judicial Court likewise relied on *Boston Bicycle Couriers* in determining that a worker qualifies as an independent contractor under this prong where he "is capable of performing the service to anyone wishing to avail themselves of the services." *Athol Daily News*, 439 Mass. at 181.

Because Plaintiff was capable of performing food delivery using other clients' platforms—and in fact did so—he is not an employee under prong C of the ABC test. Even if there were some room for doubt on this question (there is not), the differences between this prong of the ABC test and the "distinct business" prong of the *Borello* test require that Grubhub receive the opportunity to present evidence showing that Plaintiff was engaged in an independent trade, occupation, or business. *See supra* at pp. 4, 15 n.3.

## F. Plaintiff's claims fail on the merits because of his fraudulent conduct.

Even if Plaintiff could establish that the ABC test applies (he cannot), and that he is an employee under that test (he is not, *see supra*, § E), he still cannot prove his wage-and-hour claims for reasons unique to each of those claims. Specifically, Plaintiff did not meet his burden of proving that his self-selected Grubhub blocks constituted compensable on-call time for purposes of

Gibson, Dunn & Crutcher LLP

California's overtime and minimum-wage laws. Among other reasons, Plaintiff routinely toggled onto the Grubhub platform several hours after the start of his blocks, performed deliveries for other companies during his blocks, and even remained at home during those blocks. *See* Dkt. 216-1 at 107. In fact, he actively defrauded Grubhub by manipulating the block system, toggling himself "unavailable" and in airplane mode for significant portions of his blocks to ensure that he did not receive any delivery offers from Grubhub—all the while collecting payment from Grubhub for the entirety of his blocks. *See id.* Because Plaintiff did not, and could not, prove that his blocks constituted compensable on-call time, his minimum-wage and overtime claims necessarily fail.

Plaintiff's expense-reimbursement claim fares no better. Because Grubhub reasonably and in good faith classified Plaintiff as an independent contractor under the *Borello* test—which governed his classification during the entire time he used the Grubhub app—Grubhub had no reason to know that Plaintiff incurred mileage-related expenses for which he was entitled to reimbursement. And in any event, Grubhub *did* pay Plaintiff for mileage. Plaintiff did not produce any evidence that he incurred mileage-related expenses in excess of the payments he received from Grubhub. Nor could he, because he did not even maintain such records. In short, Plaintiff did not—and cannot—carry his burden to prove any of his claims.

## III. CONCLUSION

The Court should not indulge Plaintiff's request to derail the normal appellate process and litigate in this Court the very legal questions now pending before the Ninth Circuit. Doing so simply risks wasting time and judicial resources answering gateway questions that must be resolved, one way or another, by the Ninth Circuit. Even if the Court were inclined to consider Plaintiff's motion, Grubhub respectfully submits that *Dynamex* cannot be applied retroactively to the classification question already resolved at trial under the *Borello* standard. And regardless of whether *Dynamex* applied, it should not change the Court's conclusion that Plaintiff was an independent contractor, not Grubhub's employee. Accordingly, the Court should deny or defer ruling on Plaintiff's motion for an indicative ruling.

Gibson, Dunn &
Crutcher LLP

Dated: September 17, 2018

GIBSON, DUNN & CRUTCHER LLP


By: _____/s/ *Theane Evangelis*_____
Theane Evangelis

Attorneys for Defendants GRUBHUB HOLDINGS INC. and GRUBHUB INC.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S RULE 62.1 MOTION – CASE NO. 3:15-CV-05128-JSC

Gibson, Dunn & Crutcher LLP

## ECF ATTESTATION

I, Brandon J. Stoker, hereby attest that concurrence in the filing of this document has been obtained from Theane Evangelis.

Dated: September 17, 2018

By: _____/s/ Brandon J. Stoker_____
Brandon J. Stoker

## CERTIFICATE OF SERVICE

I hereby certify that a copy of this document was served by electronic filing on September 17, 2018, on all counsel of record.

Dated: September 17, 2018

By: _____/s/ Brandon J. Stoker_____
Brandon J. Stoker