UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAEF LAWSON, <br><br> Plaintiff, <br><br> v. <br><br> GRUBHUB, INC., et al., <br><br> Defendants. | Case No. 15-cv-05128-JSC <br><br> **ORDER RE: INDICATION OF RULING ON MOTION FOR RELIEF FROM JUDGMENT** <br><br> Re: Dkt. No. 240 |

Following a bench trial, the Court found that Grubhub properly classified Plaintiff Raef Lawson as an independent contractor and entered judgment on February 8, 2018 in Grubhub's favor. Now pending before the Court is Plaintiff's motion for an indicative ruling pursuant to Federal Rule of Civil Procedure 62.1(a). (Dkt. No. 240.) Plaintiff alleges that the California Supreme Court's subsequent decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018) changes the outcome of the Court's judgment. Plaintiff asks the Court to indicate that it would grant Plaintiff's Rule 60(b)(6) request for relief from judgment, or at least indicate that the request raises a substantial question. After carefully considering the issues, and having had the benefit of oral argument, the Court declines to definitively rule that it would vacate the judgment, but the motion does raise a substantial issue.

## BACKGROUND

This lawsuit began when San Francisco Grubhub driver Andrew Tan filed a putative wage and hour class action in California state court. Grubhub removed the action to this Court pursuant to the Class Action Fairness Act. (Dkt. No. 1.)[1] Shortly thereafter, Mr. Tan filed a First Amended

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

1  Complaint that added Mr. Lawson as a plaintiff and the proposed class representative, and as a co-
2  plaintiff on the California Private Attorneys General Act ("PAGA") claim. (Dkt. No. 15.) Mr.
3  Tan remained as a plaintiff on the PAGA claim and no longer sought to represent the class.
4  Following the dismissal of the First Amended Complaint with leave to amend Plaintiff's minimum
5  wage, overtime, PAGA, and UCL claims, (Dkt. No. 38), Plaintiffs filed a Second Amended
6  Complaint with the same claims. (Dkt. No. 41.)

Grubhub then moved to deny class certification, which the Court granted. (Dkt. No. 65.) Following that ruling, the parties agreed that this lawsuit would be prosecuted solely by Mr. Lawson on behalf of himself and as a PAGA representative. (Dkt. Nos. 70 at 4:n.1 & 78.) The parties subsequently stipulated to a bench trial, and to bifurcating the case into two phases: (1) phase one limited to Mr. Lawson's individual claims and whether he is an "aggrieved employee" under PAGA, and (2) assuming the Court finds he is an aggrieved employee, phase two would resolve the PAGA claim following additional discovery. (Dkt. Nos. 97 & 122.)

The Court held a bench trial in September 2017 and following the parties' submission of proposed findings of fact and conclusions of law, heard closing arguments on October 30, 2017. The Court applied the multi-factor test set forth in *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), which held that for the purpose of determining whether an employer can rebut a prima facie showing of employment, the most significant consideration is the employer's right to control work details. *Borello,* 48 Cal.3d at 350. "After considering all of the *Borello* factors as a whole in light of the trial record," the Court found that Grubhub "satisfied its burden of showing that Mr. Lawson was properly classified as an independent contractor." (Dkt. No. 221 at 1:19-21.) On February 8, 2018, the Court issued its findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a). (*Id*. at 2:24-25.)

Plaintiff timely appealed the judgment to the Ninth Circuit. The following month, the California Supreme Court decided *Dynamex Operations West, Inc. v. Superior Court*, which addressed the classification of workers for purposes of California wage orders. 4 Cal. 5th 903 (2018). In particular, *Dynamex* held that the "suffer or permit to work" definition of "employ" in

2

a particular wage order must be determined based upon the "ABC" test rather than the *Borello* test. *Id*. at 957. Under the "ABC" test, for a worker to be properly classified as an independent contractor, the hiring entity must establish that the worker meets three independent criteria:

> (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; *and* (B) that the worker performs work that is outside the usual course of the hiring entity's business; *and* (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed.

