UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAEF LAWSON,<br><br>    Plaintiff,<br><br>v.<br><br>GRUBHUB, INC., et al.,<br><br>    Defendants. | Case No. 15-cv-05128-JSC<br><br>**ORDER RE: PLAINTIFF'S CONSTITUTIONAL STANDING TO PURSUE PAGA PENALTIES AND THE APPROPRIATE PAGA PERIOD**<br><br>Re: Dkt. No. 343 |

Raef Lawson brings a representative PAGA claim alleging Grubhub unlawfully classified its food delivery drivers as independent contractors and as a result failed to reimburse them for necessary expenses, pay them minimum wage, and pay them overtime wages. (Dkt. No. 41 ¶ 33.)[1] Following oral argument on Grubhub's motion for partial summary judgment, the Court ordered the parties to submit supplemental briefing on 1) Lawson's federal constitutional standing to pursue PAGA penalties for his overtime and expense reimbursement claims in light of *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668 (9th Cir. 2021), and 2) the temporal scope of the PAGA period. (Dkt. No. 343.) Before the Court is the parties' supplemental briefing. (Dkt. Nos. 346, 347, 348, 356, 357, 358, 362.)

Having carefully considered the briefing, and with the benefit of oral argument on January 31, 2024, the Court STAYS Lawson's overtime and expense reimbursement claims pending adjudication of the remaining minimum wage claim. Under binding Ninth Circuit law, Lawson lacks Article III standing to pursue PAGA penalties for overtime and expense reimbursement violations suffered by other employees since he did not personally suffer such violations. Based

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

on the current record, Lawson maintains Article III standing to pursue PAGA penalties for minimum wage violations arising from time spent performing deliveries (whether on-block or off-block) and time spent on-block.  Lawson lacks Article III standing to pursue a PAGA claim against Grubhub for minimum wage violations based on off-block time waiting for delivery requests.  The Court also believes Lawson lacks Article III standing to pursue penalties for minimum wage violations, if any, that occurred after Proposition 22 took effect on December 16, 2020, but will give Lawson the opportunity to prove otherwise.

**DISCUSSION**

"[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560 (1992).  Lawson must show 1) he suffered an injury in fact that is concrete, particularized, and actual or imminent; 2) the injury was likely caused by Grubhub; and 3) the injury would likely be redressed by judicial relief.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  For an injury to be concrete, "it must actually exist." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016).  Lawson bears the burden of establishing constitutional standing and must maintain his personal interest in the dispute at all stages of the litigation.  *TransUnion LLC*, 141 S. Ct. at 2207-08.

*Qui tam* actions are a well-settled exception to the constitutional standing analysis. *Vermont Agency of Nat. Res. V. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) ("adequate basis for the relator's suit for his bounty is to be found in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor.").  This exception exists because "a *qui tam* action is for a redress of the government's injury, and it is the government's injury that confers standing upon the private person." *Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 674 (9th Cir. 2021) (cleaned up).  So, a non-injured relator has constitutional standing to bring a *qui tam* action when a statute effects a partial assignment of the government's damages claim. *Vermont Agency of Nat. Res*, 529 U.S. at 773.

In *Magadia*, the Ninth Circuit held PAGA does not qualify for the *qui tam* exception to Article III's standing requirement.  999 F.3d at 676-78.  First, PAGA explicitly involves the interests of others besides California and the plaintiff employee by implicating the interests of

1  nonparty aggrieved employees. *Id*. at 676.  Unlike traditional *qui tam* statutes, PAGA requires 25% of the recovered penalty be distributed amongst all employees aggrieved by the alleged Labor Code violation and precludes California, the plaintiff employee, and all other nonparty aggrieved employees from seeking additional penalties under the statute after judgment. *Id*.  "PAGA therefore creates an interest in penalties, not only for California and the plaintiff employee, but for nonparty employees as well." *Id*.

