GIBSON, DUNN & CRUTCHER LLP
THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA, SBN 254433
  dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile:  949.451.4220

Attorneys for Defendants
GRUBHUB HOLDINGS INC. and GRUBHUB INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RAEF LAWSON, in his capacity as Private Attorney General Representative,<br><br>               Plaintiff,<br><br>   v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>               Defendants. | CASE NO. 3:15-cv-05128-JSC<br><br>**DEFENDANTS' RESPONSE TO PLAINTIFF'S BRIEF ON STANDING TO PURSUE PAGA PENALTIES AFTER EFFECTIVE DATE OF PROPOSITION 22** |

**Hearing:**
Date:          March 21, 2024
Time:         1:30 p.m.
Place:        Courtroom 8

Judge:        Hon. Jacqueline Scott Corley
Action Filed:  September 23, 2015
Trial Date:    Not set

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................................1

II.   BACKGROUND ............................................................................................................2

III.  ARGUMENT...................................................................................................................3

    A.    Lawson Lacks Article III Standing to Pursue PAGA Penalties Beyond Prop 22's Effective Date. ..........................................................................................4

    B.    This Court Should Limit the Scope of the PAGA Period. ........................................9

IV.   CONCLUSION...............................................................................................................11

1

# TABLE OF AUTHORITIES

2

<u>Page(s)</u>

3

**Cases**

4

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997)..................................................................................................9

5

*Baldwin v. Sebelius*,
 654 F.3d 877 (9th Cir. 2011) ....................................................................................5

6

7

*Baxter Healthcare Corp. v. Denton*,
 120 Cal. App. 4th 333 (2004).....................................................................................9

8

*Blum v. Yaretsky*,
 457 U.S. 991 (1982)...............................................................................................1, 6

9

10

*In re Capacitors Antitrust Litig.*,
 154 F. Supp. 3d 918 (N.D. Cal. 2015).......................................................................7

11

*Castellanos v. State of California*,
 89 Cal. App. 5th 131 (2023)....................................................................................10

12

13

*Clements v. Fashing*,
 457 U.S. 957 (1982)...................................................................................................4

14

*Corcoran v. CVS Health*,
 2016 WL 11565648 (N.D. Cal. Aug. 18, 2016).........................................................7

15

16

*Dynamex Operations W., Inc. v. Superior Ct.*,
 4 Cal. 5th 903 (2018) .................................................................................................2

17

*Estrada v. Royalty Carpet Mills, Inc.*,
 15 Cal. 5th 582 (2024) .........................................................................................9, 10

18

19

*Gannon v. United States*,
 292 F. App'x 170 (3d Cir. 2008) .............................................................................11

20

*Get Outdoors II, LLC v. City of San Diego*,
 506 F.3d 886 (9th Cir. 2007) ....................................................................................5

21

22

*Hanon v. Dataproducts Corp.*,
 976 F.2d 497 (9th Cir. 1992) ....................................................................................9

23

*Heller v. Doe*,
 509 U.S. 312 (1993)................................................................................................10

24

25

*Hindsman v. Gen. Motors LLC*,
 2018 WL 2463113 (N.D. Cal. June 1, 2018) .........................................................1, 7

26

*James v. Uber Techs. Inc.*,
 338 F.R.D. 123 (N.D. Cal. 2021).....................................................................1, 3, 8, 9

27

*Lawson v. Grubhub, Inc.*,
 13 F.4th 908 (9th Cir. 2021) ..................................................................................5, 9

28

ii

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Lee v. Am. Nat'l Ins. Co.*,
 260 F.3d 997 (9th Cir. 2001) ................................................................................................8

*Lewis v. Casey*,
 518 U.S. 343 (1996) ...................................................................................................... 4, 5

*Magadia v. Wal-Mart Assocs., Inc.*,
 999 F.3d 668 (9th Cir. 2021) ........................................................................................ 4, 9

*O'Connor v. Uber Techs., Inc.*,
 904 F.3d 1087 (9th Cir. 2018) .............................................................................................9

*People v. Guilford*,
 228 Cal. App. 4th 651 (2014) ..............................................................................................9

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
 632 F.3d 762 (1st Cir. 2011) ...............................................................................................6

