SHANNON LISS-RIORDAN, SBN 310719
  sliss@llrlaw.com
THOMAS FOWLER, *pro hac vice*
  tfowler@llrlaw.com
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Telephone: 617.994.5800
Facsimile: 617.994.5801

Attorneys for Plaintiff

THEANE EVANGELIS, SBN 243570
  tevangelis@gibsondunn.com
DHANANJAY S. MANTHRIPRAGADA
  SBN 254433
  dmanthripragada@gibsondunn.com
BRANDON J. STOKER, SBN 277325
  bstoker@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: 213.229.7000
Facsimile:  213.229.7520

MICHELE L. MARYOTT, SBN 191993
  mmaryott@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA  92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RAEF LAWSON, in his capacities as Private Attorney General Representative,<br><br>Plaintiffs,<br><br>v.<br><br>GRUBHUB HOLDINGS INC. and GRUBHUB INC.,<br><br>Defendants. | CASE NO. 3:15-cv-05128-JSC<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>**Conference:**<br>Date:           January 9, 2025<br>Time:          1:30 p.m.<br>Place:         Courtroom 8<br><br>Judge:         Hon. Jacqueline Scott Corley<br>Action Filed: September 23, 2015<br>Trial Date:   March 3, 2025 |

Plaintiff Raef Lawson, in his capacity as Private Attorney General Representative ("Plaintiff" or "Lawson"), and Defendants Grubhub Holdings Inc. and Grubhub Inc. (collectively, "Defendants" or "Grubhub") (jointly, the "parties"), by and through their respective counsel of record, hereby submit the following Joint Case Management Statement in advance of the Further Case Management Conference scheduled in this matter for January 9, 2025.

**I.      LEGAL ISSUES**

**A.      Plaintiff's Statement**

As Plaintiff explained in his Trial Plan (Dkt. 395), GrubHub has now produced voluminous data that will allow the Court to assess the PAGA penalties that GrubHub owes for routinely failing to pay its California drivers the California minimum wage. At this point, trial should be a relatively expeditious process in which Plaintiff will call a witness (Plaintiff's firm's data analyst) in order to present Plaintiff's calculations to the Court. The data analyst has used the data GrubHub produced to make calculations to assess the number of workweeks during this period in which California minimum wage violations occurred. The calculations were conducted using the methodology that the Court used in calculating minimum wage violations for the Plaintiff following the trial in this case.[1]

Plaintiff has shared the calculations he has completed to date with GrubHub and invited conferral on them. For its part, however, GrubHub has refused to provide its own version of calculations (despite Plaintiff's repeated invitations to do so) so that the parties could confer and narrow any disputes. Instead, GrubHub submitted a trial plan on November 21, 2024 (Dkt. 396) claiming that it simply could not make calculations based on the records that GrubHub maintained. On December 10, 2024, roughly three weeks after the parties submitted their Trial Plans on November 21, 2024, GrubHub produced additional data that it contends will help resolve some scheduling discrepancies and includes the drivers' "toggle" status on the GrubHub App from March

---

[1] This methodology excluded tips from the payments and accounted for vehicle expenses by subtracting mileage expenses at the IRS reimbursement rate from the payments in order to determine the actual wage payments to drivers. Because GrubHub's data only include the mileage from the pick-up location (the restaurant) to the drop-off location (the customer), Plaintiff doubled the mileage to account for the distance traveled to reach the pick-up location (as Plaintiff did in the calculations at trial).

2016 forward. Despite GrubHub's belated production, Plaintiff is diligently working to prepare for the trial that is set to proceed on March 3, 2025.

