UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAEF LAWSON,<br><br>                    Plaintiff,<br><br>          v.<br><br>GRUBHUB, INC., et al.,<br><br>                    Defendants. | Case No.  3:15-cv-05128-JSC<br><br>**ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Re: Dkt. No. 422 |

Raef Lawson brings a representative California Private Attorneys General Act (PAGA) claim alleging Grubhub unlawfully classified its food delivery drivers as independent contractors and as a result failed to reimburse them for necessary expenses and pay the required minimum and overtime wages.  Following extensive litigation, including a bench trial and appeal, the parties reached a class action settlement on Plaintiff's remaining claim.  The Court denied Plaintiff's initial motion for preliminary approval. (Dkt. No. 430.)  Plaintiff then filed an amended complaint adding Rejenna Marshall, who has worked as a driver for Grubhub since 2021, as a named Plaintiff. (Dkt. No. 435. [1])  Plaintiffs Lawson and Marshall then filed the now pending renewed motion for preliminary approval based on an amended class action settlement agreement and release. (Dkt. No. 436.)  Having considered the initial and supplemental briefing, and having had the benefit of oral argument on March 5, 2026, the Court GRANTS the motion for preliminary approval.

**BACKGROUND**

Lawson applied to deliver for Grubhub in August 2015 and performed deliveries between

---

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

October 2015 and February 2016 in Southern California. (Dkt. No. 313 at 4.) On December 3, 2015, Lawson submitted written notice to the Labor and Workforce Development Agency detailing Grubhub's alleged violations of the California Labor Code. (Dkt. No. 41 ¶ 35.)

Lawson filed this action in the San Francisco Superior Court and it was removed to this court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  (Dkt. No. 1.) The Court granted Grubhub's motion to deny class certification because Lawson was one of only two employees who had opted out of Grubhub's arbitration agreement and thus the requirements of Rule 23 were not met.  (Dkt. No. 65.)

The parties thereafter stipulated to bifurcate this case into two phases. (Dkt. No. 122.) Phase I was limited to Lawson's individual claims and the issue of whether Lawson qualifies as an "aggrieved employee" under PAGA. (*Id*. at 3.) After the Phase I bench trial, the Court found Lawson was properly classified as an independent contractor under the *Borello* standard and entered judgment in Grubhub's favor. (Dkt. Nos. 221 at 17-33, 222.) *See Lawson v. Grubhub, Inc.* ("*Lawson I*"), 302 F. Supp. 3d 1071 (N.D. Cal. 2018), *vacated and remanded*, 13 F.4th 908 (9th Cir. 2021); *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399 (Cal. 1989). Lawson appealed the Court's order and accompanying judgment to the Ninth Circuit. (Dkt. No. 226.)

After a series of intervening developments in the law, the Ninth Circuit remanded the case to this Court for further proceedings on Lawson's minimum wage, overtime, and expense reimbursement claims. (Dkt. No. 250.) *See Lawson v. Grubhub, Inc.* ("*Lawson II*"), 13 F.4th 908, 912-13, 916 (9th Cir. 2021). Following remand, the Court found the ABC test, not *Borello*, governed Lawson's minimum wage and overtime claims, and Grubhub misclassified Lawson as an independent contractor instead of an employee for purposes of those claims. (Dkt. No. 313 at 17, 34.) *See* Cal. Lab. Code § 2775(b) (codifying ABC test); *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 478 P.3d 1207, 1215-16 (Cal. 2021); *Dynamex Operations W. v. Superior Court*, 416 P.3d 1, 40 (Cal. 2018).

