United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RAEF LAWSON, et al.,

Plaintiffs,

v.

GRUBHUB, INC., et al.,

Defendants.

Case No. 3:15-cv-05128-JSC

**ORDER RE: MOTION FOR FINAL APPROVAL AND FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

Re: Dkt. Nos. 453, 459

Raef Lawson brings a representative California Private Attorneys General Act (PAGA) claim alleging Grubhub unlawfully classified its food delivery drivers as independent contractors and as a result failed to reimburse them for necessary expenses and pay the required minimum and overtime wages. Following extensive litigation, including a bench trial and appeal, the parties reached a class action settlement on Plaintiff's remaining claim. Plaintiff filed an amended complaint to add Rejenna Marshall, who has worked as driver since 2021, as a named Plaintiff and the Court granted preliminary approval of the settlement and ordered notice to the class. (Dkt. Nos. 435, 451.[1]) Plaintiffs' motion for final approval and motion for attorneys' fees, costs, and service awards for the class representative is now pending before the Court. (Dkt. Nos. 453, 459.) Having reviewed the briefing and having had the benefit of oral argument on July 30, 2026, the Court GRANTS final approval of the settlement, and GRANTS IN PART and DENIES IN PART the motion for attorneys' fees, costs, and service awards.

[1] Record Citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the document.

## BACKGROUND

The Court assumes the parties' familiarity with the lengthy procedural history of this action and incorporates its prior discussion of it by reference. (Dkt. No. 451 at 1-4.)

## THE SETTLEMENT AGREEMENT

### A. The Settlement Class

The Settlement Class consists of

> any and all individuals who entered into an agreement with Grubhub to use the Grubhub platform as an independent contractor to offer delivery services to customers and who used the Grubhub platform as an independent contractor service provider to accept or complete at least one (1) delivery in California [from December 3, 2014 through March 13, 2026].

(Dkt. No. 436-1, Amended Settlement Agreement at ¶¶ 2.36, 2.41.)

### B. The Payment Terms

Under the Settlement Agreement, Grubhub will pay $24,750,000 to fully resolve all the claims in this action. (*Id*. at ¶ 4.1 (discussing the "Total Settlement Amount").) Prior to distribution to the Settlement Class Members, the following amounts, subject to Court approval, may be deducted from the Total Settlement Amount:

1. $260,000 for settlement administration costs (*Id*. at ¶ 2.35);
2. $8,250,000 for attorneys' fees and costs (*Id*. at ¶ 2.37);
3. $100,000 as a service award for Plaintiff Lawson (Dkt. No. 422 at 16), and $5,000 as service award for Plaintiff Marshall (Dkt. No. 426 at 6); and
4. $2,000,000 for the PAGA released claims, with 75% paid to the California Labor and Workforce Development Agency. (*Id.* at 6-7.)

The remaining funds will be distributed to Settlement Class Members in pro rata shares based on the number of miles they traversed while using Grubhub's platform with no class member receiving less than $25. (Dkt. No. 436-1 at ¶¶ 5.4, 5.7.) The settlement amount is nonreversionary. (*Id*. at ¶ 5.7.)

### C. Scope of Release

Under the Settlement Agreement, Settlement Class Members release

> any and all past and present claims, actions, demands, causes of action, suits, debts, guarantees, obligations, rights, or liabilities, of any nature and description whatsoever, known or unknown, asserted or unasserted, existing or potential, recognized now or hereafter, contingent or accrued, expected or unexpected, disclosed or undisclosed, apparent or unapparent, pursuant to any theory of recovery (including, but not limited to, those based in tort or contract; common law or equity; or federal, state, county, city, or local law, statute, ordinance, rule, regulation, or interpretative guideline), and for any type of relief that can be released as a matter of law (including, without limitation, claims for compensatory, consequential, liquidated, punitive, statutory, or exemplary damages; unpaid wages or costs; penalties; sanctions; equitable remedies; interest; or attorneys' fees, costs, or disbursements other than those expressly awarded by the Court under this Agreement) that arise out of, relate to, or are based on the facts alleged in the Amended Complaint for Settlement, and all claims premised on, arising out of, or relating to the allegation that Delivery Partners were misclassified as independent contractors during the Settlement Period. For the removal of doubt, the foregoing release includes all claims pertaining to employment, misclassification, hours of work, wage-and-hour violations, unpaid wages or costs, timely payment of wages, regular wages, final wages, tips, minimum wages, overtime wages, working more than six (6) days in seven (7), expense reimbursement, wage statements, payroll recordkeeping, reporting time, improper deduction of wages, failure to provide workers' compensation insurance, meal periods, rest breaks, sick leave, final pay, waiting time penalties, PAGA penalties, unfair business practices, and any other perquisites of employment, including but not limited to the California Labor Code, Industrial Welfare Commission Wage Orders, and California Business and Professions Code § 17200 et seq. The foregoing release also includes unknown claims covered by California Civil Code section 1542.