*Id*. Plaintiff subsequently moved the Ninth Circuit to remand the case to this Court in light of *Dynamex*. The Ninth Circuit denied Plaintiff's remand motion without prejudice to his renewing it in his opening brief. The Ninth Circuit also held that its denial "was without prejudice to [Plaintiff] filing a motion for limited remand accompanied by an indication that the district court is willing to entertain a post-judgment motion related to the arguments raised in the motion to remand. *See* Fed. R. App. P. 12.1(b)." (Dkt. No. 239.) Plaintiff's motion for indicative ruling pursuant to Federal Rule of Civil Procedure 62.1(a) is now before the Court.

## DISCUSSION

### A. The Court Will Construe Plaintiff's Motion as a Rule 60(b) Motion

Plaintiff has filed a "Motion for an Indicative Ruling Pursuant to Rule 62.1." That Rule provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a). "[P]rocedurally there is no basis for an independent, free-standing Rule 62.1 motion, asking the district court, in the abstract as it were, to advise the court of appeals what it would do if the court of appeals were to remand the case." *Medgraph, Inc. v. Medtronic, Inc.*, 310 F.R.D. 208, 210 (W.D.N.Y. 2015). Rule 62.1(a) only applies when a "'timely motion' (typically a Rule 60(b) motion) has been made for relief that the court lacks jurisdiction to grant, because of the pendency of an appeal. Absent an underlying, predicate motion, there is no basis for relief under Rule 62.1." *Id*. (citing Advisory Committee Notes to Rule 62.1 ("This new rule

3

adopts for any motion that the district court cannot grant because of a pending appeal the practice that most courts follow when a party makes a Rule 60(b) motion to vacate a judgment that is pending on appeal")); *see also* Fed. R. App. P. 12.1(a) ("If a timely motion is made in the district court for relief that it lacks authority to grant because of an appeal . . . ."). Plaintiff, however, has not made a formal Rule 60(b)(6) motion; instead, he asks, in effect, for the Court to indicate what it would do if Plaintiff filed a Rule 60(b)(6) motion. Nonetheless, rather than deny Plaintiff's motion for this procedural defect, the Court will construe it as a Rule 60(b)(6) motion which this Court does not have jurisdiction to decide because of the pending appeal. *See* Fed. R. Civ. P. 62.1 advisory committee notes ("After an appeal has been docketed and while it remains pending, the district court cannot grant a Rule 60(b) [motion] without a remand").

Although the appeal deprives this Court of jurisdiction to grant a Rule 60(b)(6) motion, Rule 62.1 allows the Court to consider the merits of the underlying motion and: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue. "If the Court states that it would grant the motion or that the motion raises a substantial issue, the movant must promptly notify the circuit clerk, and the Court of Appeals may then decide whether to remand for further proceedings." *Apple Inc. v. Samsung Elecs. Co.*, No. 11-CV-01846-LHK, 2012 WL 4097751, at *2 (N.D. Cal. Sept. 17, 2012) (citing Fed. R. Civ. P. 62.1(b); Fed. R. App. P. 12.1(a) & (b)). "A statement that the motion raises substantial issues does not tie the district court to a particular ruling on the motion after remand." *In re DirecTV Early Cancellation Fee Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1060, 1066 (C.D. Cal. 2011).

**B. The Merits of the Rule 60(b) Motion**

Rule 60(b) provides for relief from judgment only upon a showing of: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud by the adverse party; (4) the judgment is void; (5) the judgment has been satisfied; or (6) any other reason justifying relief. *See* Fed. R. Civ. P. 60(b); *School Dist. 1J v. ACandS Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Rule 60(b) provides for extraordinary relief and may be invoked only

upon a showing of exceptional circumstances. *Engleson v. Burlington Northern Railroad Co.*, 972 F.2d 1038, 1044 (9th Cir. 1992). Plaintiff asks the Court to vacate the judgment pursuant to Rule 60(b)(6): "any other reason justifying relief." He insists that *Dynamex* requires a reversal of the Court's February 8, 2018 final judgment; in particular, he contends that the Court's factual findings at trial indicate that Defendant cannot satisfy prongs A, B, *and* C of the *Dynamex* ABC test.