Second, "PAGA represents a permanent, *full* assignment of California's interest to the aggrieved employee," which "prevents California from intervening in a suit brought by the aggrieved employee, yet still binds the State to whatever judgment results." *Id*. at 677.  Whereas in traditional *qui tam* actions "the government remains the real party in interest throughout the litigation and may take complete control of the case," *id*., California "has no authority under PAGA to intervene in a case brought by an aggrieved employee." *Id*.  "PAGA thus lacks the procedural controls necessary to ensure that California—not the aggrieved employee (the named party in PAGA suits)—retains substantial authority over the case." *Id*. (cleaned up).

Because of PAGA's two significant departures from a traditional *qui tam* action, the Ninth Circuit held the *qui tam* exception to Article III standing did not apply.  So, the *Magadia* plaintiff lacked constitutional standing to bring PAGA claims alleging violations for which he himself did not suffer injury. *Id*. at 678.

**A. Lawson's Constitutional Standing for Overtime/Expense Claims**

The Court found Lawson did not personally suffer any overtime or expense reimbursement violation. (Dkt. Nos. 313 at 28, 33-34; 292 at 5.)  Under *Magadia*, he therefore lacks Article III standing to pursue PAGA penalties for overtime and expense reimbursement violations other employees suffered.  999 F.3d at 677-78.  But Lawson claims *Magadia* is no longer good law in light of *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, *reh'g denied*, 143 S. Ct. 60 (2022), and *Turrieta v. Lyft, Inc.*, 69 Cal. App. 5th 955 (2021).

**1.** *Viking River Cruises*

This Court is bound by *Magadia* unless *Viking River Cruises* "has undercut the theory or reasoning underlying [*Magadia*] such that the cases are clearly irreconcilable." *Miller v. Gammie*,

3

335 F.3d 889, 900 (9th Cir. 2003) (en banc). If they are, then "district courts should consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled." *Gonzalez v. Arizona*, 677 F.3d 383, 390 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

Lawson argues *Viking River* fatally undermined one of *Magadia*'s two grounds for distinguishing PAGA from a traditional *qui tam* action; namely, *Magadia*'s holding that PAGA involves a "permanent, *full* assignment of California's interest to the aggrieved employee," which "prevents California from intervening in a suit brought by the aggrieved employee, yet still binds the State to whatever judgment results." 999 F.3d at 677. In *Viking River*, the Supreme Court observed, "California precedent holds that a PAGA suit is a representative action in which the employee plaintiff sues as an agent or proxy of the state." 596 U.S. at 645 (cleaned up). "As the California courts conceive of it, the State is always the real party in interest in the suit." *Id*. (cleaned up). In a footnote to this statement, the Court recognized "[t]he extent to which PAGA plaintiffs truly act as agents of the State rather than complete assignees is disputed," citing *Magadia*. *Id*. at 646 n.2. The Court further mused:

> Agency requires control. But apart from the exhaustion process, the statute does not feature any explicit control mechanisms, such as provisions authorizing the State to intervene or requiring its approval of settlements.
>
> That said, California precedent strongly suggests that the State retains inherent authority to manage PAGA actions. There is no other obvious way to understand California precedent's description of the State as the "real party in interest." And a theory of total assignment appears inconsistent with the fact that employees have no assignable interest in a PAGA claim. For purposes of this opinion, we assume that PAGA plaintiffs are agents.

*Id*.

*Magadia*'s reasoning is not clearly irreconcilable with *Viking River*. First, *Viking River* is silent on *Magadia*'s first distinction: PAGA explicitly implicates the interests of others beside the plaintiff and the state. 999 F.3d at 676-77. Second, *Viking River*'s discussion of the extent of PAGA's assignment of the government's interest was cabined to statutory standing under PAGA, noted PAGA "does not feature any explicit control mechanisms" enabling State intervention, and

4

assumed without deciding PAGA plaintiffs are agents.  596 U.S. at 646 n.2.  *Viking River* never addressed constitutional standing because the case arose from a California state court and Article III standing was not at issue.  "It is not enough for there to be some tension between the intervening higher authority and prior circuit precedent, or for the intervening higher authority to cast doubt on the prior circuit precedent."  *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012).  Because *Viking River* left unexamined whether PAGA plaintiffs are state agents for the purposes of constitutional standing, *Viking River* does not overrule *Magadia*'s holding a PAGA plaintiff lacks constitutional standing to seek civil penalties for injuries he did not personally suffer.