*Raines v. Byrd*,
 521 U.S. 811 (1997) ............................................................................................................4

*Renn v. Otay Lakes Brewery, LLC*,
 2023 WL 6050582 (S.D. Cal. Sept. 14, 2023) ....................................................................6

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*,
 775 F.3d 154 (2d Cir. 2014) ............................................................................................ 6, 7

*S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*,
 48 Cal. 3d 341 (1989) .........................................................................................................2

*Schaffer ex rel. Schaffer v. Weast*,
 546 U.S. 49 (2005) ..............................................................................................................8

*Shwiyhat v. Martin Marietta Materials, Inc.*,
 2023 WL 6626129 (N.D. Cal. Oct. 10, 2023) .....................................................................5

*Simon v. Eastern Ky. Welfare Rights Org.*,
 426 U.S. 26 (1976) ..............................................................................................................5

*Summers v. Earth Island Inst.*,
 555 U.S. 488 (2009) ............................................................................................................5

*B.K ex rel. Tinsley v. Snyder*,
 922 F.3d 957 (9th Cir. 2019) ...............................................................................................9

*Tourgeman v. Nelson & Kennard*,
 900 F.3d 1105 (9th Cir. 2018) .............................................................................................8

*TransUnion LLC v. Ramirez*,
 594 U.S. 413 (2021) ..................................................................................................1, 4, 5, 6, 7

Gibson, Dunn & Crutcher LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Trentadue v. Integrity Comm.*,
   501 F.3d 1215 (10th Cir. 2007) ................................................................................11

*Tucker v. Moeller*,
   60 F. App'x 709 (9th Cir. 2003) ................................................................................10

*United States v. Hoyt*,
   879 F.2d 505 (9th Cir. 1989) ......................................................................................5

*Vazquez v. Jan-Pro Franchising Int'l, Inc.*,
   10 Cal. 5th 944 (2021) ................................................................................................2

*Viking River Cruises, Inc. v. Moriana*,
   596 U.S. 639 (2022)....................................................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)....................................................................................................6

*Warth v. Seldin*,
   422 U.S. 490 (1975)....................................................................................................4

*Woodworth v. Loma Linda Univ. Med. Ctr.*,
   93 Cal. App. 5th 1038 (2023) ...................................................................................10

**Statutes and Rules**

Cal. Bus. & Prof. Code § 7449 ....................................................................................2

Cal. Bus. & Prof. Code § 7450 ....................................................................................1

Cal. Bus. & Prof. Code § 7451 ............................................................................1, 3, 7

Cal. Bus. & Prof. Code § 7463 ....................................................................................7

Cal. Lab. Code § 2785 .................................................................................................8

Fed. R. Civ. P. 23 .....................................................................................................8, 9

Fed. R. Civ. P. 52 ......................................................................................................11

Gibson, Dunn &
Crutcher LLP

GRUBHUB'S RESPONSE TO PLAINTIFF'S BRIEF ON STANDING TO PURSUE PAGA PENALTIES
CASE NO. 3:15-CV-05128-JSC

# I.   INTRODUCTION

Proposition 22 marks a watershed in California law, changing the "criteria for classifying app-based drivers" as employees or independent contractors.  Dkt. 367 at 14.  "To protect the basic legal right of Californians to choose to work as independent contractors with rideshare and delivery network companies" (Cal. Bus. & Prof. Code § 7450(a)), Prop 22 establishes that app-based drivers are independent contractors "[n]otwithstanding any other provision of law" (Cal. Bus. & Prof. Code § 7451).  The statute extends to any network company that satisfies four basic criteria, which Grubhub maintains that it readily does and that Lawson cannot carry his burden to prove otherwise.