GrubHub's Trial Plan (Dkt. 396) is severely overcomplicated and should be rejected. As expected, GrubHub takes the position in its Trial Plan that an individualized inquiry of the California drivers is necessary in order to assess penalties. As such, GrubHub proposes a bellwether trial where **_twenty_** GrubHub drivers would testify, as well as corporate employees.[2] Prior to this trial, GrubHub proposes that the parties engage in extensive discovery from the twenty drivers who have been selected to participated in the trial. This case has been pending since 2014. GrubHub's proposal will extend the life of this case by years. It goes without saying that GrubHub's bellwether approach would completely upend the trial that is currently scheduled for March 3, 2025.[3]

None of the arguments raised by GrubHub justify such an outrageously unwieldy proposal for trial. For starters, and as Plaintiff explained in his Trial Plan, to the extent that there are gaps in the data, the Court should credit Plaintiff's calculations and adopt his reasonable inferences from the data. Courts have widely recognized that, when employers do not provide data needed to make wage calculations, the court should give deference to employees' reasonable calculations and estimates from the available evidence. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-88 (1946)**;** *Hernandez v. Mendoza*, 199 Cal. App. 3d 721, 727 (1988). As the employer, GrubHub was responsible to maintain proper pay records for its employees. *See* Cal. Lab. Code §§ 226 and 1174. If GrubHub failed to maintain those records, it cannot claim a benefit from having failed to do so. In *Alcantar v. Hobart Service*, 2013 WL 146323, at *3 (C.D. Cal. Jan. 14, 2013), the court rejected a virtually identical argument as GrubHub's. In that case, defendants argued that permitting Plaintiff to proceed with his PAGA claim in a representative capacity will "necessarily require a series of highly individualized, fact intensive, mini-trials." *Id.* The court explained that "such mini-trials are unlikely in this case because the burden is on Defendants to prove that they kept adequate records of meal

---

[2] GrubHub takes the position that this trial could be conducted in 4-5 days. GrubHub's estimate is wildly optimistic. In Plaintiff's counsel's experience, such a trial would take weeks.

[3] GrubHub contends that conducting this discovery and putting on these more than twenty witnesses at trial will assist the "fill the gaps" in the data. But then, oddly, GrubHub argues that the Court should then arbitrarily look to Plaintiff's percentage of compensable to limit penalties across the board.

breaks or relieved employees of their duties." *Id.* (citing *Ricaldai v. U.S. Investigations Svcs., LLC,* 2012 WL 2930474, *5 (C.D. Cal. May 25, 2012) ("it is the employer's burden to rebut a presumption that meal periods were not adequately provided, where the employer fails to record any meal periods")).[4] As the court noted, otherwise employers will be incentivized not to keep accurate employment records. *See id.* Here, GrubHub seeks to rely on its own failure to keep accurate employment records to sow chaos in this case and make the trial unnecessarily burdensome. Instead, the Court should adopt Plaintiff's Trial Plan and use GrubHub's extensive data along with the reasonable inferences that can be taken from it to assess PAGA penalties.

Moreover, the issues with the data that GrubHub points to are not nearly as problematic as GrubHub makes them out to be.

**First,** GrubHub argues that the data is limited in allowing the parties to assess what time is compensable because it does not reflect when drivers were toggled "available" to accept deliveries during blocks. As explained above, GrubHub has since produced that data from March 2016 forward on December 10, 2024. Although Plaintiff's counsel are still in the process of evaluating that data, this production all but eliminates the concern that GrubHub raised. Even with respect to the time before March 2016, Plaintiff anticipates that the data that GrubHub produced can be extrapolated to estimate the amount of time that drivers spent on blocks toggled "unavailable" to accept orders.[5] Moreover, because GrubHub was so late in producing the data (after maintaining since April 2024 that GrubHub had already produced all the data it had), the Court would be justified in precluding this data's use and simply treating the drivers' blocks as being fully compensable int their entirety. *See See's Candy Shops, Inc. v. Superior Court*, 210 Cal. App. 4th 889, 893 (2012) (noting that "an employee's work shift" is "compensable time"); *see also* Industrial Welfare Commission, Order No.

---

[4] Below, GrubHub argues that *Mt. Clemens* is inapplicable here, because this case concerns independent contractor misclassification. However, courts have held that "the question of whether [a defendant] had a good faith belief that its drivers were properly classified as independent contractors . . . does not have any bearing on whether *Mt. Clemens* applies." *Villalpando v. Exel Direct Inc.*, 2016 WL 1598663, at *9 (N.D. Cal. Apr. 21, 2016); *see also Hargrove v. Sleepy's LLC*, 974 F.3d 467, 483 (N.D. Cal. Sept. 9, 2020) ("It cannot be the case that *Mt. Clemens* and *Tyson Foods* do not apply anytime an employer argues workers in good faith were not treated as employees but as independent contractors.").