The Court subsequently denied Grubhub's motion for partial summary judgment on the questions of whether Lawson had standing to pursue PAGA penalties for drivers who did not work

2

United States District Court
Northern District of California

during the same time period he did and whether due process precluded Lawson from recovering PAGA penalties for the period of time before the *Dynamex* decision. (Dkt. No. 344.) The parties then submitted supplemental briefing on Lawson's constitutional standing to pursue PAGA penalties for overtime and expense reimbursement claims. (Dkt. Nos. 346, 348.) The Court found he did not have standing to pursue PAGA penalties for overtime and expense reimbursement violations suffered by other employees since he did not personally suffer such violations, but rejected other arguments regarding his ability to pursue PAGA penalties. (Dkt. No. 367.) Following additional briefing, the Court held Lawson did not have PAGA standing to seek penalties after Proposition 22's effective date, meaning the period for which Lawson could seek penalties for minimum wage violations was December 3, 2014 through December 16, 2020. (Dkt. No. 385.) The parties then submitted competing trial plans and the Court set trial for April 9 and 10, 2025. (Dkt. No. 410.) Following extensive further mediation sessions, the parties notified the Court they had reached a settlement in principle as of April 4, 2025 and the Court vacated the trial.

Lawson filed a motion for preliminary approval of the settlement on August 13, 2025. (Dkt. No. 422.) The Court requested supplemental briefing which Lawson submitted, along with a revised notice. (Dkt. Nos. 426, 427, 328.) Lawson's supplemental filing stated the Settlement Agreement incorporated *Marshall v. GrubHub Inc*., Case No. CVRI2504505 (Riverside Sup. Ct.), which alleged overlapping claims seeking PAGA penalties for the period following Proposition 22's effective date. (Dkt. No. 426 at 6; Dkt. No. 427-2.) At the preliminary approval hearing the Court denied the motion based on several concerns, including the scope of the release and Mr. Lawson's standing to represent class members whose claims arose after the Proposition 22 effective date. (Dkt. Nos. 430, 433.)

Mr. Lawson thereafter filed an amended complaint adding Ms. Marshall, who has worked for Grubhub since 2021, as a named Plaintiff. (Dkt. No. 425.) Ms. Marshall had separately filed a class action against Grubhub in the California Superior Court for Riverside County on May 3, 2024. (Dkt. No. 436-2 at ¶ 3.) *See Marshall v. Grubhub Inc.*, No. CVRI2402427 (Cal. Super. Ct.). Grubhub removed that case to federal court and the district court granted Grubhub's motion to compel arbitration. *See Marshall v. Grubhub Inc.,* Civ. Act. No. 5:24-cv-1218-JGB-DTB (C.D.

3

Cal..)  Ms. Marshall then filed the PAGA representative action referenced above.  *See Marshall v. Grubhub Inc.,* No. CVRI2504505 (Cal. Super. Ct.).  Shortly after Ms. Marshall filed her PAGA case in Superior Court, she became aware of this action and the parties all agreed to include Ms. Marshall as part of this settlement.  (Dkt. No. 436-2 at ¶ 7.)  Ms. Marshall has now agreed to become a named Plaintiff in this matter and represent a settlement class of drivers who worked for Grubhub subsequent to December 16, 2020, when Proposition 22 became effective.  (*Id*. at ¶ 9.)

Mr. Lawson and Ms. Marshall (collectively "Plaintiffs") then filed the now pending motion for preliminary approval which includes a revised settlement agreement and notice.  (Dkt. No. 436.)  Following the preliminary approval hearing, Plaintiffs filed a further revised notice.  (Dkt. No. 448.)

**THE AMENDED SETTLEMENT AGREEMENT**

**A.    The Settlement Class**

The Settlement Class consists of

> any and all individuals who entered into an agreement with Grubhub to use the Grubhub platform as an independent contractor to offer delivery services to customers and who used the Grubhub platform as an independent contractor service provider to accept or complete at least one (1) delivery in California [from December 3, 2014 through preliminary approval].

(Dkt. No. 436-1, Amended Settlement Agreement at ¶¶ 2.36, 2.41.)

**B.    The Payment Terms**

Under the Settlement Agreement, Grubhub will pay $24,750,000 to fully resolve all the claims in this action. (*Id*. at ¶ 4.1 (discussing the "Total Settlement Amount").)  Prior to distribution to the Settlement Class Members, the following amounts, subject to Court approval, may be deducted from the Total Settlement Amount:

1. $260,000 for settlement administration costs (*Id*. at ¶ 2.35);

2. $8,250,000 for attorneys' fees and costs (*Id*. at ¶ 2.37);

3. $100,000 as a service award for Plaintiff Lawson (Dkt. No. 422 at 16), and $5,000 as service award for Plaintiff Marshall (Dkt. No. 426 at 6); and

4. $2,000,000 for the PAGA released claims, with 75% paid to the California Labor and

United States District Court
Northern District of California

Workforce Development Agency.  (Dkt. No. 426 at 6-7.)