(*Id*. at ¶ 2.39.)

**D. Notice**

Plaintiffs selected Simpluris as the Settlement Administrator. (Dkt. No. 428.) On April 2, 2026, Simpluris distributed the initial Notice of Settlement to 145,736 members of the Settlement Class by email. (Dkt. No. 461, Nguyen Decl. at ¶ 8.) Two days later, Simpluris mailed notice to the 3,698 class members for whom there was no valid email address, but they had a mailing address. (*Id.* at ¶ 9.) Simpluris also provided mail notice to the 3,609 class members whose emails were returned as undeliverable. (*Id*. at ¶ 10.) On April 20, May 6, May 18, May 26, June 1, June 8, and June 15, 2026, Simpluris sent a Reminder Notice by email to Settlement Class Members who had not yet submitted a Claim. (*Id*. at ¶ 13.) Simpluris also created and maintains a settlement website www.GrubhubCalSettlement.com, email address, and toll-free phone

number. As of July 16, 2026, 58,909 class members have submitted valid claim forms. (*Id*. at ¶ 22.)

**E. Requests for Exclusion and Objections**

The deadline to request exclusion or file an objection was June 18, 2026. Simpluris received 11 requests for exclusion, but one of these class members subsequently submitted a valid claim form. (Dkt. No. 461, Nguyen Decl. at ¶ 21.) One objection had been received. (Dkt. No. 457.)

**DISCUSSION**

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co*., No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

At the second stage, "after notice is given to putative class members, the Court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement." *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. Oct. 8, 2014) (citing *Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989)). Following the final fairness hearing, the Court must finally determine whether the parties should be allowed to settle the class action pursuant to their agreed upon terms. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

**I. CLASS CERTIFICATION**

**A. Rule 23 Certification of the Settlement Class**

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would

affect these requirements have changed since the Court preliminarily approved the class on February 26, 2026, this Order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the Order granting preliminary approval. (Dkt. No. 451 at 7-10.)

**B. Certification of the FLSA Collective**

Under the FLSA, an employee may bring a "collective action" on behalf of other "similarly situated" employees. 29 U.S.C. § 216(b); *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018) (noting that a party plaintiff and putative collective members are "similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims"). The Court's Preliminary Approval Order granted conditional certification of the FLSA collective for settlement purposes because Plaintiffs made a plausible showing that they were similarly situated to the putative collective members. (Dkt. No. 451 at 10-11.) There is nothing to suggest the Court was wrong on that score; thus, the Court grants final certification of the FLSA collective for settlement purposes.

**II. ADEQUACY OF NOTICE**

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Notice includes "[n]otice of the motion [for attorneys' fees which] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1).

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B); *see also Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.") (cleaned up). Although Rule 23 requires reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*,

United States District Court
Northern District of California

18 F.3d 1449, 1454 (9th Cir. 1994) (noting the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds the notice plan previously approved by the Court, as implemented by Simpluris, complied with Rule 23(c)(2)(B). First, Simpluris provided two types of notice: email notice and mail notice. (Dkt. No. 461 at ¶¶ 8-13.) Second, the notice clearly and concisely provides an overview of the lawsuit, class members options under the settlement, the process for requesting exclusion or objecting to all or part of the settlement, provides contact information for Class Counsel and the Settlement Administrator, and directs class members to a website, email, and toll-free number for additional information. (Dkt. No. 461, Ex. A.) Simplusis sent multiple reminder emails to Settlement Class Members. (Dkt. No. 461, Nguyen Decl. at ¶ 13.) Finally, between April 2, 2026, the mail notice date, and July 16, 2026, the Settlement Administrator received 11 requests for exclusion, and one objection was filed with the Court. (Dkt. No. 461 at ¶ 21; Dkt. No. 457.) Plaintiffs estimate notice was successfully provided to 99.4 percent of Settlement Class Members. (Dkt. No. 459 at 12 (citing Dkt. No. 461 at ¶¶ 8-12).)