"[T]he proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court." *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009). Courts should balance "six factors" when determining whether to grant a Rule 60(b)(6) motion predicated on an intervening change in the law:

> (1) the change in the law; (2) 'the petitioner's exercise of diligence in pursuing his claim for relief[;]' (3) whether reopening the case would upset 'the parties' reliance interest in the finality of the case[;]' (4) the extent of 'the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief[;]' (5) the relative 'closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law[;]' and (6) concerns of comity.

*Eubank v. Terminix Int'l, Inc.*, No. 15-CV-00145-WQH (JMA), 2016 WL 6277422, at *3 (S.D. Cal. Oct. 27, 2016) (citing *Jones v. Ryan*, 733 F.3d 825, 839-40 (9th Cir. 2013); *Phelps*, 569 F.3d at 1135-39)). These factors "are designed to guide courts in determining whether such extraordinary circumstances have been demonstrated by an individual seeking relief under [Rule 60(b)(6)]." *Phelps*, 569 F.3d at 1135. They do not "impose a rigid or exhaustive checklist [because] 'Rule 60(b)(6) is a grand reservoir of equitable power,' and it affords courts the discretion and power 'to vacate judgments whenever such action is appropriate to accomplish justice.'" *Id.* (quoting *Harrell v. DCS Equip. Leasing Corp.*, 951 F.2d 1453, 1458 (5th Cir. 1992); *Gonzalez v. Crosby*, 545 U.S. 524, 542 (2005)) (internal citation omitted).[2]

---

[2] "The factors we describe are particularly useful in applying Rule 60(b)(6) to rejected petitions for *habeas corpus*. We note, however, that Rule 60(b) applies broadly to all federal civil actions; while some of the factors we emphasize here may be useful in contexts other than the one before us, we express no opinion on their applicability *vel non* beyond the scope of *habeas corpus*."

5

United States District Court
Northern District of California

Here, Defendant does not dispute Plaintiff's exercise of diligence in pursuing his claim for relief or that there are no comity concerns. Thus, the second and sixth factors are not at issue.

### 1. Change in the law

Under the first factor, the Court must consider the nature of the "intervening change in law." *Phelps*, 569 F. 3d at 1135 (citing *Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005)). In *Gonzalez*, the United States Supreme Court held that a change in the law did not warrant reconsideration where the district court's decision "was by all appearances correct" under then-prevailing legal precedent. 545 U.S. at 536–37; *see also Phelps*, 569 F.3d at 1135 ("the intervening change in the law in *Gonzalez* overruled an otherwise settled legal precedent"). Conversely, the Ninth Circuit has held that where the change in law "did not upset or overturn a settled legal principle," this factor "cuts in favor of granting relief" under Rule 60(b)(6) "given the unsettled nature of the law prior to [the change]." *Phelps,* 569 F.3d at 1136.

*Dynamex* upset a settled legal principle. Prior to *Dynamex*, the California and federal courts nearly unanimously applied *Borello* to decide whether a California worker had been misclassified as an independent contractor. *See, e.g., Alexander v. FedEx Ground Package System, Inc.*, 765 F.3d 98 (9th Cir. 2014); *Ruiz v. Affinity Logistics, Corp.*, 754 F.3d 1093 (9th Cir. 2014); *Narayan v. EGL, Inc.,* 616 F.3d 895 (9th Cir. 2010); *Flores v. Velocity Express, LLC*, 250 F.Supp.3d 468 (N.D. Cal. 2017); *Villapando v. Excel Direct Inc.*, No. 12-cv-04137-JCS, 2015 WL 5179486 (N.D. Cal. Sep. 3, 2015); *Hennighan v. Insphere Ins. Sols., Inc.*, 38 F. Supp. 3d 1083 (N.D. Cal. 2014), aff'd, 650 F. App'x 500 (9th Cir. 2016); *see also Linton v. DeSoto Cab Co.*, 15 Cal. App. 5th 1208 (2017); *Garcia v. Season Logix, Inc.*, 238 Cal. App. 4th 1476 (2015); *Air Couriers Int'l v. Emp't Dev. Dep't,* 150 Cal. App. 4th 923 (2007); *Estrada v. FedEx Ground Package System, Inc.*, 154 Cal. App. 4th 1 (2007); *JKH Enters., Inc. v. Dep't of Indus. Relations,* 142 Cal.App.4th 1046 (2006); *Gonzalez v. Workers' Comp. App. Bd.,* 46 Cal. App. 4th 1584 (1996); *State Comp. Ins. Fund v. Brown,* 32 Cal. App. 4th 188 (1995); *Yellow Cab Coop. Inc. v. Worker's Comp. Appeals Bd.,* 226 Cal. App. 3d 1288 (1991); *see also Dynamex Operations*