### 2. *Turrieta*

Next, Lawson insists *Magadia*'s standing ruling is no longer good law in light of the California Court of Appeals decision in *Turrieta*.  The Ninth Circuit's interpretation of California law "is only binding in the absence of any subsequent indication from the California courts that our interpretation was incorrect."  *Owen By & Through Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983).  "In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently."  *Id*. (cleaned up).

In *Turrieta*, a plaintiff brought and settled a PAGA action alleging Lyft misclassified its drivers as independent contractors.  Drivers for whom PAGA penalties were recovered objected to the settlement.  *Turrieta* held the drivers lacked statutory standing to challenge the settlement.  Quoting the California Supreme Court's decisions in *Kim* and *Iskanian*, the California appellate court held "[a] PAGA representative action is therefore a type of qui tam action, and the government entity on whose behalf the plaintiff files suit is always the real party in interest."  69 Cal. App. 5th at 971-72 (cleaned up).  Consequently, a plaintiff's "ability to file PAGA claims on behalf of the state does not convert the state's interest into their own or render them real parties in interest."  *Id*. at 972.  The court held nonparty employees had no pecuniary interest in the penalties at issue because "civil penalties recovered on the state's behalf are intended to remediate present violations and deter future ones, not to redress employees' injuries."  *Id*. (quoting *Kim v. Reins*

1 *Int'l California, Inc.*, 9 Cal. 5th 73, 86 (2020)).

2 *Turrieta* does not render incorrect *Magadia*'s holding a PAGA plaintiff must have Article III standing. "[S]tanding in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). As a matter of federal law, *Magadia* held PAGA does not qualify for the federally-recognized exception to the Article III standing requirement because PAGA fails to satisfy two traditional *qui tam* criteria. 999 F.3d at 675-78. First, PAGA implicates the interests of all employees by requiring a portion of the PAGA penalty to go to all affected employees, not just the state and the PAGA plaintiff, and because a PAGA judgment binds the nonparty employees from seeking additional penalties for the same violations. *Id.* at 676-77. And second, PAGA lacks the procedural controls necessary to ensure California retains substantial authority over PAGA actions. *Id.* at 677-78.

*Turrieta*'s holding the objecting drivers were not real-parties-in-interest sufficient to give them standing under California law to challenge the PAGA judgment is not inconsistent with *Magadia*'s description of PAGA. As *Magadia* held, PAGA, in fact, authorizes payment of a portion of the penalties to nonparties. Cal. Lab. Code §2699(i). *Turrieta* in no way renders incorrect *Magadia*'s conclusion that "none of the other modern *qui tam* statutes mentioned in *Vermont Agency* authorize suits on behalf of non-parties or involve payments to non-parties." 999 F.3d at 677 n.5. And *Turrieta* does not contradict *Magadia*'s observation California lacks the authority to intervene in PAGA suits and therefore does not retain "substantial authority" over PAGA actions. *Id*. at 677; *see also Viking River*, 596 U.S. at 646 n.2 ("the statute does not feature any explicit control mechanisms, such as provisions authorizing the State to intervene or requiring its approval of settlements"). *Magadia* concluded: "PAGA prevents California from intervening in a suit brought by the aggrieved employee, yet still binds the State to whatever judgment results," and this procedural feature is "an anomaly among modern *qui tam* statutes." 999 F.3d at 677. Nothing in *Turrieta* suggests California can intervene. So, *Turrieta* does not change *Magadia*'s standing analysis. "After all, States have no power directly to enlarge or contract federal jurisdiction." *Id.* at 674.