Unsurprisingly, Lawson contends that Prop 22 is unconstitutional and that Grubhub does not meet its requirements.  Mot. 2, 8.  But those questions are ultimately academic and of no relevance to the Article III standing issue the Court directed the parties to address in this round of briefing.  As to that issue, Lawson indisputably lacks standing to press a claim under Prop 22.  The statute simply has no impact on his claims, which this Court has already adjudicated under *Borello* and the ABC test.  And because he stopped using the Grubhub platform nearly a decade ago, he cannot testify from personal experience about Grubhub's policies or Delivery Partners' practices in the wake of Prop 22.  He therefore lacks a personal stake in litigating whether Grubhub complied with Prop 22 in its dealings with other Delivery Partners.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Lawson tries to find a loophole in longstanding Article III precedent by pointing to cases that have allowed class representatives to litigate conduct allegedly affecting only "absent class members."  Mot. 4–7.  But to the extent class-action cases have any relevance in the PAGA context, they support limiting the PAGA period to Prop 22's effective date.  *See James v. Uber Techs. Inc.*, 338 F.R.D. 123, 144–45 (N.D. Cal. 2021) (ending "the class period on December 16, 2020," because "Plaintiffs must allege (and eventually prove)" "that Uber does not comply with [Prop 22]'s requirements … to bring wage and hour claims against Uber after" that date).  Courts regularly forbid class representatives from challenging a defendant's compliance with laws having no bearing on the named plaintiffs and involving different evidence from that used to prove the plaintiffs' own claims.  *See, e.g.*, *Blum v. Yaretsky*, 457 U.S. 991, 1001–02 (1982); *Hindsman v. Gen. Motors LLC*, 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018) (Corley, J.).

Even if Lawson had standing to litigate Prop 22 (he does not), this Court should stick to its earlier decision and set December 16, 2020, as "a reasonable bookend to Lawson's PAGA penalty period." Dkt. 367 at 14. Doing so would ensure a just and efficient resolution to this case—and avoid the need for a second trial over new evidence—by allowing Lawson to seek penalties only on behalf of those workers whose claims are premised on the same facts and legal standards as his own.

## II.    BACKGROUND

Grubhub is a marketing platform that connects local takeout and delivery restaurants to customers and facilitates online food ordering through its website and associated mobile applications. Plaintiff Raef Lawson, a former Delivery Partner, used the Grubhub platform from October 25, 2015, to February 14, 2016. Dkt. 221 at 4. Lawson filed suit in 2015, claiming he was misclassified as an independent contractor during the four short months he used the Grubhub platform and seeking individual damages and PAGA penalties for the alleged denial of minimum wage, overtime, and expense reimbursement. Dkt. 41. The parties stipulated to bifurcate the case, with Phase I addressing Lawson's individual claims, and Phase II addressing his PAGA claims. Dkt. 122.

Following a seven-day bench trial, this Court determined that Lawson was properly classified as an independent contractor under *S.G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989). Dkt. 221. While the judgment was on appeal, the California Supreme Court issued its decision in *Dynamex Operations West, Inc. v. Superior Court*, 4 Cal. 5th 903 (2018), which it subsequently decided applied retroactively (*see Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 10 Cal. 5th 944, 948 (2021)). On remand, this Court held that the ABC test applied to Lawson's minimum wage and overtime claims and that Lawson was misclassified as an independent contractor under that test. Dkt. 313 at 8, 17.

In the meantime, California voters overwhelmingly adopted Prop 22 to protect "the ability of Californians to work as independent contractors throughout the state using app-based rideshare and delivery platforms." Cal. Bus. & Prof. Code § 7449(e). Effective December 16, 2020, Prop 22 establishes that app-based drivers (like Lawson) are "independent contractor[s] and not … employee[s]" where a network company (like Grubhub) (1) "does not unilaterally prescribe" when they "must be logged into the" app; (2) "does not require" them "to accept any specific … delivery service

Gibson, Dunn &
Crutcher LLP

1  request"; (3) "does not restrict" them "from performing … delivery services" using other apps; and

2  (4) "does not restrict" them "from working in any other lawful occupation or business." *Id.* § 7451.

3       In its recent order on the temporal scope of the PAGA period, this Court tentatively ruled that

4  "Lawson lacks Article III standing to pursue PAGA penalties for minimum wage violations, if any,

5  that occurred after December 16, 2020." Dkt. 367 at 14.  As the Court explained, Lawson "has no

6  personal stake" in litigating whether "drivers are employees under Proposition 22's scheme because he

7  did not drive for Grubhub after the law changed." *Id.*; *see also* Dkt. 368 at 24 ("I don't see how

8  [Lawson] has standing because he has no personal stake in adjudicating whether Section 7451 applies

9  or not.  He has no stake in it whatsoever.").  "Even aside from standing," the Court determined that

10  "December 16, 2020 is a reasonable bookend to Lawson's PAGA penalty period," given that

11  "Proposition 22 marks a change in work circumstances" that would necessitate "a whole new

12  misclassification trial" to determine if any minimum wage violations occurred.  Dkt. 267 at 14–15.