[5] Given that GrubHub was able to produce data reflecting the toggle status for Plaintiff during his trial, it is peculiar that GrubHub now maintains this data is available after Plaintiff left GrubHub.

9-2001 (Wage Order 9(m)) (defining "shift" as "designated hours of work by an employee, with a designated beginning time and quitting time"); 29 C.F.R. 553.221 ("Compensable hours of work generally include all of the time during which an employee is on duty on the employer's premises or at a prescribed workplace…" (in this case, Plaintiff's vehicle in his designated zone)); *Zellagui v. MCD Pizza, Inc.*, 59 F. Supp. 3d 712, 718 (E.D. Pa. 2014) (calculating alleged overtime damages "per shift").

**Second**, GrubHub argues that its data is inadequate because it does not reflect the time that the drivers performed work for other delivery services while also working for GrubHub. However, GrubHub acknowledges – as it must – that this Court has already rejected GrubHub's argument. See *Lawson v. Grubhub, Inc.*, 665 F. Supp. 3d 1108, 1129 (N.D. Cal. 2023). As the Court explained, the time that Plaintiff spent logged into the apps of other delivery companies like Postmates and Caviar while also on a GrubHub block did not impact the compensability of the time he worked: "While Mr. Lawson spent some of this category of time at home or doing other activities, **including delivering for competitors**, that does not mean the time primarily benefitted him." *Id.* (citing *Frlekin v. Apple, Inc.*, 8 Cal. 5th 1038, 1051-52 (2020) (describing "optional services" and "optional benefit[s]," such as free transportation, "that primarily benefit the *employee*" and therefore do not represent compensable time); *Ridgeway v. Walmart Inc.*, 946 F.3d 1066, 1079 (9th Cir. 2020) ("[C]ontrol may exist even when employees are permitted to perform personal activities if the employer imposes meaningful restrictions on the employee.").

**Third**, GrubHub complains that the data only reflects drivers' self-reported time with regard to deliveries that were completed outside of scheduled blocks. Again, GrubHub should not be rewarded for not keeping track of its drivers' compensable time as the law requires. *See Alcantar*, 2013 WL 146323, at *3. Furthermore, there are easy ways to address GrubHub's concerns about inflated delivery times. For example, GrubHub points to an example of a GrubHub driver reporting that a delivery took 6 hours. The parties could simply impose an assumption on the data that no delivery exceeded 3 hours. For its part, GrubHub makes no suggestions as to how to remedy this problem. If GrubHub's concern is self-reporting by drivers being inaccurate, how would GrubHub's bellwether

trial approach address this problem? The Court would still be relying on the word of drivers who did the deliveries (but now with testimony given years after those deliveries had been completed).

**Fourth,** Plaintiff could take a similar approach to address the "bundled" order issue that GrubHub raised, where its data apparently duplicated the time drivers were delivering if they picked up several orders at once. GrubHub acknowledges that only 5% of all deliveries were "bundled", meaning this is a minor issue. To the extent that such "bundling" inflates the data, Plaintiff could simply impose an assumption limiting the time that orders could take.

**Fifth,** GrubHub argues that the pay stated in the data is not always accurate, because GrubHub sometimes made post hoc pay adjustments to the driver's pay on a given day, meaning that the pay listed for a day does not always mean that the pay was for the work performed on that day. To reiterate, as the employer, GrubHub was responsible to maintain proper pay records for its employees. GrubHub should not be allowed to benefit from its failure to do so. Instead, acknowledging that the data is not perfect, the Court should credit Plaintiff's effort to do his best to calculate penalties.

**Sixth**, GrubHub points out that sometimes, if a customer would cancel an order or reduce a tip, GrubHub would pay the driver the tip that was originally given. GrubHub itself admits that it "miscategorized" these payments as tips. Again, it should not benefit from failing to keep accurate records. Moreover, GrubHub no genuine evidence that this miscategorizing actually happened beyond a self-serving generalization in a declaration. It seems likely that if this did happen, its frequency would be small.