The remaining funds will be distributed to Settlement Class Members in pro rata shares based on the number of miles they traversed while using Grubhub's platform with no class member receiving less than $25.  (Dkt. No. 436-1 at ¶¶ 5.4, 5.7.)  The settlement amount is non-reversionary.  (*Id.* at ¶ 5.7.)

### C.    Scope of Release

Under the Settlement Agreement, Settlement Class Members release

> any and all past and present claims, actions, demands, causes of action, suits, debts, guarantees, obligations, rights, or liabilities, of any nature and description whatsoever, known or unknown, asserted or unasserted, existing or potential, recognized now or hereafter, contingent or accrued, expected or unexpected, disclosed or undisclosed, apparent or unapparent, pursuant to any theory of recovery (including, but not limited to, those based in tort or contract; common law or equity; or federal, state, county, city, or local law, statute, ordinance, rule, regulation, or interpretative guideline), and for any type of relief that can be released as a matter of law (including, without limitation, claims for compensatory, consequential, liquidated, punitive, statutory, or exemplary damages; unpaid wages or costs; penalties; sanctions; equitable remedies; interest; or attorneys' fees, costs, or disbursements other than those expressly awarded by the Court under this Agreement) that arise out of, relate to, or are based on the facts alleged in the Amended Complaint for Settlement, and all claims premised on, arising out of, or relating to the allegation that Delivery Partners were misclassified as independent contractors during the Settlement Period. For the removal of doubt, the foregoing release includes all claims pertaining to employment, misclassification, hours of work, wage-and-hour violations, unpaid wages or costs, timely payment of wages, regular wages, final wages, tips, minimum wages, overtime wages, working more than six (6) days in seven (7), expense reimbursement, wage statements, payroll recordkeeping, reporting time, improper deduction of wages, failure to provide workers' compensation insurance, meal periods, rest breaks, sick leave, final pay, waiting time penalties, PAGA penalties, unfair business practices, and any other perquisites of employment, including but not limited to the California Labor Code, Industrial Welfare Commission Wage Orders, and California Business and Professions Code § 17200 et seq. The foregoing release also includes unknown claims covered by California Civil Code section 1542.

(*Id.* at ¶ 2.39.)

### D.    Notice

Plaintiffs selected Simpluris as the Settlement Administrator. (Dkt. No. 428.)  Upon

United States District Court
Northern District of California

preliminary approval of the settlement, Grubhub will provide Simpluris with "Settlement Class Information," which includes, where available, for each Settlement Class Member: full name, last known address, email address, and estimated miles. (Dkt. No. 436-1 at ¶¶ 2.38, 6.1.) Simpluris will then send notice to the class via email. (*Id*. at ¶ 6.2.) If any emails are undeliverable, Simpluris will mail notice to the class member after first making "good-faith attempt to obtain the most-current names and postal mail addresses for all Settlement Class Members to receive such postal mail, including cross-checking the names and/or postal mail addresses it received from Grubhub." (*Id*. at ¶ 6.5.) If any of these are returned as undeliverable, Simpluris will make additional attempts through appropriate databases to locate forwarding addresses. (*Id*. at ¶ 6.6.) At least two reminders will be sent via email (or mail for those whose emails bounced). (*Id*. at ¶ 6.7.) Settlement Class Members have 60 days to submit a claim following distribution of notice. (*Id*. a ¶ 2.1.)

### E.      Request for Exclusion and Objections

Class members have 60 days from distribution of notice to request exclusion or object to the settlement. (*Id*. at ¶ 2.13.)

### DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness

hearing, the Court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## I.    CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b)—as relevant here, the condition that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### A.    Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous. Simpluris estimates a class size of approximately 62,000 members. (Dkt. No. 428 at ¶ 9.)