Given the above, the Court concludes the parties have sufficiently provided the best practicable notice to class members.

## III. APPROVAL OF THE *CY PRES* RECIPIENT

A cy pres award is "a tool for 'distributing unclaimed or non-distributable portions of a class action settlement fund to the next best class of beneficiaries.'" *In re Google Inc. St. View Elec. Commc'ns Litig*., 21 F.4th 1102, 1111 (9th Cir. Dec. 27, 2021) (quoting *Nachsin v. AOL, LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011). "Cy pres distributions must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members, including their geographic diversity." *Nachshin*, 663 F.3d at 1036.

Under the Settlement Agreement, the *cy pres* receives any funds remaining following the second distribution. Plaintiffs estimate any *cy pres* distribution should be quite small because the claim form required class members to list their current address and by doing so class members have indicated their interest in receiving a check. (Dkt. No. 459 at 15, n. 2 ("very little of the funds will go to *cy pres*, as these will only be funds that are paid by check but not cashed (despite

reasonable efforts to encourage class members to cash their checks)".). The parties have selected Legal Aid at Work as the *cy pres* recipient. (Dkt. No. 436-1, Settlement Agreement at ¶ 5.8.) Legal Aid at Work's work and interests serving California workers align closely with Settlement Class Members. *See Bernstein v. Virgin Am., Inc.*, No. 15-CV-02277-JST, 2023 WL 7284158, at *1 (N.D. Cal. Nov. 3, 2023) ("There is a clear 'driving nexus between the plaintiff class and the cy pres beneficiar[y],' as the plaintiff class comprises aggrieved employees who were denied wages owed, and Legal Aid at Work provides legal assistance to workers and working families.").

The Court thus concludes the *cy pres* proposal is fair and reasonable.

## IV. FINAL APPROVAL OF THE SETTLEMENT AGREEMENT

To grant final approval, the Court must find the terms of the parties' settlement are fair, adequate, and reasonable under Rule 23(e). *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025). In making this determination, courts generally must consider the following factors:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Churchill*, 361 F.3d at 575; *see also Otey v. CrowdFlower, Inc.*, No. 12-CV-05524-JST, 2014 WL 1477630, at *4 (N.D. Cal. Apr. 15, 2014) (applying same factors to FLSA collective action settlement). "This list is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

Under the revised Rule 23(e), the Court must also consider whether the settlement resulted from collusion among the parties. *See Briseno v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021) (holding that courts must apply the collusion factors set forth in *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 941 (9th Cir. 2011), to post-class action settlements as well as those settled before certification).

### A. The Fairness Factors

#### 1. The Strength of Plaintiffs' Case and Risk, Expense, Complexity, and Likely Duration of Further Litigation

The Court first considers "the strength of [Plaintiffs'] case on the merits balanced against the amount offered in the settlement." *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotation marks and citation omitted). The Court need not reach an ultimate conclusion about the merits of the dispute to resolve this factor "for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). To that end, there is no "particular formula by which th[e] outcome must be tested." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations and rough justice." *Id.* (internal quotation marks and citation omitted). "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlement by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to a present value." *Id.*

Here, although Plaintiffs believe they have a strong case, this case has been pending for more than 10 years and they recognize the expense, risk, and length of continued proceedings necessary to prosecute the action through trial and potential appeal. (Dkt. No. 427, Liss-Riordan Decl. at ¶ 6.) As discussed in the preliminary approval order, there was a chance the Court would award substantially less in PAGA penalties if the litigation continued. (Dkt. No. 451 at 13-14.) Given the risks posed by continuing to litigate Plaintiffs' claims, the certainty of class member recovery under the settlement weighs in favor of granting final approval.

#### 2. Settlement Amount

When considering the fairness and adequacy of the amount offered in settlement, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV, Inc.*, 221 F.R.D. at 527. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (collecting cases).