---

*Phelps*, 569 F.3d at 1135 n.19.

6

*W.*, 4 Cal. 5th at 929 (identifying *Borello* as having "come to be viewed as the seminal California decision on" the worker classification subject). Plaintiff's reference to *Martinez v. Combs*, 49 Cal. 4th 35 (2010), as evidence of the "unsettled" nature of the misclassification test is unpersuasive. *Martinez* addressed whether an entity could be considered a "joint employer" of certain agricultural workers; it did not address whether workers had been misclassified as independent contractors. *Martinez*, 49 Cal. 4th at 64. Indeed, four years after *Martinez*, in *Ayala v. Antelope Valley Newspapers Inc.,* 59 Cal. 4th 522 (2014), the California Supreme Court reviewed a denial of class certification in a misclassification case by applying the common law *Borello* test. *See Dynamex Operations W.*, 4 Cal. 5th at 940-41. While the *Ayala* court mused that *Borello* might not be the only test for deciding the issue, 59 Cal. 4th at 530-31, it did not adopt a different test.

Plaintiff's briefs in this case highlight the universal acceptance of *Borello* as the proper test for employee misclassification prior to *Dynamex.* On summary judgment, in its pre-trial brief, and in its post-trial submissions, Plaintiff applied, analyzed, and argued the *Borello* test and only the *Borello* test. (Dkt. Nos. 112-03, 180, 217.) At most, at various places Plaintiff noted that "*Martinez* clarifies that *Borello* is but one way to establish an employment relationship in California," *see, e.g.,* (Dkt. No. 112-03 at 14:13-15:8), but Plaintiff never argued the application of any test other than *Borello*.

Further, there was nothing unsettled about whether the ABC test applied to the misclassification inquiry prior to *Dynamex*. It did not. Plaintiff does not cite a single case, and the Court is aware of none, that adopted the ABC test for the classification of California workers prior to the California Supreme Court's decision in *Dynamex*.

In *Phelps v. Alameida*, in contrast, where the court concluded the law was unsettled, "the exact same issue [as Phelps' appeal] was pending before two other Ninth Circuit panels considering other appeals" and "reached diametrically opposite outcomes from that reached by the panel reviewing Phelps' case. Moreover, none of these dispositions was published and as such they were nonprecedential." *Id*. at 1136. And even if those dispositions "were capable of demonstrating the 'then-prevailing' law for purposes of this inquiry . . . the discord exemplified by [them] demonstrates that the law in [the Ninth] circuit was decidedly *un* settled at the time." *Id*.

7

Plaintiff's citation to *Eubank,* 2016 WL 6277422, at *3, also fails to persuade the Court that the law regarding what "misclassification test" applied to his claims "was unsettled prior to *Dynamex*." (Dkt. No. 240 at 26:5-6.). In *Eubank*, the intervening change in the law—*Sakkab v. Luxottica Retail North America, Inc.*, 803 F. 3d 425 (9th Cir. 2015)—specifically noted the that the appeal presented issues of first impression. 803 F.3d at 427. The *Eubank* court concluded that "[b]ased on this characterization by the Court of Appeals, there was no 'prevailing interpretation' of" the legal question and therefore the law in the circuit was unsettled at the time of the district court's original decision. *Eubank*, 2016 WL 6277422, at *3. Here, in contrast, there were many published Ninth Circuit and California Court of Appeals decisions applying *Borello* to the misclassification question. *See* cases cited *supra* p. 6.