Lawson also raises *Turner et al. v. Shipt, Inc.*, a California superior court order granting

6

the Labor and Workforce Development Agency's motion to intervene in a PAGA action on the grounds "the State of California is the real party in interest in a PAGA suit. Therefore, the [Labor and Workforce Development Agency] has a right to intervene." Civ. Act. No. 19STCV28802 (cleaned up). So, Lawson argues, *Magadia* was incorrect when it said the State cannot intervene in a PAGA action. But a California superior court cannot render a Ninth Circuit decision incorrect. *Owen*, 713 F.2d at 1464 ("In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decision of the intermediate appellate courts of the state"). Moreover, since Article III standing is a question of federal constitutional law, it is not clear this Court could refuse to follow *Magadia* because of *any* subsequent state court decision.

\* \* \*

*Magadia* remains binding authority. Accordingly, Lawson lacks constitutional standing to pursue PAGA penalties for the alleged overtime and expense reimbursement violations suffered by other employees since he did not personally suffer those kinds of violations. *Magadia*, 999 F.3d at 678.

### B. Lawson's Constitutional Standing After April 2017

The Court found Lawson personally suffered minimum wage violations. (Dkt. No. 313 at 28-33.) So, Lawson has constitutional standing to bring a PAGA claim alleging minimum wage violations against Grubhub. *Magadia*, 999 F.3d at 678. But Grubhub insists Lawson lacks constitutional standing to pursue PAGA penalties for minimum wage violations that occurred beyond April 2017 because Grubhub changed its policies after April 2017. Grubhub identifies two changes in particular: 1) as of May 2016, Grubhub no longer required delivery drivers to sign up for scheduled shifts to receive delivery requests and 2) in April 2017, delivery drivers ignored or declined nearly 50% of delivery requests.

Grubhub concedes its identified policy changes have no impact on the Court's analysis of the business-to-business exemption or application of the ABC test. (Dkt. No. 358 at 5 ("But that is beside the point.").) Grubhub thus does not challenge the conclusion Grubhub's drivers remained employees after April 2017. Instead, Grubhub argues its policy changes so impact the Court's compensable work hours analysis as to extinguish Lawson's constitutional standing to

7

recover penalties for minimum wage violations that occurred after April 2017.

### 1. Off-Block Deliveries

Grubhub first contends Lawson's "individual use of the platform is not representative of the drastically different experiences of other" delivery drivers who used Grubhub's platform after April 2017 because Grubhub began encouraging off-block deliveries in May 2016 and over 50% of deliveries were performed off-block in April 2017. (Dkt. No. 348 at 5, 11.) But delivery drivers could and did perform off-block deliveries during Lawson's employment at Grubhub. (Dkt. Nos. 104-16 at 5, 7; 348-1 ¶¶ 6-7.) While Lawson was employed at Grubhub, delivery drivers could receive delivery requests without signing up for scheduled shifts. (*Id.*) So, Grubhub's May 2016 policy does not mark such a significant change in work circumstances as to extinguish Lawson's constitutional standing to pursue penalties for minimum wage violations after April 2017.

However, Lawson lacks constitutional standing to pursue PAGA penalties on behalf of off-block delivery drivers who suffered minimum wage violations while waiting for delivery requests. *Magadia*, 999 F.3d at 678. Lawson only worked on-block. (Dkt. Nos. 112-4 at 12 n.9; Dkt. No. 217 at 23 ¶ 55 ("[Lawson] never worked when he was not signed up for a shift.").) Lawson thus lacks any personal stake in adjudicating, for instance, whether off-block time spent waiting to receive a delivery request is compensable because the determination of this issue "has no impact on [Lawson's] individual claims." *Shwiyhat v. Martin Marietta Materials, Inc.*, No. 3:23-CV-00283-JSC, 2023 WL 6626129, at *8 (N.D. Cal. Oct. 10, 2023). To put it another way, to impose PAGA penalties for minimum wage violations that occurred based on off-block time spent waiting to receive a delivery request, the Court will have to receive evidence and make a finding as to whether such time is compensable. But Lawson personally has no experience working off-block. So, he has no Article III standing to argue off-block time spent waiting for delivery requests is compensable and thus lacks constitutional standing to pursue a PAGA claim against Grubhub for minimum wage violations based on off-block time spent waiting for delivery requests. *Magadia*, 999 F.3d at 678. In any event, at oral argument Lawson stated that in this Court he is not seeking penalties for minimum wage violations premised on off-block time spent waiting for delivery

requests.