13  The Court thus indicated that it would limit "the evidence Lawson may introduce at trial to prove the

14  alleged minimum wage violations suffered by other aggrieved employees." *Id.* at 15.  But because

15  Lawson had not yet briefed these issues, the Court invited him to do so.  *Id.* at 2.

16  ### III.    ARGUMENT

17       As this Court has already recognized, Lawson lacks standing to recover PAGA penalties beyond

18  Prop 22's effective date because "he has no personal stake" in contesting the statute's applicability to

19  other Delivery Partners.  Dkt. 367 at 14.  Because Lawson stopped driving long before Prop 22 ever

20  became the law, Grubhub's compliance with that statute has no bearing on his claims whatsoever.  And

21  litigating that question will involve a completely different legal standard and new evidence having

22  nothing to do with Lawson's personal experience on the platform.  Lawson cannot point to a single

23  case that has recognized standing under these circumstances, and this Court should not be the first.  As

24  courts have done in the class-action context (*see James*, 338 F.R.D. at 144–45), this Court should limit

25  the PAGA period to December 16, 2020, given his lack of Article III standing and to avoid the potential

26  for a second trial on Prop 22.

27

28

**A.      Lawson Lacks Article III Standing to Pursue PAGA Penalties Beyond Prop 22's Effective Date.**

Constitutional standing is a "threshold question in every federal case, determining the power of the court to entertain the suit" (*Warth v. Seldin*, 422 U.S. 490, 498 (1975)) and ensuring that "courts exercise 'their proper function in a limited and separated government'" (*TransUnion*, 594 U.S. at 423). To meet the irreducible core of Article III standing, "[a] plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Raines v. Byrd*, 521 U.S. 811, 818 (1997).  Put simply, "plaintiffs must be able to sufficiently answer the question:  What's it to you?" *TransUnion*, 594 U.S. at 423 (internal quotation marks and citation omitted).

Because "'standing is not dispensed in gross,'" a "'plaintiff who has been subject to injurious conduct of one kind'" does not "'possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject.'" *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  "[R]ather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek," and they "must maintain their personal interest in the dispute at all stages of litigation." *TransUnion*, 594 U.S. at 431.  That is no less true for PAGA actions as it is for any other claim. *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 678 (9th Cir. 2021) (plaintiff "lacks standing to bring a PAGA claim for [the] violations" of other employees that "he himself did not suffer"); *contra* Mot. 5.

Time and again, courts have consistently held that a plaintiff lacks standing to contest the validity or interpretation of a statute that has no possible impact on any concrete interest of the plaintiff. In *Warth*, for example, the Supreme Court held that the plaintiffs had no standing to challenge a town's zoning ordinance when they never resided in the town or were otherwise "subject to the ordinance's strictures." 422 U.S. at 503–04.  Absent "specific, concrete facts demonstrating" that the plaintiffs "personally would benefit in a tangible way from the court's intervention," the case could not proceed. *Id.* at 508; *see also*, *e.g.*, *Clements v. Fashing*, 457 U.S. 957, 966 n.3 (1982) ("A litigant has standing to challenge … a statute only insofar as it adversely affects his own rights.").

Gibson, Dunn & Crutcher LLP

Similarly, in *Summers v. Earth Island Institute*, the Supreme Court determined that the plaintiffs were without standing to enjoin enforcement of regulations that "neither require[d] nor forb[ade] any action" by the plaintiffs but "govern[ed] only the conduct of Forest Service officials." 555 U.S. 488, 493 (2009). And in *United States v. Hoyt*, the Ninth Circuit concluded that a defendant lacked standing to challenge a statute that was enacted after his sentencing and so did "not cause[] him an 'actual injury redressable by the court.'" 879 F.2d 505, 514 (9th Cir. 1989) (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976)); *see also*, *e.g.*, *Baldwin v. Sebelius*, 654 F.3d 877, 879 (9th Cir. 2011) (employer lacked standing to challenge the "individual mandate" provision in the Patient Protection and Affordable Care Act "because the provision does not apply to employers"); *Get Outdoors II, LLC v. City of San Diego*, 506 F.3d 886, 892 (9th Cir. 2007) (plaintiff had "standing to challenge only those provisions [of an ordinance] that applied to it").