**Seventh**, GrubHub contends that the data does not accurately reflect mileage where there are bundled orders, or where sometimes orders overlap. It is no surprise that there are some issues with how GrubHub maintained its mileage records. More concerning than GrubHub's fear of overcounting miles is the fact that GrubHub significantly undercounted the miles. As the Court noted when addressing this issue for Plaintiff, "Grubhub did not record Mr. Lawson's actual mileage on city streets and did not account for Mr. Lawson's drive to the restaurant after accepting a delivery offer." *Lawson v. Grubhub, Inc.*, 665 F. Supp. 3d 1108, 1132 (N.D. Cal. 2023). Instead, "Grubhub recorded 'as-the-crow-flies' miles between the restaurants where Mr. Lawson picked up food and the

customers to whom he delivered." *Id.* To address this issue, the Court held that "Mr. Lawson drove twice Grubhub's recorded mileage each day . . . ." *Id.* It is completely reasonable for the Court to approximate the mileage even notwithstanding the few times that GrubHub may have overestimated the mileage driven, given the chronic underestimating that GrubHub did tracking miles.

Additionally, the Court should reject GrubHub's effort to rehash its argument that mileage should not be considered for minimum wage purposes since Plaintiff also pursues an expense reimbursement claim pursuant to Cal. Lab. Code § 2802 seeking unpaid reimbursed for mileage. This Court has already compellingly rejected that argument:

> The Court is not persuaded. The Labor Code's minimum wage provisions are separate and independent from Section 2802. *See* Cal. Lab. Code §§ 1194(a), 1197. They use different standards to classify a worker as an employee or an independent contractor. *See Bowerman*, 60 F.4th at 472 (explaining ABC test governs claims based on or rooted in a California wage order, such as minimum wage claims); (Dkt. No. 292 (concluding *Borello* governs Mr. Lawson's Section 2802 claims)). The separate and independent provisions mean that for employees whose take-home pay is above minimum wage notwithstanding that they have made expenditures, Section 2802 entitles them to reimbursement if they are employees under the *Borello* standard and the expenditures were "necessary." Cal. Lab. Code § 2802(a). For employees whose take-home pay is below minimum wage in part because they have made expenditures, Sections 1194 and 1197 entitle them to minimum wage even if Section 2802 does not entitle them to reimbursement because they are not employees under the *Borello* standard. *See id.* §§ 1194(a), 1197; *Sanchez v. Aerogroup Retail Holdings, Inc.*, No. 12-CV-05445-LHK, 2013 WL 1942166, at *11 (N.D. Cal. May 8, 2013) ("An employer who causes an employee to bear expenses which reduce the employee's net pay below the minimum wage has committed two wrongs. First, the employer has not reimbursed the employee for expenses as required by Section 2802. Second, the employer has caused the employee to have to satisfy the employee's living expenses with less than the minimum wage. Notably, different penalties apply where an employer is alleged have committed the latter wrong."); *see generally Ridgeway*, 946 F.3d at 1078 ("California courts construe worker-protection laws liberally with an eye to promoting such protection.").

*Lawson*, 665 F. Supp. 3d at 1131-32.

Lastly, GrubHub once again argues that Plaintiff lacks standing to pursue penalties past 2017, because GrubHub's requirement that drivers not reject deliveries became less strict over time. Just like the last time that the GrubHub raised this issue to the Court, GrubHub has failed to support its argument with meaningful evidence. As such, the Court should once again reject GrubHub's argument. In its February 1, 2024, Order (Dkt. 367 at 9), the Court explained that "Grubhub's

evidence does not prove on-block delivery drivers were able to ignore or decline delivery request after April 2017, and thus fails to show the practical requirement not to reject and receive incoming orders changed for on-block delivery drivers after April 2017."