Second, the commonality requirement is satisfied as all Settlement Class Members share the common question of whether they have been improperly classified as independent contractors and also share common questions of law with respect to their substantive claims for minimum wage, overtime, failure to reimburse expenses under the California Labor Code. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up).

Third, the typicality requirement is similarly satisfied. "The test of typicality is whether

United States District Court
Northern District of California

other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B.*, 30 F.4th at 839 (cleaned up). While Plaintiffs propose a settlement class broader than the conduct alleged in the complaint, based on concerns the Court raised at the prior hearing, they have filed an amended complaint to add Rejenna Marshall as a Named Plaintiff. As Ms. Marshall has worked for Grubhub since 2021, she has standing to represent— and her claims are typical of—class members who drove for Grubhub after Proposition 22 was enacted. Thus, Settlement Class Members all share common injuries based on their misclassification as independent contractors.

Finally, the adequacy of representation requirement is met as to both Plaintiffs and Class Counsel. Adequacy of representation requires "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "In making this determination, courts must consider two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. L. Offs. of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (cleaned up). There is no apparent conflict between Plaintiffs and Settlement Class Members, and Plaintiffs and Class Counsel have vigorously pursued this action on behalf of the class. Plaintiffs supplemented their initial showing with a declaration from the proposed additional Class Counsel Todd M. Friedman attesting to his and Plaintiff Marshall's adequacy to represent a settlement class for the drivers who worked for Grubhub subsequent to December 16, 2020, when Proposition 22 became effective. (Dkt. No. 436-2.)

### B.    Rule 23(b)(3)

As previously discussed, Rule 23(b)(3) requires a plaintiff to establish the predominance of common questions of law or fact and the superiority of a class action relative to other available methods for the fair and efficient adjudication of the controversy. Rule 23(b)(3) includes the following nonexhaustive list of factors pertinent to the predominance and superiority analysis:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or

8

against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b).

### 1.    Predominance

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quotation marks omitted). The Supreme Court has defined an individualized question as one where "members of a proposed class will need to present evidence that varies from member to member." *Id.* (quotations omitted). A common question, on the other hand, is one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotations omitted).

Here, the common questions raised by Plaintiffs' claims predominate over any individual questions both with respect to drivers' status under the ABC test and *Borello*, as well as the underlying Labor Code claims.

### 2.    Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* A class action enables the most efficient use of Court and attorney resources and reduces costs to the class members by allocating costs among them. "It would be inefficient to try the misclassification issue on an individual basis for the numerous putative class members here when common questions predominate." *See Roman v. Jan-Pro Franchising Int'l, Inc.*, 342 F.R.D. 274, 296 (N.D. Cal. 2022)) (citing Alan Wright & Arthur R. Miller, 7AA Fed. Prac. & Proc. Civ. § 1778 (3d ed. 2022).

In sum, the Court finds the predominance and superiority requirements of Rule 23(b)(3)

are met.

***

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.     CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION

Rule 23 class actions and FLSA collective actions are different proceedings that "impose distinct requirements." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018) (noting that class actions and FLSA collective actions "are creatures of distinct texts—collective actions of [29 U.S.C. § 216(b)] and class actions of Rule 23—that impose distinct requirements"). Under the FLSA, an employee may bring a "collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b). Thus, a district court's approval of preliminary certification of an FLSA collective action is "conditioned on a preliminary determination that the collective as defined in the complaint satisfies the 'similarly situated' requirement of section 216(b)." *Campbell*, 903 F.3d at 1109 (citing *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013)). A party plaintiff and putative collective members are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims." *Id*. at 1117.

"The limited statutory requirements of a collective action are independent of, and unrelated to, the requirements for class action under Rule 23, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden." *Id*. at 1112 (internal quotation marks and citations omitted). The court's "level of consideration is lenient" and focuses on whether the pleadings establish a "reasonable basis" for determining that the putative members are similarly situated. *Id*. "A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation." *Id*.

Conditional certification for settlement purposes is appropriate here as all drivers are similarly situated since there is no dispute Grubhub classified all its drivers as independent contractors.  Accordingly, the Court grants conditional certification of the FLSA collective action.

10

United States District Court
Northern District of California

## III.   PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

> 1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> 2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> 3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A.     Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.     Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*.