The Court previously concluded the amount of the settlement, $24,750,000, was within the range of approval and a favorable result for the class given the risks discussed above. Further, while Plaintiffs intended to seek PAGA penalties of approximately $890,000,000 (based on an estimated $450,000,000 of underlying minimum wage violations), Grubhub "credibly demonstrated to [Plaintiffs] that [it] would not be able to pay more than" $24,750,000. (Dkt. No. 427, Liss-Riordan Decl. at ¶ 6.)

The Settlement Administrator estimates an average recovery of $126.95 per class member with the lowest $25 and the highest $6,203.06. (Dkt. No. 461 at ¶ 23.) This amount will increase given the deductions the Court makes to the attorneys' fee and incentive awards as discussed above.

Accordingly, this factor weighs in favor of final approval.

**3. Extent of Discovery Completed and Stage of Proceedings**

In the context of class action settlements, as long as the parties have sufficient information to make an informed decision about settlement, "formal discovery is not a necessary ticket to the bargaining table." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). Rather, a court's focus is on whether "the parties carefully investigated the claims before reaching a resolution." *Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014).

The settlement was reached after more than 10 years of litigation which included a bench trial and successful appeal by Plaintiffs. The parties mediated the case five times before multiple mediators, and prior to settlement, Grubhub produced spreadsheets containing roughly 100 million lines of data, allowing Plaintiffs to estimate Grubhub's minimum wage damages for its drivers across California as well as the resulting PAGA penalties. (Dkt. No. 423 at ¶¶ 15, 37.) The settlement was then reached on the eve of bench trial on Plaintiff Lawson's PAGA penalties.

This factor thus likewise weighs in favor of final approval.

**4. Experience and Views of Counsel**

The experience and views of counsel also weigh in favor of approving the settlement. Class Counsel has extensive experience in wage and hour class actions, with a particular focus on class actions regarding independent contractor misclassification and arbitration issues, and counsel

strongly supports the settlement given the risks and challenges posed. (Dkt. No. 423 at ¶¶ 30-35, 39.)

**5. Presence of a Government Participant**

No government entity is a party to this action. However, because Defendant removed this action pursuant to CAFA, the relevant state and federal officials had to be notified of the settlement pursuant to 28 U.S.C. § 1715(b). *See Chan Healthcare Grp., PS v. Liberty Mut. Fire Ins. Co*., 844 F.3d 1133, n.2 ("In addition to §§ 1332(d) and 1453, CAFA also includes §§ 1711-1715, which relate to approval of settlements in class actions."). The parties provided notice to the relevant agencies on August 25, 2025. (Dkt. No. 425.) Further, Plaintiffs provided notice of the settlement and amended settlement to the Labor and Workforce Development Agency, as required by PAGA, on September 30, 2025 and January 15, 2026, respectively. (Dkt. No. 436-1 at ¶¶ 2-3.)

**6. Reaction of Class Members**

As previously discussed, the Settlement Administrator provided mail and email notice to Settlement Class Members and Class Counsel estimates the notice reached 99.4% of class members. (Dkt. No. 459 at 12.) As of July 15, 2026, the administrator had received 58,909 valid claims, representing 39.4% of the settlement class. (Dkt. No. 461 at ¶ 19.) Only 11 requests for exclusion were received and one of those class members subsequently submitted a valid claim form. (*Id*. at ¶ 21.)

**7. Objection**

Only one objection was received; it is from Samuel Goldstone, who was employed from 2018-2019. (Dkt. No. 457.) Mr. Goldstone's objection is not to the settlement as a whole; instead, he objects to the request for attorneys' fees and costs. He contends the value of the settlement compared to the attorneys' fees represents a windfall, prioritizing counsel over the class, and fails to "secure real precedent." (*Id*. at 1-2.) As discussed above, there were a number of risks associated with Plaintiffs' claims and even if Plaintiffs prevailed, Grubhub's financial condition creates uncertainty about the ability to collect any additional damages or penalties. Further, as discussed in more detail below, Class Counsel has litigated this case over 10 years through a bench trial and successful appeal and navigated a changing legal landscape regarding independent

contractor classification. The Court also conducts an independent review of counsel's fee request to ensure the fees awarded are reasonable. Given all this, the Court overrules Mr. Goldstone's objection.