As the law was settled, this factor weighs against 60(b)(6) relief.

**2. Interest in finality**

Under the interest in finality factor, the court determines "whether granting the motion to reconsider would 'undo the past, executed effects of the judgment,' thereby disturbing the parties' reliance interest in the finality of the case." *Phelps*, 569 F. 3d at 1137 (quoting *Ritter v. Smith*, 811 F. 2d 1398, 1402 (11th Cir. 1987)).

> [A]n example of a party's reliance interest in the finality of a judgment [is] when a judgment conveys land from one party to another and the prevailing party 'enter[s] upon the land and install[s] pipes and appurtenances,' the judgment should not be overturned even if it is predicated on a later-overruled legal precedent because the prevailing party has relied on his legal right to the land. Similarly, . . . when a judgment affords a federal *habeas* petitioner a new trial that results in the eventual dismissal of the charges and his release from custody, the judgment should not be disturbed and petitioner's freedom revoked years later due to intervening precedents because doing so would significantly alter his legal status as a free man.

*Id.* at 1137-38 (quoting *Ritter*, 811 F. 2d at 1401-02) (internal citations omitted). "The underlying principle embodied by these examples is that Rule 60(b)(6) relief is less warranted when the final judgment being challenged has caused one or more of the parties to change his legal position in reliance on that judgment." *Id*. at 1138.

Grubhub does not identify how it has changed its position in reliance on the judgment. This omission is unsurprising given that the Court's judgment maintained the status quo. Further,

8

the parties and the Court always recognized that the case was likely to be appealed, regardless of the outcome, given that it was one of the first cases to apply *Borello* to a "gig economy" worker.

Nonetheless, the Court agrees with Grubhub that granting the 60(b)(6) motion may require a reopening of the evidence given that the parties tried the case under a different test than now required by *Dynamex*. Thus, unlike in *Phelps*, it would not result in the parties merely "pick[ing] up where they left off." *Id*. Instead, it might result in the parties retrying Plaintiff's claims, presumably under *Dynamex*, to a final judgment. However, new trials are always a possibility following an appeal, and this case was on appeal before *Dynamex* was decided. Thus, this factor does not weigh against granting relief.

### 3. Interest against delay

Under the interest against delay factor, "individuals seeking to have a new legal rule applied to their otherwise final case should petition the court for reconsideration with a degree of promptness that respects 'the strong public interest in timeliness and finality.'" *Phelps*, 569 F. 3d at 1138 (quoting *Flores v. Arizona*, 516 F. 3d 1140, 1163 (9th Cir. 2008)). "This factor represents the simple principle that a change in the law should not indefinitely render preexisting judgments subject to potential challenge." *Id*.

There has been no significant delay between the finality of the judgment and Plaintiff's motion for relief. Plaintiff filed his motion for an indicative ruling a little more than six months after the Court's February 2018 judgment, and only four months after *Dynamex* was decided. Moreover, immediately following *Dynamex,* Plaintiff moved the Ninth Circuit for a remand to this Court. The *Ritter* court found the passing of nine months to be "'only a brief delay,'" and the *Phelps* court found the passing of four months to weigh "strongly" in favor of granting relief. *Phelps*, 569 F. 3d at 1138 (citing *Ritter*, 811 F. 2d at 1402).

Accordingly, the interest against delay factor does not weigh against granting relief.

### 4. The relative closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law

Another "'factor supporting a finding of extraordinary circumstances'" is "'the close relationship between the two cases at issue'—the decision embodying the original judgment and

9

the subsequent decision embodying the change in law." *Phelps*, 569 F. 3d at 1138-39 (quoting *Ritter*, 811 F. 2d at 1402)). "[T]his factor is designed to recognize that the law is regularly evolving." *Id.* at 1139. "[L]egal rules and principles inevitably shift and evolve over time, but the mere fact that they do so cannot upset all final judgments that have predated any specific change in the law. Rather, the nature of that change is important." *Id.*