Otherwise, the Court's compensability analysis remains intact despite the increased prevalence of off-block deliveries after April 2017. Time spent performing deliveries is compensable whether on-block or off-block. (Dkt. No. 313 at 22.) Time spent on-block, toggled available, and in-network is compensable and thus figures into the minimum wage analysis. (*Id*. at 22-27.)

### 2. Declination of Delivery Requests

Grubhub also insists Lawson lacks constitutional standing to pursue PAGA penalties after April 2017 because delivery drivers ignored or declined 50% of delivery requests in April 2017.[2] The policy change allowing drivers to ignore or reject orders occurred during Lawson's employment at Grubhub. (Dkt. No. 313 at 20.) Prior to December 2015, Grubhub instructed Lawson not to reject or be unavailable to receive incoming orders. (*Id*. at 23-24.) On December 5, 2015, Grubhub no longer required drivers not to reject and receive incoming orders during any scheduled delivery block. (*Id*. at 20.) Notwithstanding the December 2015 policy change, Grubhub expressly terminated Lawson because he was not available to and did not accept delivery offers during his self-scheduled blocks. (*Id*. at 24.) On this basis, the Court found the requirement not to reject or be unavailable to receive delivery requests "remained a practical feature of his employment." (*Id*.)

Grubhub now claims this requirement is no longer a practical feature of Grubhub employment, as 50% of delivery requests were ignored or declined in April 2017. But Grubhub's evidence does not prove on-block delivery drivers were able to ignore or decline delivery requests after April 2017, and thus fails to show the practical requirement not to reject and receive incoming orders changed for on-block delivery drivers after April 2017. As Lawson points out,

---

[2] Grubhub contends the rate at which delivery drivers ignored or declined requests was "nearly 50% in April 2017, confirming that such drivers were not subject to Grubhub's control when logged onto the platform." (Dkt. No. 348 at 5.) Grubhub claims the rate remained above this threshold in the following months, but the declaration to which Grubhub cites merely says the trend "continued in the ensuing months." (Dkt. No. 348-1 ¶ 7.) Grubhub does not say the rate of ignored or declined delivery requests has been above 50% since April 2017, and has failed to provide facts permitting the inference the trend continued to the present.

9

"the increase in rejected or ignored orders may very well have pertained to the increased number of drivers working off-block." (Dkt. No. 357 at 18.) This is because on-block and off-block drivers face different incentives in deciding whether to ignore or decline delivery requests. Grubhub benefits from using the block scheduling system to monitor driver supply and meet anticipated demand. (Dkt. No. 313 at 24.) Grubhub incentivizes drivers to sign up for and work during scheduled blocks with "true up" pay, which off-block drivers are unable to receive. (Dkt. No. 313 at 6.) True up pay is a minimum hourly guarantee only available for on-block drivers who accept a certain percentage of orders during their scheduled block. (*Id*.) Until December 2015, Lawson had to accept 75% of orders during his scheduled block to receive $15 per hour; after December 2015, Lawson had to accept 85% of orders during his scheduled block to receive $11 per hour. (*Id*.) So, an on-block delivery driver who ignores or declines orders jeopardizes their minimum hourly guarantee, whereas off-block delivery drivers face no such risk of lost pay for ignoring or declining orders.

Given the different incentives, the Court is unable to infer the practical requirement not to reject or be unavailable to receive orders no longer exists for on-block delivery drivers after April 2017 based on the percentage of ignored or declined orders in April 2017. So, Grubhub fails to demonstrate the practical requirement not to reject and receive incoming orders changed for on-block delivery drivers after April 2017. Lawson's constitutional standing to pursue PAGA penalties and the Court's compensability analysis are thus unaffected by the rate of orders ignored or rejected in April 2017. As the Court stated at oral argument, this standing analysis may change as the record develops. But on the present record, Lawson has standing.

\* \* \*

Neither of the policy changes Grubhub identifies extinguish Lawson's constitutional standing to pursue PAGA penalties for minimum wage violations arising from time spent performing deliveries (whether on-block or off-block) and time spent on-block. However, Lawson lacks constitutional standing to pursue a PAGA claim against Grubhub for minimum wage violations based on off-block time spent waiting for delivery requests.

### C. Discretion to Limit PAGA Penalties

Although PAGA "penalties are mandatory, not discretionary, a court may award a lesser amount than the maximum civil penalty based on the facts and circumstances of the particular case." *Brown v. Wal-Mart Stores, Inc.*, 651 F. App'x 672, 674 (9th Cir. 2016) (cleaned up); Cal. Labor Code § 2699(e)(2). The court may reduce penalties only when "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1213 (2008) ("[A] court can only exercise its discretion *to award lesser penalties* based on the enumerated considerations."); Cal. Labor Code § 2699(e)(2). Grubhub requests the Court exercise its discretion to limit the PAGA period through April 2017 "in light of Grubhub's good-faith compliance with the governing law at the time Lawson used the platform." (Dkt. No. 348 at 13.)

In February 2018, the Court found Lawson was properly classified as an independent contractor for Grubhub after applying the then-applicable *Borello* test. (Dkt. No. 221 at 30-33.) In April 2018, the California Supreme Court decided the ABC test—not the *Borello* test— determines whether a worker is properly classified as an independent contractor under the suffer-or-permit-to-work standard. *Dynamex Operations W. v. Superior Ct.*, 4 Cal. 5th 903, 916 (2018). In *Dynamex*, the California Supreme Court acknowledged the significant disadvantages of the *Borello* standard, namely the

> multifactor, all the circumstances standard **affords a hiring business greater opportunity to evade its fundamental responsibilities** under a wage and hour law by dividing its workforce into disparate categories and varying the working conditions of individual workers within such categories with an eye to the many circumstances that may be relevant under the multifactor standard.

*Id.* at 955 (emphasis added). Well before *Dynamex*, Grubhub was on notice "that, for the purposes of the obligations imposed by a wage order, a worker's status as an employee or independent contractor might well depend on the suffer or permit to work prong of an applicable wage order— and that the law was not settled in this area." *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 955 (2021). "[I]ndeed, the ABC test articulated in *Dynamex* was within the scope of what employers reasonably could have foreseen." *Id*. at 955-56. So, Grubhub reasonably could

11

have foreseen the ABC test would apply, but did not comply with the ABC standard. These circumstances undermine Grubhub's claim of good-faith compliance. The Court is unpersuaded Grubhub is entitled to a reduced penalty for its compliance with the "manipulable" *Borello* standard, which the California Supreme Court has since recognized "invites employers to structure their relationships with employees in whatever manner best evades liability." *Dynamex*, 4 Cal. 5th at 916.

In any event, Grubhub fails to explain why its *Borello* compliance warrants limiting the penalty period to April 2017. Given the two policy changes Grubhub identifies to contend work circumstances at Grubhub were "drastically different" after April 2017 actually occurred during Lawson's employment at Grubhub, (Dkt. No. 348 at 5), it would be arbitrary to limit the PAGA penalty period to April 2017 solely based on Grubhub's *Borello* compliance. Grubhub thus fails to show the penalty period should be limited through April 2017 to avoid an unjust, arbitrary and oppressive, or confiscatory result.

Grubhub also requests the Court limit the PAGA period through April 2017 based on Lawson's "minimal damages." (Dkt. No. 358 at 7.) Lawson is personally owed $65.11 in damages for Grubhub's minimum wage violations. (Dkt. No. 313 at 34.) But Lawson's personal damages are not necessarily indicative of the gravity of Grubhub's violations because "[p]roperly understood, Lawson's PAGA claim is an action between California and Grubhub." (Dkt. No. 344 at 5.); *see Arias v. Superior Ct.*, 46 Cal. 4th 969, 986 (2009) ("In a lawsuit brought under the act, the employee plaintiff represents the same legal right and interest as state labor law enforcement agencies—namely, recovery of civil penalties that otherwise would have been assessed and collected by the Labor Workforce Development Agency.") Though Lawson's damages only amount to $65.11,

> both the federal and state governments have declared that the misclassification of workers as independent contractors rather than employees is **a very serious problem**, depriving federal and state governments of billions of dollars in tax revenue and millions of workers of the labor law protections to which they are entitled.

*Dynamex*, 4 Cal. 5th at 913 (emphasis added). That Lawson's personal damages were minimal does not mean Grubhub's violations do not warrant any PAGA penalties after April 2017.

12

Grubhub's reference to *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504 (2018), fails to persuade that the Court should not award any PAGA penalties for minimum wage violations that occurred after April 2017. *Carrington* involved reducing the amount of penalty for each violation, not limiting the PAGA penalty period. And, at this point, it is premature for the Court to determine the amount of penalty for each (currently unknown) violation.

\* \* \*

Grubhub fails to persuade the Court its *Borello* compliance and Lawson's personal damages warrant limitation of the PAGA penalty period through April 2017 because Grubhub fails to show "to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory." *Amaral*, 163 Cal. App. 4th at 1213; Cal. Labor Code § 2699(e)(2).

**D. Inherent Authority to Limit the PAGA Period**

District courts possess "inherent powers that are "governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (cleaned up). The Court's exercise of its inherent power 1) "must be a reasonable response to the problems and needs confronting the court's fair administration of justice" and 2) must not "be contrary to any express grant of or limitation on the district court's power contained in a rule or statute." *Id*. at 45-46 (cleaned up). Though trial courts lack inherent authority to dismiss or strike a PAGA claim on manageability grounds, trial courts may "limit[] the types of evidence a plaintiff may present or us[e] other tools to assure that a PAGA claim can be effectively tried." *Estrada v. Royalty Carpet Mills, Inc.*, No. S274340, 2024 WL 188863, at \*18 (Cal. Jan. 18, 2024); *see also Woodworth v. Loma Linda Univ. Med. Ctr.*, 93 Cal. App. 5th 1038, 1047 (2023), *reh'g denied* (Aug. 17, 2023) ("When faced with unwieldy PAGA claims, trial courts may limit the scope of the claims or the evidence to be presented at trial but may not prohibit PAGA plaintiffs from presenting their claims entirely.").

Grubhub requests the Court exercise its inherent authority to limit the PAGA penalty period through April 2017. Grubhub claims limiting the temporal scope of PAGA penalties is required to avoid "arduous and protracted fact-finding." (Dkt. No. 348 at 14-15.) Discovery, by

13

nature, is an arduous and protracted fact-finding process. As the Court has already explained:

> The facts overlap a lot: Grubhub's policies, business model, and operations will be as integral to the remaining claims as to Mr. Lawson's. The main differences are each worker's hours, pay, potential operation of her own bona fide delivery business, and how she spent her "on-block" time. But even those differences go to core areas of overlap: whether a worker is an employee under the ABC test, whether the business-to-business exemption applies, and whether certain on-block time is compensable work time.

(Dkt. No. 324 at 4.) Grubhub complains new compensability analyses will be required for the time period after April 2017 to account for off-block deliveries. Not so. Because Lawson lacks constitutional standing to pursue a PAGA claim alleging minimum wage violations for off-block time spent waiting to receive delivery requests, the Court's compensability analysis is not disrupted by the "ever-increasing number of hours worked outside of blocks." (Dkt. No. 348 at 15.) So, the Court is unpersuaded limiting the PAGA penalty period through April 2017 reasonably advances the fair administration of justice.

However, the Court believes Lawson lacks Article III standing to pursue PAGA penalties for minimum wage violations, if any, that occurred after December 16, 2020, the day Proposition 22 took effect. Proposition 22 provides that, if certain conditions are met, app-based drivers are independent contractors. Cal. Bus. & Prof. § 7451. So, after December 16, 2020, the criteria for classifying app-based drivers changed. This Court has not adjudicated whether any post-Proposition 22 Grubhub driver was misclassified. Lawson lacks Article III standing to argue Grubhub drivers are employees under Proposition 22's scheme because he did not drive for Grubhub after the law changed; he has no personal stake in the outcome of that question. *TransUnion LLC*, 141 S. Ct at 2203; *see also Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("We have consistently stressed that a plaintiff's complaint must establish that he has a 'personal stake' in the alleged dispute, and that the alleged injury suffered is particularized as to him.").

Even aside from standing, December 16, 2020 is a reasonable bookend to Lawson's PAGA penalty period because the Court can employ a consistent analysis to classify app-based drivers from December 13, 2014, to December 16, 2020, for the purposes of Lawson's minimum wage claim. Extending the PAGA penalty period beyond December 16, 2020, would require evaluation

of Grubhub's compliance with Proposition 22 and thus a whole new misclassification trial. (Dkt. Nos. 348 at 6 n.1, 357 at 10 n.4.) By limiting the PAGA period through December 16, 2020, the Court avoids this issue altogether without contradicting any express rule or statute. *Dietz*, 579 U.S. at 46. The effective date of Proposition 22 marks a change in work circumstances. This is an appropriate and administrable limit on the evidence Lawson may introduce at trial to prove the alleged minimum wage violations suffered by other aggrieved employees. *Estrada*, 2024 WL 188863 at *18.

Lawson, who was not employed by Grubhub when Proposition 22 took effect, has not yet had the opportunity to address his constitutional standing after Proposition 22's effective date or to otherwise explain why the Court should hold another misclassification trial. So, on or before February 21, 2024, Lawson may file a brief addressing these issues. Grubhub may respond on or before March 6, 2024. If Lawson does not file a brief, the Court's order ending the PAGA penalty period on Proposition 22's effective date will remain.

## CONCLUSION

Because Lawson lacks Article III standing for the alleged overtime and expense reimbursement claims, as well as any minimum wage claim for violations that occurred after Proposition 22 went into effect, the Court STAYS these claims pending final adjudication of Lawson's remaining minimum wage PAGA claim. *See Ornelas v. Tapestry, Inc.*, No. C 18-06453 WHA, 2021 WL 2778538, at *11 (N.D. Cal. July 2, 2021) (staying PAGA claim for which the plaintiff lacked Article III standing until adjudication of remaining claims).

Lawson maintains Article III standing to pursue PAGA penalties for minimum wage violations arising from time spent performing deliveries (whether on-block or off-block) and time spent on-block. Lawson lacks Article III standing to pursue a PAGA claim against Grubhub for minimum wage violations based on off-block time spent waiting for delivery requests and minimum wage violations that occurred after December 16, 2020, the day Proposition 22 took effect. So, the period for which Lawson may seek to recover PAGA penalties is December 3, 2014, through December 16, 2020, the day Proposition 22 took effect, subject to modification pending review of Lawson's further submission, if any, as described below.

On or before February 21, 2024, Lawson shall file a brief addressing his constitutional standing to pursue PAGA penalties for minimum wage violations after Proposition 22 took effect. Grubhub may respond on or before March 6, 2024. A further Case Management Conference will be held on March 21, 2024 at 1:30 p.m. via Zoom video. An updated Joint Case Management Conference Statement is due March 14, 2024. Any discovery dispute joint letters shall be filed by March 14, 2024.

This Order disposes of Docket No. 343.

**IT IS SO ORDERED.**

Dated: February 1, 2024

JACQUELINE SCOTT CORLEY
United States District Judge