Likewise, Lawson does not have standing to litigate whether Grubhub properly classified other Delivery Partners as independent contractors under Prop 22. Lawson stopped using the Grubhub platform over four years before Prop 22 became effective. *See Lawson v. Grubhub, Inc.*, 13 F.4th 908, 912, 914 (9th Cir. 2021). So whether Prop 22 is constitutional under state law (Mot. 2, 8) or whether Grubhub satisfies its requirements (*id.* at 1) is of no moment to Lawson. Win or lose on these issues, it is all the same to him, as Prop 22 affects only the claims of other Delivery Partners and not his own. *See* Dkt. 367 at 14; Dkt. 368 at 24. Without a "personal stake" in adjudicating Prop 22's applicability, Lawson may not invoke this Court's jurisdiction merely "to ensure [Grubhub's] 'compliance with [wage-and-hour] law'" or to "obtain … statutory [penalties]" that remedy no harm to himself. *TransUnion*, 594 U.S. at 427–28; *see also Shwiyhat v. Martin Marietta Materials, Inc.*, 2023 WL 6626129, at *8 (N.D. Cal. Oct. 10, 2023) (Corley, J.) (plaintiff lacks "'personal stake' sufficient to litigate" a question that "has no impact on plaintiff's individual claims").

Lawson makes no attempt to explain how *he* has a concrete personal interest in litigating Prop 22. Instead, he analogizes to the class-action context on the theory that named plaintiffs often litigate conduct affecting only "absent class members." Mot. 4–7. But that strained analogy "'adds nothing to the question of standing.'" *Lewis*, 518 U.S. at 357. Even in class-action cases, plaintiffs must still "'allege and show that they personally have been injured'" (*id.*) and that they "suffer[ed] the same

injury" as those they seek to represent (*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348–49 (2011) (internal quotation marks and citation omitted); *see also*, *e.g.*, *TransUnion*, 594 U.S. at 431 ("'Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.'")).  Courts therefore scrutinize "whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Ret. Bd. of the Policemen's Annuity & Ben. Fund of Chi. v. Bank of N.Y. Mellon*, 775 F.3d 154, 163 (2d Cir. 2014); *see also*, *e.g.*, *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 771 (1st Cir. 2011) ("plaintiffs have no stake in establishing liability as to misconduct involving" only others).

For example, in *Blum*, the named plaintiffs who had been threatened with transfers to lower levels of nursing care also sought to represent class members facing transfers to facilities providing higher levels of care.  457 U.S. at 1000–01.  But the plaintiffs had not themselves been transferred or threatened with transfers to higher-care facilities.  *Id.* at 1001.  What's more, the conditions governing transfers to lower-care facilities were "sufficiently different" from those involving higher-care facilities such "that any judicial assessment of their procedural adequacy would be wholly gratuitous and advisory." *Id.*  The Supreme Court thus held that the plaintiffs lacked "the necessary stake in litigating conduct ... to which [they] ha[d] not been subject." *Id.* at 999.

The Second Circuit reached a similar outcome in *Retirement Board*.  There, the court affirmed the dismissal of breach-of-duty claims relating to residential mortgage-backed securities trusts in which the named plaintiffs did not invest.  775 F.3d at 155.  Because "significant differences [existed] in the proof that w[ould] be offered for each trust," the court reasoned that the plaintiffs' "claims d[id] not implicate the 'same set of concerns' as those of absent class members who purchased certificates issued by trusts in which no named [p]laintiff invested." *Id.* at 163; *see also*, *e.g.*, *Renn v. Otay Lakes Brewery, LLC*, 2023 WL 6050582, at *3 (S.D. Cal. Sept. 14, 2023) (named plaintiff lacked "standing to bring claims for products [he] did not purchase" absent a showing that the products were "substantially similar" to those he did purchase).

This Court has also rebuffed attempts by class representatives to litigate a defendant's compliance with laws having no bearing on themselves.  In *Hindsman*, this Court held that "the named

plaintiffs lack[ed] standing to bring … claims on behalf of consumers of 49 different states in which no named plaintiff reside[d]."  2018 WL 2463113, at *15; *see also, e.g.*, *Corcoran v. CVS Health*, 2016 WL 11565648, at *1 (N.D. Cal. Aug. 18, 2016) (Corley, J.) (recognizing that plaintiffs did "not have standing to bring … common law claims under the laws of the thirty-eight states to which they have alleged no connection").

As in *Blum* and *Retirement Board*, litigating Prop 22 will "turn on very different proof" than what the parties have presented thus far.  *Ret. Bd.*, 775 F.3d at 162.  And just like *Hindsman* and *Corcoran*, Prop 22 involves a completely different legal test that has no impact on Lawson, who used the app years before the law ever took effect.  To date, this Court has examined only whether Grubhub "'control[led] the manner and means of'" Lawson's work under *Borello* (Dkt. 221 at 18) and whether Lawson performed "work … within the usual course of Grubhub's business" under Prong B of the ABC test (Dkt. 313 at 12).  By contrast, Prop 22 will require a determination of whether Grubhub is a "network company" that "facilitate[s] delivery services … on an on-demand basis" and records the time and miles Delivery Partners spend actively performing deliveries.  *See* Cal. Bus. & Prof. Code § 7463(f), (i)–(j).  The Court must then assess whether Grubhub (1) "unilaterally prescribe[s]" when Delivery Partners "must be logged into the" platform; (2) requires them "to accept any specific … delivery service request"; (3) restricts them from performing delivery services using other apps; or (4) restricts them "from working in any other lawful occupation or business." *Id.* § 7451.

This Court has never directly confronted these questions before.  Dkt. 367 at 14.  And as Lawson concedes, answering them will—at the very least—require "additional discovery on [Grubhub's] policies and practices" which never applied to Lawson.  Mot. 8.  The Court might also inquire into Delivery Partners' actual use of the platform, but Lawson cannot personally speak to those experiences as he stopped driving years before Prop 22 took effect.  And just because it might "be *possible* for [Lawson] to litigate" Grubhub's compliance with Prop 22 "does not imply that [he] should be the one to litigate it." *Ret. Bd.*, 775 F.3d at 163 (emphasis added); *see also In re Capacitors Antitrust Litig.*, 154 F. Supp. 3d 918, 927 (N.D. Cal. 2015) ("Standing does not arise simply because illegality is in the air.").  Lawson must still be able to answer the question:  "What's it to you?"  *TransUnion*, 594 U.S. at 423 (internal quotation marks and citation omitted).  Yet he never does.

Lawson's reliance on cases allowing class representatives to seek recovery for "ongoing injuries to other absent class members long after [plaintiffs] ha[d] ceased being employed by the defendant" (Mot. 4) is misplaced.  None of those decisions addressed whether the former employees possessed Article III standing; they examined only whether the plaintiffs were typical or adequate representatives under Federal Rule of Civil Procedure 23.  Nor did the cases involve a seismic shift in the law post-dating the plaintiffs' employment and requiring new evidence to establish a violation of the current legal standard.

Relatedly, Lawson insists "there is no requirement" under state law "that PAGA plaintiffs need to have been employed during the entire period for which they seek PAGA penalties on behalf of other aggrieved employees."  Mot. 5.  But that is beside the point:  "[A] plaintiff whose cause of action is perfectly viable in state court under state law may nonetheless be foreclosed from litigating the same cause of action in federal court, if he cannot demonstrate the requisite injury."  *Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1001–02 (9th Cir. 2001).  And nothing in *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022)—which addressed only federal preemption and statutory standing—sheds any light on a PAGA plaintiff's constitutional standing to litigate claims in which he has no personal stake.

Lastly, Lawson maintains he has standing to pursue PAGA penalties after Prop 22's effective date on the theory that (1) the statute merely "establish[es] an affirmative defense," and (2) plaintiffs may "represent absent class members who are subject to affirmative defenses or counterclaims that do not affect the named plaintiffs themselves."  Mot. 5–6.  Lawson is wrong on both counts.  As Grubhub has explained (Dkt. 359 at 9–10), Lawson bears the burden of pleading and proving misclassification under Prop 22 (*see James*, 338 F.R.D. at 145 ("Plaintiffs must allege (and eventually prove)" "that Uber does not comply with [Prop 22]'s requirements … to bring wage and hour claims against Uber after December 16, 2020.")).  Where, as here, a "statute is silent as to which party carries the burden of proof," courts adhere to "the ordinary default rule that plaintiffs bear the risk of failing to prove their claims" absent some indication to the contrary.  *Tourgeman v. Nelson & Kennard*, 900 F.3d 1105, 1109 (9th Cir. 2018) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).  Notably, unlike Prop 22, Assembly Bill 5's enumerated exceptions specifically place the burden of proof on the hiring entity seeking their protection.  *See* Cal. Lab. Code § 2785(d) ("If a hiring entity can demonstrate

compliance with all of conditions set forth in any one of Sections 2776 to 2784, inclusive, then Section 2775 and the holding in *Dynamex* do not apply to that entity."). By contrast, Prop 22 contains no such language. That omission is not accidental and may not be ignored. *See, e.g., People v. Guilford*, 228 Cal. App. 4th 651, 657 (2014) (inclusion of a pleading and proof requirement in one provision of a statutory scheme but not in another signaled an intent "to dispense with [the] requirement in the latter case"); *Baxter Healthcare Corp. v. Denton*, 120 Cal. App. 4th 333, 366 (2004) (similar).

In any event, it is well established that the presence of "'unique defenses'" *can* preclude a plaintiff from bringing a representative action. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). In fact, the Ninth Circuit held just that when it affirmed the denial of class certification here because "[a]ll members of Lawson's putative class—except Lawson and one other—signed agreements waiving their right to participate in a class action." *Lawson*, 13 F.4th at 913; *see also O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1094 (9th Cir. 2018).[1] Lawson's cited cases are thus inapposite insofar as they predate and conflict with binding circuit precedent. Mot. 6–7. Tellingly, Lawson fails to mention that the court in *James* limited the class period (in an action brought by Lawson's own counsel) to December 16, 2020, to avoid litigation over an entirely separate legal standard. *See James*, 338 F.R.D. at 145. To the extent class-action cases have any relevance in the PAGA context, they therefore support limiting the PAGA period to Prop 22's effective date.

**B.   This Court Should Limit the Scope of the PAGA Period.**

Even if Lawson had standing to litigate Grubhub's compliance with Prop 22 (he does not), this Court should limit the PAGA period to December 16, 2020, to avoid "a whole new misclassification trial" over an entirely new legal standard involving facts and evidence that have nothing to do with Lawson's experience on the platform. Dkt. 367 at 15. This Court "may 'limit[] the types of evidence a plaintiff may present or us[e] other tools to assure that a PAGA claim can be effectively tried,'" and it should decline Lawson's invitation to extend this nine-year litigation even further. *Id.* at 13 (quoting *Estrada v. Royalty Carpet Mills, Inc.*, 15 Cal. 5th 582, 541 P.3d 466, 487 (2024)).

---

[1]   Although the Ninth Circuit reached this conclusion under Rule 23, it is well settled that "Rule 23's requirements must be interpreted in keeping with Article III constraints." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); *see also B.K ex rel. Tinsley v. Snyder*, 922 F.3d 957, 967 (9th Cir. 2019). And while Rule 23 might not apply to PAGA actions (Mot. 7), Article III still does (*Magadia*, 999 F.3d at 678).

GRUBHUB'S RESPONSE TO PLAINTIFF'S BRIEF ON STANDING TO PURSUE PAGA PENALTIES
CASE NO. 3:15-CV-05128-JSC

Gibson, Dunn &
Crutcher LLP

1
2
3
4
5
6
7
8
9
10

As discussed above, Prop 22 overhauled "the criteria for classifying app-based drivers." *Id.* at 14.  To determine whether any minimum wage violations occurred after December 16, 2020, the Court would have to decide whether Grubhub is a "network company" within the meaning of Prop 22 that satisfies the statute's four factors.  But these facts are not in the existing record, which focused solely on Lawson's individual use of the platform in late 2015 and early 2016.  And Lawson cannot even testify from personal experience about Grubhub's policies or Delivery Partners' practices since Prop 22 took effect, as he has not used the platform for nearly a decade.  Dkt. 221 at 4.  Rather than conduct additional discovery and host a second trial over evidence involving only other Delivery Partners' use of the platform, this Court should set an "appropriate and administrable limit" to this litigation which is now in its ninth year.  Dkt. 367 at 15.  None of Lawson's contrary arguments withstands scrutiny.

11
12
13
14
15
16
17
18
19

*First*, Lawson asserts that limiting the PAGA period would violate the statute's text on the theory that it provides for "mandatory" penalties that can be reduced only under certain "narrow circumstances."  Mot. 7–8.  That argument, however, cannot be squared with the California Supreme Court's recent holding in *Estrada*.  There, the Court made clear that trial courts may "limit the scope of the PAGA claim" to assuage manageability concerns.  541 P.3d at 487–88 (quoting *Woodworth v. Loma Linda Univ. Med. Ctr.*, 93 Cal. App. 5th 1038, 1070 (2023)).  And where, as here, a plaintiff's case is "overbroad" and the existing record does not show "liability as to all or most employees," courts should "limit[] the types of evidence a plaintiff may present" and "issue substantive rulings … to fairly and efficiently adjudicate [the] action."  *Id.*

20
21
22
23
24
25
26
27
28

*Second*, Lawson contends that limiting the PAGA period now "would be premature," given that the California Supreme Court is poised to decide Prop 22's constitutionality in *Castellanos v. State of California*, No. S279622.  Mot. 2.  As it currently stands, though, Prop 22 was upheld by the Court of Appeal and "remain[s] in effect."  *Castellanos v. State of California*, 89 Cal. App. 5th 131, 177 (2023); *see also*, *e.g.*, *Heller v. Doe*, 509 U.S. 312, 320 (1993) ("A statute is presumed constitutional[.]"); *Tucker v. Moeller*, 60 F. App'x 709, 710 (9th Cir. 2003) ("statutes are presumed to be constitutional until judicially declared otherwise").  And to the extent there is a concern that Prop 22 may be declared unconstitutional, forging ahead now and adjudicating Grubhub's compliance with Prop 22 would only waste resources and muddy the waters.

*Third*, Lawson suggests that the parties could avoid the time and expense of holding a new trial on Prop 22 by skipping straightaway to Rule 52 briefing.  Mot. 8.  But Rule 52 permits no such shortcuts; it applies only after "a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue."  Fed. R. Civ. P. 52(c); *see also Trentadue v. Integrity Comm.*, 501 F.3d 1215, 1237 (10th Cir. 2007) (Rule 52 applies "only to cases in which a district court issues factual findings following a trial on the merits"); *Gannon v. United States*, 292 F. App'x 170, 173–74 (3d Cir. 2008) (similar).  Here, however, the parties have not "been fully heard" on Prop 22, much less on Lawson's PAGA claims on behalf of other Delivery Partners.  Indeed, Phase I concerned only Lawson's individual claims (Dkt. 122)—none of which implicated Prop 22 (Dkt. 367 at 14). Lawson therefore cannot simply leapfrog to the finish line without first developing the factual record and presenting argument on Prop 22 to this Court.  And while the parties might conceivably move for partial summary judgment on Prop 22, Lawson has already questioned whether Grubhub satisfies its criteria (Mot. 1, 8) and is likely to dispute any facts Grubhub submits.  So extending the PAGA period beyond December 16, 2020, may very well necessitate further discovery and "a whole new misclassification trial"—just as this Court has warned.  Dkt. 367 at 15.

## IV.    CONCLUSION

This Court should limit the PAGA period to December 16, 2020, because Lawson lacks Article III standing to contest Grubhub's compliance with Prop 22 and because that question would unnecessarily prolong an already protracted case.

Dated: March 6, 2024                         GIBSON, DUNN & CRUTCHER LLP


                                             By:   */s/ Theane Evangelis*
                                                   Theane Evangelis

                                             Attorneys for Defendants
                                             GRUBHUB HOLDINGS INC. and GRUBHUB INC.