GrubHub suffers the same flaw here. GrubHub supports its argument with a threadbare declaration from David Grinstead (Dkt. 396-01), a "director of logistics." Mr. Grinstead attempts to support GrubHub's argument in Paragraphs 9-12 of his declaration, but he does not even explain the source of the information he recites. He simply recites percentages of job rejections by drivers as if they were axiomatic. He never purports to have worked with the data that GrubHub produced to Plaintiff here. Nor does he say what data supports his conclusions. To reiterate, even though Plaintiff has submitted calculations to GrubHub based on GrubHub's data, GrubHub has flatly refused to do the same. This includes producing calculations that would support the contentions made in Mr. Grinstead's declaration. GrubHub's failure is egregious, given the Court's expectation that the parties analyses would be completed by September 30, 2024 (Order, Dkt. 384). Once again, the Court is left with no way to assess the veracity of GrubHub's contentions regarding standing after mid-2017 and thus should reject those contentions. Simply put, there is no reason to depart from the Court's commonsense decision to treat the time that drivers worked on-block as compensable and the time off-block and performing deliveries as compensable. *See Lawson*, 665 F. Supp. 3d at 1127-31. Once again, GrubHub has provided absolutely no evidence supporting an argument to the contrary.

**B.     Defendants' Statement**

As Grubhub has explained, the face value of the data differs significantly from Delivery Partners' actual use of the platform and does not permit the Court to calculate the number of potential violations accurately.  *See* Dkt. 396 at 4–10.  As the Court may recall, determining Lawson's compensable time required a fact-intensive analysis and resulted in a finding that only 60% of Lawson's claimed working time was compensable.  Similarly, the Court will need to engage in an individualized analysis to determine the actual compensable time and effective pay for each of the roughly 63,000 Delivery Partners at issue.  *Id.* at 5, 13.

Tellingly, Lawson does not dispute the inherent limitations in the data which preclude an accurate compensability analysis.  He, too, agrees that the data is "incomplete" but tries to paper over

the gaps by "extrapolat[ing]" the number of alleged violations from the self-reported records of a "sample[]" of Delivery Partners. Dkt. 395 at 1. That approach does nothing to solve the data limitations, including whether and when Delivery Partners intentionally toggled off prior to March 2016, went out of network, or failed to mark their orders as "delivered" in the app. *See* Dkt. 396 at 4–10.[6] Regardless whether the Court looks to the data of only a certain number of Delivery Partners or all 63,000, the Court will not be able to determine accurately their compensable time or whether they experienced any minimum wage violations at all based on the available records alone.

For example, the data contains many instances where Delivery Partners allegedly spent over five hours to travel only a handful of miles to deliver an order. If the Court were to take the data at face value, many of these Delivery Partners would have received less than $1 per hour. And according to Lawson, still others would have received *negative* pay after deducting for tips and mileage reimbursement. That obviously cannot be right. The only solution then—as Grubhub has explained—is to conduct a bellwether trial involving a small selection of Delivery Partners to gauge how their actual experiences on the platform diverge from the face value of the data. The Court could then apply the insights from that trial, together with Lawson's personal experience, to estimate the potential number of violations at issue. *See* Dkt. 396 at 2, 12–13.[7]

Nor may the Court simply "credit Plaintiff's calculations" in the absence of sufficient data to determine Delivery Partners' hourly compensation. Dkt. 395 at 2. Lawson bears the burden to "prove [minimum wage] violations with respect to each and every individual on whose behalf [he] seeks to recover civil penalties under PAGA." *Hibbs-Rines v. Seagate Techs., LLC*, 2009 WL 513496, at *4 (N.D. Cal. Mar. 2, 2009); *see also Duran v. U.S. Bank Nat'l Ass'n*, 59 Cal. 4th 1, 40–41 (2014). But he cannot establish "the fact of damage" by relying solely on the self-reported records of all Delivery Partners, much less on only a sampling. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 688

---

[6] Grubhub's practices for collecting and recording data changed throughout the relevant time period. Accordingly, toggle data is not readily accessible prior to March 2016, and it would require individualized inquiries to collect that information for specific Delivery Partners who used the Grubhub platform prior to that date.

[7] Contrary to Lawson's suggestion, Grubhub has performed its own minimum wage calculations by applying the Court's methodology to the face of the data. *See* Dkt. 313 at 17–33. But because the data differs significantly from Delivery Partners' actual use of the platform, any calculations based solely on the data do not accurately reflect any minimum wage violations that might have occurred.

(1946). Even if he could, Grubhub may "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inferences to be drawn from [Lawson's] evidence." *Duran*, 59 Cal. 4th at 41 (citation omitted). Grubhub has a due process right to present defenses as to every Delivery Partner at issue, and it must be allowed to develop evidence and conduct an individualized analysis of the claims asserted by each. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011). Depriving Grubhub of this right would result in a miscarriage of justice and a denial of due process.

Equally unavailing is Lawson's argument that "Grubhub was responsible to maintain proper pay records for its employees" and so "cannot claim a benefit from having failed to do so." Dkt. 395 at 2. Lawson cites no binding authority involving a dispute that the plaintiffs were employees and that the defendants were obligated to keep detailed records at the time the work was performed. Here, by contrast, "the issue of [Lawson's] classification form[s] the primary basis for the lawsuit." *Lopez v. United Parcel Serv., Inc.*, 2010 WL 2528527, at *5 (N.D. Cal. June 18, 2010). Grubhub "was not required to maintain records of [Delivery Partners'] hours under these circumstances, and shifting the burden to [Grubhub] to prove [their] hours at trial would not … be[ ] appropriate." *Id.*

That is especially so because Grubhub could not have reasonably foreseen that Lawson would be reclassified as an employee when he first brought suit in 2015. At that time, the parties recognized that his classification was governed by the longstanding, multifactor *Borello* test. *See* Dkt. 110 at 10 (Lawson conceding that California courts "primarily focused on *Borello* in analyzing employment status"). This Court agreed, and after a bench trial, concluded that Lawson was properly classified as an independent contractor in February 2018. *See* Dkt. 221 at 17–33. Two months later, however, the California Supreme Court's decision in *Dynamex Operations West v. Superior Court*, 4 Cal. 5th 903 (2018), effected a "sea change" in the law. Dkt. 246 at 19:13. But until 2021, it was unclear whether *Dynamex* would apply retroactively and whether Prop 22 would abate it. *See Lawson v. Grubhub, Inc.*, 13 F.4th 908, 914–16 (9th Cir. 2021). And until March 2023, it was an open question whether Grubhub qualified for AB 5's retroactive business-to-business exemption and satisfied the ABC test in all events. *See* Dkt. 313 at 3–17. Simply put, this Court did not decide Lawson's classification until over two years *after* the end of the relevant PAGA period and, even then, the Court held he was properly

classified as an independent contractor for purposes of his expense reimbursement claim. *Id.* at 28. So Grubhub should not be faulted for failing to anticipate the answers to the novel legal questions at issue in this case—many of which did not even arise until years after the start of the PAGA period in *December 2014*.

Moreover, Lawson's cited authority is distinguishable because the courts simply held that the plaintiffs' wage-and-hour claims could proceed even though there was "uncertainty" as to "the amount of damages." *Anderson*, 328 U.S. at 686, 688 (reversing dismissal of overtime claim); *see also*, *e.g.*, *Hernandez*, 199 Cal. App. 3d 721, 725–26 (1988) (similar); *Alcantar v. Hobart Serv.*, 2013 WL 146323, at *3 (C.D. Cal. Jan. 14, 2013) (denying motion *in limine* seeking to exclude PAGA claim on the grounds that it would involve "individualized, fact intensive, mini-trials").[8] But none of the cases suggest that trial courts must blindly accept a plaintiff's self-serving penalty calculations without question. To the contrary, the U.S. Supreme Court in *Anderson* recognized that the plaintiffs could not rely on time clock records to prove compensable time because the records "did not show the time during which the employees were compelled to be on the premises or at any prescribed place of work." 328 U.S. at 690; *see also Villalpando v. Exel Direct Inc.*, 2016 WL 1598663, at *9 (N.D. Cal. Apr. 21, 2016) (recognizing that defendant "is, of course, entitled to attempt to rebut [any] inference[s]" drawn from its "paper records"). Likewise, Delivery Partners' self-reported data does not reflect hours actually worked or their total compensation, and individualized inquiries are essential to determine what, if any, minimum wage violations occurred.

Lawson's other arguments fare no better. *First*, he suggests that the Court should preclude Grubhub from using the toggle data and treat the entirety of Delivery Partners' blocks as compensable. But this argument mischaracterizes Grubhub's representations about its data production and contradicts the Court's prior ruling on compensable time. Contrary to Lawson's claim that Grubhub represented it had produced "all the data it had" in April 2024, Grubhub consistently reserved its "right to

---

[8] *Hargrove v. Sleepy's LLC* is even further afield as the Third Circuit merely held that "where an employer's lack of records makes it more difficult to ascertain members of an otherwise objectively verifiable class, the employees who make up that class will not be made to bear the cost of the employer's faulty record keeping." 974 F.3d 467, 482 (3d Cir. 2020). Here, by contrast, the Ninth Circuit has already determined that class certification is inappropriate not because the putative class members could not be ascertained, but because Lawson "[wa]s neither typical of the class nor an adequate representative." *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 913 (9th Cir. 2021).

supplement its data production." Dkt. 382 at 2; Dkt. 393 at 1. Grubhub has now done exactly that, and Lawson has ample time to evaluate the toggle data in advance of any trial proceedings. Further, the Court has already rejected Lawson's argument that all time spent on block is compensable. It expressly held that time spent "on-block but … not toggled … available is analogous to when an employee is scheduled for a shift but shows up late to work at her brick-and-mortar place of employment" and thus is not compensable. Dkt. 313 at 27. There is no basis for departing from that conclusion.

*Second*, Lawson contends that concerns about inflated, self-reported delivery times can be addressed by setting an arbitrary cap of three hours per delivery, rather than through testimony from Delivery Partners themselves. But Lawson offers no explanation for why a three-hour limit would in any way represent a realistic delivery time. To the contrary, the likelihood that a delivery took three hours is highly implausible, given that Delivery Partners were delivering perishable food that customers expected to be fresh or warm. And while Delivery Partners may not remember all the precise details of each delivery they completed, their testimony will provide valuable insight into their driving and delivery patterns, their typical use of the Grubhub platform, the activities they engaged in while logged into the Grubhub platform or performing deliveries, and any other details that may contextualize the delivery data. That testimony will assist the Court in determining not only whether the self-reported delivery times in the data are inflated, but also how to exercise its discretion with respect to any penalties it may choose to award. *See* Cal. Lab. Code § 2699(e)(2) ("a court may award a lesser amount that the maximum civil penalty … based on the facts and circumstances of the particular case").

*Third*, Lawson brushes aside the fact that "bundled" orders resulted in duplicative time and mileage estimates, instead arguing that there is a much higher risk of undercounted miles. But he overlooks that the Court has already addressed any undercounting of miles by *doubling* the number of recorded miles for each day as part of its minimum wage calculations. *See* Dkt. 313 at 29–30. For bundled orders, however, that method will grossly overestimate the number of miles driven because the data for those orders already counts the mileage at least twice—once for each order involved. And while bundled orders may comprise a relatively small share of the total number of orders placed on the Grubhub platform, they represent only one of several critical flaws in the delivery data. When all the flaws are considered collectively, they call into question the accuracy of a much larger share of the data

and demonstrate why relying on the data alone is insufficient for determining the true violation rate. The Court should thus reject Lawson's proposed trial plan and instead conduct a bellwether trial to inform its analysis of how Delivery Partners' actual experiences on the platform diverge from the face value of the data. *See*, *e.g.*, *Collazo v. WEN by Chaz Dean, Inc.*, 2018 WL 3424957, at *1–2 (C.D. Cal. July 12, 2018) (holding that putative class action was "suited for bellwether trials" in light of the "unique factual and legal aspects" involved in the litigation).

Finally, Grubhub reiterates its position that Lawson lacks Article III standing to pursue PAGA penalties based on on-block time after 2017 or on behalf of Delivery Partners who regularly rejected delivery requests both on and off block. *See* Dkt. 396 at 10–12. The Court previously deferred ruling on this issue (Dkt. 367 at 10), but it should do so now that Grubhub has produced the relevant data. The data confirms that, unlike this Court's finding as to Lawson, Delivery Partners were not subject to Grubhub's control because they either used the Grubhub platform after 2017 (when rejection rates consistently hovered around 50%) or freely maintained very high rejection rates regardless of the time period at issue. Any violations those Delivery Partners allegedly experienced were different in kind than the violation Lawson experienced, so he lacks a personal stake in their resolution. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

Lawson contests none of this but simply complains that Grubhub did not specify "what data supports [its] conclusions" about Delivery Partners' rejection rates. Yet he ignores that Grubhub produced granular data *over eight months ago*, showing each offer Delivery Partners received via the platform and whether they accepted, declined, or canceled the request. If there was any reason to question Grubhub's calculations, Lawson would have done so long ago. In any event, even if Lawson had standing to litigate the compensability of on-block time for those Delivery Partners (he does not), the Court should hear evidence and argument on this issue and conclude that such time is not compensable.

## II.     DISCOVERY

### A.     Plaintiff's Statement

Between productions made in April 2024 and in December 10, 2024, GrubHub has produced voluminous data from which Plaintiff can reasonably calculate the PAGA penalties that GrubHub

that should be assessed in this case. At this point, following extensive meeting and conferring between the parties, it is Plaintiff's understanding that GrubHub does not have further data in its possession that would shed light on the issue. Thus, Plaintiff believes that discovery has concluded in this matter.

### B.    Defendants' Statement

This Court previously advised that the parties could revisit the need for third-party discovery once the minimum-wage data "is produced and analyzed." *See* Dkt. 368 at 35:10–13, 36:1–15.  Now that Grubhub has produced that data, it is apparent that the Court cannot assess the number of minimum wage violations solely on the face of Grubhub's records.  So a bellwether trial is necessary to inform the Court's analysis of whether other Delivery Partners satisfied the business-to-business exemption or experienced any violations.  To enable the parties to prepare for trial, the Court should also permit them to engage in third-party discovery relevant to the compensability analysis—including, but not limited to, whether Delivery Partners were toggled available or unavailable prior to March 2016 and whether they engaged in any personal pursuits, fraudulent activity, or other app-based work.  *See* Dkt. 396 at 12–13.

## III.    SCHEDULING

### A.    Plaintiff's Statement

Plaintiff submits that the remainder of the trial in this matter should be brief, to take place as scheduled on March 3, 2025.

### B.    Defendants' Statement

Contrary to Plaintiff's suggestion that a bellwether trial would "extend the life of this case by years," Grubhub requests only a brief 120-day period to serve document discovery and take half-day depositions relevant to the compensability analysis.  The parties could then confer and submit briefing on how the bellwether findings might be used to estimate the total number of potential violations for the other absent Delivery Partners.

If the Court chooses not to conduct a bellwether trial, Grubhub requests at the very least that the remedy trial originally set for March 3, 2025, be postponed to either late September or early October

2025, because Grubhub's lead trial counsel is currently scheduled for trial during the week of March 3 in *Cheung v. Grail, Inc.*, No. 23CV038119 (Cal. Super. Ct.).

Dated: January 2, 2025                                  Respectfully submitted,

                                              LICHTEN & LISS-RIORDAN, P.C.

                                              By:  */s/*     *Shannon Liss-Riordan*
                                                                           Shannon Liss-Riordan

                                              Attorneys for Plaintiff RAEF LAWSON


                                              GIBSON, DUNN & CRUTCHER LLP

                                              By:  */s/*     *Theane Evangelis*
                                                                           Theane Evangelis

                                              Attorneys for Defendants GRUBHUB HOLDINGS INC. and GRUBHUB INC.

**ECF ATTESTATION**

Pursuant to Civil Local Rule 5-1(h)(3) of the Northern District of California, I attest that concurrence in the filing of the document has been obtained from each of the other signatories to this document.

Dated: January 2, 2025

GIBSON, DUNN & CRUTCHER LLP

By: /s/   *Theane Evangelis*
         Theane Evangelis

Attorneys for Defendants GRUBHUB HOLDINGS INC. and GRUBHUB INC.