The settlement here was reached on a fully developed record. The parties have already litigated a full bench trial on Lawson's individual California Labor Code claims. The Court has held Lawson was Grubhub's employee and that he was an "aggrieved employee" for the purposes of PAGA. *See Lawson v. Grubhub, Inc.*, 665 F. Supp. 3d 1108, 1116-31 (N.D. Cal. 2023). The case settled right before a bench trial on the PAGA penalties. In preparation for trial, Grubhub had provided nearly 100 million rows of data through which the parties could assess Grubhub's potential liability for PAGA penalties. (Dkt. No. 423, Liss-Riordan Decl. at ¶¶ 15, 37.) Additionally, over the last 10 years, the parties have participated in five mediations. (*Id.* at ¶¶ 14-20.) The case ultimately settled after Grubhub's acquisition in November 2024 and Grubhub's stipulated judgment with the Federal Trade Commission, when Plaintiffs became concerned about Grubhub's financial stability.[2] (*Id.* at ¶¶ 17-20; Dkt. No. 426 at 9.) The settlement thus appears

---

[2] According to Plaintiffs, between 2020 and late 2024, Grubhub's value decreased to a fraction of its prior value - from $7.3 billion to $650 million. (Dkt. No. 426 at 8.)

the product of serious, informed, non-collusive negotiations. This factor weighs in favor of approval.

### 2.      Lack of Preferential Treatment

The Court next considers whether the Amended Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The Amended Settlement Agreement directs the net settlement fund be distributed to be distributed in pro rata shares between the Settlement Class Members based on the "Estimated Miles traversed while using the Grubhub platform as a Delivery Partner, according to Grubhub's records (but with no Settlement Class Member who submits a claim receiving less than $25)." (Dkt. No. 436-1 at ¶ 5.7.) The Amended Settlement Agreement also provides Plaintiff Lawson can apply for a service award of no more than $100,000 and Plaintiff Marshall can seek a $5,000 service award.  (*Id.* at ¶¶ 1.10, 2.32.)  The Court will defer ruling on the appropriateness of the amount of the requested service awards until final approval. However, at this stage, there is no indication the service award constitutes "preferential treatment" or should defeat preliminary approval.

### 3.      Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case.

Here, the Total Settlement Amount is $24,750,000.  While Plaintiffs intended to seek PAGA penalties of approximately $890,000,000 (based on an estimated $450,000,000 of underlying minimum wage violations), Grubhub "credibly demonstrated to [Plaintiffs] that [it] would not be able to pay more than" $24,750,000.  (Dkt. No. 427, Liss-Riordan Decl. at ¶ 6.)  In evaluating the reasonableness of this recovery, the Court considers the risks of continued litigation. If the litigation continued, there was a chance the Court would award substantially less

13

in PAGA penalties.  Among other issues, Grubhub would have argued PAGA penalties could not be "stacked" and that, instead, the Court could award only one $100 penalty per "aggrieved employee" per pay period, because to do otherwise would result in multiple penalties being assessed for the same allegedly unlawful practice.  (Dkt. No. 426 at 10 n.4.)  Further, there was a risk the Court would have reduced the PAGA penalties given Lawson only recovered $65.11 in minimum wage damages.  (Dkt. No. 426 at 9.)  Given all this, the Court agrees the risks and costs of continued litigation balanced against the relief here warrant preliminary approval and comment from class members.

### 4.    Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. This factor weighs in Plaintiffs' favor as no obvious deficiencies exist on the face of the settlement agreement.

\* \* \*

Having weighed the relevant factors, the Court preliminarily finds the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## IV.    CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

United States District Court
Northern District of California

As discussed above, upon preliminary approval, Grubhub will provide Simpluris with class member information and Simpluris will send notice to the class via email. (Dkt. No. 428 at ¶ 6.2.) If any emails are undeliverable, Simpluris will provide notice via mail. (*Id*. at ¶ 6.5.) Settlement Class Members have 60 days to submit a claim following distribution of notice. (*Id*. a ¶ 2.1.) Simpluris will send two reminders to class members before the claims period ends. This notice plan satisfies Rule 23(b)(3).

At the further preliminary approval hearing, the Court raised additional issues regarding the notice and Plaintiffs filed a revised notice (Dkt. No. 448-1) that addresses the Court's concerns and complies with Rule 23(c). The revised notice describes the allegations and claims in plain language, includes contact information for Class Counsel and the Settlement Administrator, summarizes how the damages will be calculated, and directs class members to a website, email, and toll-free number for additional information. It also adequately describes the options available to class members, including instructions for filing a claim, requesting exclusion from the settlement, filing an objection, and specifies that if Settlement Class Members do nothing, they will still be bound by the settlement. Further, because this is an opt-out settlement that includes a release of unasserted FSLA claims, the notice explains that Settlement Class Members who wish to preserve their FLSA claims can do so by excluding themselves from the settlement. *See Lundeen v. 10 W. Ferry St. Operations LLC*, No. 24-3375, --F.4th--, 2025 WL 2935340, at *7 (3d Cir. Oct. 16, 2025) ("§ 216(b) does not forbid the release of unasserted FLSA claims in opt-out settlements" but there must be "clear notice to class members of the release and a meaningful opportunity to opt out."). The notice also indicates how Settlement Class Members can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing. *See In re Mercury Interactive Corp. Sec. Litig*., 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to oppose class counsel's fee motion"). Finally, it informs Settlement Class Members they may appear at the final fairness hearing in person or through an attorney. However, as the parties have requested the Court conduct the final approval hearing via Zoom, Plaintiffs shall revise the notice to so indicate. (Dkt. No. 448-1 at 11.)

United States District Court
Northern District of California

## V.   ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the

reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

As previously discussed, the Amended Settlement Agreement provides Class Counsel may seek an award of attorneys' fees and costs of no more than $8,250,000 or 33.3% of the Total Settlement Amount. (Dkt. No. 436-1 at ¶ 2.37.) The Amended Settlement Agreement states "Grubhub agrees to the amount of attorneys' fees, costs, and expenses (if any) granted by the Court." (*Id.* at ¶ 4.4.) Neither the motion for preliminary approval nor Ms. Liss-Riordan's declaration contain information regarding counsel's lodestar. Accordingly, Plaintiffs shall submit a motion for attorneys' fees including declarations and detailed billing summaries so that the Court may determine an appropriate lodestar figure, and to allow class members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice).

**CONCLUSION**

For the reasons stated above, the Court GRANTS preliminary approval of the class and collective action settlement as follows:

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Class:

   any and all individuals who entered into an agreement with Grubhub to use the Grubhub platform as an independent contractor to offer delivery services to customers and who used the Grubhub platform as an independent contractor service provider to accept or complete at least one (1) delivery in California [from December 3, 2014 through the date of this Order].

2. Raef Lawson and Rejenna Marshall are conditionally appointed as the Class Representatives.

3. The Court conditionally appoints Lichten & Liss-Riordan P.C. and the Law Offices of Todd M. Friedman, P.C. as Class Counsel for the Settlement Class.

4. The Court appoints Simpluris as the Settlement Administrator.

United States District Court
Northern District of California

United States District Court
Northern District of California

5. Within 20 days of the date of this Order, the Settlement Administrator shall provide notice to the class in accordance with the notice plan.

6. Plaintiffs shall revise the notice to indicate the final approval hearing will be by Zoom only and file copies of the notice within 10 days of dissemination of notice.

7. Class Counsel shall file a motion for attorneys' fees and costs by May 7 30, 2026.

8. The deadline for class members to submit a Claim Form, Request for Exclusion, or an objection to the settlement or motion for attorneys fees and costs is June 18, 2026.

9. Plaintiffs shall file their Motion for Final Approval by July 16, 2026. The motion for final approval shall address the final approval guidelines in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, in the order the guidelines are presented on the website. As reflected in the Guidance, the Court will require a post-distribution accounting within 21 days after the distribution of settlement funds.

10. The parties shall appear before this Court for a final approval hearing on July 30, 2026 at 9:00 a.m. via Zoom video.

**IT IS SO ORDERED.**

Dated: March 13, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

18