***

In sum, the fairness factors weigh in favor of granting Plaintiffs' motion for final approval of the class action settlement.

**B. The *Bluetooth* Factors**

Finally, the Court must determine whether the settlement was the result of good faith, arms-length negotiations or fraud and collusion. *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 947 (9th Cir. 2011). In determining whether the settlement is the result of collusion, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Id.* The Ninth Circuit has identified three such signs:

> (1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;
>
> (2) when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and
>
> (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*Id*. at 947 (internal quotation marks and citations omitted).

For the first *Bluetooth* factor, the Court compares the class payout to class counsel's fees claim. *See In re California Pizza Kitchen Data Breach Litig*., 129 F.4th 667, 675 (9th Cir. 2025) ("class counsel receiving a disproportionately large fee award compared to what the class members received signals potential collusion.") Class Counsel seeks one-third ($8,250,000) of the gross settlement fund. This high percentage is a red flag and is 1.6 times Class Counsel's lodestar, but the Court addresses this through a reduction of the fees as discussed below.

The second warning sign—a "clear sailing" provision—is also present. *See Bluetooth*, 654

F.3d at 940, n.6 ("a 'clear sailing agreement,' wherein the defendant agrees not to oppose a petition for a fee award up to a specified maximum value."). While the Settlement Agreement does not say Grubhub will not object, it implicitly agrees not to object by "agree[ing] to the amount of attorneys' fees, costs, and expenses (if any) granted by the Court." (Dkt. No. 436-1, Settlement Agreement at § 4.4.) And it did not object to the fee request.

The third warning sign—whether the parties have arranged for fees not awarded to the class to revert to the defendant rather than be added to the settlement fund, *see Bluetooth*, 654 F.3d at 948—is not present here. The Settlement Agreement is non-reversionary—all of the funds will be distributed to the class members. (*Id*. at § 5.7.)

Notwithstanding the presence of two *Bluetooth* warning signs, the Court thus concludes the Settlement Agreement did not result from, nor was it influenced by, collusion. Instead, it is the result of more than a decade of hard-fought litigation and adequately satisfies the Settlement Class Members' claims.

***

In sum, the *Churchill* fairness factors support approval, and the *Bluetooth* factors do not indicate collusion. The Court is therefore satisfied the Settlement Agreement was not the result of collusion between the parties and instead is the product of arms-length negotiations between experienced and professional counsel. For each of these reasons, the Settlement Agreement passes muster under Rule 23(e) and final approval is appropriate.

## V. PAGA SETTLEMENT APPROVAL

"A PAGA representative action is ... a type of qui tam action" in which a private plaintiff pursues "a dispute between an employer and the state LWDA on behalf of the state." *Iskanian v. CLS Transp. L.A., LLC*, 327 P.3d 129, 148 (Cal. 2014), abrogated on other grounds, by *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906 (2022). "[B]ecause a settlement of PAGA claims compromises a claim that could otherwise be brought by the state," courts must "review and approve any settlement." *Ramirez v. Benito Valley Farms, LLC*, No. 16-cv-04708-LHK, 2017 WL 3670794, at *2 (N.D. Cal. Aug. 25, 2017) (quoting Cal. Lab. Code § 2699(l)(2)).

In approving PAGA settlements, courts consider whether "the settlement terms (1) meet

the statutory requirements set forth by PAGA, and (2) are fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals." *Kulik v. NMCI Med. Clinic Inc.*, No. 21-CV-03495-BLF, 2023 WL 2503539, at *4 (N.D. Cal. Mar. 13, 2023) (quoting *Chamberlain v. Baker Hughes, a GE Co., LLC*, No. 1:19-cv-00831-DAD-JLT, 2020 WL 4350207, at *4 (E.D. Cal. July 29, 2020)). PAGA requires 75 percent of civil penalties recovered be allocated to the California Labor and Workforce Development Agency ("LWDA") and 25 percent be allocated to aggrieved employees. Cal. Lab. Code § 2699(i). PAGA's goals include "augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Chamberlain*, 2020 WL 4350207, at *4 (quoting *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1132-33 (N.D. Cal. 2016)).

The parties' settlement satisfies PAGA's statutory requirements as $2,000,000 is allocated for PAGA penalties: 75 percent will be paid to the LWDA for civil penalties and 25 percent will be distributed to Settlement Class Members. (Dkt. No. 436-1, Settlement Agreement at § 2.24.) Further, as discussed above, the Court concludes the settlement is fair, adequate, and reasonable for the reasons discussed above and thus "will promote PAGA's public policy goals, which include augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance." *Kulik*, 2023 WL 2503539, at *8 (cleaned up).

Accordingly, the Court grants final approval of the PAGA settlement.

## VI. MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARD

### A. Attorneys' Fees

Rule 23 permits a court to award "reasonable attorneys' fees ... that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Attorneys' fees provisions included in proposed class action settlement agreements are, like every other aspect of such agreements, subject to the determination of whether the settlement is 'fundamentally fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003) (quoting Fed. R. Civ. P. 23(e)). The Ninth Circuit has approved two methods of determining attorney's fees in cases where the amount of the attorney's fee award is taken from the common fund set aside for the entire

settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (citation omitted). The district court retains discretion in common fund cases to choose either method. *Id*. Under either approach, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002).

**1. Percentage-of-Recovery Method**

"Under the percentage-of-recovery method, the attorney's fees equal some percentage of the common settlement fund." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015). In the Ninth Circuit, "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *In re Bluetooth*, 654 F.3d at 942. "The benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Plaintiffs' request for 33 percent of the Settlement Fund (or $8,250,000) is higher than the benchmark. Plaintiffs nonetheless urge this amount is "in line with contingency fees charged and awarded by courts in this Circuit" (Dkt. No. 453 at 24), and is warranted here based on the "length of the case, the risks involved, the tremendous amount of work involved, and the exceptional result achieved." (*Id*. at 18). The Court is unpersuaded that a deviation from the typical benchmark is warranted here.

First, the Ninth Circuit recently emphasized "the typical" benchmark in common fund cases remains 25 percent and reversed a district court's order awarding fees in excess of that amount. *In re California Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 679 (9th Cir. 2025). Second, a higher award is not supported by the lodestar cross-check as discussed below. Thus, while the overall result and benefit to the class here is notable given the novel legal issues involved, the risks of continuing to trial given the legal issues and Grubhub's financial condition,

United States District Court
Northern District of California

and the length of the litigation, Plaintiffs have not shown it warrants an upward departure from the 25 percent benchmark.

**2. Lodestar Method**

The lodestar method "requires multiplying a reasonable hourly rate by the number of hours reasonably expended on the case." *Shirrod v. Dir., Office of Workers' Comp. Programs*, 809 F.3d 1082, 1086 (9th Cir. 2015). "In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended." *Chalmers City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986), amended on denial of reh'g, 808 F.2d 1373 (9th Cir. 1987).

Class Counsel claim a combined lodestar of $5,018,993. (Dkt. No. 453 at 30.) However, Ms. Liss-Riordan's firm does not maintain contemporaneous billing records and instead provides the following hourly ***estimates***.

| **Attorney** | **Hours** | **Rate** | **Fees** |
|---|---|---|---|
| Shannon Liss-Riordan | 2,000 | $1,250 | $2,500,000 |
| Thomas Fowler | 2,300 | $900 | $2,070,000 |
| Matthew Carlson | 165 | $500 | $82,500 |
| Matthew Carrieri | 45 | $425 | $19,125 |
| Tara Boghosian | 35 | $400 | $14,000 |
| Paralegal Staff | 750 | $250 | $187,500 |
| **TOTAL:** | | | **$4,873,125** |

(Dkt. No. 454, Liss-Riordan Decl. at ¶ 33.) Ms. Liss-Riordan insists she has "consistently been awarded fees based on [] reasonable estimates of time spent." (Dkt. No. 454, Liss-Riodran Decl. at ¶ 22, n.2.) However, the one case she cites awarding her 30 percent of the common fund does not state the lodestar cross-check was based on an *estimate* of her time. *See Roman v. Jan-Pro Franchising Int'l, Inc*., No. 3:16-CV-05961-WHA, 2024 WL 2412387, at *5 (N.D. Cal. May 23, 2024). Nor do the other cases cited support the conclusion that contemporaneous billing records are not required. *See, e.g, Rodgers v. Claim Jumper Rest., LLC*, No. 13-CV-5496 YGR, 2015 WL 1886708, at *10 (N.D. Cal. Apr. 24, 2015) (reviewing plaintiff's time entries and concluding they were sufficiently detailed); *Brinskele v. United States*, No. 13-MISC-80094 JSW (DMR), 2014

United States District Court
Northern District of California

WL 4832263, at *2 (N.D. Cal. May 22, 2014) (reviewing request for $4,340 in attorney's fees for 31 hours of work which was supported by a declaration describing the work performed over a six month period and noting detailed billing records were not required given the court's familiarity with the ligation and counsel's work), report and recommendation adopted, No. 13-MISC-80094 JSW, 2014 WL 4826153 (N.D. Cal. Sept. 29, 2014). Rather, the rule remains counsel must support their fee request with evidence supporting the claimed hours. *See Gunn v. Drage*, No. 20-16046, 2023 WL 3043651, at *2 (9th Cir. Apr. 21, 2023) ("A fee applicant must justify their claim by submitting detailed time records.") (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.")).

Here, Class Counsel has merely provided an estimate of the total hours each member of the firm worked, and for Ms. Liss-Riordan, who billed the most hours, there is a bullet point list of the categories of work including: "drafting, reviewing, and editing court filings"; reviewing and editing our briefing at the Ninth Circuit Court of Appeal"; "preparing for and attending a number of mediation sessions"; "communicating" with Plaintiff and defense counsel; "preparing for bench trial";" preparing for rial on the representative PAGA penalties"; and "drafting and revising settlement papers." (Dkt. No. 454 at 11-12.) The Court does not doubt Ms. Liss-Riordan has "spent extensive time" as she attests, but her failure to provide even an estimate of the amount of hours spent on each renders her lodestar figure unreliable. *See Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989) ("hours should be credited only if reasonable under the circumstances and supported by other evidence such as testimony or secondary documentation.").

This is equally true as to the lodestar for Co-Class Counsel Mr. Friedman's firm. He too submitted a declaration with a chart, but no explanation as to how the hours were incurred:

| Name | Position | Hours | Rate | Total |
|---|---|---|---|---|
| Todd Friedman | Managing Partner 20+ years | 23.3 | $1,150.00 | $26,795.00 |
| Adrian Bacon | Partner 15 years | 72.0 | $975.00 | $70,200.00 |
| Matt Snyder | Associate 3 years | 85.0 | $525.00 | $44,625.00 |
| Erika Campany | Office Manager/Head Paralegal | 9.2 | $295.00 | $2,714.00 |
| Lauren Walker | Paralegal | 2.0 | $295.00 | $590.00 |
| Karla Uribe | Paralegal | 3.2 | $295.00 | $944.00 |
| **Total Hours:** | | 194.7 | **Total Fees:** | $145,868.00 |

(Dkt. No. 455 at ¶ 9.)

While a lodestar figure is generally "presumptively reasonable," it is based on "the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation)." *In re Bluetooth*, 654 F.3d at 941 (emphasis added). Indeed, the Court's preliminary approval order required counsel to submit "declarations and detailed billing summaries so that the Court may determine an appropriate lodestar figure." (Dkt. No. 451 at 17.)

As Class Counsel has not provided adequate support for the hours claimed here, the lodestar cross-check does not support a fee award that exceeds the 25 benchmark. Further, even if the Court were to accept Plaintiff's lodestar, a fee award of 25 percent ($6,187,500) is nearly 1.2 times their lodestar ($5,018,993). Given the substantial recovery for the class, the significant risks of non-recovery or limited recovery had this case proceeded to trial, and the overall length of this litigation, a .8 multiplier is reasonable.

***

Accordingly, the Court concludes an award of 25 percent of the Settlement Amount or ($6,187,500) is reasonable here.

**B. Costs**

"There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014) (cleaned up). Plaintiffs request $173,290.45 in litigation costs and $260,000 in settlement administration costs. (Dkt. No. 454-12; Dkt. No. Dkt.

No. 455 at ¶ 19; Dkt. No. 461 at ¶ 24.) These costs are well-documented and reasonable. (*Id.*) Accordingly, the Court awards $433,290.45 in combined litigation and settlement administration costs.

**C. Class Representative Incentive Awards**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (distinguishing incentive awards from incentive agreements, the latter of which are "entered into as part of the initial retention of counsel" and "put class counsel and the contracting class representatives into a conflict position from day one"). However, the decision to approve such an award is a matter within the Court's discretion. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputation risk undertaken in bringing the action, and, sometimes to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Although incentive awards are viewed more favorably than incentive agreements, excessive awards "may put the class representative in a conflict with the class and present a considerable danger of individuals bringing cases as class actions principally to increase their own leverage to attain a remunerative settlement for themselves and then trading on that leverage in the course of negotiations." *Id.* at 960 (internal quotation marks and citation omitted). Thus, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing a suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Covillo v. Specialtys Café*, No. C–11–00594-DMR, 2014 WL 954516, at *8 (N.D. Cal. Mar. 6, 2014) (quoting *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). A class representative must justify an incentive award through "evidence demonstrating the quality

United States District Court
Northern District of California

of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 669 (E.D. Cal. 2008). Further, district courts must evaluate each incentive award individually. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Plaintiffs seek $100,000 for Mr. Lawson. Mr. Lawson recognizes this amount is "higher than the usual amount" and argues it is warranted in light of the length of the case and the size of the recovery. Mr. Lawson submitted a declaration attesting to the work he performed on the case and the impact the litigation has had on him. (Dkt. No. 456.) As discussed above, the Court agrees the results achieved in this case are significant in light of the risks, but this does not justify an award of $100,000. This amount is two to four times the amounts awarded in the cases Plaintiffs rely on. (Dkt. No. 453 at 39 (citing cases awarding $25,000-$50,000).) Further, an increased award is not warranted to the extent Mr. Lawson experienced negative publicity based on his credibility issues at trial. (*Compare* Dkt. No. 456, Lawson Decl. at ¶ 8 (describing reputational damage) *with* Dkt. No. 221 at 16-17 (opinion following bench trial).) Accordingly, the Court finds an award of $10,000 is reasonable and does not "undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).

Plaintiffs seek $5,000 for Ms. Marshall. Her declaration attests she spent approximately 45 hours discussing the case with her attorneys, assisting in developing litigation strategy, and participating in finalizing the settlement. (Dkt. No. 458, Marhsall Decl. at ¶¶ 3-4.) Given Ms. Marshall was added as a plaintiff in this action solely for purposes of settlement and before any discovery or motion practice in the action she previously filed in superior court, the Court concludes an award of $2,000 is reasonable. *Radcliffe*, 715 F.3d at 1163.

**CONCLUSION**

For the reasons stated above, the Court GRANTS Plaintiffs' motion for final approval of the parties' class action settlement. In addition, the Court GRANTS IN PART and DENIES IN PART Plaintiffs' motion for attorneys' fees and costs; specifically, the Court awards the following: $6,187,500 in attorneys' fees; $433,290.45 in combined litigation and settlement administration costs; and $10,000 to Mr. Lawson and $2,000 to Ms. Marshall as incentive awards.

In accordance with the Northern District's Procedural Guidance for Class Action Settlements, "[w]ithin 21 days after the distribution of the settlement funds and payment of attorneys' fees," Class Counsel shall file "a Post-Distribution Accounting" that provides the following, to the extent applicable:

> The total settlement fund, the total number of class members, the total number of class members to whom notice was sent and not returned as undeliverable, the number and percentage of claim forms submitted, the number and percentage of opt-outs, the number and percentage of objections, the average and median recovery per claimant, the largest and smallest amounts paid to class members, the method(s) of notice and the method(s) of payment to class members, the number and value of checks not cashed, the amounts distributed to each cy pres recipient, the administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any.

https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/. Class Counsel shall "summarize this information in an easy-to-read chart that allows for quick comparisons with other cases," and "post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website." *See id*.

The parties shall file a proposed judgment on or before August 13, 2026.

This Order disposes of Docket Nos. 453, 459.

**IT IS SO ORDERED.**

Dated: July 30, 2026

Jacqueline Scott Corley

JACQUELINE SCOTT CORLEY
United States District Judge