Plaintiff argues that the outcome of the Court's February 2018 judgment is affected by the *Dynamex* ABC test, which "completely supplants the Court's analysis under *Borello* and ultimately requires that the outcome of the trial be reversed." (Dkt. No. 240 at 28:19-20.) However, this argument necessarily assumes the retroactive applicability of *Dynamex*. The Court agrees that if the ABC test applies retroactively to the work performed by Mr. Lawson in 2014 and early 2015 notwithstanding the entry of judgment then this factor weighs strongly in favor of granting the Rule 60(b)(6) motion and vacating the judgment, at least as to the wage order claims. The pivotal question, then, is the retroactive effect of the *Dynamex* Court's adoption of the ABC test to determine worker classification.

Under California law, the general rule is that judicial decisions are given retroactive effect. *Newman v. Emerson Radio Corp.*, 48 Cal. 3d 973, 978 (1989); *see also Evangelatos v. Superior Court*, 44 Cal.3d 1188, 1207 (1988) ("[t]he principle that statutes operate only prospectively, while judicial decisions operate retrospectively, is familiar to every law student") (internal quotation marks and citations omitted). Even if the decision establishes a new rule of law, if there was no prior rule to the contrary the decision applies to cases not yet final, including cases on appeal. *See People v. Guerra*, 37 Cal. 3d 385, 399-400 (1984).

There is some suggestion that the California courts will follow this general rule as to *Dynamex*. In *Dynamex*, the Supreme Court applied the ABC test to the class certification motion at issue in that case to affirm the certification of the class. 4 Cal. 5th at 965-66. The Court also denied without explanation various employer groups' requests that the Court clarify that *Dynamex* applies only prospectively. (Dkt. No. 242-2 at 18, 19.) This order, however, is not definitive.

Defendant counters that California courts "decline to make new rules retroactive where doing so would violate the parties' due process rights." (Dkt. No. 241 at 15:19-20.) Defendant

contends that the imposition of civil penalties under Cal. Lab. Code § 2699 et seq., for failure to reimburse business expenses and pay minimum wage and overtime compensation, without fair notice of the conduct that may subject Grubhub to liability would be unconstitutional. (*Id*. at 15:25-16:2.) It insists that "[c]ourts routinely 'decline to follow [the] standard rule when retroactive application of a decision would raise substantial concerns about the effects of the new rule on the general administration of justice, or would unfairly undermine the reasonable reliance of parties on the previously existing state of the law." (*Id*. at 16:4-8 (quoting *Sierra Club v. San Joaquin Local Agency Formation Com*., 21 Cal 4th 489, 508-09 (1999).) *See also Newman*, 48 Cal. 3d at 979 ("This rule of retroactivity, . . . has not been an absolute one"). Defendant further laments that it "reasonably did rely on longstanding rules for classifying independent contractors under California's *Borello* test." (Dkt. No. 241 at 17:4-5.)

Should the *Dynamex* ABC test apply retroactively to this case, this factor—the closeness of the new law and the old—strongly weighs in favor of vacating the judgment, at least as to the wage order claims. Given the Court's findings following trial, the verdict could be different under the ABC test.

## CONCLUSION

The outcome of Plaintiff's (implied) motion to vacate the judgment hinges on the application of *Dynamex Operations W. v. Superior Court*, 4 Cal. 5th 903 (2018), to the wage order claims at this stage in the proceedings. If it does, the Court would likely revisit the judgment, at least as to the overtime and minimum wage claims. The answer to the retroactivity question, however, is complicated and the Court declines to definitively answer it on this record. Nonetheless, the Court can and does say that Plaintiff's motion raises a substantial issue. Defendant's insistence that the Court should deny Plaintiff's motion because judicial economy counsels in favor of the Ninth Circuit deciding the retroactivity question in the first instance is directed to the wrong court; that is an argument to make to the Ninth Circuit. Accordingly, pursuant to Federal Rule of Civil Procedure 62.1 the Court indicates that Plaintiff's (implied) Rule 60(b)(6) motion raises a substantial issue.

This Order disposes of Docket No. 240.

**IT IS SO ORDERED.**

Dated: November 28, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge